# United States
# Department of Justice



Washington, D.C., ___August 09_____ , 20__12__

To whom these presents shall come, Greeting:

I certify   That _____█████████_____ whose name is signed

accompanying paper, is now, and was at the time of signing the same,

___iate Director, Office of International Affairs, Criminal Division,

Department of Justice, Washington, D.C.

_____ duly commissioned and qualified.

witness, whereof, I, ___Eric H. Holder, Jr._____

*Attorney General of the United States, have hereunto caused the Seal of the Department of Justice to be affixed and my name to be attested by the Director/ Deputy Director, Office of International Affairs, Criminal Division, of the said Department on the day and year first above written.*

**Attorney General**

By ████████████████

*Director/Deputy Director, Office of International Affairs, Criminal Division*

CRM-181
APR 98

<u>CERTIFICATION</u>

I, ███████████ Associate Director, Office of International Affairs, Criminal Division,

United States Department of Justice, United States of America, do hereby certify that attached

hereto and prepared in support of the United States request for the extradition of Minh Quang

Pham from the United Kingdom is the original affidavit of Benjamin Naftalis, Assistant United

States Attorney for the Southern District of New York, sworn to on August 7, 2012, before

Michael H. Dolinger, United States Magistrate Judge, with exhibits.

True copies of the original documents are maintained in the official files of the United

States Department of Justice in Washington, D.C.


8/9/2012
Date


███████████

Associate Director
Office of International Affairs
Criminal Division
U.S. Department of Justice
Washington, D.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                  :

      - v. -                              :        12 Cr. 423

MINH QUANG PHAM,                          :
      a/k/a "Amin,"
                                          :

             Defendant.
                                          :

- - - - - - - - - - - - - - - - - -x

### AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION OF MINH QUANG PHAM

      I, Benjamin Naftalis, being duly sworn, state that:

      1.    I am a citizen of the United States of America and a
resident of ███████████████████.



      3.    In the course of my duties, I have become familiar
with the charges and evidence in the case of United States v.
Minh Quang Pham, 12 Cr. 423.

1

4.     An investigation by the United States Attorney's Office for the Southern District of New York ("SDNY") and the Federal Bureau of Investigation ("FBI") revealed that Minh Quang Pham, a/k/a Van Minh Pham, a/k/a Mohammed Amin ("PHAM"), is associated with al Qa'ida in the Arabian Peninsula ("AQAP"), an organization that was publically designated by the United States Secretary of State as a Foreign Terrorist Organization on January 19, 2010.  The investigation revealed that PHAM provided and attempted to provide material support and resources to AQAP, in violation of United States laws.  Specifically, the investigation revealed that PHAM traveled from the United Kingdom to Yemen, where he swore "bayat," (i.e., an oath of loyalty) to AQAP.  After joining AQAP, PHAM assisted in the preparation of AQAP's online propaganda publication, Inspire magazine.  In addition, PHAM received military-type training from AQAP.  Finally, while staying at various AQAP safehouses in Yemen, and in furtherance of the aforementioned activities, PHAM possessed, carried, and used a Kalashnikov assault rifle.

### SUMMARY OF THE FACTS OF THE CASE

5.     PHAM, 29, was born in Vietnam and, at present, is a national of the United Kingdom.

6.     The investigation revealed that in December 2010, PHAM informed his ███████ wife that he was departing on an impromptu trip to Ireland, but he traveled to Yemen, instead.

2

Specifically, the investigation revealed that PHAM departed the United Kingdom in late 2010 and returned to the United Kingdom in July 2011. Information obtained from a travel agency (the "Travel Agency") indicates that PHAM booked a trip to Yemen in or about October 2010. Further, a review of PHAM's travel documents revealed that he entered Yemen in December 2010, and exited Yemen in July 2011. Based on the investigation, it appears that PHAM remained in Yemen for the duration of the seven-month period from December 2010 until July 2011.

7. While in Yemen, PHAM met a person who later became a United States cooperating witness ("CW-1").[1] CW-1 knows PHAM as "Amin," and met face-to-face with PHAM at several AQAP safehouses in Yemen over the course of several weeks in March and April 2011. CW-1 was shown an array of photographs, and positively identified a photograph of PHAM as the individual



whom CW-1 knew as "Amin," and with whom CW-1 had interacted
extensively while at AQAP safehouses in Yemen.

8.    According to CW-1,[2] CW-1 first learned about PHAM in
email correspondence with a United States citizen, now deceased,
who was a prominent AQAP member ("American CC-1").   In an email,
American CC-1 told CW-1 that PHAM had come to Yemen from the
United Kingdom.   CW-1 first met PHAM at an AQAP safehouse in
Yemen in or about March 2011, where CW-1 observed PHAM carrying
a Kalashnikov assault rifle.   CW-1 stated that he observed PHAM
carrying the assault rifle throughout almost all of his
interactions with PHAM in Yemen.   In conversations with CW-1,
PHAM told CW-1 that he had been trained in the use of the
Kalashnikov assault rifle while in Yemen by AQAP.   Further, PHAM
told CW-1 that he (PHAM) had traveled to Yemen in order to join
AQAP, to wage jihad (i.e., holy war) on behalf of AQAP ███████
███████████████████████.   PHAM described how he had lied
to his family about where he was going, and how he had left his
████████ wife behind in the United Kingdom.   PHAM further
described to CW-1 how PHAM initially traveled with a tour group
in Yemen for approximately two weeks, after which time PHAM met
up with another individual from the United Kingdom and traveled

---

[2]    All information in paragraphs 8 and 9 of the instant
affidavit is based on information supplied by CW-1.

to an AQAP safehouse.[3]  PHAM also told CW-1 that he (PHAM) had

sworn bayat in the presence of an AQAP commander prior to

leaving Yemen.

9.  CW-1 also witnessed PHAM's interactions with American

CC-1 and a second United States citizen ("American CC-2"), also

now deceased, who was also a prominent AQAP member.  CW-1

observed PHAM working closely with American CC-1, who was

responsible for editing and publishing Inspire magazine -- an

English-language publication used by AQAP to distribute

propaganda and recruit individuals from Western cultures to join

and/or support AQAP.  In addition, PHAM told CW-1 that PHAM was

working with American CC-1 and that he (PHAM) had spent time at

no fewer than three AQAP safehouses.  During CW-1's time at

these AQAP safehouses, CW-1 also spoke with American CC-1 and

American CC-2 about PHAM, and understood from them that PHAM was

providing valuable assistance to American CC-1 in connection

with the production and editing of Inspire magazine.

10.  On July 27, 2011, PHAM returned to the United Kingdom.

Upon his arrival at London's Heathrow International Airport,

United Kingdom authorities detained and searched PHAM.

Materials recovered from PHAM at the time of his initial

---

[3]  Information obtained by law enforcement authorities from
the Travel Agency confirms that PHAM did, indeed, travel with a
tour group in Yemen for about two weeks before setting off on
his own.

encounter with law enforcement corroborate CW-1's account of CW-1's interactions with PHAM while the men were in Yemen.  For example, CW-1 stated that, while in Yemen, CW-1 personally exchanged various electronic documents with PHAM – and PHAM was found in possession of various electronic media that contained computer files forensically identical to those possessed by CW-1.  In addition, CW-1 reported that PHAM almost always carried a Kalashnikov in Yemen – and upon his arrival in the United Kingdom from Yemen, PHAM was found to be in possession of a live round of .762 caliber armor-piercing ammunition, which is consistent with ammunition that is used in a Kalashnikov assault rifle.  During questioning by United Kingdom authorities during his detention at Heathrow, PHAM admitted that he traveled to Yemen, that he lied to his family about his destination, and that he toured with a company while in Yemen.

PROCEDURAL HISTORY OF THE CASE

The Charging Process

11.  Under the federal law of the United States, a criminal prosecution is commenced when a grand jury files an indictment. A grand jury, though an arm of the court, is an independent body composed of private citizens -- not less than 16 and not more than 23 people -- whom the United States District Court selects at random from the residents of the judicial district in which the court resides.  The purpose of the grand jury is to review

6

evidence presented to it by United States law enforcement authorities.  After independently reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person committed that crime.  If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment.  An indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred.

12.  The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court. Thereafter, the clerk of the court, at the direction of a United States District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest.

13.  In addition to imprisonment and a criminal fine, United States law provides for the seizure and forfeiture of the defendant's property that was used to facilitate a crime, or that constitutes the proceeds of a crime.  A criminal forfeiture may be alleged in an indictment, along with the substantive crimes.  Upon a showing of probable cause, a United States

District Court Judge or Magistrate Judge may issue a seizure warrant for the seizure of the property.

14. On May 24, 2012, a federal grand jury sitting in the Southern District of New York returned an indictment (the "Indictment") charging PHAM with criminal offenses against the laws of the United States and filed the Indictment with the United States District Court for the Southern District of New York. It is the practice of the United States District Court for the Southern District of New York to retain the original Indictment and file it with the records of the court. Therefore, I have obtained a true and accurate copy of the Indictment from the Clerk of the Court, and I attach it to this affidavit as Exhibit A.

15. On May 24, 2012, United States Magistrate Judge Ronald L. Ellis signed a warrant for the arrest of PHAM for the offenses charged in the Indictment. It is the practice of the United States District Court for the Southern District of New York to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained a true and accurate copy of the arrest warrant from the Clerk of the Court, and I attach it to this affidavit as Exhibit B.

The Charges and Pertinent Unites State Law

16. The Indictment charges in five counts that Pham and others committed the following offenses:

8

Count 1:    Conspiracy to provide material support to a foreign terrorist organization, in violation of Title 18, United States Code, Sections 2339B (a)(1),(d)(1)(C), (E) and (F), and 3238[4], which carries a maximum penalty of 15 years' imprisonment;

Count 2:    Providing and attempting to provide material support to a foreign terrorist organization, in violation of Title 18, United States Code, Sections 2339B(a)(1),(d)(1)(C), (E), and (F), 3238, and 2, which carries a maximum penalty of 15 years' imprisonment;

Count 3:    Conspiracy to receive military-type training from a foreign terrorist organization, in violation of Title 18, United States Code, Sections 371, 2339D(a), (b)(3), (b)(5) and (b)(6), and 3238, which carries a maximum penalty of five years' imprisonment;

Count 4:    Receipt of military-type training from a foreign terrorist organization, in violation of Title 18, United States Code, Sections 2339D(a), (b)(3), (b)(5) and (b)(6), and 3238, which carries a penalty of ten years' imprisonment; and

Count 5:    Possessing, carrying, and using a firearm in relation to a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A), (B)(i), and (B)(ii), 3238, and 2, which carries a penalty of not less than 30 years' imprisonment, and a maximum penalty of life imprisonment.

The Indictment also contains a forfeiture allegation.

17.    The United States requests the extradition of Pham for all of the offenses set forth above. Each count charges a separate offense.   Each offense is punishable under a statute

---

[4] Title 18, United States Code, Section 3238, specifies which State or district in the United States has jurisdiction over a prosecution where the offenses in question occurred outside the jurisdiction of any particular State or district.

that (1) was the duly enacted law of the United States at the time that the offense was committed, (2) was the duly enacted law of the United States at the time that Indictment was filed, and (3) is currently in effect.  Each offense is punishable under United States law by one year or more imprisonment. Copies of the relevant statutes are attached to this affidavit as Exhibit C.

Count 1

18.  Count 1 charges PHAM with Conspiring to Provide Material Support to a Foreign Terrorist Organization, in violation of Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (E) and (F), and 3238.

19.  Under United States law, a conspiracy is an agreement to commit one or more criminal offenses.  The agreement on which the conspiracy is based need not be expressed in writing or in words, but may be simply a tacit understanding by two or more persons to do something illegal.  Conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member.  A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the identities of all the other members of the conspiracy.  If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, he is

10

guilty of conspiracy even though he did not participate before and may play only a minor part.  A conspirator can be held criminally responsible for all reasonably foreseeable actions undertaken by other conspirators in furtherance of the criminal partnership.

20.  The crime of conspiracy is an independent offense, separate and distinct from the commission of any specific "substantive crimes."  Consequently, a conspirator can be found guilty of the crime of conspiracy to commit an offense even where the substantive crime that was the purpose of the conspiracy is not committed.  The Congress of the United States has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful, because collective criminal planning poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

21.  To satisfy its burden of proof and convict PHAM on Count 1, the government, at trial, must prove each of the following essential elements beyond a reasonable doubt: (1) that two or more persons entered an agreement to commit the underlying offense, i.e., to provide material support to a foreign terrorist organization, i.e., AQAP; (2) that PHAM knowingly and willfully joined the conspiracy to commit the

underlying offense; (3) that PHAM knew either that AQAP had been designated as a terrorist organization by the United States government, that AQAP engaged in "terrorist activity", or that AQAP engaged in "terrorism".

22.    The government's evidence will establish that PHAM, traveled to Yemen where, in agreement with others, he joined AQAP and received military-type training; that he possessed and carried a firearm, i.e., an assault rifle as a member of AQAP while in Yemen; and that he worked with other AQAP members while in Yemen and provided assistance to a member in connection with the production and editing of AQAP's online propaganda publication, Inspire magazine.

Count 2

23.    Count 2 charges PHAM with Providing or Attempting to Provide Material Support to a Foreign Terrorist Organization, in violation of Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (E), and (F), 3238, and 2.  Title 18, United States Code, Section 2, provides that a person who aids and abets the commission of a crime — in this instance providing or attempting to provide material support to a foreign terrorist organization — is as guilty as the person who actually performs the criminal act.

24.    To satisfy its burden of proof and convict PHAM on Count 2, the government, at trial, must prove each of the

following essential elements beyond a reasonable doubt: (1) that PHAM provided or attempted to provide material support and resources to AQAP, or aided and abetted another in providing such support and resources; and (2) that PHAM knew either that AQAP had been designated as a terrorist organization by the United States government, that AQAP engaged in terrorist activity, or that AQAP engaged in terrorism.

25.   The government's evidence will establish that PHAM, traveled to Yemen where, in agreement with others, he joined AQAP and received military-type training; that he possessed and carried a firearm, i.e., an assault rifle as a member of AQAP while in Yemen; and that he worked with other AQAP members while in Yemen and provided assistance to a member in connection with the production and editing of AQAP's online propaganda publication, Inspire magazine.

Count 3

26.   Count 3 charges PHAM with Conspiracy to Receive Military-type Training from a Foreign Terrorist Organization, in violation of Title 18, United States Code, Sections 371, 2339D(a)(b)(3), (b)(5) and (b)(6), and 3238.

27.   To satisfy its burden of proof and convict PHAM on Count 3, the government, at trial, must prove each of the following essential elements beyond a reasonable doubt: (1) that two or more persons entered an agreement to commit the

13

underlying offense, i.e., to receive military-type training from AQAP; (2) that PHAM knowingly and willfully joined the conspiracy to commit the underlying offense; (3) that PHAM knew either that AQAP had been designated as a terrorist organization by the United States government, that AQAP engaged in terrorist activity, or that AQAP engaged in terrorism; and (4) that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy.  An overt act is any action taken to further the objective of the conspiracy, and need not itself be a criminal act.

28.   The government's evidence will establish that PHAM traveled to Yemen where he, in agreement with others, joined AQAP, took an oath of allegiance, and received military-type training, which included training in the use of an assault rifle; and that he possessed and carried an assault rifle as a member of AQAP while in Yemen in support of AQAP.

Count 4

29.   Count 4 charges PHAM with Receipt of Military-type Training from a Foreign Terrorist Organization, in violation of Title 18, United States Code, Sections 2339D(a), (b)(3), (b)(5) and (b)(6), and 3238.

30.   To satisfy its burden of proof and convict PHAM on Count 4, the government, at trial, must prove each of the following essential elements beyond a reasonable doubt: (1) that

PHAM received military-type training from a foreign terrorist organization, i.e., AQAP; and (2) that PHAM knew at the time either that AQAP had been designated as a terrorist organization by the United States government, that AQAP engaged in terrorist activity, or that AQAP engaged in terrorism.

31.   The government's evidence will establish that PHAM traveled to Yemen where he joined AQAP, took an oath of allegiance, and received military-type training, which included training on the use of an assault rifle; and that PHAM possessed and carried an assault rifle as a member of AQAP while in Yemen in support of AQAP.

Count 5

32.   Count 5 charges PHAM with Possessing, Carrying, and/or Using a Firearm During and in Relation to a Crime of Violence, or Aiding and Abetting Another in the Possession, Carrying, or Use of a Firearm, in violation of Title 18, United States Code, Sections 924(c)(1)(A), (B)(i), and (B)(ii), 3238, and 2.

33.   To satisfy its burden of proof and convict PHAM on Count 5, the government, at trial, must prove each of the following essential elements beyond a reasonable doubt: (1) that PHAM is guilty of at least one of the charges set forth in Counts 1 through 4 of the Indictment; (2) that PHAM carried a firearm during and in relation to the commission of, or possessed a firearm in furtherance of, one of the charged crimes

charged in Counts 1 through 4, or aided and abetted another in carrying or possessing said firearm, in furtherance of one of the crimes charged in Counts 1 through 4; and (3) that PHAM acted knowingly and intentionally.  Under United States law, it is a federal crime for anyone to use, carry or possess firearms (including machine guns and destructive devices) in relation to a "crime of violence."  The crimes charged in Counts 1 through 4 of the Indictment are crimes of violence under United States federal law.

34.  The government's evidence will establish that PHAM traveled to Yemen where he joined AQAP, took an oath of allegiance, and received military-type training, which included training on the use of an assault rifle; and that PHAM possessed and carried an assault rifle as a member of AQAP while in Yemen, while conspiring to provide and providing material support to AQAP, and conspiring to receive and receiving military-type training.

35.  The government will establish all of the elements set forth above through the testimony of civilian, expert, and law enforcement witnesses, and physical evidence.  Specifically, the testimony of CW-1 will establish that PHAM traveled to Yemen in 2010, joined AQAP, took an oath of allegiance, stayed at various AQAP safehouses, received military-type training in Yemen, carried a particular firearm while there, and worked closely

with other members of AQAP, including providing assistance with the production of a Inspire magazine. The government will introduce a forensic comparison of electronic evidence recovered from PHAM and electronic evidence possessed by CW-1, to corroborate CW-1's testimony. The government will also introduce the live round of ammunition found on PHAM's person when he entered the United Kingdom in July 2011, travel records pertaining to PHAM, PHAM's own admissions to British authorities in July 2011, and various communications (including electronic mail and other correspondence) in which PHAM discussed his travel and whereabouts. Finally, the United States will introduce the contents of PHAM's electronic media, AQAP publications (including Inspire magazine), and the testimony of witnesses related to AQAP's terrorist agenda, in order to demonstrate PHAM's understanding of AQAP and its mission.

Description of Fugitive

36. PHAM was born on ██████████, in Vietnam. PHAM entered the United Kingdom at ██████ and was granted British citizenship in 1995. PHAM's United Kingdom passport number is ██████. It was issued on ██████████, with an expiration date of ██████████. PHAM is described as an Asian male, standing 5 feet, 7 inches tall.

37. I have attached a photograph of PHAM to this affidavit as Exhibit D. This photograph was identified by CW-1 as the

person he/she knows as "Amin".

38.   I have also attached a copy of the fingerprints of PHAM to this affidavit as Exhibit E.   These fingerprints have been identified by a Deputy-Constable with an identification number of ███████ the officer who took them at the time of PHAM's arrest on July 27, 2011, in the United Kingdom when he re-entered.

## Location of Fugitive

39.   PHAM was arrested by United Kingdom authorities on June 29, 2012, pursuant to a United States request for provisional arrest.   Based on information and belief, he remains in the custody of United Kingdom authorities pursuant to that arrest.

**CONCLUSION**

40.   I have attached the following documents in support of this request for the extradition of PHAM:

  A.   Exhibit A is a certified copy of the Indictment.

  B.   Exhibit B is a certified copy of the arrest warrant.

  C.   Exhibit C is a copy of the pertinent sections of the following statutes and their penalties:

        Title 18, United States Code, § 2339B
        Title 18, United States Code, § 2339D
        Title 18, United States Code, § 924(c)
        Title 18, United States Code, § 371
        Title 18, United States Code, § 2

  D.   Exhibit D is a photograph of PHAM.

E.    Exhibit E are copies of the fingerprints of PHAM.

41.  I have thoroughly reviewed the government's evidence against PHAM and attest that this evidence indicates that PHAM is guilty of the offenses charged in the Indictment.

Executed this __7th__ day of August, 2012, at New York City, New York, United States of America.

PREET BHARARA
United States Attorney


*Ben*

Benjamin Naftalis
Assistant United States Attorney


Signed and sworn to before me this __7th__ day of August, 2012, at New York, New York.

HON. MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :     **SEALED INDICTMENT**

    - v. -                          :     12 Cr. _____

MINH QUANG PHAM,                        12 CRIM 423
    a/k/a "Amin,"
                                  :
              Defendant.
                                  :
- - - - - - - - - - - - - - - - - - -x

**COUNT ONE**

**CONSPIRACY TO PROVIDE MATERIAL SUPPORT
TO A FOREIGN TERRORIST ORGANIZATION**

    The Grand Jury charges:

    1.    From at least in or about December 2010, up to and
including in or about December 2011, in an offense occurring in
and affecting interstate and foreign commerce, and begun and
committed outside of the jurisdiction of any particular State or
district of the United States, MINH QUANG PHAM, a/k/a "Amin," the
defendant, who will be first brought to and arrested in the
Southern District of New York, and others known and unknown,
knowingly and willfully did combine, conspire, confederate and
agree together and with each other to provide "material support
or resources," as that term is defined in Title 18, United States
Code, Section 2339A(b)(1), to a foreign terrorist organization,
namely, al Qa'ida in the Arabian Peninsula, which was designated
by the United States Secretary of State as a foreign terrorist
organization on January 19, 2010, and is currently designated as
such, as of the date of this Indictment.

    2.    It was a part and an object of the conspiracy that

A CERTIFIED COPY
RUBY J. KRAJICK, CLERK

BY
                    Deputy Clerk

MINH QUANG PHAM, a/k/a "Amin," the defendant, and others known and unknown, would and did provide al Qa'ida in the Arabian Peninsula with material support and resources, including, among other things, personnel, property, services, facilities, communications equipment, expert advice and assistance, training, and weapons, knowing that al Qa'ida in the Arabian Peninsula was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that al Qa'ida in the Arabian Peninsula engages and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Qa'ida in the Arabian Peninsula engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

<u>Overt Acts</u>

3.    In furtherance of the conspiracy and to effect the illegal object thereof, MINH QUANG PHAM, a/k/a "Amin," the defendant, and others known and unknown, committed the overt acts set forth below:

a.    In or about December 2010, PHAM traveled from the United Kingdom to Yemen.

b.    In or about March and April 2011, PHAM possessed and carried a Kalashnikov rifle.

c.    In or about April 2011, PHAM worked with a United States citizen ("American CC-1") to create online propaganda for al Qa'ida in the Arabian Peninsula.

Page 2 of 8

d.    In or about April 2011, PHAM met with a
United States citizen ("American CC-2") in Yemen.

(Title 18, United States Code, Sections 2339B(a)(1),
(d)(1)(C), (E) and (F), and 3238.)

COUNT TWO

MATERIAL SUPPORT
TO A FOREIGN TERRORIST ORGANIZATION

The Grand Jury further charges:

4.    From at least in or about December 2010, up to and
including in or about December 2011, in an offense occurring in
and affecting interstate and foreign commerce, and begun and
committed outside of the jurisdiction of any particular State or
district of the United States, MINH QUANG PHAM, a/k/a "Amin," the
defendant, who will be first brought to and arrested in the
Southern District of New York, did knowingly provide and attempt
to provide material support or resources, as that term is defined
in Title 18, United States Code, Section 2339A(b)(1), including,
among other things, personnel, property, services, facilities,
communications equipment, expert advice and assistance, training,
and weapons, to al Qa'ida in the Arabian Peninsula, which was
designated as a foreign terrorist organization on January 19,
2010, by the United States Secretary of State, and is currently
designated as such as of the date of the filing of this
Indictment, knowing that al Qa'ida in the Arabian Peninsula was a
designated terrorist organization, that al Qa'ida in the Arabian
Peninsula engages and has engaged in terrorist activity (as
defined in section 212(a)(3)(B) of the Immigration and

Page 3 of 8

Nationality Act), and that al Qa'ida in the Arabian Peninsula engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), to wit, PHAM took an oath of allegiance to al Qa'ida in the Arabian Peninsula; obtained training on behalf of and from al Qa'ida in the Arabian Peninsula; facilitated communications between al Qa'ida in the Arabian Peninsula and its supporters; and provided expert advice and assistance in photography and graphic design of media for al Qa'ida in the Arabian Peninsula.

(Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (E), and (F), 3238, and 2.)

## COUNT THREE

### CONSPIRACY TO RECEIVE MILITARY-TYPE TRAINING FROM A FOREIGN TERRORIST ORGANIZATION

The Grand Jury further charges:

5.    From at least in or about December 2010, up to and including in or about July 2011, in an offense occurring in and affecting interstate and foreign commerce, begun and committed outside of the jurisdiction of any particular State or district of the United States, MINH QUANG PHAM, a/k/a "Amin," the defendant, who will be first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and willfully did combine, conspire, confederate and agree together and with each other to receive military-type training from and on behalf of al Qa'ida in the Arabian Peninsula, which was designated by the United States Secretary of

Page 4 of 8

State as foreign terrorist organization on January 19, 2010.

      6.   It was a part and an object of the conspiracy that MINH QUANG PHAM, a/k/a "Amin," the defendant, and others known and unknown, would and did receive military-type training from and on behalf of al Qa'ida in the Arabian Peninsula, knowing that al Qa'ida in the Arabian Peninsula was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), knowing that al Qa'ida in the Arabian Peninsula had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and knowing that al Qa'ida in the Arabian Peninsula had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339D.

<u>Overt Acts</u>

      7.   In furtherance of the conspiracy and to effect the illegal object thereof, MINH QUANG PHAM, a/k/a "Amin," the defendant, and others known and unknown, committed the overt acts set forth in paragraphs 3a and 3b above, which are fully incorporated by reference herein.

      (Title 18, United States Code, Sections 371, 2339D(a),
          (b)(3), (b)(5) & (b)(6), and 3238.)

COUNT FOUR

RECEIPT OF MILITARY-TYPE TRAINING
FROM A FOREIGN TERRORIST ORGANIZATION

The Grand Jury further charges:

8.    In or about March 2011, in an offense occurring in and affecting interstate and foreign commerce, begun and committed outside of the jurisdiction of any particular State or district of the United States, MINH QUANG PHAM, a/k/a "Amin," the defendant, who will be first brought to and arrested in the Southern District of New York, knowingly and willfully received military-type training from and on behalf of al Qa'ida in the Arabian Peninsula, which was designated by the United States Secretary of State as foreign terrorist organization on January 19, 2010, to wit, PHAM received training in the use of a Kalashnikov rifle from other members of al Qa'ida in the Arabian Peninsula.

(Title 18, United States Code, Sections 2339D(a),
(b)(3), (b)(5) & (b)(6), and 3238.)

COUNT FIVE

POSSESSING, CARRYING, AND USING A FIREARM

The Grand Jury further charges:

9.    From at least in or about February 2011, up to and including in or about July 2011, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, MINH QUANG PHAM, a/k/a "Amin," the defendant, who will be first brought to and arrested in the Southern District of New York, during and in relation to crimes

Page 6 of 8

of violence for which he may be prosecuted in a court of the
United States, namely, the conspiracy to provide material support
to al Qa'ida in the Arabian Peninsula, charged in Count One of
this Indictment, the provision and attempted provision of
material support al Qa'ida in the Arabian Peninsula, charged in
Count Two of this Indictment, the conspiracy to receive military-
type training from al Qa'ida in the Arabian Peninsula, charged in
Count Three of this Indictment, and the receipt of military-type
training from al Qa'ida in the Arabian Peninsula, charged in
Count Four of this Indictment, knowingly did use and carry a
firearm and, in furtherance of such crimes, did possess a
firearm, and did aid and abet the use, carrying, and possession
of a firearm in Yemen, to wit, an Kalashnikov assault rifle that
was capable of automatically firing more than one shot without
manual reloading.

(Title 18, United States Code, Sections 924(c)(1)(A), (B)(i), and
(B)(ii), 3238, and 2.)

## FORFEITURE ALLEGATION

10.  As a result of planning and perpetrating Federal
crimes of terrorism against the United States, as alleged in
Counts One through Four of this Indictment, MINH QUANG PHAM,
a/k/a "Amin," the defendant, shall forfeit to the United States,
pursuant to Title 18, United States Code, Sections 981(a)(1)(G)
and 2332b(g)(5), and Title 28, United States Code, Section 2461:

      a.    all right, title, and interest in all assets,
foreign and domestic;

      b.    all right, title, and interest in all assets,

Page 7 of 8

foreign and domestic, affording a source of influence over al Shabaab and AQAP;

c.   all right, title and interest in all assets, foreign and domestic, acquired and maintained with the intent and for the purpose of supporting, planning, conducting, and concealing a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property; and

d.   all right, title and interest in all assets, foreign and domestic, derived from, involved in, and used and intended to be used to commit a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property;

including, but not limited to, a sum of money representing the value of the property described above as being subject to forfeiture.

(Title 18, United States Code, Sections 981(a)(1)(G) and 2332b(g)(5), and Title 28, United States Code, Section 2461.)

FOREPERSON _____

PREET BHARARA
United States Attorney

Page 8 of 8

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MINH QUANG PHAM,
a/k/a "Amin,"

Defendant.

### SEALED INDICTMENT

12 Cr.

(Title 18, United States Code, Sections
2339B, 2339D, 924(c), 3238 & 2; and Title
28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

CR 12 (Rev. 6/82)                    WARRANT FOR ARREST

| **United States District Court** | DISTRICT |
| | SOUTHERN DISTRICT OF NEW YORK |

| UNITED STATES OF AMERICA | DOCKET NO. | MAGISTRATE'S CASE NO. |
| v. | 12 CRIM 423 |
| MINH QUANG PHAM, | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED |
| a/k/a "Amin" | |
| | MINH QUANG PHAM, |
| WARRANT ISSUED ON THE BASIS OF:   ☐ Order of Court | a/k/a "Amin" |
| X  Indictment   ☐ Information   ☐ Complaint | DISTRICT OF ARREST |
| TO: | CITY |
| ANY AUTHORIZED LAW ENFORCEMENT OFFICER | |

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

**DESCRIPTION OF CHARGES**

Conspiracy to Provide Material Support to a Foreign Terrorist Organization
Material Support to a Foreign Terrorist Organization
Conspiracy to Receive Military-Type Training From a Foreign Terrorist Organization
Receipt of Military-Type Training From a Foreign Terrorist Organization
Possessing, Carrying and Using a Firearm

| IN VIOLATION OF | UNITED STATES CODE TITLE | SECTIONS |
| | 18 | 2339B, 2339D, 371, 924(c) |

| BAIL | OTHER CONDITIONS OF RELEASE |

| ORDERED BY | SIGNATURE (FEDERAL JUDGE/U.S. MAGISTRATE) | DATE ORDERED |
| Hon. Ronald L. Ellis | S/ Ronald L. Ellis | May 24, 2012 |
| United States Magistrate Judge | |
| Southern District of New York | |
| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED |

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| | CERTIFIED COPY | |
| | RUBY J. KRAJICK, CLERK | |
| DATE EXECUTED | BY _____ | |
| | Deputy Clerk | |

Note: The arresting officer is directed to serve the attached copy of the charge on the defendant at the time this warrant is executed.

<u>**RELEVANT STATUTES**</u>

<u>**Title 18, United States Code, § 2.  Principals**</u>

**(a)**  Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

**(b)**  Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

---

<u>**Title 18, United States Code, § 371.  Conspiracy**</u>

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned not more than five years . . .

---

<u>**Title 18, United States Code, § 924.  Penalties**</u>

* * *

**(c) (1) (A)**  Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

**(B)**  If the firearm possessed by a person convicted of a violation of this subsection—

      (i)      is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

    (ii)      is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

*  *  *

**(3)**     For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

    **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

---

**Title 18, United States Code, § 2339B** .  **Providing material support or resources to designated foreign terrorist organizations**

**(a) Prohibited Activities**.—

    **(1) Unlawful conduct**.— Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be . . . imprisoned not more than 15 years, . . . and, if the death of any person results, shall be imprisoned for any term of years or for life.   To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

**Title 18, United States Code, § 2339D**.  **Receiving military-type training from a foreign terrorist organization**

    **(a)  Offense**.— Whoever knowingly receives military-type training from or on behalf of any organization designated at the time of the training by the Secretary of State under section 219(a)(1) of the Immigration and Nationality Act as a foreign terrorist organization shall be . . . imprisoned for ten years . . . To violate this subsection, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (c)(4)), that the

organization has engaged or engages in terrorist activity (as defined in section 212 of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

\* \* \*

(c)  **Definitions**.— As used in this section—

(1)  the term "military-type training" includes training in means or methods that can cause death or serious bodily injury, destroy or damage property, or disrupt services to critical infrastructure, or training on the use, storage, production, or assembly of any explosive, firearm or other weapon, including any weapon of mass destruction (as defined in section 2232a(c)(2) [2]) . . .

