UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

       -against-                                        12 Cr. 423 (AJN)

**MINH QUANG PHAM,**

       **Defendant.**
-------------------------------------------------------x

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANT MINH QUANG PHAM**

Bobbi C. Sternheim, Esq.
33 West 19th Street – 4th Floor
New York, NY 10011
212-243-1100

**THE COURT SHOULD ALLOW RULE 15 DEPOSITIONS
OF WITNESSES OR ALLOW LIVE TESTIMONY BY CCTV
FROM LONDON, SHOULD ISSUE LETTERS ROGATORY
FOR ONE WITNESS, AND SHOULD DIRECT
THE GOVERNMENT TO PROVIDE SAFE PASSAGE
FOR WITNESSES ABLE TO TRAVEL TO THE UNITED STATES.**

Defendant Minh Quang Pham ("Pham") seeks to introduce testimony of five prospective witnesses who reside in the United Kingdom, specifically, the London vicinity. All but one witness have agreed to testify voluntarily but are unable to be present in the United States to give testimony at trial or to be deposed in the United States. A fifth witness has not responded to inquiries regarding whether she would agree to testify nor whether she would agree to give testimony at trial or be deposed in the United States. Pham seeks orders, pursuant to Rule 15, Fed.R.Crim.P., for taking depositions of witnesses in London or for taking live testimony of the proposed witnesses via CCTV from London. Pham requests issuance of Letters Rogatory to compel testimony of the non-responsive witness. Further, Pham seeks an order directing the government to guarantee safe passage for witnesses who are willing to testify and physically able to travel to New York.

Pham seeks the testimony of the following individuals who reside in the London vicinity of the United Kingdom: Huyen Pham (defendant's sister); Eema Nawaz (defendant's wife); Lubna Speitan (defendant's close friend); Bola Sobowale (defendant's former employer); and Rebecca Thompson, Ph.D. (clinical psychologist who evaluated Pham). The testimony of these witnesses is critical to defendant's defense at trial, the testimony cannot be obtained from any other source, and this evidence is necessary to provide defendant with a fair trial.

2

**Preliminary Statement**

During the time period relevant to this case, Pham held United Kingdom citizenship and lived and worked in London. Pham's counsel has spoken to a number of witnesses who can provide detailed information concerning Pham's mental health and activities relevant to his defense at trial. With the exception of one witness (Bola Sobawole) who has not confirmed her willingness to testify, these witnesses are willing to testify voluntarily on behalf of the defense but for various reasons are unable to travel to or enter the United States. Thus, to provide adequate assistance of counsel and to present the jury with Pham's defense, we respectfully request the Court grant permission to take depositions of these crucial witnesses in United Kingdom, at locations which are most convenient and efficient for the parties and witnesses, or permit their live testimony from London via CCTV during trial.

**Factual Support for this Request**

Indictment 12 Cr. 423 (AJN) charges five counts: conspiracy to provide material support to a foreign terrorist organization, material support to a foreign terrorist organization, conspiracy to receive military-type training from a foreign terrorist organization, receipt of military-type training from a foreign terrorist organization, and possessing, carrying and using a firearm.

In December 2010, Pham traveled to Yemen and had contact with members of Al Qaeda of the Arabian Peninsula. He returned to the United Kingdom in July 2011.  Prior to his travel, Pham resided in London, married, was employed as a graphics designer, and was preparing for the birth of his first child. (His daughter was born on January 8, 2011.) Pham lived in London since he was approximately seven years old.  As a one-month-old infant, he

along with his parents, grandparents, aunts and uncles fled Vietnam in a boat. For seven years, he resided with his parents and later-born sister in refugee camps in Hong Kong. His extended family was permitted to immigrate to Australia, leaving Pham, his father and pregnant mother behind.  When Pham's family was able to travel after the birth of Pham's sister, Australia would no longer accept refugees, so the family immigrated to the United Kingdom, where Pham spent the majority of his life.  While attending college, Pham converted to Islam and became a practicing Muslim, marrying into a Muslim family. His religious beliefs ignited his decision to travel to Yemen as well as his decision to leave and return to London.  As a result of his travel to Yemen, British authorities initiated proceedings to revoke Pham's UK citizenship.  Pham's UK counsel are appealing the order of revocation. In connection with those proceedings, Pham underwent psychological evaluation and was diagnosed with bipolar disorder, a mental disorder believed to have had direct bearing on his trip to Yemen.

**Background on Information and Testimony Sought**

A significant part of the government's proof is based cooperator testimony and statements made by Pham to UK authorities upon his return from Yemen and post-arrest statements made during and following his extradition to New York.  The proposed witnesses will provide critical testimony regarding Pham's mental state before, during and after the trip to Yemen.  Pham has filed notice, pursuant to F.R.Crim.P.12.2(b), of his intent to introduce expert evidence relating to a mental disease or defect or any other mental condition of bearing on the issue of guilt.

Huyen Pham (defendant's sister) is willing to testify but cannot travel to New York. In preparation for business travel to the United States following defendant Pham's arrest,

4

Ms. Pham discovered online that her visa was revoked.  She went to the United States Embassy but received no information.  She consulted an immigration attorney who suggested that the visa revocation was likely related to her brother's legal situation. As a result of the visa revocation, she believes she would be barred from entering the United States.

Eema Nawaz (defendant's wife) is willing to testify but believes she will be prevented from entering the United States for the same reason as Pham's sister.  Moreover, she is reluctant to be separated from her two young children.

Lubna Speitan (defendant's close friend) is willing to testify but a medical condition prevents her from traveling by air.

Bola Sobowale (defendant's former employer) has not responded to repeated inquiries concerning whether she is willing to testify and able to travel to the United States. Ms. Sobowale has not been cooperative with the defense in determining whether she would come voluntarily to the United States to testify.  She has not returned numerous telephone calls made to her nor responded to emails sent to her, though she provided statements in connection with the extradition proceedings.

Dr. Rachel Thomas, a clinical psychologist who evaluated Mr. Pham in 2012 while incarcerated in the UK, prior to and during the pendency of his extradition matter, is unable to travel due to her commitments as head of a mental health clinic.

If permitted to travel to the United States, Ms. Pham and Ms. Nawaz would require guarantees of safe passage, which the defense cannot provide.

**The Testimony of the Requested Witnesses is Relevant and Necessary for a Fair Trial.**

Testimony concerning Pham's mental condition and activities in London prior to and following his trip to Yemen and his mental condition during his time in Yemen are crucial in establishing a mental health defense that bears on the issue of guilt. Each of these witnesses in their own way can speak directly to these issues. As such, each is essential for establishing Pham's defense at trial.

**The Request for Letters Rogatory and Permission to Take Rule 15 Depositions Should Be Granted.**

This Court has discretion to issue Letters Rogatory to the courts of the United Kingdom for the testimony requested. Federal courts have both statutory and inherent authority to issue Letters Rogatory, regardless of whether the case is civil or criminal. *See* 28 U.S.C. § 1781; *United States v. Staples*, 256 F.2d 290, 292 (9th Cir.1958); *United States v. Steele*, 685 F.2d 793, 802 (3d Cir.1982). It is also settled that the decision to issue Letters Rogatory lies within a court's sound discretion. *See United States v. Mason,* 919 F.2d 139 (4th Cir.1990) (unpublished *per curiam* decision) (*citing Leasco Data Processing Equip. Corp. v. Maxwell*, 63 F.R.D. 94 (S.D.N.Y.1973)). *Accord United States v. Liner*, 435 F.3d 920, 924 (8th Cir.2006) (denial of Letters Rogatory reviewed for abuse of discretion). In general, "[w]here the relevancy or materiality of the testimony sought is doubtful, the court should not grant the application" for Letters Rogatory. 26B C.J.S. Depositions § 34 (internal citations omitted). Instead, Letters Rogatory should be issued only where "necessary and convenient." *United State v. Rosen,* 240 F.R.D. 204, 215 (E.D.VA 2007) (final citation omitted); *see also* 28 USC § 1781.

Similarly, Rule 15 depositions should only be taken in "exceptional circumstances

and in the interests of justice." Fed.R.Crim.P. 15(a)(1). "It is well-settled that the 'exceptional circumstances' required to justify the deposition of a prospective witness are present if that witness' testimony is material to the case and if the witness is unavailable to appear at trial. *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir.1972)." *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir. 1984). "Unavailability is to be determined according to the practical standard of whether under the circumstances the [party] has made a good-faith effort to produce the person to testify at trial. *See Ohio v. Roberts*, 448 U.S. 56, 74 (1979)." *Id.*

As outlined above and as delineated below, this application meets these criteria.

**The Specific Factors listed in Rule 15(c)(3)**

Rule 15(c)(3) provides the criteria for depositions outside of the United States without the defendant's presence. This Rule provides:

(3) Taking Depositions Outside the United States Without the Defendant's Presence. The deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all the following:

(A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;

(B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;

(C) the witness's presence for a deposition in the United States cannot be obtained;

(D) the defendant cannot be present because:

7

    (i) the country where the witness is located will not permit the defendant to attend the deposition;

    (ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or

    (iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and

  (E) the defendant can meaningfully participate in the deposition through reasonable means.

Our request for each of the depositions meets these criteria.

*Criteria (3)(A):* First, this is a felony prosecution. Each percipient witness would provide testimony regarding Pham's mental health, mental state and cognitive limitations. Each of these witnesses will say that the Pham was a passive individual and never expressed any interest in committing violence or terrorism. Ms. Pham, Ms. Nawaz and Ms. Speitan would testify about Pham's interest in creating a peaceful Muslim Village where he and his family would reside. Bola Sobowale would provide proof of Pham's employment activities and abrupt application for leave to travel, factors material to Pham's defense.

  Furthermore, each witness, including Dr. Thomas, can speak to the issue of Pham's mental condition. Ms. Pham can provide testimony concerning mental disorders of family members and physical and emotional abuse sustained by Pham. Ms. Pham, Ms. Nawaz, Ms. Speitan and Ms. Sobawole can provide testimony regarding their observations of Pham's cognitive limitations. Dr. Thomas can provide testimony regarding her examinations of Pham and her diagnoses concerning his mental conditions. The testimony of all five witnesses will buttress the testimony of a forensic psychologist.

Each of these witnesses in their own way can provide testimony in support of Pham's mental condition and defense. The depositions of each witness would provide proof of material facts crucial to a mental defect defense.

*Criteria (3)(B) and (C):* For reasons stated above, there is a substantial likelihood that we cannot obtain the attendance of the five witnesses for either trial for a deposition in the United States. All of the witnesses are in the United Kingdom, unavailable for service of process without Letters Rogatory. With the exception of Ms. Sobawole, each witness had indicated willingness to testify voluntarily but has expressed reasons for their inability to travel to or enter the United States.

One witness – Bola Sobawole – has been uncooperative with the defense. She has not responded to our inquiries whether she would be willing to testify voluntarily and whether she is willing to travel to the United States. It is reasonable to assume from her lack of response that she would neither testify voluntarily on Pham's behalf either in the United Kingdom or in the United States.

Since we have no power to compel attendance of these witnesses in America, it appears that they are unavailable to us for purposes of testimony at trial or for a deposition in the States.

*Criteria (3)(D):* Pham is in custody. We presume that "secure transportation and continuing custody cannot be assured at the witness's location" – in other words, such transportation and custody cannot be worked out with the United Kingdom. If Pham cannot be physically present for the deposition, he is willing to be present through a video connection so he can contemporaneously view the proceedings and through a telephonic link-up so he can

9

contemporaneously assist counsel. These communication links can be arranged reasonably through the agreement of the parties and in consultation with the presiding court in the United Kingdom.[1]

*Criteria (3)(E):* Through contemporaneous video and telephonic communication as described above, the defendant can meaningfully participate in the depositions through reasonable means. *United States v. Salim*, 855 F.2d 944, 949-55 (2d Cir. 1988). Because the depositions will be taken in the United Kingdom, the complicating issues faced in *Salim* (French legal system requirement that the magistrate conduct the questioning) will not be present in Pham's case.

Thus, we have established the criteria required by Rule 15 to allow these foreign depositions. As such, we request that the Court issue the requested Letters Rogatory for Bola Sobawole and authorize the requested depositions under Rule 15. Alternatively, we request authorization to have these proposed witnesses testify live from London via CCTV. Further, we request that the Court direct the government to provide safe passage in the event any witness becomes able to travel to the United States.  A proposed Letters Rogatory is attached.

---

[1] Pham was held in the United Kingdom and was transported to court appearances there. Thus, the United Kingdom has the ability to handle a prisoner such as Pham. We certainly have no objection to having Pham transported to the UK and held in custody there so that he can be present for the depositions. We presume, however, that the logistics and legalities of that would be difficult, if not insurmountable.

**CONCLUSION**

For the above-stated reasons, it is respectfully requested that the Court grant the relief requested.

Dated: New York, NY
October 26, 2015

> Respectfully submitted,
> *Bobbi C. Sternheim*
> Bobbi C. Sternheim, Esq.