UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                        :

       - v. -                                        :        12 Cr. 423 (AJN)

MINH QUANG PHAM,                                :
    a/k/a "Amin,"
                                                :

             Defendant.
                                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION FOR RULE 15 DEPOSITIONS


PREET BHARARA
United States Attorney
Southern District of New York
for the United States of America


Sean S. Buckley
Anna M. Skotko
Shane T. Stansbury

     Assistant United States Attorneys
     − Of Counsel −

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

DISCUSSION ..................................................................................................................... 2

   I.    Applicable Legal Standards Under Rule 15 ....................................................... 2

   II.   Pham's Motion Should Be Denied in Its Entirety ............................................ 5

      A.  Lubna Speitan ......................................................................................... 6

      B.  Bola Sobowale ........................................................................................ 13

      C.  Rebecca Thomas ..................................................................................... 14

      D.  Huyen Pham ............................................................................................ 21

      E.  Eema Nawaz ............................................................................................ 22

   III.   Countervailing Factors Weigh Against Granting The Motion ........................ 23

CONCLUSION ................................................................................................................... 25

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the motion of defendant Minh Quang Pham to take pretrial depositions of five witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure.[1]   For the reasons set forth below, Pham's motion should be denied in its entirety.

Relying entirely on a three-paragraph declaration of counsel rather than affidavits from the proposed witnesses, defendant Pham has moved to depose five witnesses in the United Kingdom. With respect to each of these proposed witnesses, Pham has failed to show that a deposition is justified by "exceptional circumstances" and "the interest of justice."   Fed. R. Crim. P. 15(a).   In each instance, the minimal, unsubstantiated proffers of Pham's attorney – most of which are identical from witness to witness – fall well short of establishing that the evidence sought is material, or even admissible, and necessary to prevent a failure of justice.   Therefore, for the reasons set forth below, Pham has failed to carry his heavy burden with respect to each witness by showing that (1) the witness is unavailable for trial, (2) the witness's testimony is material, and (3) the testimony is necessary to prevent a failure of justice.[2]

---

[1]   "Pham Br." refers to the motion and memorandum of law filed on October 26, 2015, in support of the Rule 15 motion of Minh Quang Pham; "Sternheim Declaration" or "Sternheim Decl." refers to the declaration of Pham's counsel, Bobbi C. Sternheim, Esq., filed in support of Pham's Rule 15 motion.

[2]   Pham also moves, in the alternative, for "an order for taking live testimony of the proposed witnesse[s] via CCTV from London for those witnesses who are willing to testify but not able to travel to New York."   Defense Notice of Motion; Pham Br. at 2.   Although Pham offers no legal or factual basis for this form of relief, the Court should deny this aspect of the defendant's motion for the same reasons that it should deny Pham's motion to take Rule 15 depositions. This is so because the exacting standard for use of live CCTV testimony at trial is the same as that applied to a Rule 15 deposition.   *See United States* v. *Gigante*, 166 F.3d 75, 81 (2d Cir. 1999).   Accordingly, for the reasons that follow, Pham has failed to carry the heavy burden to justify such an extraordinary measure.

## DISCUSSION

### I.      Applicable Legal Standards Under Rule 15

Federal Rule of Criminal Procedure 15 allows for pretrial depositions in criminal cases only in "exceptional circumstances and in the interest of justice."   Fed. R. Crim. P. 15(a)(1); *see United States* v. *Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are disfavored in criminal cases").   The burden is on the party seeking a Rule 15 deposition to establish that such exceptional circumstances exist and that injustice will result if the motion is denied.   *See United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States* v. *Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).   Specifically, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice."   *United States* v. *Cohen,* 260 F.3d 68, 78 (2d Cir. 2001); *see also United States* v. *Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984); *United States* v. *Rosenstein*, 474 F.2d 705, 715 (2d Cir. 1973).

The mere fact that a purported witness resides in a foreign country does not demonstrate his or her "unavailability" for Rule 15 purposes.   *See United States* v. *Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987) (holding that unavailability requirement not satisfied for witnesses residing in Morocco).   The moving party rather must make some showing that the foreign-based witness is truly unable or unwilling to come to the United States to testify and that the moving party has made a "good faith effort to produce the person to testify at trial."   *Johnpoll*, 739 F.2d at 709; *United States* v. *Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (denying a Rule 15 motion because, *inter alia*, "[t]he Court thus is unable to determine whether [the movant] has made the requisite 'good-faith effort to produce the person to testify at trial'" (quoting *Johnpoll*, 739 F.2d at 709));

2

*see also United States* v. *Oudovenko*, No. 00 Cr. 1014 (JG), 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001) ("[Defense] counsel's affirmation [that the witnesses would not voluntarily travel to the United States to testify at the trial] fails to establish that he or [the defendant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses.").

"Conclusory statements of unavailability by counsel are insufficient" to meet a movant's burden.   *United States* v. *Chusid*, No. 00 Cr. 263 (LAK), 2000 WL 1449873, at *1 (S.D.N.Y. Sep. 27, 2000); *see also Whiting*, 308 F.2d at 541 ("Neither the motion nor the supplementary affidavit . . . did more than allege, in conclusory terms, the availability of the five proposed witnesses."); *United States* v. *Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991) ("[A] defendant's mere allegation that there is reason to believe that a foreign witness would not attend trial in the United States is an insufficient basis upon which to require the taking of the witness' deposition.").   The Second Circuit has stated that the movant can demonstrate "'good faith' efforts to obtain the witnesses' presence at trial by indicating that it had repeated contact with the witnesses and had promised 'to pay all expenses of the witnesses' in traveling to the United States."   *United States* v. *Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) (quoting *United States* v. *Sindona*, 636 F.2d 792, 804 (2d Cir.1980)); *see Merritt*, 1991 WL 79235, at *4 (observing that, as a threshold matter, a movant must at minimum "demonstrate[] that they . . . contacted the potential deponents").

When a defendant makes a motion for a Rule 15 deposition, he or she must show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant."   *Kelley*, 36 F.3d at 1125 (internal quotation marks and citation omitted) (affirming denial of depositions where

3

anticipated testimony, although relevant, was not exculpatory); *see also Merritt*, N, 1991 WL

79235, at *5 (denying Rule 15 deposition request where "the defendants have made no showing

that the deponents' testimony would be exculpatory"); *United States* v. *Esquivel*, 755 F. Supp. 434,

439 (D.D.C. 1990) ("[A] defendant typically demonstrates the 'exceptional circumstances'

necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will

exculpate him" (citations omitted)).   The moving party must do more than show that the

testimony sought is relevant to the case.   *Ismaili*, 828 F.2d at 161 & n.6 (3d Cir. 1987) (holding

that a district court cannot abuse its discretion in denying a Rule 15 deposition where the testimony

"could not negate the crux of the government's indictment").   Rather, the movant must show that

the proffered testimony is "highly relevant to a central issue in the case."   *Vilar*, 568 F. Supp. 2d at

440 (internal quotation marks omitted).

A Rule 15 motion should also be denied if it seeks to take testimony that is cumulative,

*Stein*, 482 F. Supp. 2d at 365   (citing *United States* v. *Grossman*, No. S2 03 Cr. 1156 (SHS), 2005

WL 486735, at *3 (S.D.N.Y. March 2, 2005)), or that is inadmissible, *Grossman*, 2005 WL

486735, at *3.

Moreover, it is not enough for counsel simply to propound a generalized expectation of

what a proffered witness might testify to; rather, there must be a concrete basis for the testimonial

proffer.   As Judge Kaplan observed in denying a defendant's Rule 15 motion:

> [D]efense counsel has given the Court only their expectations as to
> what these witnesses would say if examined. They have not
> submitted affidavits from the witnesses. Indeed, they have not even
> suggested that they sought but were unable to obtain affidavits.
> Moreover, if the witnesses were unwilling to give affidavits, there is
> no reason to suppose that they would voluntarily appear . . . to
> submit to depositions.

4

*Chusid*, 2000 WL 1449873, at *2.   While there is no legal requirement that the proffered

testimony be presented in the form of an affidavit, *see Vilar*, 568 F. Supp. 2d at 440   (noting that

there is no authority that bars the court from relying solely on a party's representations to find that

the materiality prong is satisfied), the movant nevertheless must proffer sufficient facts "to alert

the district court to the substance of the evidence that is at peril of being excluded," *United States*

v. *Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995).

In addition to requiring a showing of unavailability and materiality, a district court must

also consider whether significant "countervailing factors" exist which would render the taking of

depositions unjust.   *Drogoul*, 1 F.3d at 1552.   "'An obviously important factor is whether a

deposition will expedite, rather than delay, the administration of criminal justice.'"   *Id*. at 1556

(quoting Fed. R. Crim. P. 15, Advisory Committee's Note, 1974 amendment).

## II.    Pham's Motion Should Be Denied in Its Entirety

Pham has moved to depose five witnesses: (i) a "close friend" of the defendant, Lubna

Speitan; (ii) the defendant's former employer, Bola Sobowale; (iii) a clinical psychologist,

Rebecca Thomas, Ph.D.[3]; (iv) the defendant's sister, Huyen Pham; and (v) the defendant's

paramour, Eema Nawaz.   *See* Pham Br. at 2.   Each of the witnesses whom Pham moves to

depose resides in the United Kingdom.   *Id*.   With respect to the first three witnesses – Speitan,

Sobowale, and Huyen Pham – Pham has failed to make the threshold showing that the witnesses

---

[3]   Pham's motion alternatively refers to Dr. Thomas as "Rebecca Thompson, Ph.D." and "Dr.
Thomas."   *Compare* Pham Br. at 5 *with* Pham Br. at 8.   Based on Pham's very limited
description of Dr. Thompson and a review of certain of the U.K. extradition materials, *see*, *e.g.*,
Exhibit A & B, it appears that Pham's motion is in fact seeking to depose Rebecca Thomas,
Ph.D.   Accordingly, the Government refers to the proposed deponent as "Dr. Thomas" rather
than "Dr. Thomas" throughout this memorandum.

are "unavailable" to testify at the February 2016 trial in this matter. *See*, *e.g.*, *Ismaili*, 828 F.2d at 160. Moreover, with respect to all five witnesses, the facts proffered by Pham as to the reasons why pretrial depositions of these witnesses are appropriate fail to carry the burden of establishing that their testimony is material and necessary to prevent a failure of justice. Accordingly, for the reasons set forth below, the Court should deny Pham's motion in its entirety.

### A. Lubna Speitan

Pham describes Ms. Speitan as the "defendant's close friend." Pham Br. at 5. Without providing any details regarding the length of time Ms. Speitan has known him, the nature of their relationship, the frequency of their interactions, or any other details regarding their purported friendship (let alone details that bear on the facts central to this case), Pham conclusorily contends that Ms. Speitan will testify that "Pham was a passive individual and never expressed any interest in committing violence or terrorism," and that she will testify "regarding [her] observations of Pham's cognitive limitations." Pham Br. at 8. Further, Pham argues that Ms. Speitan will testify "about Pham's interest in creating a peaceful Muslim Village where he and his family would reside." *Id.* According to Pham, Ms. Speitan "is willing to testify," but an unspecified medical condition "prevents her from traveling by air." Pham Br. at 5.

First, Pham has not established that Ms. Speitan would be unavailable for trial. While Pham states that Ms. Speitan's unspecified medical condition prevents her from traveling by air, Pham does not explain what that condition is and why it prevents Ms. Speitan from traveling. Pham also fails to set forth any "good faith" efforts he or his counsel have made in order to ameliorate said condition to permit Ms. Speitan to travel. *See*, *e.g.*, *United States* v. *Oudovenko*, No. 00 Cr. 1014, 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001) (holding that repeated

allegations that each witness "stated that he or she would not travel voluntarily to the United States to testify" were not sufficient because "counsel's affirmation fails to establish that he or [the defendant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses") (internal quotation marks omitted).   Pham's motion thus establishes neither that the foreign-based witness is truly unable or unwilling to come to the United States nor that the moving party has made a good faith effort to produce the person to testify at trial.   As such, the Court should deny Pham's motion for that reason alone.   *See Johnpoll*, 739 F.2d at 709.

Second, Pham has not established that Ms. Speitan's testimony would be material, let alone necessary to prevent a failure of justice.   It appears from Pham's very limited attorney proffer that his friend's testimony would constitute principally testimony regarding Pham's purported character for passivity and her observations of his "cognitive limitations."   Pham Br. at 8. Pham's proffer in this regard, however, is entirely insufficient.   For example, Pham does not explain the time period during which Ms. Speitan came to these conclusions (*e.g.*, whether it was before or after Pham had traveled to Yemen to join al Qa'ida in the Arabian Peninsula ("AQAP")), let alone what observations Ms. Speitan made in order to arrive at those conclusions.   As such, neither the Government nor the Court can determine whether Ms. Speitan's proposed testimony is cumulative, constitutes hearsay, or is even relevant to the charged conduct.   *See United States* v. *Dunseath*, No. 98 Cr. 493 (JGK) 1999 WL 165703, at *1 (S.D.N.Y. Mar. 25, 1999); *United States* v. *Campbell*, No. 91 Cr. 1219 (RJD), 1998 WL 564376, at *1 (S.D.N.Y. June 30, 1998).

Pham's motion is silent as to how the proposed testimony would be material to, or would help to establish, Pham's defense or would tend to exonerate him.   *See Whitting*, 308 F.2d at 541

(denial of Rule 15 motion appropriate where movant "was unable to demonstrate that the proposed testimony would be material to or would help to establish [the defendant's] defense or that the proposed testimony 'would tend to exonerate' him" (quoting *United States* v. *Broker*, 246 F.2d 328, 329 (2d Cir. 1957)).   Simply put, the fact that a person appears to others to be passive, or appears to have "cognitive limitations," does not constitute evidence that he is not a person who could or would join and/or provide material support to a terrorist organization, or engage in acts of violence.[4]

In this vein too, the inadequacy of Pham's proffer as to Ms. Speitan's anticipated testimony is fatal to his motion.   Here, as in *United States* v. *Chusid*, where the district court denied the defendant's motion for Rule 15 depositions, "defense counsel has given the Court only [her] expectations as to what these witnesses would say if examined," and has not provided "affidavits from the witnesses," let alone "even suggested that [she sought] but w[as] unable to obtain affidavits."   2000 WL 1449873, at *1.   Indeed, the only support for conclusory representations about each witnesses anticipated testimony is a three-paragraph declaration from defense counsel, in which counsel averred that the "factual allegations in support of the motion are based on personal knowledge and upon information and belief."   Sternheim Decl. ¶ 3.   As such, it is impossible for the Court to determine which statements in the memorandum are based upon

---

[4]   Indeed, to the extent Pham seeks to introduce lay opinion testimony regarding Pham's purported "cognitive limitations," the Government likely will move *in limine* to preclude such evidence as not relevant under Rules 401 and 402 of the Federal Rules of Evidence, as unfairly prejudicial under Rule 403, and as inappropriate under Rule 701.   *See, e.g.*, *United States* v. *Rea*, 958 F.2d 1206, 1214-15 (2d Cir. 1992)   (noting that while "there is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental state of others," lay opinion regarding a defendant's state of mind is "not helpful" to the jury, as that term is used in Fed. R. Evid. 701).

communications with the proposed witnesses as opposed to being based upon defense counsel's "information and belief."

This is particularly problematic here, and alone warrants denial of the defendant's motion. Without the ability to determine when and how Ms. Speitan purportedly made these observations, this Court cannot determine whether they have any relevance at all to the charged conduct (*i.e.*, whether these observations were made years before or years after Pham's travel to Yemen, or the level and length of familiarity Ms. Speitan had with Pham such that she would be in a position reliably to make such observations). Indeed, to the extent that Ms. Speitan's proposed testimony constitutes her opinions that Pham was "passive," that he was not interested "in committing violence or terrorism," or that he had "cognitive limitations" – as opposed to her personal observations of Pham's actions and her interactions with Pham during the relevant time period – such testimony would be improper lay opinion testimony outside the bounds of Rule 701, as it would usurp the jury's role by dictating the inferences the jurors should draw from the objective facts of the case. *See United States* v. *Grinage*, 390 F.3d 746, 750-51 (2d Cir. 2004).

Further, to the extent such testimony constitutes evidence of Pham's good moral character pursuant to Rule 404(a)(1), the exclusion of such minimally probative evidence hardly can be said to be "highly relevant to a central issue in the case," *Grossman*, 2015 WL 486735, at *3-*4, or capable of negating "the crux of the government's indictment," *Ismaili*, 828 F.2d at 161. Indeed, while the Second Circuit has recognized that Rule 404(a)(1) allows a criminal defendant to introduce evidence of good character, it also has noted that such evidence "possesses limited probative value in determining whether the defendant committed the specific crime charged." *United States* v. *Pujana-Mena*, 949 F.2d 24, 29 (2d Cir. 1991); *see also id*. at 30 (noting that Rule

9

404(a)(1)'s "dispensation" to permit a criminal defendant to offer evidence of good moral character "is not based on a strong belief that the evidence is probative," but rather "based on notions of fairness rather than logic," and therefore a defendant "who may have little more than his good name to defend himself[] should not be precluded from presenting even such minimally probative evidence"); Fed R. Evid. 404, 1972 Advisory Committee Notes (noting that Rule 404(a)(1)'s "basis lies more in history and experience than in logic").

Equally unavailing is Ms. Speitan's proposed testimony regarding Pham's purported "interest in creating a peaceful Muslim Village where he and his family would reside."   Pham Br. at 8.   Such proposed testimony suffers from all of the defects described above, in that there is no explanation as to how Ms. Speitan learned of this purported intention, *i.e.*, whether she learned it from Pham himself or from someone else.   If the latter, such testimony likely would constitute inadmissible hearsay.   *See* Fed. R. Evid. 805 (setting forth the requirement that each part of combined statements constituting hearsay within hearsay must conform "with an exception to the rule.").

If the former, Pham's limited attorney proffer again is woefully insufficient to permit the Court to determine the admissibility of such testimony.   Depending on when and in what circumstances those statements were made, Ms. Speitan's testimony concerning Pham's statements regarding his purported desire to build a peaceful Muslim are irrelevant, *see infra*, or may well be inadmissible hearsay.   *See*, *e.g.*, *United States* v. *Cardascia*, 951 F.2d 474, 486-88 (2d Cir. 1991) (affirming exclusion of letter of resignation, offered under the state-of-mind exception to the hearsay rule, in which a defendant stated that he disagreed with the policies and decisions made when his bank extended certain loans and holding that "a determination of whether

a statement falls within the state of mind exception requires a predicate finding as to whether the statement relates to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 375315, at *9 n.9 (S.D.N.Y. Feb. 17, 2005) (observing that "the state of mind exception of Rule 803(3) also requires that the statement be contemporaneous to the event sought to be proved"); *Lamberti* v. *United* States, 22 F. Supp. 2d 60, 72 (S.D.N.Y. 1998) (finding that statements that witness made after defendant's trial to reporter as to defendant's beliefs, at time of trial, about defendant's involvement in drugs were not admissible under hearsay exception for statements of declarant's then-existing mental state, given that, to the extent relevant, statements went to witness' prior, not his then-existing, state of mind); *see also* Fed. R. Evid 803(3), 1972 Advisory Committee Notes ("The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result . . . ."); *United States* v. *Solano*, No. 05 Cr. 563 (LTS), 2010 WL 2718973, at *1 (S.D.N.Y. July 10, 2010) ("the statement is only relevant to the extent it captures [the defendant's] memory in March 2005 of what he believed at the relevant times in 2003 and 2004. Such backward-looking statements of memory by out-of-court declarants are inadmissible."); *United States* v. *Cosentino*, 581 F. Supp. 600, 602 (S.D.N.Y. 1984) ("A statement about a past state of mind does not fall within the state of mind exception to the hearsay rule because in the words of Justice Cardozo, 'the testimony now questioned face[s] backward and not forward.'") (quoting *Shepard* v. *United States*, 290 U.S. 96, 106 (1933)).

As with the other proposed topics of Ms. Speitan's testimony, Pham also has failed to explain how testimony about Pham's purported intention to build a peaceful Muslim village would

be either material or admissible.   The Indictment against Pham alleges that Pham provided, and conspired to provide, material support to AQAP, a foreign terrorist organization; that Pham received and conspired to receive military-type training from AQAP; and that Pham possessed and carried a firearm in the course of committing those crimes.   Testimony from Ms. Speitan that she was aware of legitimate, non-criminal activities of Pham and unaware of any criminal activities in which Pham participated is not relevant – let alone exculpatory.   This is so because, even if the jury accepted such testimony, it has no bearing on the issue of whether Pham engaged in the conduct alleged in the Indictment.   For example, even if the establishment of a Muslim village in Yemen was Pham's original motive for leaving London – and the Government does not concede this point – such motive in no way explains, justifies, or otherwise exculpates Pham for what he actually did after he arrived in Yemen.   Similarly such testimony would be irrelevant even if it pertained to a desire that he evinced following his return from Yemen.   In short, such testimony has no bearing on the crimes charged in the Indictment and therefore is not relevant under Federal Rules of Evidence 401 and 402, and likely would be excludable under Rule 403 as well.

   Pham's motion is further weakened by the lack of specificity in the defendant's Rule 15 notice regarding the anticipated testimony from Ms. Speitan on this point.   Neither the Court nor the Government has any way of knowing at what point in time Pham purportedly desired to live with his family in a peaceful Muslim village let alone any basis to understand how it is that Ms. Speitan claims to have obtained this understanding.   *See*, *e.g.*, *United States* v. *al Fawwaz*, No. 98 Cr. 1023 (LAK), Docket Entry No. 1490, Slip Op. at 10 (S.D.N.Y. Feb. 18, 2014) ("Testimony that [the proposed witness] was aware of legitimate, non-criminal activities of the [defendant's organization] and unaware of any criminal activities in which the [defendant's organization] or

12

[the defendant] participated is not exculpatory absent some reason to believe that [the proposed witness] would or should have known both the organization's facial or public nature and, to the extent it had one, its secret nature.").

As such, Pham's motion with respect to his Ms. Speitan has fallen well short of establishing any of the three factors enumerated by the Second Circuit, *see Cohen,* 260 F.3d at 78, and should be denied.

### B. Bola Sobowale

Pham also seeks to depose his former employer, Bola Sobowale.   According to Pham, Ms. Sobowale's testimony is necessary to "provide proof of Pham's employment activities and abrupt application for leave to travel," which, without any explanation, Pham contends are "material to Pham's defense."   Pham Br. at 8.   While noting that Ms. Sobowale "provided statements in connection with the extradition proceedings," Pham provides no specific information about what Ms. Sobowale would testify or how such testimony would be material to Pham's defense, let alone exculpatory.   *Id.*. at 5.   Indeed, given that Pham acknowledges that Ms. Sobowale would testify about Pham's "abrupt application for leave to travel," *id.* at 8, such testimony is consistent with the Government's theory of the case and very likely would further inculpate Pham.   Without more, it is difficult to understand how such testimony would be exculpatory.   *See Kelley*, 36 F.3d at 1125 (holding that denial of depositions of potential government witnesses not an abuse of discretion where anticipated testimony, although relevant, was not exculpatory.").   As such, Pham's motion has failed to "make a convincing showing that the anticipated testimony of [Sobowale] would be material to any defense available to [Pham]." *Whitting*, 308 F.2d at 541.

Moreover, Pham's motion with respect to Ms. Sobowale is deficient for an additional

reason.   Pham has not established that Ms. Sobowale is unavailable to testify at trial.   Rather,

Pham contends only that Ms. Sobowale "has not responded to our inquiries whether she would be

willing to testify voluntarily and whether she is willing to travel to the United States."   Pham Br.

at 9.   This statement establishes only that Pham's counsel has failed to meet with Ms. Sobowale,

not that she is unavailable at trial.   *See United States* v. *Varbaro*, 597 F. Supp. 1173, 1181

(S.D.N.Y. 1984) (requiring showing of a specific reason why a witness might not be available).

Courts have found such conclusory statements of unavailability by counsel to be insufficient to

support a Rule 15 deposition motion.   *See*, *e.g.*, *Whiting*, 308 F.2d at 541; *Rosenstein,* 474 F.2d at

715; *Chusid*, 2000 WL 1449873, at *2.

Accordingly, Pham's motion satisfies none of the three prongs (*i.e.*, unavailability,

materiality, and necessity to prevent a failure of justice) required to establish the need for a Rule 15

deposition of Ms. Sobowale.   His motion therefore should be denied with respect to Ms.

Sobowale as well.

### C.    Rebecca Thomas

Pham similarly has moved to depose Rebecca Thomas, Ph.D., in the United Kingdom.   In

his motion, Pham describes Dr. Thomas as "a clinical psychologist who evaluated Mr. Pham in

2012 while incarcerated in the UK," Pham Br. at 5, who Pham asserts "can provide testimony

regarding her examinations of Pham and her diagnoses concerning his mental conditions," *id.* at 8.

Although Pham points to the fact that he provided Rule 12.2(b) notice "of his intent to introduce

expert evidence relating to a mental condition [] bearing on the issue of guilt" – albeit

simultaneous with the filing of the instant Rule 15 motion – neither the Rule 12.2(b) notice nor

Pham's Rule 15 motion give any indication as to the types of examinations that Dr. Thomas has

14

performed or will perform, let alone how those examinations may bear upon the issue of the

defendant's guilt.[5]

Pham's motion to depose Dr. Thomas makes none of the showings required under Rule 15.

First, Pham has not shown that Dr. Thomas is unavailable for trial.   The possibility that Dr.

Thomas's work schedule may conflict with the trial does not render her unavailable.   *See*, *e.g.*,

*United States* v. *Al Kassar*, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) (a witness's "vague

speculation that some theoretical future work commitments might make him unavailable is

entirely insufficient to support a finding of unavailability"), especially where the Government's

case-in-chief is estimated to last approximately two weeks, *id.* at 376-77 ("[e]ven if [the witness]

were unavailable on any given date, moreover, it is exceedingly unlikely, on its face, that he would

be unavailable throughout the approximately three weeks estimated for this trial . . . .").   *See also*

*Fawwaz*, Slip Op. at 5 ("Such speculative concerns that logistics, work, or travel schedules might

prevent a witness's attendance at trial is not sufficient to satisfy the unavailability requirement.");

*United States* v. *Paredes-Cordova*, No. 03 Cr. 987 (DAB), 2009 WL 1585776, at *4 (S.D.N.Y.

June 8, 2009) (holding that proposed Rule 15 deponents were not unavailable where there was no

evidence that they had attempted to and failed to obtain travel visas).

Moreover, this contention is further undercut by the fact that the trial in this matter is still

three months away, which should provide ample time for Dr. Thomas to arrange for coverage at

her mental health clinic for the period of days that it would require for her to testify in this matter.

Given that Dr. Thomas examined Pham in connection with the extradition proceedings,

---

[5]   For this reason, among others, by separate motion the Government will move to strike Pham's
Rule 12.2(b) notice as insufficient as a matter of law.

which were pending from 2012 until February 2015, Pham's purported mental defect or disease is something of which the defense has been aware since prior to the commencement of the proceedings here in the United States.   Pham offers no explanation as to why arrangements were not made to have Pham re-examined by a U.S.-based specialist who does not face the same limitations as Dr. Thomas claims to here.   As such, with respect to Dr. Thomas, Pham's motion is untimely and he cannot demonstrate exceptional circumstances that warrant the extraordinary remedy of a Rule 15 deposition.   *See Whitting*, 308 F.2d at 541 ("It is within the discretion of the trial court to deny [a Rule 15 motion] if it is made after 'unexcused delay.'").[6]

Second, Pham's motion fails to explain how Dr. Thomas's anticipated testimony would be material to the defense or exculpatory.   Indeed, Pham's motion is silent as to about what he expects Dr. Thomas to testify, other than noting that she "can provide testimony regarding her examinations of Pham and her diagnoses concerning his mental conditions."   Pham Br. at 8. Pham does not explain what those diagnoses are, how they could impact on the question of Pham's guilt or innocence, or how they would be admissible at trial.   *See*, *e.g.*, Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.   Those matters are for the trier of fact alone.").

As with the other witnesses, this lack of specificity is fatal to Pham's motion with respect to Dr. Thomas's testimony, as Pham provides no insight as to how such testimony is relevant, let

---

[6]   Putting aside the issue of timeliness, the intervening three months should be sufficient for Dr. Thomas to consult with a U.S.-based clinical psychologist, who then could provide her expert opinion through live testimony.   Pham's motion makes no attempt to explain why Dr. Thomas's testimony would be unique such that this is not an option.

alone exculpatory.   *See Esquivel*, 755 F. Supp. at 439 ("a defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him" (citations omitted))*; Merritt*, 1991 WL 79235, at *5 (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory").   The only indication as to the nature of Dr. Thomas's proposed testimony appears to be Pham's statement that, in connection with the extradition proceedings (*i.e.*, well after the period charged in the Indictment), "Pham underwent psychological evaluation and was diagnosed with bipolar disorder, a mental disorder believed to have had direct bearing on his trip to Yemen."   Pham Br. at 4.   Notably, that opinion is not attributed to Dr. Thomas.

Assuming, for the sake of argument, that Pham had indicated (and he has not) that he intended to rely on Dr. Thomas's testimony to establish that he did suffer from bipolar disorder, and that Dr. Thomas would further testify that such disorder impacted his decision to travel to Yemen, that still would not be sufficient to constitute the exceptional circumstances required for a Rule 15 deposition.   This is so because it is unclear (at best) whether such testimony would be admissible at trial.   *See Drogoul*, 1 F.3d at 1555 ("[t]he court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."); *see also United States* v. *Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010).

As an initial matter, Pham's motion fails to mention that the U.K. courts presiding over the extradition proceedings expressly rejected Dr. Thomas's report and conclusions diagnosing Pham with bipolar disorder.   *See* Exhibit A at ¶¶ 65-77 (lower court judgment rejecting Dr. Thomas's opinions as "unconvincing," noting that the U.K. court has never "been less impressed and

17

unconvinced by any report of this kind," and noting that Dr. Thomas likely failed to reference

pertinent information in one of her reports "because it was appreciated it seriously undermined her

earlier report and was thought to be damaging to Mr. Pham's case."); Exhibit B at ¶¶ 68-74

(appellate court judgment affirming the lower court's findings with respect to Dr. Thomas and

holding that "the appellant is not suffering from a mental condition of such severity that it would

have made it oppressive to extradite him . . . [and that] he is not suffering from any mental health

problems such as to have any significant impact on any of the issues arising under Article 3").

Instead, the U.K. courts credited the expert opinion of a medical doctor, Dr. Brow, who rejected

"Dr. Thomas's conclusions and found insufficient evidence to diagnose a severe manic illness."

*See*, *e.g.*, Exhibit A ¶ 69.   As such, given the conclusions reached by the presiding judges in the

U.K. proceedings and the paucity of information provided by the defense in its instant motion,

there is nothing before this Court to suggest that Dr. Thomas's proposed testimony would be

admissible at trial pursuant to Federal Rules of Evidence 702, 401 and 403, let alone withstand a

challenge pursuant to *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89 (1993) and its

progeny.

      Moreover, even assuming that Dr. Thomas's unspecified testimony could survive a

*Daubert* challenge – and the Government expects that it would not – the conclusions Dr. Thomas

reached in the U.K. extradition proceedings would not be admissible in a U.S. court.[7]

Specifically, in the U.K. extradition proceedings, based upon a 1.5 hour video interview of Pham,

Dr. Thomas opined that "Mr. Pham's trip to Yemen bore all the hallmarks of a severe manic

---

[7]   Pham has provided Rule 12.2(b) notice, and not Rule 12.2(a) notice.   As a result, it does not
appear that Pham intends to pursue the affirmative defense of insanity here.

episode most likely triggered by his immediate prior depression and distress," and that his travel to

Yemen was "a manic enterprise, based on inadequate thinking, planning and evaluation of reality."

Exhibit A at ¶ 66.   Such testimony would violate the Insanity Defense Reform Act of 1984 (the

"IDRA").   *See* 18 U.S.C. § 17 ("It is an affirmative defense to a prosecution under any Federal

statute that, at the time of the commission of the acts constituting the offense, the defendant, as a

result of a severe mental disease or defect, was unable to appreciate the nature and quality or the

wrongfulness of his acts.   *Mental disease or defect does not otherwise constitute a defense*."

(emphasis added)).   And for that reason, testimony of this nature specifically is foreclosed by

precedent in this Circuit.   As Judge Cote held, in a decision affirmed by the Second Circuit:

> Testimony about mental disease should not be allowed where it is
> offered to support the conclusion, or will mislead the jury into
> concluding, that the defendant was temporarily insane, that the
> disease caused the defendant to commit the crime or otherwise
> impaired her ability to exert volitional control, or that the disease
> impaired the defendant's ability to reflect on the consequences of
> her conduct.   Admission of such testimony would run afoul of the
> IDRA.   Where a defendant fails to meet the IDRA's definition of
> insanity, the defendant cannot be allowed to admit evidence that she
> committed a crime because of a supposed psychiatric compulsion or
> inability or failure to engage in normal reflection.

*United States* v. *Dupre*, 339 F. Supp. 2d 534, 540-41 (S.D.N.Y. 2004) (internal quotation marks

omitted), *aff'd by United States* v. *Dupre*, 462 F.3d 131, 137-38 (2d Cir. 2006) (concluding that

Judge Cote properly excluded evidence concerning the defendant's mental state and "shar[ing] the

District Court's concern that the proffered evidence might have constituted an impermissible

opinion about the 'ultimate issue' of whether [the defendant] had the requisite mental state

constituting an element of" the crime).

> To the extent the defense contends that Dr. Thomas's testimony would be offered to negate

19

the intent element of the charged crimes, such testimony similarly would be precluded under

Federal Rule of Evidence 403.   *See*, *e.g.*, *Dupre*, 339 F. Supp. 2d at 544 (concluding that the

"expert testimony proffered in this case demonstrates a substantial capacity to mislead the jury,

while providing little additional helpful information to the jury" and that the proposed expert

testimony "is strongly suggestive of 'volitional' evidence that is foreclosed by the IDRA, as

evidence of the defendant's inability to control her behavior"); *see also United States* v. *Pohlot*,

827 F.2d 889, 905 (3d Cir. 1987) (cautioning that "the strict use of psychiatric evidence to negate

mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin

to justification.").   Indeed, federal courts throughout the country repeatedly have rejected expert

testimony on bipolar disorder to negate *mens rea*.   *See*, *e.g.*, *United States* v. *Worrell*, 313 F.3d

867, 872-75 (4th Cir. 2002) (affirming exclusion of expert testimony about a defendant's bipolar

disorder that was intended to negate *mens rea*); *United States* v. *Armstrong*, No. 07–26–1, 2010

WL 4275232, at *3-*5, *7-*8 (W.D.Pa. Oct. 25, 2010) (same); *United States* v. *Smith*, No. 09–

158–1, 2009 WL 5174231, at *2 (S.D.Ala. Dec. 21, 2009) (same); *United States* v. *Sacks*, No. 08–

269, 2009 WL 4114169 (D.N.J. Nov. 23, 2009) (same); *Dupre*, 339 F.Supp.2d at 542-45 (same);

*United States* v. *Mezvinsky*, 206 F.Supp.2d 661, 672-74 (E.D. Pa. 2002) (same); *United States* v.

*Agnello*, 158 F. Supp. 2d 285, 287-290 (E.D.N.Y.2001) (same); *United States* v. *Baxt*, 74 F. Supp.

2d 436, 441-43 (D.N.J. 1999) (same).

As a consequence, the minimal disclosure that Dr. Thomas will testify regarding her

performance of unspecified examinations and unspecified diagnoses cannot satisfy the

requirement that the proposed testimony be material, let alone necessary to prevent a failure of

justice.   Pham's motion with respect to Dr. Thomas, therefore, has failed to establish any of the

three factors enumerated by the Second Circuit, *see Cohen*, 260 F.3d at 78, and should be denied.

### D.   Huyen Pham

Pham also moves to depose his sister, Huyen Pham.   According to the defendant, Ms. Pham is "willing to testify but cannot travel to New York," because her immigration attorney speculates that her online visa was revoked because of "her brother's legal situation."   Pham Br. at 4-5.   With one exception, Ms. Pham's proposed testimony is identical to that of Ms. Speitan, and therefore on each of the topics for which there is overlap, should be denied for the same reasons previously set forth with respect to Ms. Speitan.   *See* Part II.A *supra*.

The only topic on which Ms. Pham's testimony does not overlap with Ms. Speitan's is the defense's claim that Ms. Pham "can provide testimony concerning mental disorders of family members and physical and emotional abuse sustained by Pham."   Pham Br. at 8.   Pham's motion, however, fails on this topic for the same reasons that it fails on the others.   It appears from Pham's very limited proffer on this point that Pham intends to elicit such testimony in order to "buttress the testimony of a forensic psychologist."[8]   Pham Br. at 8.   But testimony related to such topics cannot be said to be relevant, let alone material to a defense let or exculpatory.   Putting aside the

---

[8]   To the extent that Ms. Pham's information regarding a purported family history of mental disease is relevant to a medical diagnosis or otherwise relied upon by an expert to opine about the defendant's mental capacity, there is no need for testimony at trial on this topic because an expert simply can interview Ms. Pham and rely upon that interview, subject to the strictures of Rule 703, in formulating his opinion.   *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.   If experts in this particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").   Moreover, to the extent Ms. Pham and the other lay witnesses are relied upon simply to bolster expert testimony regarding Pham's mental state, the testimony of all four of the lay witnesses regarding Pham's purported "cognitive limitations" would be cumulative of any such testimony regarding Pham's mental state – assuming for the sake of argument that such testimony was proper, and the Government maintains that it is not.   Such testimony cannot justify a Rule 15 deposition here.   *See Stein*, 482 F. Supp. 2d at 365.

fact that it is unclear what qualifies Ms. Pham to testify on such topics, whether and if Pham's family members have mental disorders is not relevant to the question of Pham's guilt or innocence. Put simply, the fact that a family member may have suffered from some mental disease does not make it any more or less likely that Pham committed the crimes charged in the Indictment.

Nor is it clear, from Pham's very limited attorney proffer, as to what the foundation for Ms. Pham's purported knowledge of this is and whether such proposed testimony would be barred as hearsay. *See United States* v. *Campbell,* 1998 WL 564376 at *1 (S.D.N.Y. 1998)

Similarly, putting aside the fact that Pham's motion does not establish how Ms. Pham knows about the physical and emotional abuse purportedly sustained by Pham, Pham's motion is silent as to how the proposed testimony – which presumably predates the crimes charged in this case – would be material to, or would help to establish Pham's defense, or would tend to exonerate him.[9] *See Whitting*, 308 F.2d at 541   (denial of Rule 15 motion appropriate where movant "was unable to demonstrate that the proposed testimony would be material to or would help to establish [the defendant's] defense or that the proposed testimony 'would tend to exonerate' him" (quoting *Broker*, 246 F.2d at 329).

As such, Pham's motion with respect to his sister has failed to establish any of the three factors enumerated by the Second Circuit, *see Cohen,* 260 F.3d at 78, and should be denied.

### E.    Eema Nawaz

Finally, Pham moves to depose Eema Nawaz, whom he describes as his wife, and whom he argues is "unavailable" because she is concerned that she will be unable to obtain a visa and

---

[9]   Indeed, to the extent Pham seeks to introduce evidence regarding the purported abuse Pham suffered, the Government likely will move *in limine* to preclude such evidence as not relevant under Rules 401 and 402 of the Federal Rules of Evidence, and as unfairly prejudicial under Rule 403.

because "she is reluctant to be separated from her two young children."   Pham Br. at 5.   Without

exception, the description of the proposed testimony from Ms. Nawaz is identical to that of Ms.

Speitan.   *See* Pham Br. at 8.   Accordingly, Pham's motion with respect to Ms. Nawaz should be

denied for the same reasons that it should be denied with respect to Ms. Speitan.   *See* Part II.A

*supra*.

       To the extent the Court is inclined to hear testimony via Rule 15 deposition on any of these

topics – and the Government respectfully submits that it should not, as Pham has failed to make the

requisite showing in his Rule 15 motion – it should deny the motion with respect to Ms. Nawaz for

the additional reason that such testimony, by Pham's own admission, is cumulative of the

proposed testimony of Ms. Speitan and Ms. Pham.   *See Drogoul*, 1 F.3d at 1555 (proposed

testimony must be non-cumulative of other evidence and admissible); *see also Stein*, 482 F. Supp.

2d at 365   (same); *Grossman*, 2005 WL 486735, at *3 (same).

## III.   Countervailing Factors Weigh Against Granting The Motion

       It is well-settled that, notwithstanding a Court's ability to grant a motion under Rule 15

under "exceptional circumstances and in the interest of justice," Fed. R. Crim. P. 15(a), "use of

depositions in criminal cases is not favored because the factfinder does not have an opportunity to

observe the witness' demeanor." *United States* v. *Milian-Rodriguez*, 828 F.2d 679, 686 (11th Cir.

1987).   *See also Drogoul*, 1 F.3d at 1551 ("In particular, because of the absence of procedural

protections afforded parties in the United States, foreign depositions are suspect and,

consequently, not favored.").   Thus, the burden is on the movant to show that a Rule 15 deposition

is truly warranted.   *See Whiting*, 308 F.2d at 541.

       The defendant seeks to take the deposition of no less than five foreign witnesses.   These

witnesses (whose testimony, if admitted, could potentially constitute a substantial portion of the evidence at trial) would not appear before a jury and, if sworn to an oath, would not do so before this Court, with all of the incentives for truthful testimony that such an oath provides. Notwithstanding that Rule 15 provides that only the most "exceptional circumstances" warrant obtaining evidence in such a context, Pham claims that each of the five witnesses uniquely presents such an exceptional case.

Pham, however, disregards the need for a particularized showing of "exceptional circumstances" as to each witness.   To the contrary, in describing each witness's expected testimony, Pham in many cases repeats the testimony to be provided by each witness – frequently using identical language from witness to witness – and does not describe how each witness's testimony, on its own, is "highly relevant to a central issue in this case" and necessary to preserve justice.   *Vilar*, 568 F. Supp. 2d at 442-43.   To the extent the substance of the witnesses' testimony is described, the defendant provides only the barest indication of what the witnesses would say, if deposed, and does not explain how such testimony would be exculpatory or otherwise material.

Under the circumstances, the Government respectfully submits that Pham's motion should be denied for all of the reasons described above, and also in the interests of justice.[10]

---

[10]   In his Notice of Motion, Pham also indicates that he is seeking an Order directing the Government to "guarantee safe passages for witnesses who are willing to testify, physically able to travel to New York, but concerned about their safety."   In his supporting memorandum, however, Pham cites to no legal precedent – and the Government is unaware of any – authorizing the Court to issue such an Order.   The Government respectfully submits that there is good cause for this, and the Court should decline the defense's baseless invitation.   *See*, *e.g.*, *United States* v. *Ghayth*, No. 98 Cr. 1023 (LAK), 2014 WL 144653, at *2 n.28 (S.D.N.Y. Jan. 14, 2014) (finding that the court should not "rule in a manner that effectively requires a coordinate branch

## CONCLUSION

Accordingly, for the foregoing reasons, the Government respectfully submits that the Court should deny Pham's motion in its entirety.


Dated:         New York, New York
               November 3, 2015


                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                         By:   /s/ Sean S. Buckley
                              Sean S. Buckley
                              Anna M. Skotko
                              Shane T. Stansbury
                              Assistant United States Attorneys
                              (212) 637-2261/1591/2641

---

of government to choose between two criminal defendants").    Rather, in the event a witness is unwilling to travel to the United States absent a guarantee of "safe passage" from the U.S. government, and the Government is unwilling to provide such guarantees, such witness is properly considered "unavailable" for purposes of a Rule 15 motion.   Even assuming the unavailability of the two witnesses for whom Pham sought guarantees of "safe passage," however, Pham still has failed to satisfy the other requirements of Rule 15 with respect to each of those witnesses.   Accordingly, Pham's motion should be denied in its entirety with respect to each of those witnesses.