UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

              - v. -                        :          12 Cr. 423 (AJN)

MINH QUANG PHAM,                            :
        a/k/a "Amin,"
                                            :

                    Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S FIRST MOTION *IN LIMINE* TO PRECLUDE TESTIMONY PURSUANT TO RULE 12.2 REGARDING MENTAL DISEASE OR DEFECT


PREET BHARARA
United States Attorney
Southern District of New York
for the United States of America


Sean S. Buckley
Anna M. Skotko
Shane T. Stansbury

        Assistant United States Attorneys
        - Of Counsel -

**TABLE OF CONTENTS**

I.    Pham's Notice Should Be Stricken as Untimely and Insufficient ......................................... 4

  A.    Applicable Law ....................................................................................................... 4

  B.    Discussion .............................................................................................................. 5

II.   The Anticipated Testimony Would Violate the IDRA ....................................................... 7

  A.    Applicable Law ....................................................................................................... 8

  B.    Discussion .............................................................................................................. 9

III.   The Anticipated Testimony Should Be Precluded Pursuant to Rules 401, 403, and 704.. 10

  A.    Applicable Law ..................................................................................................... 11

  B.    Discussion ............................................................................................................ 13

## PRELIMINARY STATEMENT

By this motion and memorandum of law, the Government moves *in limine* to strike the defendant's notice pursuant to Federal Rule of Evidence 12.2(b) ("Rule 12.2(b)") and preclude expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt.   Specifically, the Government moves to preclude – in light of the proffered testimony in the United Kingdom and in the defendant's now-rejected Rule 15 motion – in the event the defense intends to offer such live, in-person testimony at trial.[1]

As an initial matter, the defendant's notice of expert evidence of a mental condition pursuant to Rule 12.2(b) should be stricken as untimely and inadequate as a matter of law.   The motion is untimely because defendant did not provide notice until October 26, 2015 – more than three months after the deadline set by this Court for pretrial motions based upon unclassified evidence.   Moreover, the defendant's notice is insufficient in that it tracks only the language of the statute and provides no disclosure regarding the kinds of mental health experts the defendant intends to call or the nature of the tests those experts will be performing.

Even assuming that the defendant's notice had satisfied these minimal requirements – which it has not – the defendant should be precluded from offering such unspecified testimony because it would violate the Insanity Defense Reform Act of 1984 (the "IDRA"), 18 U.S.C. § 17. In the alternative, the unspecified testimony should be precluded pursuant to Federal Rules of Evidence 401, 403, and 704 because such evidence is both not relevant and unfairly prejudicial,

---

[1] This motion is filed in anticipation of proposed testimony by a U.S. expert – or in-person testimony by Dr. Thomas – on the topics that were the subject of a similar defense motion in the U.K. extradition proceedings.   As of the date of the filing of this motion, the defense has indicated that it has retained a U.S. expert to evaluate the defendant, but no disclosure beyond the defendant's deficient Rule 12.2(b) notice has been made.   In view of the inadequacy of the defendant's disclosures to date, the Government specifically reserves its right to supplement this motion to preclude, including but not limited to challenging the proposed expert testimony under the Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.

and likely to confuse the jury.

## **BACKGROUND**

On May 18, 2012, in connection with the United Kingdom extradition proceedings, Pham's U.K.-based defense attorneys submitted a 31-page report from Dr. Rachel Thomas, a clinical psychologist.   *See* Exhibit A (U.K. lower court judgment) at ¶¶ 65-66.   In that report, Dr. Thomas concluded that Pham's described symptoms "met the diagnostic criteria for an episode of Bipolar Affective Disorder without psychotic features," and in her opinion, Pham's "trip to Yemen bore all the hallmarks of a severe manic episode most likely triggered by his immediate prior depression and distress."   *Id.* ¶ 66.   As a consequence, Dr. Thomas opined that "Mr. Pham's idea of founding a Muslim village abroad where he and his family would ultimately move to live was less a realistic venture and much more a manic enterprise, based on inadequate thinking, planning and evaluation of reality," *id.* ¶ 66, and emphasized that "it would be my strong suspicion and psychological opinion that Mr. Pham's entire trip to Yemen was undertaken in a heightened manic state," *id.* ¶ 66.

On November 26, 2013, the U.K. court presiding over the extradition proceedings expressly rejected Dr. Thomas's report and conclusions diagnosing Pham with bipolar disorder. *See* Exhibit A at ¶¶ 65-77 (lower court judgment rejecting Dr. Thomas's opinions as "unconvincing," noting that the U.K. court has never "been less impressed and unconvinced by any report of this kind").   Among other deficiencies, the U.K. court noted the following issues with Dr. Thomas's purported expert opinion:

> To base a psychiatric opinion on Mr. Pham's account . . . strikes me
> as unwise. . . .   There is no sound factual basis for such an opinion.
> Frankly, the whole report is littered with conclusions based on what
> Mr. Pam says with no apparent appreciation that his account might

> well not be true.   For example, in relation to Mr. Pham's claim that
> he took "£10,000 of family money, with which he intended to buy
> the land for his Muslim village.   Some of the money he took from
> his wedding fund without his wife's knowledge.   This sort of
> unempathic (sic) impulsivity is typical of a manic episode."   There
> is no evidence, other than Mr. Pham's written account . . . that he
> took any money to Yemen let alone any reason for so doing; even if
> he did take some money one would have to be exceptionally naïve
> to unquestionably accept it was intended for a Muslim village.

Exhibit A ¶ 77.   On December 12, 2014, the U.K. appellate court affirmed the U.K. lower court's

findings with respect to Dr. Thomas.   *See* Exhibit B at ¶¶ 68-74.   Specifically, the U.K appellate

court held that "the appellant is not suffering from a mental condition of such severity that it would

have made it oppressive to extradite him . . . [and that] he is not suffering from any mental health

problems such as to have any significant impact on any of the issues arising under Article 3."

Exhibit B at ¶ 74.   Instead, the U.K. courts credited the expert opinion of a medical doctor, Dr.

Brow, who rejected "Dr. Thomas's conclusions and found insufficient evidence to diagnose a

severe manic illness."   *See*, *e.g.*, Exhibit A ¶ 69.   In view of that, the U.K. appellate court

affirmed the U.K. lower court's ruling that Pham was mentally fit to be extradited to the United

States to face the charges in the Indictment.

On February 26, 2015, Pham was extradited to the United States and transferred into the

custody of the Federal Bureau of Investigation.   Thereafter, on March 2, 2015, the defendant was

presented on the Indictment before the Honorable Andrew J. Peck.   No reference was made to the

defendant's purported mental disease or defect at that time.   On May 11, 2015, following a series

of pretrial conferences, this Court set the deadline for filing pretrial motions relating to

unclassified discovery on or before July 17, 2015.   *See* Docket Entry No. 27.   On July 17, 2015,

counsel for the defendant informed the Court that the defense did not intend to file any pretrial

motions.

On October 26, 2015, more than three months after the deadline for the filing of pretrial motions, the defendant filed a notice of expert evidence of a mental condition pursuant to Federal Rule of Criminal Procedure 12.2(b).   *See* Docket Entry No. 51.   That notice provided as follows: "Defendant Minh Quang Pham intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt."   *Id.*

As of the date of the filing of this motion, the defense has provided no further information regarding the nature of this purported expert evidence of a mental condition.

## DISCUSSION

### I.    Pham's Notice Should Be Stricken as Untimely and Insufficient

#### A.    Applicable Law

Rule 12.2(b) provides as follows:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—*within the time provided for filing a pretrial motion or at any later time the court sets*—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.   The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b) (emphasis added).   The Advisory Committee Notes to Rule 12.2 explain that a primary purpose of the notice provision in Rule 12.2(b) requiring pretrial notice of mental condition mitigation evidence is "to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony," and thereby avoid the necessity for a continuance in the middle of trial.   Advisory Committee Notes to Fed. R. Crim. P. 12.2 (1974).

In *United States* v. *Sampson*, 334 F. Supp. 2d 166 (D. Mass. 2004), the government challenged the sufficiency of the defendant's Rule 12.2(b) notice in a death penalty case, which, like Pham's, merely tracked the language of the rule.   The Massachusetts district court ultimately adopted an agreement reached by the parties in which the defendant would provide to the government only the kinds of mental health experts who would evaluate the defendant (*e.g.*, psychiatrist, neuropsychologist, *etc.*) and the specific nature of any testing that these experts would perform.   335 F. Supp. 2d at 242.   Similarly, in *United States* v. *Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005), the Northern District of Iowa considered how much information the defendant was required to turn over in order to provide "meaningful notice" under Rule 12.2(b).   In that case, the Iowa district judge held that the defendant would have to turn over identification of the kinds of mental health professionals she selected to evaluate her, and the nature of the tests that the defendant's experts had performed or would perform.   362 F. Supp. 2d at 1080.   *See also United States* v. *Wilson*, 493 F. Supp. 2d 348, 353 (E.D.N.Y. 2006) (directing the defendant to inform the government "as to the kinds of mental health experts it anticipates calling at the penalty phase and the nature of the tests those experts have performed or may be expected to perform").

### B.      Discussion

The defendant's notice should be stricken as untimely.   As described above, the defense has been aware of the defendant's claimed mental disease or defect since at least May 2012. Notwithstanding that, in connection with the U.S. proceedings, the defense delayed serving notice of its intent to offer such evidence until nearly 8 months after he was extradited to the United States, which was more than three years since the issue of Pham's mental health was raised in connection with the extradition proceedings n the United Kingdom.

The defense's notice therefore failed to comply with the timing requirement of Rule 12.2(b), which requires the defense to provide such notice "within the time provided for filing a pretrial motion or at any later time the court sets." Fed. R. Crim. P. 12.2(b). Pursuant to this Court's amended pretrial scheduling Order, *see* Docket Entry No. 51, any Rule 12.2(b) notice therefore was required to be served on or before July 17, 2015 – the deadline for the filing of pretrial motions.

Against this factual backdrop, the defendant has not identified – and cannot identify – any good cause that would warrant the filing of late notice. Accordingly, the Court should strike the defendant's notice as untimely.

In the alternative, the Court should strike the defendant's notice as insufficient. As noted above, the defendant's purported "notice" does nothing more than track the language of the statute. *See* Docket Entry No. 51 ( "Defendant Minh Quang Pham intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt."). As such, the defense's motion provides no indication as to the kinds of mental health experts he anticipates calling at trial and does not describe the nature of the tests those experts have performed or may be expected to perform. As such, the defendant's Rule 12.2(b) notice neither gives the Government sufficient notice to prepare to meet the issue, nor allows the Court to determine whether to order a competency examination under 18 U.S.C. § 4241. *See* Fed. R. Crim. P. 12.2(c)(1). Accordingly, consistent with the caselaw cited above, *see supra* I.A, the defense's Rule 12.2(b) notice is insufficient.[2]

---

[2]  To the extent the Court allows the defendant's untimely and insufficient notice to stand, the Government hereby moves for the Court to enter an Order – consistent with the decisions cited

## II.  The Anticipated Testimony Would Violate the IDRA

Putting aside the issue of the adequacy of the defendant's Rule 12.2(b) notice, on which basis the notice should be stricken, the Government further moves *in limine* for an Order precluding the defense from offering expert testimony opining that Pham's claimed bipolar disorder or other mental defect somehow deprived him of the *mens rea* necessary to commit the crimes charged in the Indictment (*e.g.*, testimony akin to Dr. Thomas's discredited opinion that "Mr. Pham's trip to Yemen bore all the hallmarks of a severe manic episode most likely triggered by his immediate prior depression and distress," and that his travel to Yemen was "a manic enterprise, based on inadequate thinking, planning and evaluation of reality").[3]   Such testimony could only be offered to support the conclusion, or mislead the jury into concluding, that the defendant was temporarily insane, that the disease caused the defendant to commit the crime or otherwise impaired his ability to exert volitional control, or that the disease impaired the defendant's ability to reflect on the consequences of his conduct.   As such, expert testimony of this nature would violate the IDRA.

---

herein – directing the defense to supplement its notice to include the kinds of mental health experts he anticipates calling at trial and the nature of the tests those experts have performed or may be expected to perform.   In addition, the Government moves that the Court Order the defendant to undergo a mental examination under procedures ordered by the Court, *see* Fed. R. Crim. P. 12.2(c)(1)(B), and that such examination should occur immediately to prevent an unnecessary delay in trial on the basis of a mental-disease defense that the U.K. courts already have determined to be without merit.

[3]  On December 4, 2015, this Court denied Pham's motion to take a Rule 15 deposition of Dr. Thomas, among other witnesses.   *See* Docket Entry No. 64.   In denying the defendant's motion, the Court noted that the defense had failed to show that Dr. Thomas was unavailable or, in the alternative, why such testimony could not be elicited from a U.S.-based specialist.   As of the date of the filing of this motion, the defendant has not indicated whether he intends to call Dr. Thomas, or any other expert, to provide such testimony.

A.      **Applicable Law**

The relevant portion of Title 18, United States Code, Section 17 states:

> It is an affirmative defense to a prosecution under any Federal
> statute that, at the time of the commission of the acts constituting the
> offense, the defendant, as a result of a severe mental disease or
> defect, was unable to appreciate the nature and quality or the
> wrongfulness of his acts.   *Mental disease or defect does not
> otherwise constitute a defense.*

18 U.S.C. § 17(a) (emphasis added).   As Judge Cote held, in a decision affirmed by the Second

Circuit:

> Testimony about mental disease should not be allowed where it is
> offered to support the conclusion, or will mislead the jury into
> concluding, that the defendant was temporarily insane, that the
> disease caused the defendant to commit the crime or otherwise
> impaired her ability to exert volitional control, or that the disease
> impaired the defendant's ability to reflect on the consequences of
> her conduct.   Admission of such testimony would run afoul of the
> IDRA.   Where a defendant fails to meet the IDRA's definition of
> insanity, the defendant cannot be allowed to admit evidence that she
> committed a crime because of a supposed psychiatric compulsion or
> inability or failure to engage in normal reflection.

*United States* v. *Dupre*, 339 F. Supp. 2d 534, 540-41 (S.D.N.Y. 2004) (internal quotation marks

omitted), *aff'd by United States* v. *Dupre*, 462 F.3d 131, 137-38 (2d Cir. 2006) (concluding that

Judge Cote properly excluded evidence concerning the defendant's mental state and "shar[ing] the

District Court's concern that the proffered evidence might have constituted an impermissible

opinion about the 'ultimate issue' of whether [the defendant] had the requisite mental state

constituting an element of" the crime).

Where a defendant fails to meet the IDRA's definition of insanity, the defendant cannot be

allowed to admit evidence that she "committed a crime because of a supposed psychiatric

compulsion or inability or failure to engage in normal reflection."   *United States* v. *Worrell*, 313

8

F.3d 867, 873 (4th Cir. 2002).   As such, psychiatric evidence must be weighed carefully to

ascertain whether it would, if believed, "support a *legally acceptable* theory of lack of *mens rea*."

*United States* v. *Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (citation omitted) (emphasis in

original).   For this reason, courts routinely have excluded expert mental disease testimony that

tended to show the defendant "lacked the capacity to control or reflect upon his conduct" because

it constituted "inadmissible psychological or psychiatric evidence."   *United States* v. *Brown*, 326

F.3d 1143, 1148 (10th Cir. 2003).   In *Worrell*, for example, expert mental disease testimony was

excluded where the expert determined that the defendant was not able to exercise control over his

actions or reflect on their possible consequences.   313 F.3d at 875; *see also Cameron*, 907 F.2d at

1066 (evidence of the defendant's inability to reflect upon or control behavior is inadmissible).

      **B.**    **Discussion**

      Expert testimony of the nature proffered by the defense during the U.K. extradition

proceedings would violate the IDRA.   The opinions and conclusions proffered by Pham's

purported expert witness were designed to establish that Pham committed the offenses charged in

the Indictment as a result of a compulsion that arose from his claimed manic state or were the result

of an inability or failure to engage in normal reflection.   As such, these arguments are foreclosed

by the IDRA.

      As described in the U.K. extradition proceedings, Pham expert contended that Pham's

decision to travel to Yemen – were he joined AQAP and received military training – was a result of

a "severe manic episode most likely triggered by his immediate prior depression and distress."

Exhibit A at ¶ 66.   In view of that, Pham's expert argued that Pham's decision to travel "was less

a realistic venture and much more a manic enterprise, based on inadequate thinking, planning and

evaluation of reality. . . ."   *Id.*   These opinions were offered to support the conclusion that "Mr.
Pham's entire trip to Yemen was undertaken in a heightened manic state."   *Id.* ¶ 67.

When considered against the legal backdrop described above, such a theory could only be
offered to support the conclusion that Pham "committed a crime because of a supposed psychiatric
compulsion or inability or failure to engage in normal reflection," *Worrell*, 313 F.3d at 873
(citation omitted), or would tend to show (or suggest to the jury) that the defendant "lacked the
capacity to control or reflect upon his conduct," *Brown*, 326 F.3d at 1148.   As such, "volitional"
evidence of this type is foreclosed by the IDRA "as evidence of the defendant's inability to control
her behavior."   *Dupre*, 339 F. Supp. 2d at 544 (citing *Cameron*, 907 F.2d at 1066).

As such, the Court should preclude the defendant from introducing expert testimony to
support the conclusion that the defendant's purported mental disease or defect rendered him
incapable of making decisions and/or comprehending reality.

## III.    The Anticipated Testimony Should Be Precluded Pursuant to Rules 401, 403, and 704

To the extent the defense contends that Dr. Thomas's testimony would be offered to negate
the intent element of the charged crimes, rather than establish an inability to make decisions or
comprehend reality, such testimony similarly should be precluded under Federal Rules of
Evidence 401, 403, and 704.[4]

---

[4]   Such evidence likely also should be precluded under Rules 702 and 703, but without any
indication as to the nature of the expert testimony the defendant intends to offer, it is impossible
for the Government to oppose on those grounds.   Similarly, as described in the Government's
Rule 15 opposition, the Government has serious concerns that such testimony would satisfy the
threshold requirements of Rule 701 or *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.
579 (1993) and its progeny.   Accordingly, the Government reserves the right to move to
preclude any such testimony on these grounds following its receipt of the defendant's expert
notice and expert report.

A.      **Applicable Law**

Although the Second Circuit has not resolved this question, other circuit courts agree that the IDRA does not necessarily prevent defendants from presenting mental disease evidence for the purpose of negating the intent element of a charged crime.   *See*, *e.g.*, *Brown*, 326 F.3d at 1147; *Worrell*, 313 F.3d at 874; *United States* v. *Schneider*, 111 F.3d 197, 201 (1st Cir. 1997); *Cameron*, 907 F.2d at 1066; *United States* v. *Bartlett*, 856 F.2d 1071, 1081-82 (8th Cir. 1998).   Similarly, other district courts in New York have followed one or more of those decisions.   *See*, *e.g.*, *Dupre*, 339 F. Supp. 2d at 539; *United States* v. *Agnello*, 158 F. Supp. 2d 285, 287 (E.D.N.Y. 2001); *United States* v. *Pirro*, 76 F. Supp. 2d 478, 485 (S.D.N.Y. 1999).

As such, the IDRA does not *per se* prevent defendants from presenting mental disease evidence for the purpose of negating the intent element of a specific intent crime.   As explained in Judge Cote's detailed opinion in *Dupre*, several appellate court decisions cite with approval the following example of a permissible use of expert testimony addressed to a defendant's *mens rea* that does not run afoul of the IDRA:

> An expert's testimony that a defendant was "a person more likely to harm himself than to think about directing his aggression towards others" made it more probable that the defendant harbored no criminal intent toward agents who had come to arrest him for desertion.   The defendant had picked up a gun and testified that he did so because he was thinking of injuring himself so he would not be taken back to the military.

*Dupre*, 339 F. Supp. 2d at 541 (internal citations omitted) (citing *United States* v. *Staggs*, 553 F.2d 1073 (7th Cir. 1977)).

As such, it is necessary for a district court to identify whether any elements of the charged offenses require the Government to prove intent in a way that could be meaningfully refuted by the

11

type of mental disease evidence proffered by the defendant.   "Although defendants are not foreclosed from presenting mental disease evidence to negate the *mens rea* element of a charged offense . . . any proffered expert mental disease evidence must nevertheless meet the standards of the Federal Rules of Evidence."   *Dupre*, 339 F. Supp. 2d at 540.   In this vein, a district court may admit the testimony of an expert if her knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue."   Fed. R. Evid. 702.   Like all evidence, such expert testimony must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion or the issues, or misleading the jury," Fed. R. Evid. 403.   *See United States* v. *Mulder*, 273 F.3d 91, 101 (2d Cir. 2001).

"There are special concerns for relevance and potential jury confusion in the case of expert testimony regarding mental disease evidence offered in an attempt to negate the intent element of an offense."   *Dupre*, 339 F. Supp. 2d at 540.   As such, the Court should preclude proffered expert testimony "where it is offered to support the conclusion, or will mislead the jury into concluding, that the defendant was temporarily insane, that the disease caused the defendant to commit the crime or otherwise impaired her ability to exert volitional control."   *Id.* at 540-41.   Moreover, the defendant must also demonstrate a genuine link between the proffered expert testimony and the issue of intent.   To that end, courts have excluded expert mental disease testimony that was so general that it could not explain the effect a mental condition could have on a defendant's ability to form criminal intent.   *See Cameron*, 907 F.2d at 1067 (evidence of the defendant's schizophrenia did not clarify how "she did not intend to distribute crack cocaine").

Finally, even if some expert mental disease testimony is permitted in this context, experts are precluded from reaching a definite conclusion about what mental state a defendant actually possessed at the time of the offense because such testimony "poses a uniquely heightened danger of intruding on the jury's function."   *United States* v. *DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).   In this vein, expert testimony may not be permitted to "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."   *United States* v. *Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999).   Accordingly, "expert testimony about the mental state or condition of a defendant in a criminal case is treated differently from other types of expert testimony."   *Dupre*, 339 F. Supp. 2d at 542 (citing *DiDomenico*, 985 F.2d at 1164).   To that end, an expert may not "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto.   Such elements are for the trier of fact alone."   Fed. R. Evid. 704(b).   Thus, Rule 704(b) prevents experts from "expressly stating the final conclusion or inference as to a defendant's actual mental state at the time of a crime."   *Dupre*, 339 F. Supp. 2d at 542.

**B.      Discussion**

Although it remains unclear based on the disclosures the defense has made to date, based upon the arguments and opinions proffered during the U.K. extradition proceedings, it appears that the defense likely will offer evidence of Pham's purported bipolar disorder or depression to undermine the *mens rea* requirement of each of the charged crimes.   As described above, such evidence should be precluded because it directly violates the IDRA.   However, even to the extent the Court concludes that it does not violate the IDRA and somehow is limited to Pham's *mens rea*,

13

such expert testimony would have "a substantial capacity to mislead the jury, while providing little additional helpful information to the jury" and such proposed expert testimony "is strongly suggestive of 'volitional' evidence that is foreclosed by the IDRA, as evidence of the defendant's inability to control her behavior." *Dupre*, 339 F. Supp. At 544.   As such, this Court should preclude such evidence for its capacity to mislead or confuse the jury, and because it calls for an expert to opine on the actual mental state of the defendant at the time of the crime.   *See* Fed. R. Evid. 403, 704.   *See also United States* v. *Pohlot*, 827 F.2d 889, 905 (3d Cir. 1987) (cautioning that "the strict use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin to justification.").

Indeed, as previously described in the Government's opposition to the defendant's Rule 15 motion, federal courts throughout the country repeatedly have rejected expert testimony on bipolar disorder to negate *mens rea*.   *See*, *e.g.*, *United States* v. *Worrell*, 313 F.3d 867, 872-75 (4th Cir. 2002) (affirming exclusion of expert testimony about a defendant's bipolar disorder that was intended to negate *mens rea*); *United States* v. *Armstrong*, No. 07–26–1, 2010 WL 4275232, at *3-*5, *7-*8 (W.D.Pa. Oct. 25, 2010) (same); *United States* v. *Smith*, No. 09–158–1, 2009 WL 5174231, at *2 (S.D.Ala. Dec. 21, 2009) (same); *United States* v. *Sacks*, No. 08–269, 2009 WL 4114169 (D.N.J. Nov. 23, 2009) (same); *Dupre*, 339 F.Supp.2d at 542-45 (same); *United States* v. *Mezvinsky*, 206 F.Supp.2d 661, 672-74 (E.D. Pa. 2002) (same); *United States* v. *Agnello*, 158 F. Supp. 2d 285, 287-290 (E.D.N.Y. 2001) (same); *United States* v. *Baxt*, 74 F. Supp. 2d 436, 441-43 (D.N.J. 1999) (same).

Based on the very limited disclosures to date, it appears that Pham intends to argue that he was compelled into traveling to Yemen, or lacked the capacity rationally to decide whether to

14

travel to Yemen, based upon a pre-existing bi-polar disorder and depression.   Expert testimony in that vein creates a substantial risk that it will be used for an impermissible purpose during jury deliberations.   In sum, permitting Pham to offer evidence of mental disease or defect here has a powerful capacity to mislead and confuse the jury and to permit Pham to put an impermissible theory of justification before the jury without meeting his burden of presenting the affirmative defense of insanity.   As such, its limited probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and its tendency to mislead the jury.

## CONCLUSION

Accordingly, for the foregoing reasons, the Government respectfully submits that the Court should strike Pham's 12.2(b) notice and preclude the defendant from offering expert testimony regarding Pham's mental disease or defect.

Dated:        New York, New York
              December 9, 2015

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                          By:   /s/ Sean S. Buckley
                              Sean S. Buckley
                              Anna M. Skotko
                              Shane T. Stansbury
                              Assistant United States Attorneys
                              (212) 637-2261/1591/2641