UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

               - v. -                 :        12 Cr. 423 (AJN)

MINH QUANG PHAM,                      :
          a/k/a "Amin,"
                                      :

                   Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL ATTORNEY-CONDUCTED *VOIR DIRE*

PREET BHARARA
United States Attorney
Southern District of New York


Sean S. Buckley
Anna M. Skotko
Shane T. Stansbury
          Assistant United States Attorneys
          - *Of Counsel* -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

DISCUSSION ...................................................................................................................... 2

I.   Consistent with Rule 24(a) and the Long-Standing Practice in this District, the Court
Should Conduct the Examination of Jurors.................................................................. 2

   A.   Applicable Law ................................................................................................... 2

   B.   Discussion ........................................................................................................... 6

     1.   The Procedures Implemented by this Court, and the Practice in this District, Ensure
That Counsel's Knowledge of the Case Contributes to the *Voir Dire* ................................. 7

     2.   There Are Practical and Legal Considerations that Weigh Heavily in Favor of Court-
Conducted *Voir Dire* ............................................................................................... 12

     3.   Numerous Post-9/11 Terrorism Trials Have Been Conducted in this District Without
Resort to the Extraordinary Measure of Attorney-Conducted *Voir Dire* ......................... 15

CONCLUSION.................................................................................................................... 17

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the defendant Minh Quang Pham's ("Pham" or the "defendant") motion *in limine*, dated December 9, 2015, in which he seeks permission for partial, attorney-conducted *voir dire* ("Defendant's Motion" or "Def. Mot."). In that motion, Pham asks the Court to disregard the accepted practice in this District – indeed, the accepted practice in this Circuit and almost every other Circuit – of having the Court conduct the questioning of the *venire*. In support of that motion, Pham relies heavily upon a law review article from the *Indianapolis Law Journal*, which was published in 1980 and which itself relied on studies that were conducted from the 1950s through the 1970s. In addition, Pham cites extensively to *dicta* from the Fifth and Ninth Circuits. Tellingly, Pham identifies not a single case in this District, and can only point to one district court in the entire Circuit, that has granted the relief the defendant seeks here. The defendant's motion should be denied.

Consistent with long-standing practice in this District, the Court, and the Court alone, should conduct the questioning of the *venire* during the *voir dire* process. In spite of the psychological analyses cited by the defendant – which predate the instant prosecution by anywhere from 35 years to 65 years and more – the Supreme Court has declined to amend Rule 24 of the Federal Rules of Criminal Procedure and relegated the determination as to whether the Court should examine prospective jurors or permit the attorneys for the parties to do so to the sound discretion of the District Court. In criminal trials in this District, the Court conducts the examination of prospective jurors and permits attorneys to submit further questions that the Court may ask if it considers proper. Such a procedure not only is consistent with the Federal Rules of Criminal Procedure, but also is consistent with binding precedent that requires a case-specific *voir dire* to ensure the empanelment of an unbiased and impartial jury to weigh the evidence. Indeed, Court-conducted *voir dire* – as supplemented by additional questions

submitted to the Court by the parties – has been the procedure employed in terrorism cases in this District, which have been tried both prior and subsequent to the tragic events of September 11, 2001.  And, as explained below, there is good reason for this both as a matter of judicial efficiency and practicality.

To the extent that the defendant believes that the attorneys' knowledge of the case and insights into the case are necessary to conduct a thorough *voir dire*, the procedures implemented by the Court in this case more than adequately address those concerns without requiring a break from this long-standing practice.  Indeed, the Court has required the parties to submit additional, proposed *voir dire* questions for the Court's consideration almost two months prior to the commencement of jury selection.  Moreover, if the defendant believes that additional questions are necessary after hearing the responses of the individual members of the *venire*, such questions can be presented to the Court outside the presence of the jury.  Such a procedure will allow the Court, with input from the parties, to evaluate the necessity of the additional questions without running the risk of tainting the entire *venire* or its individual members.  Accordingly, there simply is not a need for the Court to deviate from the long-standing practice in this Court to permit attorney-conducting *voir dire*.

Accordingly, the defendant's motion should be denied.

## DISCUSSION

### I.       Consistent with Rule 24(a) and the Long-Standing Practice in this District, the Court Should Conduct the Examination of Jurors

#### A.       Applicable Law

There is no "hard-and-fast" formula that dictates the necessary depth or breadth of *voir dire*.  *Skilling* v. *United States*, 561 U.S. 358, 384, 130 S. Ct. 2896, 2917 (2010); *see also United States* v. *Wood*, 299 U.S. 123, 145-46, 57 S. Ct. 177, 185 (1936) ("Impartiality is not a technical

conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."). Indeed, the Supreme Court repeatedly has emphasized that jury selection is "particularly within the province of the trial judge." *Ristaino* v. *Ross*, 424 U.S. 589, 594-95, 96 S. Ct. 1017, 1020 (1976) (internal quotation marks omitted).

For this reason, the Supreme Court has entrusted control of *voir dire* to the district court if it wishes to exercise that power. *See* Fed. R. Crim. P. 24(a)(1) ("The court may examine prospective jurors or may permit the attorneys for the parties to do so."); *Rosales-Lopez* v. *United States*, 451 U.S. 182, 189, 101 S. Ct. 1629, 1634-35 (1981) ("[Federal judges have been accorded ample discretion in determining how best to conduct the voir dire."). In the federal system, attorney-driven *voir dire* is disfavored, since the opportunity is often abused to delay and to prejudice the jury. *See*, *e.g.*, *United States* v. *Barnes*, 604 F.2d 121, 142 n.10 (2d Cir. 1979) (noting the tension between "the goal of promoting efficiency in the conduct of criminal trials without doing damage to the right of a criminal defendant to an unbiased and impartial jury, and the desire of the defendant [and prosecution] to know as much as possible about those who sit in judgment . . ."); *see also id.* at 142 n.10 (citing "many articles relating abuses of attorney-controlled *voir dire*, which suggest that a reasonable inquiry into the essentials raised in the particular case should be sufficient, and that the trial judge should retainthe discretion to apply limits.").

In this vein, the test to determine whether, in the conduct of *voir dire*, the essential demands of fairness have been met is "whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present." *United States* v. *Dellinger*, 472 F.2d 340, 367 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S. Ct. 1443 (1973).

3

"The trial court, when impaneling a jury, 'has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor.'"  *United States* v. *Haynes*, 398 F.2d 980, 984 (2d Cir. 1968) (quoting *Dennis* v. *United States*, 338 U.S. 162, 168, 70 S. Ct. 519, 521 (1950)).  "What is required of a trial judge in his conduct of the *voir dire*, according to the Supreme Court cases, is that he permit at least some questioning with respect to any material issue that may arise, actually or potentially, in the trial."  *Barnes*, 604 F.2d at 137.

For example, in *Aldridge* v. *United States*, 283 U.S. 308, 51 S. Ct. 470 (1931) --  a case decided prior to the Supreme Court's implementation of Rule 24(a) – the Court exercised its "supervisory powers" over the conviction of an African-American male who had been sentenced to death for killing Caucasian police officers in the District of Columbia.  In reversing the conviction, the Supreme Court held that it was error to deny completely all questioning of veniremen directed to eliciting racial prejudice.  *Aldridge*, 283 U.S. at 311, 51 S. Ct. at 472.  As such, the bellwether against which a district court's conduct of *voir dire* is whether the court's discretion was "exercised consistent with 'the essential demands of fairness' in the particular case."  *Barnes*, 604 F.2d at 138 (quoting *Aldridge*) (internal citations omitted).

If a district court decides to conduct the *voir dire* itself, it must permit the attorneys for the parties either to ask further questions of the jurors that the court considers proper, or submit to the court further questions that the court may ask if it considers them proper.  Fed. R. Crim. P. 24(a)(2).  If additional questions are submitted to the district court, Rule 24(a) "allows the judge to frame questions on the voir dire if he thinks best, to avoid the interminable examinations sometimes extending for weeks on end that had frequently resulted" from attorney-conducted voir dire.  *United States* v. *Dennis*, 183 F.2d 201, 227 (2d Cir. 1950).  As a result, the "Rule itself requires the court to submit only 'such additional questions as it deems proper'; and the conduct

4

of the voir dire has always been within the discretion of the judge." *Id.* at 228; *see also Hamling*
v. *United States*, 418 U.S. 87, 139-40, 94 S. Ct. 2887, 2918-19 (1974) (affirming district court's
decision not to ask certain follow-up questions requested by the defense on the basis of relevance
and/or duplication)

Pham incorrectly cites *Lewis* v. *United States*, 146 U.S. 370, 376, 13 S. Ct. 136, 138
(1892) for the proposition that "[t]he denial or impairment of the right to exercise peremptory
challenges requires reversal of a conviction, without a showing of prejudice." Def. Mot. at 13.
*Lewis*, however, does not support that proposition.  Rather, Lewis holds only that the "making of
[peremptory] challenges was an essential part of the trial, and that it was one of the substantial
rights of the prisoner to be brought face to face with the jurors at the time when the challenges
were made."  146 U.S. at 376, 13 S. Ct. 138.  To the contrary, when challenging a jury's verdict
on the basis of an impartial jury --  or inadequate *voir dire* – a defendant must show "that a
presumption of prejudice arose or that actual bias infected the jury that tried him."  *Skilling*, 561
U.S. at 398-99, 130 S. Ct. 2925.  Similarly, although the Supreme Court's decision in *Swain* v.
*Alabama*, 380 U.S. 202, 85 S. Ct. 824 (1965) recognized the importance of the peremptory
challenge and approved questioning of potential jurors to form the basis for such challenges, "it
did not change the basic rule that a trial judge's discretion will be upheld unless a defendant has
been precluded from obtaining an impartial jury."  *United States* v. *Barnes*, 604 F.2d 121, 138
(2d Cir. 1979).

Accordingly, appellate courts will not interfere with the manner in which the trial court
conducted the *voir dire* examination unless there has been a clear abuse of discretion.  *United
States* v. *Dennis*, 183 F.2d 201, 226-27 (2d Cir. 1950), *aff'd*, 341 U.S. 494 (1951).

### B.      Discussion

Pham argues – without citation to any binding legal authority – that *voir dire* "conducted solely by the Court interferes with the intelligent exercise of peremptory challenges because the Court is usually less familiar with the facts and nuances of the case." Def. Mot. at 6.  In making that argument, the defendant identifies no prejudice – actual or implied – that could be identified better through attorney *voir dire* than through the established procedure of the Court examining the prospective jurors and permitting the attorneys the opportunity to submit further questions that the court may ask if it considers them proper.  *See* Fed. R. Crim. P. 24(a)(1) & (2)(B). Indeed, even the cases upon which the defendant relies in requesting the extraordinary relief of attorney-conducted *voir dire* note that in the federal system "[a]ttorney-driven *voir dire* is disfavored," and that the "general practice" is "for the judge to ask all the questions or to supplement those posed in a written questionnaire."  Def. Mot. at 8 (citing *United States* v. *Tavares*, 436 F. Supp. 2d 493, 503-04 (E.D.N.Y. 2006)).[1]  And this is for good reason.  There are practical and legal considerations that are implicated by attorney-conducted *voir dire* that are not implicated when the Court conducts the *voir dire*.  Accordingly, the Government respectfully submits that the defendant's motion should be denied.

---

[1] Judge Weinstein's decision to permit limited attorney-conducted *voir dire* in *Tavares* is inapposite to the facts of that case.  In granting the defendant's motion there, Judge Weinstein specifically noted that, as a capital case, *Tavares* was distinguishable from the "general practice," noting that in a capital case, "it is particularly desirable to ensure that counsel for both parties have the opportunity to plumb the venirepersons' views on capital punishment, their understanding of mitigating and aggravating factors, and other issues."  436 F. Supp. 2d at 504. As such, Judge Weinstein's reasoning in granting an exception to the general rule should not be extended outside of the capital context.

1. **The Procedures Implemented by this Court, and the Practice in this District, Ensure That Counsel's Knowledge of the Case Contributes to the *Voir Dire***

As an initial matter, the defendant concedes that it is proper for *voir dire* to be conducted solely by the Court, so long as the parties are permitted the opportunity to submit further questions that the court may ask if it considers them proper. *See* Def. Mot. at 3. Moreover, Pham does not contest that it is the practice in this District for the Court, and the Court alone, to ask the questions of the *veniremen* during the *voir dire* process. Indeed, Pham cannot identify a single instance in this District where a Court has permitted attorney-conducted *voir dire*. Accordingly, there is no valid reason proffered as to why the Court should deviate from the accepted practice in this District.

Recognizing this, Pham argues that counsel's "more in-depth knowledge of the case" will "contribute to more complete information about the potential jurors." Def. Mot. at 5. In that vein, Pham argues that "[a]ttorneys have been working for months on the case," and therefore are "most likely to know the areas of questioning that must be explored further in order to uncover prejudices that are most pertinent to the evidence that will be presented at trial." Def. Mot. at 6. In addition, Pham notes, that attorneys "act with an awareness that they will have to base peremptory challenges on the juror's answers."

The Government does not disagree with any of those points. That said, Pham's arguments on this point do not provide any support for the implementation of attorney-conducted *voir dire*. This is so because the procedures contemplated by this Court, and those used by other judges in this District, adequately afford for counsel's "more in-depth knowledge of the case" to contribute to the *voir dire* process. For example, this Court required the parties to submit additional *voir dire* questions to the Court no later than December 9, 2015 – nearly two months prior to the commencement of jury selection. *See* 12 Cr. 423 (AJN) Docket Entry No. 60

(11/11/2015 Order).  This procedure, therefore, permits counsel to bring their knowledge to bear

on the nature and substance of the *voir dire* questions that are to be posed to the jury.  *See, e.g.*,

*United States* v. *Wilson*, 571 F. Supp. 1422, 1428 (S.D.N.Y. 1983) (Weinfeld, J.) (rejecting

motion for attorney-conducted *voir dire* and holding that the procedure of permitting counsel for

the parties "in advance of trial . . . to submit proposed questions that, if proper and not repetitive,

are included in the Court's questioning of the jurors" was "beyond peradventure of doubt," and

"without exception" successful "in the empanelling of fair and impartial juries.").

Moreover, the Federal Rules of Criminal Procedure and binding precedent recognize the

importance of the attorney's input in the *voir dire* process, and the practice in this District is

entirely consistent with both of those.  For example, Rule 24(a)(2)(B) provides that "[if] the

court examines the jurors, it must permit the attorneys for the parties to: . . . submit further

questions that the court may ask if it considers them proper."  Fed. R. Crim. P. 24(a)(2)(B).  Such

a procedure, sanctioned by the Supreme Court through its adoption of Rule 24(a)(2)(B), similarly

affords counsel for the parties the opportunity to ensure that their "more-in-depth knowledge of

the case" contributes to the process of identifying and impaneling a fair and impartial jury even

after the *voir dire* process has commenced, provided that the Court determines them relevant to

the case.  As the Supreme Court explained:

> Federal Rule Crim. Proc. 24(a) permits a district court to conduct
> the *voir dire* examination, making such use of questions submitted
> by the parties as it deems proper.  The District Court here asked
> questions similar to many of those submitted by petitioners, and its
> examination was clearly sufficient to test the qualifications and
> competency of the prospective jurors.

*Hamling* v. *United States*, 418 U.S. 87, 139-40, 94 S. Ct. 2887, 2918-19 (1974).  As such, the

Supreme Court has specifically endorsed the procedure by which the parties submit supplemental

questions to the district court, which the district court has discretion to ask or not depending on

the circumstances of the case.  *Id.* (finding no abuse of discretion where the district court

declined to ask certain questions presented by the parties).[2]

      In the alternative, Pham argues that "[p]sychological studies suggest at least two

differences between attorney-juror relationships and judge-juror relationships that should enable

attorneys to obtain more or different information from *some* potential jurors."  Def. Mot. at 6.

Because of this, Pham contends, that attorney-conducted *voir dire* will elicit more complete

information.  *Id.* at 6-8.  In support of that argument, Pham cites to no binding precedent, let

alone any federal cases that have so held.  *See id.*  Rather, Pham relies entirely a 35-year-old law

review article, which itself relies upon psychological analyses that were conducted from the

1950s through the 1970s.  Putting aside the fact that such a law review article is in no way

binding on the Court, given the age of the article and the authorities it cites, it hardly can be

called persuasive.  This is so because, in spite of this article and the studies cited therein, the

Supreme Court has not altered Rule 24(a) in any way, and continues to leave the question of the

conduct of *voir dire* to the sound discretion of the district court.  This is not surprising as there is

a body of academic literature that stands for the exact opposition proposition: because of the

abuses of attorney-controlled *voir dire*, the trial judge should retain discretion to apply its limits.

*See*, *United States* v. *Barnes*, 604 F.2d at 142 n.10 (citing numerous academic treatises).

      Finally, to the extent the defense is concerned about the impact of pretrial publicity on the

*venire*, that does not support the argument that attorney-conducted *voir dire* is necessary here.

*See* Def. Mot. at 2 ("In light of the recent terrorist attacks in Paris and in San Bernardino, the

widespread publication and broadcasts regarding these events, and public statements by Donald

---

[2]  For this same reason, Pham's arguments and citations to legal authority related to the importance of *voir dire* to peremptory challenges, *see* Def. Mot. at 4-5, have no bearing on the question of Court-conducted *voir dire vis a vis* attorney-conducted *voir dire*.  There is no dispute that the information provided during *voir dire* is relevant to the parties' exercise of their peremptory challenges.

Trump and others concerning mothers . . .the defense requests that the Court permit each side in the case a limited amount of attorney-conducted *voir dire* . . . ."); *see also* Def. Exh. A ("Sampling of Recent Anti-Muslim Publicity"). Specifically, Pham argues that because of the pretrial publicity regarding the recent terrorist attacks in San Bernardino, California and Paris, as well as statements made by presidential candidates in the debates, "the possibility of prejudice in this case is so great that specific *voir dire* questions are necessary." Def. Mot. at 9.

Pham proffers no explanation as to why it is that Court-conducted *voir dire* cannot adequately identify prejudice based upon a juror's exposure to pretrial publicity or negative media reports. As has been done in the past, the Court can and should ask the prospective *venire* questions about what they know about the case or more generally what they have heard in the media that relates to the case. Similarly, the parties were afforded the opportunity to, and did in fact, submit specific *voir dire* questions, which addressed these events for the Court's consideration. If any jurors indicate either familiarity with the case or specific prejudice based upon media reporting, the Government agrees that further, individualized inquiry by the Court is necessary. *See, e.g.*, *United States* v. *Tropiano*, 418 F.2d 1069, *cert. denied*, 397 U.S. 1021, 90 S. Ct. 1262 (1970) (holding that individual *voir dire* examination under Rule 24(a) of each prospective juror is required whenever there is significant possibility that individual jurors will be prejudiced because of exposure to pretrial publicity). But such arguments do not support the conclusion that attorney-conducted *voir dire* is superior to Court-conducted *voir dire* in identifying such prejudices.[3]

---

[3] To that end, the legal authorities to which Pham cites in this portion of his brief do not support a different result. *See* Def. Mot. at 9-11. Each of those cases pertain to the need for specific, individualized questions resulting from specific facts relevant to the case. The Government agrees that such individualized questioning may be appropriate in certain circumstances here, but believes that such questioning, consistent with the practice in this District, should be conducted by the Court and not the parties.

The out-of-District, indeed out-of-Circuit, cases to which Pham cites in support of this argument do not support a different result.  For example, Pham cites to *dicta* from a series of Fifth Circuit cases, which suggests a preference for attorney-conducted *voir dire*.  *See* Def. Mot. at 5-6 (citing *United States* v. *Corey*, 625 F.2d 704, 707 (5th Cir. 1980); *United States* v. *Ledee*, 549 F.2d 990, 993 (5th Cir. 1977)).  In particular, Pham fails to note that several of those cases, while extoling the importance of attorney input into the *voir dire* process, the Fifth Circuit not only noted the broad discretion that district courts enjoy under Rule 24(a), but specifically affirmed the district court's use of Court-conducted *voir dire*.  *See, e.g., Corey*, 625 F.2d at 707 (affirming conviction and noting that "[f]or reasons of economies of time and implicit identification of the jury as a neutral body, the judge may conduct voir dire," so long as he gives "deliberate deference to counsels' advantage of prior research and investigation.");  *Ledee*, 549 F.2d at 993 (affirming conviction and noting that "the real issue is whether the voir dire examination uncovers possible prejudice and bias of any juror so that a fair and impartial jury may be impaneled.").[4]  This is not surprising, as the Fifth Circuit has never mandated *voir dire* conducted solely by counsel.  *See United States* v. *Ackal*, 706 F.2d 523, 532-33 (5th Cir. 1983) (rejecting argument that district court erred in refusing to allow attorney conducted voir dire); *United States* v. *L'Hoste*, 609 F.2d 796, 801-03 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S. Ct. 104 (1980) ("we do not read *Ledee* as according defendant a right to have his counsel conduct, in whole or in part, the voir dire inquiry").

---

[4]  In *United States* v. *Ible*, 630 F.2d 389, 395 (5th Cir. 1980), to which the defendant cites, the Fifth Circuit specifically declined to reach the defendant's challenge to the sufficiency of the district court's *voir dire*.  In *dicta*, however, the *Ible* court did specifically endorse attorney-conducted *voir dire*.  Significantly, the Fifth Circuit's decision in *Ackal*, *see supra*, which was decided more than three years after *Ible*, specifically rejected the argument that a district court must allow attorney-conducted *voir dire*.

Similarly, the defendant's reliance on *United States* v. *Davis*, 583 F.2d 190, 196-97 (5th Cir. 1978) and *Silverthorne* v. *United States*, 400 F.2d 627, 638 (9th Cir. 1968) for this proposition is misplaced.  Specifically, neither of those cases addressed the question of whether attorney-conducted *voir dire* is required, let alone preferential to Court-conducted *voir dire*. Rather, they reversed the district courts for their failure to undertake a more thorough examination of panel members regarding their exposure to certain publicity that had bearing on the case.  *See Davis*, 583 F.2d at 196 ("The court should have determined what in particular each juror had heard or read and how it affected his attitude toward the trial, and should have determined for itself whether any juror's impartiality had been destroyed."); *Silverthorne*, 400 F.2d at 638 (finding the district court's *voir dire* examination inadequate because "(1) the questions propounded by the court to the prospective jurors were calculated to evoke responses which were subjective in nature – the jurors were called upon to assess their own impartiality for the court's benefit; and (2) the entire voir dire examination was too general to adequately probe the prejudice issue.").   Neither of those cases held that attorney-conducted *voir dire* would have remedied the issues that the appellate courts identified.

## 2.   There Are Practical and Legal Considerations that Weigh Heavily in Favor of Court-Conducted *Voir Dire*

In addition to the fact that Court-conducted *voir dire* is the long-standing and accepted practice in this District, and the fact that the defendant's motion fails to identify how attorney-conducted *voir dire* would improve the process, there are practical, legal considerations that support use of the accepted procedure here.  The three countervailing considerations are: (i) maintaining the efficiency of the *voir dire* process; (ii) to prevent counsel from asking legally impermissible questions or introducing potential legal error into the *voir dire* process; and (iii) maintaining the jury's role as a neutral arbiter of facts.

12

First, the Second Circuit has noted the risk of miring the *voir dire* process down with unnecessary questioning: "[I]ndeed, it was exactly the purpose of Criminal Rule 24(a), which allows the judge to frame questions on the voir dire if he thinks best, to avoid the interminable examinations sometimes extending for weeks on end that had frequently resulted from the former method.  If trial by jury is not to break down by its own weight, it is not feasible to probe more than the upper levels of a juror's mind."  *United States* v. *Dennis*, 183 F.2d 201, 226-27. To that end, the Second Circuit affirmed a district judge's decision refusing "to put to the jurors specific questions framed by the defense," and instead rely upon more general questions.  *Id.*  As one former district judge in this District noted after commenting that "throughout its more than three decades of judicial service," he has always conducted the voir dire examination in civil and criminal cases:

> It is a notorious that in state courts, where lawyers conduct the examination, the selection of a jury may take longer than the trial proper and in cases that have received publicity, even a month or more may be consumed before a jury is empanelled, which Chief Judge Learned Hand described as "the interminable examination sometimes extending for weeks on end," all with little effect on the ultimate fairness of the trial.

*Wilson*, 571 F. Supp. at 1429.  Indeed, appellate courts routinely have upheld district courts' tailoring of *voir dire* to ensure efficiency.  *See*, *e.g.*, *Dennis*, 183 F.2d at 227.  For example, in *Hamling* v. *United States*, 418 U.S. 87, 139-40, 94 S. Ct. 2887, 2918-19 (1974), the Supreme Court rejected a challenge to the sufficiency of *voir dire*.  Specifically, the defense had requested the district court to ask questions as to whether the jurors' educational, political, and religious beliefs might affect their views on the question of obscenity.  418 U.S. at 139, 94 S. Ct. at 1918. The Supreme Court cited with approval the reasoning of the Ninth Circuit.:

> The District Court asked many of the questions as submitted, many in altered and consolidated form, *and declined to ask many others*

13

*which were cumulative and argumentative*.  The handling of those questions not asked was clearly within the range of the District Court's discretion in the matter and no clear abuse of the discretion nor prejudice to the (petitioners) has been shown.

*Id.* (emphasis added).

A second, and equally compelling, reason to prohibit attorney-conducted *voir dire* is because of the risk that an attorney may ask a legally improper question.  As a practical matter, if an attorney conducts *voir dire* and asks an improper question, the opposing party is forced to object to the question in the front of the other jurors.  What is more, though, is that the Court then must issue a curative instruction.  For example, in *United States* v. *Ledee* – a case relied upon by the defendant – the Fifth Circuit noted one such instance.  549 F.2d at 992.  Specifically, the Fifth Circuit noted an instance in which defense counsel was personally permitted to question the prospective jurors.  As part of his questioning, the attorney asked "if at the close of this case the evidence appears to be well balanced, or even, would you tend to favor one side or the other?"  *Id.*  The court then was forced immediately to caution the jurors that questions that call for conclusions of law must be first addressed to the court.  *Id.*

The procedure implemented by this Court – which is the procedure that has been used in this District – does not give rise to either of these risks.  In the first instance, by requiring the parties to submit their proposed *voir dire* questions ahead of time, the Court is in a position to tailor the *voir dire* in such a manner that it adequately addresses the parties' concerns, while at the same time ensures that the process will be conducted efficiently and fairly.  With respect to the second concern, the parties and the Court will be able to address any concerns about the nature of the questions in advance of the actual questioning.  As such, any arguments about the propriety of a particular question will be aired outside the presence of the jury, and the Court can make its rulings without having to issue curative instructions.

14

Lastly, the Court's questioning of the jurors maintains the jurors' role as neutral arbiters of the facts, and reduces the risk that jurors will establish a rapport with a particular attorney.  As Judge Wienfeld noted in denying a similar motion, "[i]t is a blunt fact that at times the thrust of the inquiry where lawyers conduct the voir dire, as in the state courts, is not to obtain a fair and impartial jury, but rather by a calculated effort to establish a rapport with a juror or jurors in the hope of encouraging partiality in favor of the client."  *Wilson*, 571 F. Supp. at 1428.  This concern was echoed at the Proceedings of the 1982 Annual Judicial Conference of the Second Circuit of the United States:

> While lawyers often speak of the constitutional importance of the Seventh Amendment, namely, a guaranteed trial by an impartial and unbiased jury, in fact they do not seek an impartial jury.  What they generally want selected is a jury fairly disposed toward the principles of their client's cause. . . .
>
> We know that the experienced lawyers, the ones who do know how to question jury panels, are aware that they are trying to create a climate of understanding and rapport, not only between themselves and the jury, but between the jurors themselves, as to the objectives they seek.

97 F.R.D. 545, 558 (1983) (remarks of Claire, J.).  By conducting the examination of the jurors through the Court alone, this risk is eliminated in its entirety.

Accordingly, these practical and legal considerations warrant denial of the defendant's motion.

### 3.  Numerous Post-9/11 Terrorism Trials Have Been Conducted in this District Without Resort to the Extraordinary Measure of Attorney-Conducted *Voir Dire*

In the face of this precedent, the defendant contends that this case is unique because it "is being tried in post-9/11 Manhattan within blocks of the World Trade Center site."  As such, Pham argues that attorney-conducted *voir dire* "will substantially increase the likelihood that any

15

hidden prejudices of prospective jurors will be uncovered."  Def. Mot. at 15.  The Court should reject this argument.

As with his prior arguments about the possibility of prejudice from media reporting, Pham has identified nothing about the use of attorney-conducted *voir dire* that would better identify "hidden prejudices" derived from the tragic events of September 11, 2001.  Nor has Pham identified a single case in which this factor resulted in a Court granting a motion of attorney-conducted *voir dire*.

To the contrary, every terrorism case identified by the Government that has been tried in this District in the wake of September 11, 2001, has relied upon exclusively Court-conducted *voir dire*.  *See*, *e.g.*, *United States* v. *Fawwaz*, (S7) 98 Cr. 1023 (LAK) (S.D.N.Y. 2015) (Kaplan, J.); *United States* v. *Mustafa*, 04 Cr. 356 (KBF) (S.D.N.Y. 2014) (Forrest, J.); *United States* v. *Abu Ghayth*, (S10) 98 Cr. 1023 (LAK) (S.D.N.Y. 2014) (Kaplan, J.); *United States* v. *Nayyar*, (S1) 09 Cr. 1037 (RWS) (S.D.N.Y. 2012) (Sweet, J.); *United States* v. *Bout*, 08 Cr. 365 (SAS) (S.D.N.Y. 2012) (Scheindlin, J.); *United States* v. *Siddiqui*, 08 Cr. 826 (RMB) (S.D.N.Y. 2010) (Berman, J.); *United States* v. *al Kassar*, 07 Cr. 354 (JSR) (S.D.N.Y. 2009) (Rakoff, J.); *United States* v. *Kassir*, 04 Cr. 356 (JFK) (S.D.N.Y. 2009) (Keenan, J.); *United States* v. *Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y. 2007) (Preska, J.); *United States* v. *Stewart*, 02 Cr. 395 (JGK) (S.D.N.Y. 2004) (Koeltl, J.).

Accordingly, there is ample precedent in post-September 11, 2001 terrorism prosecutions for Court-conducted *voir dire*.  As such, the defendant's motion should be denied on that basis as well.

**CONCLUSION**

For all of the foregoing reasons, the defendant's motion for attorney-conducted *voir dire* should be denied.

Dated: New York, New York
December 23, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      /s/
Sean S. Buckley
Anna M. Skotko
Shane T. Stansbury
Assistant United States Attorneys
212-637-2261 / 1591 / 2641

17