UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

      -against-                                               12 Cr. 423 (AJN)

MINH QUANG PHAM,

                Defendant.
------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## TO AN ANONYMOUS JURY AND INCREASED SECURITY MEASURES

**Bobbi C. Sternheim, Esq.**
**33 West 19th Street – 4th Floor**
**New York, NY 10010**
**212-243-1100**

1

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO AN ANONYMOUS JURY AND INCREASED SECURITY MEASURES

This memorandum of law is submitted on behalf of defendant Minh Quang Pham in opposition to the government's publicly filed Motion for Anonymous Jury and Other Protective Measures.[1]

Juror anonymity presents substantial risks to the traditional deliberative processes of juries, undermining the presumption of innocence and diluting the standard of proof. This Second Circuit has recognized that allowing an anonymous jury carries with it "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989). The combination of juror anonymity with protective security measures, including daytime sequestration and transport to and from an undisclosed location at the beginning and end of each trial day, compounds these risks and threatens Pham's right to a fair trial.

The Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury.  *See* U.S. Const. amend VI.  The Supreme Court has long recognized that "*[v]oir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored.  Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States,* 451 U.S. 182, 188 (1981)(plurality opinion).  Pham deserves "a full and fair opportunity to exposes bias or prejudice on the part of venire [persons]" and "there must be sufficient information elicited on *voir dire* to permit a defendant to intelligently exercise

---

[1] The government's motion, filed on PACER, is available to the public, including the media and prospective jurors.

2

not only his challenges for cause, but also peremptory challenges." *United States v. Barnes,* 604 F.2d 121, 139 (2d Cir. 1979), *cert. denied*, 446 U.S. 907 (1980) (internal quotations and citations omitted).  The use of anonymous juries in criminal trials challenges the fundamental values protected by the defendant's right to a fair trial, namely, the presumption of innocence and the requirement of proof beyond a reasonable doubt, rights which have become increasingly more fragile with the advent of 24/7 news cycles and the boundless Internet.

     Juror anonymity impairs a defendant's presumption of innocence, threatens judicial integrity, and disrupts the ability of counsel to investigate jurors for bias.  Making a jury anonymous sends a signal to the jurors that the defendant on trial is a very dangerous people, thereby undermining the presumption of innocence.[2]  This negative first impression cannot be cured by a jury instruction.[3]  Juror anonymity hampers the *voir dire* process by shielding the parties from knowing basic identifying information about prospective jurors, compromising the ability to make critical cause and peremptory challenges.

---

[2] An anonymous jury "ominously signals the jurors that you are so dangerous that you cannot be trusted with their names." Former federal prosecutor John Markham, 2(8) California State Bar Bull. June 1992.

[3] Researchers who have studied jurors' behavior strongly suggest that anonymity poses grave risks to the some of the fundamental values that underlie trial by jury and are more likely to return guilty verdicts. Research confirms the powerful influence of each juror's first impression of a defendant and the impact that array of first opinions has on the jury's subsequent valuation of the evidence, deliberations and decision making, thereby burdening the presumption of innocence. *See, e.g.,* V.P. Hans and N. Vidmar, *Judging the Jury* 110 (Plenum, 1986); L. Hazelwood and J.C. Brigham, *The Effects of Juror Anonymity on Jury Verdicts*, 22 Law & Hum. Behavior, 695-713 (1998) (study showed that anonymous juries lead to a higher rate of conviction (70%) than non-anonymous juries (40%)). *See, generally,* M. McCormick, *Juror Anonymity*, Jury Selection, 4th Ed., Ch. 4, (Wolters Kluwer, 2012)

Judges have considerable latitude in conducting the affairs of their courtroom so long as courtroom procedures do not communicate a bias against the defendant.  From the moment the prospective jurors enter the courthouse, they have reason to be concerned about safety.   Being subject to security screening upon entering the courthouse signals to jurors that they are entering a venue requiring heightened security. The jurors are likely to observe government counsel, staff and witnesses avoid the magnetometer due to exemption and breeze through while Pham's counsel stands in line until she clears security screening (requiring her to remove her coat, shoes, belts, and wristwatch before walking through the magnetometer while her briefcase and personal belongs are run through a scanner).  This visible double standard provides a logical basis for jurors to be suspicious of defense counsel and, in turn, her client, defendant Pham. The chilling effect continues when prospective jurors are instructed not to reveal their names, their addresses or the names of their employers; are told that this case concerns terrorism; and observe Pham, who may be dressed in traditional Muslim attire, and learn that he is a practicing Muslim. Requiring juror anonymity signals that the jurors need heightened protection which may further impact the ability to seat a fair and impartial jury.

The use of anonymous juries began in this courthouse in the trial of drug kingpin Leroy "Nicky " Barnes (*United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979)), and became the norm in organized crime cases in the Southern and Eastern Districts.  The prevalent use of anonymous juries in organized crime cases has more recently been extended to cases involving terrorism.  What should be a last resort is now a standard tactical weapon used by the prosecution with the imprimatur of the Court.

In *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), *cert. denied*, 474 U.S. 819 (1985), the Second Circuit outlined basic standards for determining when the use of an anonymous jury is constitutional:

> [T]here must be, at first, strong reason to believe that the jury needs protections and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on jurors' opinions of the defendants.

*Id.* at 1365.

In rejecting a *per se* rule against anonymity, the *Thomas* court conceded the potential burden of jury anonymity of the defendant's presumption of innocence. Recognizing that the prejudicial impact on the defendant could not be eliminated totally, the Court endorsed concealing from the jury the real reason for anonymity (which in that case was to prevent jury tampering) and approved an instruction that deliberately made no mention of the true reason, only of the necessity to prevent media curiosity from interfering with the jurors' sworn duty to consider only the evidence when deciding the case. This rationale may not incite curiosity on the part of the individual summoned for the first time to jury service, but would likely be questioned by any veteran of jury service. Moreover, media coverage and Internet sites have focused on the true reasons for juror anonymity, including the government's public filing outlining the reasons for this heightened security measure. In contrast, the Court will attempt to mask this reality by informing the jurors that anonymity and sequestration are required to "ensure their privacy."

Notably, the Third Circuit, while approving a "white-lie" instruction regarding juror anonymity, conceded that a corrective instruction is a "subterfuge which conceal[s] the

5

actual reason for preserving anonymity." *United States v. Scarfo*, 850 F.2d 1015, 1025 (3d Cir. 1988)[4]

In *United States v. Vario*, 943 F.2d 236 (2d Cir. 1991), the Second Circuit addressed the fear issue in the context of juror anonymity:

> The invocation of the words "organized crime," "mob," or "Mafia," unless there is something more, does not warrant an anonymous jury. This something more can be a demonstrable history or likelihood of obstruction of justice on the parts of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety.

*Id.* at 241.

That same standard applies here with respect to the government's invocation of terrorism and *al Qaeds of the Arabic Peninsula*. Indeed, there have been others cases with direct connection to terrorism and *al Qaeda* that have been tried in this district without anonymous juries. *See, e.g., United States v. Mostafa*, 04 Cr. 356 (KBF) (involving Muslim cleric charged with hostage taking, providing material support to *al Qaeda*, and facilitating violent j*ihad* in Afghanistan); *United States v. Sabir*, 05 Cr. 673 (LAP) (involving a U.S. citizen who swore *bayat* to *al Qaeda*); *United States v. Paracha*, 03 Cr. 1197 (SHS) (defendant alleged to have assisted *al Qaeda* operatives, including Khalid Sheik Mohamed, a senior *al Qaeda* operative and architect of the September 11th attack, as part of a plot to sneak *al Qaeda* personnel into the U.S. in connection with plans to detonate explosives at gas stations).

---

[4] Professor Alan Dershowitz was more blunt: "[L]ying to the jury is contagious and does not fool anyone. Judges who lie to juries undermine the system of justice more than does any fear of possible jury tampering." Nat'l L.J. at 22, col.4 (Nov. 2. 1987).

6

Last year, in the case of *United States v. Mostafa*, 04 Cr. 356 (KBF), the Honorable Katherine B. Forrest denied the government's similar request for an anonymous jury and related security measures in connection with the trial of Abu Hamza al-Masri, the Muslim cleric who, like Pham, was extradited from London. In denying the government's request, Judge Forrest stated: "The Government has presented no specific facts suggesting that such drastic measures are warranted; it has failed to establish that there is a strong reason to believe that the jury needs protection or that the defendant or this case presents a threat to the judicial process. Under such circumstances, the law in this Circuit does not support the empanelment of an anonymous jury." Opinion & Order, 04 Cr. 356 (KAF), Docket No. 262 (3/12/14).

Again, the government has failed to meet the requirements for the drastic measures sought. There has been no evidence, nor allegation, past or present of explicit threats to individuals or even a general threat of retaliation by Pham to warrant the precautionary and protective measures proposed by the government. As such, balancing the interest in safeguarding jurors with the defendants' interest in the presumption of innocence should tip in Pham's favor. Once the seeds of suspicion are planted by use of juror anonymity and sequestration, the jurors may attribute sinister implications to Pham's courtroom appearance and demeanor.

Jury service is a civic duty that citizens are expected to perform willingly when called upon to do so. Increasingly, it has become an opportunity for notoriety and profit for some individuals selected to serve on high-profile and special cases. The measures sought by the government signal that this is an unusual case increasing the interest of prospective

jurors to be a part of something special.  Jurors who serve on newsworthy cases are featured on television, interviewed in newspaper and magazine articles, and write memoirs regaling their jury service.   There is a fine line between being willing to serve, accepting the serious responsibility for passing judgment on a human life and being so eager to serve that prospective jurors are less than candid during jury selection. Previously in this District, egregious conduct by a non-anonymous juror infected the nation's then-largest tax fraud prosecution resulting in the granting of new trials. *See United States v. Daugerdas*, 09 Cr. 581 (WHP). [5]  Anonymity increases the opportunity for prospective jurors to conceal, misrepresent or lie about relevant issues in order to join the panel. When jurors are anonymous, the parties are deprived of the opportunity to verify juror responses and make informed decisions regarding cause and peremptory challenges.

In a number of prior terrorism cases, juror responses during *voir dire* indicate that prospective jurors in the Southern District often downplay the impact the events of September 11th have had on them.  Such responses signal a disregard or denial of the magnitude of the event, either purposefully or subconsciously.  Such answers may suggest a desire to serve that is motivated by an overactive sense of civic duty, by a desire to

---

[5] Judge Pauley termed the juror's lies "breathtaking." In her effort to be to make herself more marketable as a juror, the juror purposefully lied and omitted material information (*e.g.,* educational background, prior arrests and convictions, attorney disciplinary problems and suspensions from the practice of law, plaintiff in a personal injury suit, animus toward attorneys) during *voir dire* questioning. She intentionally provided numerous false and misleading answers and omitted material information calculated to prevent the court and parties from learning her true identity, which would have precluded her from serving on the jury.  (Judge Pauley appointed Pham's counsel to represent the miscreant juror at the Juror Misconduct Hearing.)

avenge past wrongs, by the hope of gaining public notoriety or by some other unknown motive, including signs of emotional weakness or embarrassment.

The very local catastrophic events of September 11th and ongoing acts of terrorism worldwide, most recently the attacks in Paris and San Bernardino, coupled with the widely broadcast anti-Muslim rhetoric of Donald Trump "have exacerbated the growth of Islamaphobia almost exponentially. Muslim defendants generally are viewed as guilty until proven innocent. Islam is often viewed as the cause rather than the context for radicalism, extremism, and terrorism." Lean, N., *The Islamophobia Industry*, Pluto Press (2002), p. x. Suffice it to say, the opportunity for securing a fair trial for Pham will be fraught with difficulties, compounded by juror anonymity and related security measures.

> [C]harges of engaging in or abetting acts of terrorism against the United States are likely to evoke in many members of the American population feelings of threat, perhaps physically, and certainly in terms of values associated with American life. . . When accused persons are ethnically [different] and adhere to the Muslim [sic] religion[,] generic prejudices about the links between these factors and terrorism are likely to be foremost in prospective juror's minds, even among those who do not harbor general hostility toward [ the ethnically different] and Muslims.  It is very plausible to hypothesize that these beliefs are present in all communities since all Americans are potential victims, though . . .they may vary in degree between communities.

Vidmar, N., *When All of Us Are Victims: Juror Prejudice and "Terrorist" Trials*, 78 Chi.-Kent L. Rev. 1143, 1150–51, 1150 n.48 (2003) (describing a range of manifestations including "initial assumptions about a defendant's guilt," and "influenc[ing] predeliberation").

Juror anonymity hampers the parties' ability to tease out bias.  "[J]ust as the trial court's finding of actual bias must derive from *voir dire* questioning, so the court is allowed to dismiss a juror on the ground of inferable bias only after having received responses from the juror that permit an inference that the juror in question would not be able to decide the

matter objectively.  In other words, the judge's determination must be grounded in facts developed during voir dire, whether or not the juror is asked the specific question of whether he or she could decide the case impartially.  Moreover, once facts are elicited that permit a finding of inferable bias, then, just as in the situation of implied bias, the juror's statements as to his or her ability to be impartial become irrelevant.  *United States* v. *Torres,* 128 F.3d 38, 47 (2d Cir. 1997).  *See also United States v. Greer*, 285 F.3d at 171; *United States v. Quinones*, 511 F.3d 289, 301 (2d Cir. 2007).  The doctrine of inferable bias, which courts have long "implicitly assumed to exist," *Torres*, 128 F.3d at 43, permits a court in its discretion to dismiss a juror because of an inference that the juror will not be able to decide the case based solely n the evidence.

Juror sequestration, even in the modified form proposed by the government, adds substantially to the aura of fear created by the use of an anonymous jury.  It further increases the risk that jurors will attribute the burdens imposed on them to go beyond mere privacy concerns. Juror anonymity and sequestration represent "ostensible display[s] of unusual precaution which might be interpreted as singling out defendant as a particularly dangerous or guilty person." *Hardee v. Kuhlman*, 581 F.2d 330, 332 (2d Cir. 1978).  Explaining that modified sequestration is necessary to protect jurors from the media is seriously undercut when accompanied by anonymity.

Pham opposes the government's motion in its entirety.  Should the Court be inclined to f grant the government's request, to any extent, the defense requests that the following be implemented to help counter-balance the potential prejudice caused by juror anonymity and sequestration:

10

- Permit partial attorney-conducted voir dire to vet juror bias, prejudice or predisposition.

- Conduct open-ended, individual juror *voir dire* sufficiently meaningful to permit an informed decision regarding cause and peremptory challenges.

- Require each juror to orally state responses to each question posed.

- Provide jurors' identities only to the lawyers for the parties under a protective order barring disclosure to the defendants and the public.

- Restrict the jury to a one designated entrance to the courthouse..

The defense reiterates previously stated concerns about the difficulty in ensuring a fair trial for Pham and the need to safeguard fragile constitutional rights in this increasingly prevalent climate of fear.

Dated:  December 30, 2015

                                            Respectfully submitted:

                                            *Bobbi C. Sternheim*

                                            Bobbi C. Sternheim, Esq.