G183PHAP                          Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                   v.                        12 CR 423 (AJN)

5   MINH QUANG PHAM,

6                   Defendant.

7   ------------------------------x

8                                            New York, N.Y.
                                             January 8, 2016
9                                            3:15 p.m.

10

    Before:
11
                        HON. ALISON J. NATHAN,
12
                                             District Judge
13

14                             APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    SEAN S. BUCKLEY
17  ANNA SKOTKO
    SHANE T. STANSBURY
18       Assistant United States Attorneys

19  LAW OFFICES OF BOBBI C. STERNHEIM
         Attorneys for Defendant
20  BOBBI C. STERNHEIM

21

22

23

24

25

G183PHAP                    Plea

1          THE DEPUTY CLERK:  U.S.A. v. Minh Quang Pham.

2    Parties, please state your name for the record.

3          MR. BUCKLEY:  Yes.  Good afternoon, your Honor.  Sean

4    Buckley, Anna Skotko, and Shane Stansbury for the government.

5    With us at counsel table is Julius Nutter and Brian Czakala

6    from the FBI.

7          MS. STERNHEIM:  Good afternoon, Happy New Year, Judge.

8    Bobbi C. Sternheim for Mr. Pham.  Also at counsel table is

9    Julian Joslin, who is my litigation paralegal.

10          THE COURT:  Good afternoon.

11          Mr. Pham, I've been informed that you wish to plead

12    guilty to Counts Two, Three, and Five of the indictment 12 CR

13    423.  Is that correct, sir?

14          THE DEFENDANT:  Yes, that's correct.

15          THE COURT:  Before I accept your guilty plea, I am

16    going to ask you certain questions so that I can establish to

17    my satisfaction that you wish to plead guilty because you are

18    guilty and not for some other reason, and also to establish

19    that you know what you will be giving up by pleading guilty.

20          If you don't understand any of my questions or you

21    want time to consult with your lawyer at any time for any

22    reason, just let me know.  I'll give you as much time as you

23    need.  Okay.

24          Because I will ask you questions today, I'm going to

25    place under oath.  So I'll ask you to stand and raise your

G183PHAP                        Plea

1   right hand.

2              (Defendant sworn)

3              THE COURT:  Please be seated.  Mr. Pham, because you

4   are now under oath, that means that if you answer any of my

5   questions falsely, you may be prosecuted for the separate crime

6   of perjury.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  What is your full name?

9              THE DEFENDANT:  Minh Quang Pham.

10             THE COURT:  How old are you?

11             THE DEFENDANT:  33.

12             THE COURT:  How far did you go in school?

13             THE DEFENDANT:  University.

14             THE COURT:  Where was that?

15             THE DEFENDANT:  Ravensbourne College of Design and

16   Communications.

17             THE COURT:  That's in the U.K.?

18             THE DEFENDANT:  In South London.

19             THE COURT:  Have you ever been treated for any mental

20   illness?

21             THE DEFENDANT:  No.

22             THE COURT:  Are you now or have you recently been

23   under the care of a doctor?

24             THE DEFENDANT:  No.

25             THE COURT:  How about a psychiatrist?

G183PHAP                    Plea

1              THE DEFENDANT:  No.

2              THE COURT:  Have you ever been treated for any type of

3     addiction?

4              THE DEFENDANT:  No.

5              THE COURT:  Including drug or alcohol addiction?

6              THE DEFENDANT:  No.

7              THE COURT:  Have you taken any drugs, medicine, pills,

8     or any alcoholic beverages in the past two days?

9              THE DEFENDANT:  No.

10             THE COURT:  Is your mind clear today?

11             THE DEFENDANT:  Yes.

12             THE COURT:  You understand what's happening here

13     today?

14             THE DEFENDANT:  Yeah.

15             THE COURT:  Does either counsel have any doubt as to

16     Mr. Pham's competence to plead at this time?

17             MR. BUCKLEY:  None from the government, your Honor.

18             MS. STERNHEIM:  No, your Honor.

19             THE COURT:  On the basis of Mr. Pham's responses to my

20     questions, my observations of his demeanor here in court, and

21     the representations of counsel, I do find that he is fully

22     competent to enter an informed plea of guilty at this time.

23             Mr. Pham, I want to confirm that you've received a

24     copy of the indictment in this case, the document that contains

25     the charges against you.  It is marked at the top 12 CR 423.

G183PHAP                          Plea

1        Have you received a copy of the indictment, sir?

2        THE DEFENDANT:  I have.

3        THE COURT:  Have you had you enough of a chance to

4   discuss with your lawyer the charges to which you intend to

5   plead guilty and any possible defenses to those charges?

6        THE DEFENDANT:  Yes, I have.

7        THE COURT:  Has your lawyer explained to you the

8   consequences of entering a plea of guilty?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Are you satisfied with your lawyer's

11   representation of you?

12        THE DEFENDANT:  Yes, I am.

13        THE COURT:  I'm now going to explain certain

14   constitutional rights that you have.  These are rights you'll

15   be giving up if you enter a guilty plea.  Please listen

16   carefully to everything I'm about to say.  Again, if there is

17   anything you don't understand, let me know, and either I or

18   your lawyer will explain the matter more fully.

19        Under the Constitution and laws of the United States,

20   you have a right to plead not guilty to the charges in the

21   indictment.  Do you understand that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  If you did plead not guilty, you would be

24   entitled to a speedy and public trial by a jury on the charges

25   contained in the indictment.  Do you understand that?

G183PHAP                    Plea

1          THE DEFENDANT:  Yeah.

2          THE COURT:  At a trial, you would be presumed to be

3    innocent, and the government would be required to prove you

4    guilty by competent evidence beyond a reasonable doubt before

5    you could be found guilty.  Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  A jury of 12 people would have to agree

8    unanimously that you were guilty, and you would not have to

9    prove that you were innocent if you were to go to trial.  Do

10   you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At that trial, and at every stage of your

13   case, you would be entitled to be represented by a lawyer.  If

14   you couldn't afford a lawyer, one would be appointed at public

15   expense, that is free of cost to you, to represent you.  Do you

16   understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  During a trial, the witnesses for the

19   government would have to come to court and testify in your

20   presence.  Your lawyer could cross-examine the witnesses for

21   the government, object to evidence offered by the government,

22   and offer evidence on your own behalf if you so desired.  You

23   would have the right to have subpoenas issued or other process

24   used to compel witnesses to testify in your defense.  Do you

25   understand that?

G183PHAP                    Plea

1          THE DEFENDANT:  Yeah.

2          THE COURT:  At a trial, although you would have the

3     right to testify if you chose to do so, you would also have the

4     right not to testify.  If you decided not to testify, no one,

5     including the jury, could draw any inference or suggestion of

6     guilt from fact that you did not testify.  Do you understand

7     that?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  If you were convicted at a trial, you

10    would have the right to appeal that verdict.  Do you understand

11    that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Even now, as you're entering this plea,

14    you have the right to change your mind, plead not guilty, and

15    go to trial on the charges contained in this indictment.  Do

16    you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  But if you plead guilty, and if I accept

19    your plea, you will give up your right to a trial and the other

20    rights I've just discussed, other than the right to a lawyer

21    which you have regardless of whether or not you plead guilty.

22    But if you plead guilty, there will be no trial, and I'll enter

23    a judgment of guilty, and then at a later date I'll sentence

24    you on the basis of your plea after I've considered a

25    presentence report that will be prepared by the probation

G183PHAP                    Plea

1    department, and whatever submissions I get from your lawyer,

2    and from the government.  Do you understand that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  If you plead guilty, there will be no

5    trial, and no appeal with respect to whether you did or did not

6    commit these crimes.  Do you understand that?

7                THE DEFENDANT:  Yes.

8                THE COURT:  If you plead guilty, you will also have to

9    give up your right not to incriminate yourself, because I'll

10   ask you questions today about what you did in order to satisfy

11   myself that you are guilty as charged.  You'll have to admit

12   and acknowledge your guilt.  Do you understand that?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Mr. Pham, are you willing to give up your

15   right to a trial and the other rights I've just discussed?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Turning to the charge against you, you

18   understand that you're charged with the following:

19                    In Count Two, you're charged with material support of

20   a foreign terrorist organization; in Count Three, you're

21   charged with participating in a conspiracy to receive

22   military-type training from a foreign terrorist organization;

23   and in Count Five, you are charged with possessing or carrying

24   a firearm in furtherance of a crime of violence.

25                    Do you understand that those are the charges against

G183PHAP                     Plea

1    you that you've indicated you wish to plead guilty to?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Mr. Buckley, I will ask you to state the

4    elements of the offenses in question.

5                    MR. BUCKLEY:  Yes, your Honor.  With respect to Count

6    Two of the indictment, at trial the government would have to

7    prove the following elements beyond a reasonable doubt:

8                    First, that the defendant provided material support or

9    resources; second, that the defendant provided such support or

10   resources to an officially designated foreign terrorist

11   organization; third, that the defendant acted knowingly in

12   doing so, in that he acted voluntarily and intentionally and

13   not because of mistake or accident, and that he knew that the

14   foreign terrorist organization was either designated as a

15   foreign terrorist organization, or was engaged in terrorist

16   activity, or terrorism; and fourth, that after the conduct

17   required for the offense occurred, the defendant was brought

18   into or found within the United States.

19                   With respect to Count Three of the indictment, the

20   government would have to prove the following elements beyond a

21   reasonable doubt:

22                   First, the existence of an unlawful agreement among

23   two or more persons to violate the laws of the United States;

24   second, that the defendant knowingly and willfully joined that

25   unlawful agreement with knowledge of its unlawful objective,

G183PHAP                    Plea

and here the unlawful objective alleged is to receive military

training from a foreign terrorist organization; and third, that

an overt act was committed by either the defendant or a

co-conspirator in furtherance of the charged conspiracy.

With respect to Count Five of the indictment, at trial

the government would have to prove each of the following

elements beyond a reasonable doubt:

First, that the defendant used, carried, or possessed

a firearm; second, that the defendant used or carried a firearm

during and in relation to a crime of violence, here the crimes

of violence alleged are Counts Two and Three of the indictment,

or that the defendant possessed the firearm in furtherance of

such crimes; third, that the defendant acted unlawfully,

willfully, and knowingly.

In addition, with respect to Count Five, in order to

trigger the enhanced penalty provisions of Title 18, United

States Code, Section 924(c)(1)(B)(ii), the government would

also have to show beyond a reasonable doubt that the firearm

that the defendant used, possessed, or carried in furtherance

of those crimes of violence was a machine gun, which is a

firearm that is capable of automatically firing more than one

shot without manual reloading by a single function of the

trigger.

And finally, with respect to each of Counts Two,

Three, and Five of the indictment, the government would have to

G183PHAP                     Plea

1    establish that venue is proper here in the Southern District of

2    New York by a preponderance of the evidence.

3              THE COURT:  Thank you.

4              Mr. Pham, did you hear the lawyer for the government

5    state what the elements of the three counts are that you intend

6    to plead guilty?

7              THE DEFENDANT:  I did hear.

8              THE COURT:  You understand if you were to go to trial,

9    the government would have to prove all of those elements beyond

10   a reasonable doubt?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  Now I'm going to talk to you about the

13   possible punishments that you face for these crimes, and I'm

14   going to describe the maximum possible punishments as well as

15   any applicable mandatory minimum punishments.  The maximum

16   means the most that could possibly be imposed.  It doesn't mean

17   that's what you'll receive, but you do have to understand by

18   pleading guilty you are exposing yourself to the possibility of

19   receiving any combination of punishments up to the maximum that

20   I'm about to describe.  Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  So first I am going to talk to you about

23   the maximum possible restrictions on your liberty.  The maximum

24   term of imprisonment for Count Two is 15 years, which could be

25   followed by up to a lifetime of supervised release.  Do you

G183PHAP                    Plea

1    understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Just before I go on to the other counts,

4    I'll pause for a moment on that term "supervised release."

5    That means if you were released from prison and in the United

6    States, you would be subject to supervision by the probation

7    department.  There would be rules of supervised release that

8    you'd have to follow.  And if you were to violate those rules,

9    you could be returned to prison without a jury trial to serve

10   additional time, with no credit for time you served in prison

11   as a result of your sentence, and no credit for any time spent

12   on post-release supervision.  Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  For clarity, I want to make sure everyone

15   agrees the applicable maximum sentence that applies is the

16   statute in effect at the time of the charged commission, which,

17   as I just indicated here, is 15 years.  Correct?

18             MR. BUCKLEY:  That's correct, your Honor.

19             THE COURT:  For Count Two.

20             MS. STERNHEIM:  We agree.

21             THE COURT:  Thank you.  So, returning to the maximum

22   punishments that you face, Mr. Pham, I've indicated for Count

23   Two it's 15 years, which could be followed by a lifetime of

24   supervised release.  For Count Three it's five years, which

25   could be followed by up to three years' supervised release.

G183PHAP                          Plea

1    You understand that?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  And in Count Five, it is a maximum term of

4    life imprisonment, which could be followed by up to five years'

5    supervised release.  Do you understand that?

6              THE DEFENDANT:  Yeah.

7              THE COURT:  In addition to understanding the maximum

8    punishment that could be imposed, you should understand there

9    are mandatory minimum punishments that attach to the crime that

10   you are pleading guilty to.  That means that even if I wanted

11   to, I would not be allowed to sentence you to less than the

12   minimum.  And in this case, Count Five carries a mandatory

13   minimum punishment of 30 years' imprisonment.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  The term of imprisonment imposed on Count

17   Five must be imposed consecutively, that is, after any term of

18   imprisonment that I impose with respect to Counts Two and

19   Three.  Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  So do you understand it's possible, taking

22   the counts together, that you could be sent to prison for up to

23   a lifetime of imprisonment, with a mandatory minimum term of 30

24   years?  Do you understand that?

25             THE DEFENDANT:  Yes.

G183PHAP                    Plea

1          THE COURT:  In addition to these restrictions on your

2    liberty, the maximum possible punishment also includes certain

3    financial penalties.  The maximum allowable fine for Count Two

4    is $250,000 or twice the gross gain derived from the offense or

5    twice the gross loss to persons other than yourself.  It is the

6    same maximum fines for Count Three, as well as for Count Five.

7    Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  In addition, I can order restitution to

10   any person or entity injured as a result of your criminal

11   conduct.  And I can also order you to forfeit all property

12   derived from the offense or used to facilitate the offense.  Do

13   you understand that?

14         THE DEFENDANT:  Yeah.

15         THE COURT:  In your plea agreement with the

16   government, it is indicated that you admit the forfeiture

17   allegation with respect to Counts Two and Three of the

18   indictment, and agree to forfeit to the United States any

19   property which constitutes or is derived from proceeds

20   traceable to the offense, including, but not limited to,

21   $10,000.

22         Do you admit to this forfeiture allegation?

23         THE DEFENDANT:  I do.

24         THE COURT:  You agree to forfeit any property that

25   constitutes or is derived from proceeds traceable to the

G183PHAP                         Plea

1    offense?

2              THE DEFENDANT:  I do.

3              THE COURT:  Finally, I must also order a mandatory

4    special assessment of $100 per count.

5              Do you understand what I've just described are the

6    maximum possible financial penalties you face for these crimes?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Mr. Pham, am I correct that you are not a

9    United States citizen?

10             THE DEFENDANT:  That's correct.

11             THE COURT:  You understand that because you are not a

12   United States citizen, that your guilty plea and conviction

13   make it very likely that your deportation, properly called

14   removal from the United States, is presumptively mandatory.  Do

15   you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you discussed the removal or

18   deportation issues with your attorney?

19             THE DEFENDANT:  I have.

20             THE COURT:  Further, pursuant to your plea agreement,

21   you've agreed to the entry of a stipulated judicial order of

22   removal.  Is that correct?

23             THE DEFENDANT:  Sorry.  Could you repeat that again?

24             THE COURT:  Sure.  Pursuant to your plea agreement,

25   you've agreed to the entry of a stipulated order of removal.

G183PHAP                    Plea

1          THE DEFENDANT:  I did, yeah.

2          THE COURT:  I think what I'll do, after we discuss the

3    plea agreement in more detail, I'll put the documents in front

4    of you that pertain to the stipulation of order of removal, and

5    make sure that you've had enough time to review those and

6    discuss them with your attorney.

7          But let's first turn to your sentence.  I want to make

8    sure that you understand that if your lawyer or anyone else has

9    attempted to predict what your sentence will be, that

10   prediction could be wrong.  No one, not your lawyer, not the

11   government's lawyer, no one can give you any assurance of what

12   your sentence will be, since I am going to decide your sentence

13   and I'm not going to do it now.  I'm going to wait until I

14   receive the presentence report that will be prepared by the

15   probation department that I mentioned a moment ago, I'll do my

16   own independent calculation of the sentencing guideline range,

17   I'll consider it and any possible departures from it, and

18   determine what a reasonable sentence is for you based on the

19   sentencing factors contained in a statute called 18, U.S.C.,

20   Section 3553(a).

21          Do you understand all that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have you discussed these issues with your

24   lawyer?

25          THE DEFENDANT:  We have.

G183PHAP                    Plea

1            THE COURT:  So even if your sentence is different from

2    what your lawyer or anyone else has told you it might be, even

3    if it is different from what you expect or what is contained in

4    a written plea agreement that you've entered into with the

5    government, you'll still be bound by your guilty plea, and

6    you'll not be allowed to withdraw your plea of guilty.  Do you

7    understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  I understand that there is a written plea

10   agreement entered into between you and your lawyer and the

11   lawyer for government.  Is that correct?

12           THE DEFENDANT:  I'm sorry?

13           THE COURT:  There is a written plea agreement?

14           THE DEFENDANT:  Oh, yes.

15           THE COURT:  I have the original of the plea agreement

16   here in front of me.  It's dated on the front page January 5,

17   2016.  It appears to be nine pages long.

18           I'll ask my deputy to please mark that as Court

19   Exhibit 1, and place the original in front of Mr. Pham.

20           Mr. Buckley, when we're finished discussing the plea

21   agreement, I'll ask the government to retain the original in

22   its records.

23           MR. BUCKLEY:  We will do so, your Honor.

24           THE COURT:  Thank you.

25           Mr. Pham, do you have the original of the plea

G183PHAP                           Plea

1     agreement in front of you?

2              THE DEFENDANT:  I have.

3              THE COURT:  On the first page, is it dated January 5,

4     2016?

5              THE DEFENDANT:  It is, yes.

6              THE COURT:  Is it nine pages long?

7              THE DEFENDANT:  It's nine pages long, yes.

8              THE COURT:  On the last page, the ninth page, is that

9     your signature?

10             THE DEFENDANT:  Yes, that's my signature.

11             THE COURT:  You signed that?  It's dated January 6,

12    2016.  Is that when you signed it?

13             THE DEFENDANT:  That's correct, yeah.

14             THE COURT:  Did you sign it in the presence of your

15    lawyer?

16             THE DEFENDANT:  Yes, I did.

17             THE COURT:  Did you read the document before you

18    signed it?

19             THE DEFENDANT:  We went over it, yes.

20             THE COURT:  You believe you fully understood it before

21    you signed it?

22             THE DEFENDANT:  Yes.

23             THE COURT:  One of the features of your agreement with

24    the government is that you agreed on a guideline range that

25    applies in this case, something called the stipulated guideline

G183PHAP                         Plea

1    range.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  In your plea agreement, the stipulated

4    guideline range is 600 months, that is 50 years' imprisonment,

5    with a mandatory minimum term of 360 months, that is 30 years'

6    imprisonment.

7              Do you understand that's the stipulated guideline

8    range?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And the mandatory minimum we discussed

11   earlier?

12             THE DEFENDANT:  Yeah.

13             THE COURT:  It is important to understand that

14   agreement is binding on you, it is binding on the government.

15   It is not binding on me.  As I said a moment ago, I have my own

16   obligation to determine the correct guideline range and what

17   the appropriate sentence is in your case.  I'm not saying I'll

18   come up with a range different than the one you entered into

19   with the government.  But if I do, I'll not let you withdraw

20   your plea, even if the range I determine is higher than the one

21   that you agreed to with the government.  Do you understand

22   that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  In your plea agreement, you waived your

25   right to appeal or otherwise challenge any sentence that is 600

G183PHAP                        Plea

1   months or below.  In other words, if I were to sentence you to

2   600 months or anything less than 600 months, you would have no

3   right to appeal or otherwise try to challenge that sentence.

4   Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Mr. Pham, I want to just confirm that this

7   written plea agreement that we've been discussing constitutes

8   your complete and total understanding of the entire agreement

9   between you and the government.  Is that correct?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Other than what's written in this

12   agreement, has anyone made any promise or offered you any

13   inducement to plead guilty or to sign the agreement?

14            THE DEFENDANT:  No.

15            THE COURT:  Has anyone threatened you or forced you to

16   plead guilty or to sign the plea agreement?

17            THE DEFENDANT:  No.

18            THE COURT:  Has anyone made a promise to you as to

19   what your sentence will be?

20            THE DEFENDANT:  No.

21            THE COURT:  What I'll ask you to do now, Mr. Pham, is

22   to tell me in your own words what you did that makes you

23   believe that you are guilty of the three counts in the

24   indictment that you wish to plead guilty to.

25            THE DEFENDANT:  Yes, Judge.  For Count Two, in 2011,

G183PHAP                    Plea

1    while in Yemen, I provided material support to a designated

2    foreign terrorist organization known as al Qaeda in the Arabian

3    Peninsula, which I knew at the time to be an organization

4    engaged in terrorist activity and terrorism.  I directed --

5    which is directed against the United States.  Among other

6    things, I did so by assisting in the preparation of AQAP's

7    propaganda, Inspire Magazine.

8           For Count Three, in 2011, while in Yemen, I agreed

9    with others, including a United States he was a member of AQAP.

10   Sorry.  Including a United States citizen who was a member of

11   AQAP to receive military training from AQAP.  In furtherance of

12   this unlawful agreement, I received training in the use and

13   assembly of a firearm from members of AQAP.

14          At the time that I entered into this agreement, I knew

15   that AQAP was an organization engaged in terrorist activity and

16   terrorism.  In addition, I entered into this agreement

17   knowingly and willfully with knowledge of its unlawful

18   objectives.

19          And regarding Count Five, in 2011, while in Yemen, in

20   furtherance of the crimes charged in Counts Two and Three of

21   the indictment, I knowingly and willfully carried and used an

22   automatic Kalashnikov assault rifle which was a machine gun

23   capable of automatically firing more than one shot without

24   reloading by a single function of the trigger.

25          THE COURT:  Mr. Buckley, are there any questions you'd

G183PHAP                    Plea

1    like me to ask Mr. Pham or any proffers from the government?

2              MR. BUCKLEY:  Yes, your Honor.  I guess as an initial

3    matter, will the government be presented with an opportunity to

4    proffer its evidence that it would have offered at trial?

5              THE COURT:  It will.

6              MR. BUCKLEY:  Thank you, Judge.  So in addition to

7    what Mr. Pham has allocuted to, the government also proffers

8    that it would establish that venue was proper in the Southern

9    District of New York because, after committing the crimes to

10   which the defendant just admitted, he was first brought into

11   this district as defined under Title 18, U.S. Code, Section

12   3238.

13             And in addition, the government also proffers with

14   respect to Counts Two and Three of the indictment, that al

15   Qaeda in the Arabian Peninsula, or AQAP as the defendant also

16   referred to it, is in fact a designated foreign terrorist

17   organization as defined in the statute.

18             THE COURT:  I take it that there are no questions

19   you'd like me to ask, and the government agrees the factual

20   allocution is sufficient?

21             MR. BUCKLEY:  So long as the defendant stipulates that

22   those two facts are true.

23             THE COURT:  Yes, thank you.  Ms. Sternheim, any

24   objection to the government's proffers regarding those

25   additional elements?

G183PHAP                  Plea

 1          MS. STERNHEIM:  No.  We concede that Mr. Pham was

 2    brought into this district.  I believe it was in Westchester,

 3    which is the Southern District of New York.  And we agree that

 4    al Qaeda of the Araban Peninsula was a designated terrorist

 5    organization.

 6          THE COURT:  Mr. Pham, you agree with those two

 7    statements of your counsel?

 8          THE DEFENDANT:  Yes, I do.

 9          THE COURT:  Thank you.  I'll note, Mr. Pham, that as

10    is normal of defendants, when you made your allocution to me,

11    you were reading from a document.  I want to make sure that you

12    understood everything you read.

13          THE DEFENDANT:  I did.

14          THE COURT:  You fully accept those words as your own?

15          THE DEFENDANT:  Yes.

16          MS. STERNHEIM:  Your Honor, I'd like to state for the

17    record that the allocution was discussed with Mr. Pham.  It was

18    just written out for purposes of clarity today.

19          THE COURT:  Thank you.  I appreciate that, and as

20    indicated, that is standard procedure, so thank you.

21          Ms. Sternheim, do you know of any valid defense that

22    would prevail at trial or any reason why your client should not

23    be permitted to plead guilty?

24          MS. STERNHEIM:  No, I do not.

25          THE COURT:  Mr. Buckley, as promised a moment ago, I

G183PHAP                    Plea

1   would ask that you summarize what the government's evidence

2   would be if Mr. Pham were to go to trial.

3          MR. BUCKLEY:   Thank you, your Honor.  At trial, the

4   government would establish the following through a combination

5   of witness testimony, electronic evidence, physical evidence,

6   documentary evidence, as well as the defendant's own

7   post-arrest statements to the FBI.

8          The government would show that in or about

9   December 2010, Pham traveled from the United Kingdom to Yemen

10   in order to join al Qaeda in the Arabian Peninsula, which I

11   will refer to as AQAP for ease of reference.  The government

12   further would establish that AQAP was a foreign terrorist

13   organization designated as such by the United States Secretary

14   of State in January 2010, and remained so designated at all

15   times relevant to the indictment.  The government also would

16   show that AQAP was a foreign terrorist organization that had

17   pledged allegiance to al Qaeda, and engaged in attempted

18   attacks against the United States, United States citizens, and

19   United States interests.

20          In addition, the government would show that following

21   the defendant's arrival in Yemen, in or about 2011, Pham

22   traveled to an AQAP safe house in Yemen where he joined AQAP,

23   swore an oath of loyalty to AQAP, and he did so knowing that

24   AQAP was an organization engaged in terrorist acts and

25   terrorism directed against the United States and other Western

G183PHAP                    Plea

countries.

          After joining AQAP, the government would show that

Pham provided various forms of material support and resources

to AQAP.  Some examples of what the government would show at

trial include provision of his person to AQAP in order to

receive military training from and wage jihad on behalf of

AQAP, providing his services and expert assistance as a graphic

designer by assisting AQAP in the preparation of AQAP's

propaganda magazine, Inspire, and thereby facilitating

communication between AQAP in Yemen and its supporters

worldwide, and also supplying AQAP with electronic equipment,

including the defendant's camera as well as a laptop computer.

          As part of this proof at trial, the government would

also introduce evidence from a cooperating witness who met with

Pham during his time at AQAP's safe houses.  This was a

cooperating witness who was in Yemen at the same time as Pham,

and who subsequently himself pled guilty to providing material

support to, among others, AQAP.

          The cooperating witness would have described, among

other things, the following:  That Pham admitted to traveling

to Yemen in order to join AQAP, and admitted to in fact joining

AQAP.  That Pham described to the cooperating witness how he

had received training in the use and assembly of a machine gun,

specifically an AK-47 assault rifle, and the cooperating

witness would describe that in the course of his interactions

G183PHAP                    Plea

1   with Pham, he observed Pham carrying an AK-47 assault rifle

2   with him during his time with AQAP.  And lastly, the

3   cooperating witness would describe how he and Pham exchanged

4   electronic computer files, including military training manuals

5   and other jihadist literature.

6            As part of its proof, particularly related to that

7   aspect of the cooperating witness's testimony, the government

8   would introduce evidence and testimony from forensic computer

9   examiners who would testify that forensic analysis performed on

10  both Pham's electronic media that was subsequently seized from

11  him, as well as the electronic media that was seized from the

12  cooperating witness, that there were forensic means to link

13  those various forms of media that showed that files had been

14  exchanged between the two pieces of media, and that the media

15  themselves had been linked.

16           In addition to that, your Honor, the government would

17  also proffer Pham's own Mirandized post-arrest statements to

18  the FBI which he made following his extradition to the United

19  States and formal arrest by the FBI.

20           Among other things, we would offer from Pham's own

21  statements the following:  Pham admitted that he had traveled

22  to Yemen in order to join AQAP, knowing that AQAP was a foreign

23  terrorist organization engaged in terrorist activities and

24  terrorism.  That Pham worked with other members of AQAP,

25  including U.S. citizens, to prepare and disseminate AQAP's

propaganda magazine Inspire.  That Pham admitted that he

received training from AQAP in the use and assembly of an AK-47

assault rifle, and he possessed such a rifle while in Yemen.

That Pham identified himself in photographs obtained from

AQAP's Inspire Magazine, and photographs in which he was

holding an AK-47 assault rifle and other photographs showing

him assembling an assault rifle.

        In addition, we would offer testimony that Pham

admitted that he had been trained directly by a U.S. citizen

and senior operative of AQAP named Anwar al-Awlaki in how to

construct an explosive device using household or commercially

available materials.  And Pham further admitted that al-Awlaki

directed Pham to return to the United Kingdom where Pham was to

construct an improvised explosive device, and to detonate the

device at the arrivals area of Heathrow International Airport,

specifically targeting arrivals from the United States or

Israel.

        In connection with that, Pham admitted that al-Awlaki

provided Pham with the cash equivalent of approximately $10,000

in United States currency to further that operational activity.

        In addition to that testimony, the government would

also offer physical evidence seized from Pham, including a

round of AK-47 ammunition, his electronic media, and other

documents showing his travel to Yemen.

        And as I indicated in the government's proffer, we

G183PHAP                    Plea

1   would also establish that venue is proper in the Southern

2   District because Pham was first brought here as defined under

3   the statute.

4              THE COURT:  Thank you, Mr. Buckley.

5              Mr. Pham, did you hear the prosecutor's statements

6   just now?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Did you do the things that he described?

9              MS. STERNHEIM:  Your Honor, there are things that

10  Mr. Buckley raised that are beyond the scope of the indictment.

11  Mr. Pham accepts full responsibility for what he has been

12  charged with.  I believe it would be fair for us to be able to

13  put in in our sentencing submission some things that we believe

14  bear on some of what the government stated.

15             We are not objecting to anything that supports the

16  elements of the charges to which Mr. Pham pleaded guilty.  But

17  he is using Mr. Pham's own statements with regard to

18  instructions that were given to him, and there is no proof that

19  Mr. Pham did anything to follow out, as far as the allegations

20  of causing any harm in Heathrow.

21             I don't think that this is the proper forum for us to

22  be debating this, but in response, I would just like to make

23  that statement.

24             THE COURT:  With respect to the aspects of the

25  government's description that go to the allocuted elements of

G183PHAP                    Plea

1    the defense, you have no objection?

2              MS. STERNHEIM:  No, we do not.

3              THE COURT:  Mr. Buckley, are you comfortable with the

4    allocution?

5              MR. BUCKLEY:  Yes, your Honor.

6              THE COURT:  As am I.  Thank you.  Let me then confirm

7    with both sides, is there any reason that you know of that I

8    should not accept Mr. Pham's plea of guilty?

9              MR. BUCKLEY:  Not from the government, your Honor.

10             MS. STERNHEIM:  No, your Honor.

11             THE COURT:  Mr. Pham, based on everything that we've

12   discussed, I am going to ask you formally how you wish to plead

13   to Counts Two, Three, and Five of the indictment, 12 CR 423.

14             THE DEFENDANT:  Guilty.

15             THE COURT:  Because you acknowledge that you are in

16   fact guilty as charged in the indictment, because I am

17   satisfied that you know of your rights, including your right to

18   go to trial, and that you are aware of the consequences of your

19   plea, including the sentence which may be imposed, and because

20   I find that you are knowingly and voluntarily pleading guilty,

21   I accept your guilty plea and enter a judgment of guilty on

22   Counts Two, Three, and Five of the indictment.

23             I did want to turn to the specific documents

24   pertaining to the government's notice of intent to request

25   judicial removal.  There are I think three pertinent documents:

G183PHAP                      Plea

1    The notice itself, which I'll ask my deputy to mark as Court

2    Exhibit 2; the defendant's plea statement in support of

3    judicial removal, which I'll ask be marked as Court Exhibit 3;

4    and then there is a proposed order of judicial removal which

5    we'll mark as Court Exhibit 4.  I'll ask that those as well as

6    the consent preliminary order of forfeiture be placed in front

7    of Mr. Pham.  We'll mark that as Court Exhibit 5.

8              Mr. Pham, I want to first focus on the three documents

9    that pertain to removal.  There is the notice of intent to

10   request judicial removal, which is marked as Court Exhibit 2,

11   there is factual allegations in support of judicial removal,

12   Court Exhibit 3 -- sorry.  No.  Court Exhibit 3 is defendant's

13   plea statement in support of judicial removal, and then there

14   is a proposed order of judicial removal which is marked as

15   Court Exhibit 4.

16             Have you seen these documents, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Have you had time to discuss them with

19   your attorney?

20             THE DEFENDANT:  We have.

21             THE COURT:  Specifically turning to what's been marked

22   as Court Exhibit 3, defendant's plea statement in support of

23   judicial removal, do you have that in front of you?

24             THE DEFENDANT:  Yes.

25             THE COURT:  On the last page, is that your signature?

G183PHAP                          Plea

1              THE DEFENDANT:  That's my signature.

2              THE COURT:  You signed it January 6, 2016?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You signed it in the presence of your

5     attorney?

6              THE DEFENDANT:  I did.

7              THE COURT:  You read it before you signed it?

8              THE DEFENDANT:  Yeah.

9              THE COURT:  You believe you understood it before you

10    signed it?

11             THE DEFENDANT:  I did.

12             THE COURT:  Turning to what's been marked as Court

13    Exhibit 5, which is a consent order of forfeiture, again, I

14    want to make sure that you have that in front of you.  It is

15    marked as Court Exhibit 5.

16             THE DEFENDANT:  Yeah.

17             THE COURT:  Is that your signature on the last page?

18             THE DEFENDANT:  It's my signature.

19             THE COURT:  What date did you sign it?

20             THE DEFENDANT:  The 6th of January.

21             THE COURT:  Did you sign that in the presence of your

22    attorney?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Did you read it before you signed it?

25             THE DEFENDANT:  Yes.

G183PHAP                    Plea

1        THE COURT:  And understood it before you signed it?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Mr. Buckley, any further allocution

4   regarding the removal documents?

5        MR. BUCKLEY:  No, your Honor.

6        THE COURT:  Then I have the proposed order of removal

7   as well as the forfeiture order prepared for my signature.

8        Turning to the presentence report that will be

9   prepared, Mr. Pham, the one that I mentioned throughout the

10  hearing today, the probation department will want to interview

11  you in connection with that report that it will prepare.

12       Ms. Sternheim, does defense counsel wish to be present

13  for any interview in connection with the report?

14       MS. STERNHEIM:  Yes, we do.

15       THE COURT:  I do order that there be no interview

16  unless counsel is present.  I hereby order the preparation of

17  the presentence report.

18       Mr. Pham, if you do choose to speak to the probation

19  department, please make sure that anything you say is truthful

20  and accurate.  I will read the report carefully, and it is

21  important to me in deciding what sentence to impose.  You and

22  your counsel have a right to examine the report and to comment

23  on it at the time of sentencing.  I do urge you to read it and

24  discuss it with your lawyer before sentencing.  If there are

25  any mistakes in it, point them out to Ms. Sternheim so she can

G183PHAP                    Plea

```
1    bring them to my attention before sentencing.

2            We have a agreed-upon sentencing date of April 14,

3    2016, at 11 a.m.  Mr. Buckley?

4            MR. BUCKLEY:  Yes, your Honor.

5            THE COURT:  Ms. Sternheim?

6            MS. STERNHEIM:  Yes.

7            THE COURT:  Sentencing is set for that date.  I direct

8    the government to provide the probation officer with its

9    factual statement within seven days, and Ms. Sternheim, please

10   arrange for the defendant to be interviewed by the probation

11   department within the next two weeks.

12           I do refer counsel to my individual rules and

13   practices for criminal cases available on the court's website

14   which contains some rules regarding sentencing submissions.  I

15   am going to deviate slightly from those rules.  Was that your

16   request?

17           MR. BUCKLEY:  Yes, your Honor.

18           THE COURT:  Did you have a specific request?  I was

19   going to do two weeks one week.

20           MR. BUCKLEY:  That's what I discussed with defense

21   counsel, and that's what we were going to propose.

22           MS. STERNHEIM:  I would also request, if I need a

23   brief reply, that I do it within three days.

24           THE COURT:  All right.  Let's do that.  So, the

25   defense opening submission is due two weeks in advance of the
```

G183PHAP                          Plea

 1   sentencing, the government's submission one week, and the reply

 2   by the defendant, if any is to be filed, three days in advance

 3   of sentencing.

 4          Counsel, is there anything further I can address at

 5   this time?

 6          MR. BUCKLEY:  Not from the government.  Thank you,

 7   your Honor.

 8          MS. STERNHEIM:  No, thank you.

 9          THE COURT:  The defendant is continued to be held in

10   custody pending sentencing, and I'll see everyone on April 14.

11          Thank you.  We are adjourned.

                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25