U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 11, 2016

**BY ECF**

Honorable Alison J. Nathan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States* **v.** *Minh Quang Pham*,
                  12 Cr. 423 (AJN)

Dear Judge Nathan:

        The Government respectfully writes in sur-reply to the defendant's reply sentencing memorandum, dated May 2, 2016 (the "Def. Reply"). Specifically, the Government responds to the arguments made by the defendant for the first time in reply regarding the reliability of statements made by CW-1. The Court should reject the defendant's arguments and consider the information provided by CW-1 in imposing sentence.

        As an initial matter, the statements of CW-1 – which are set forth in detail in the Probation Office's Presentence Report to which the defendant did not object – are admissible in their entirety in the sentencing context. This is so because, in determining the appropriate Sentencing Guideline offense level, the Court is permitted to consider "any appropriate evidence." *United States* v. *Prince*, 110 F.3d 921, 925 (2d Cir. 2002) (emphasis added). Indeed, the Supreme Court has emphasized the importance of the sentencing Court gathering, and relying upon, as much information as is possible. *See*, *e.g.*, *Williams* v. *New York*, 337 U.S. 241, 247 (1949) ("[h]ighly relevant ─ if not essential ─ to [a judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics"); *see also United States* v. *Tucker*, 404 U.S. 443, 446 (1972). In light of these principles, the Court of Appeals unambiguously has held that hearsay evidence may be relied upon in the sentencing context. *See*, *e.g.*, *United States* v. *Reese*, 33 F.3d 166, 174 (2d Cir. 1994) ("when determining sentence, a sentencing court is free to consider hearsay evidence"); Rule of Evidence 1101(d)(3) (hearsay rule inapplicable at sentencing); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

        The reliability of CW-1's statements – as set forth in the Presentence Report, *see generally* PSR ¶¶ 32-38 – is substantial. First, the statements relied upon by the Probation Office

Hon. Alison J. Nathan, U.S.D.J.
May 11, 2016
Page 2

were averred statements made by CW-1 to agents of the Federal Bureau of Investigation and the United Kingdom's Metropolitan Police. *See* Exhibit 11 (CW-1 sworn statement). Second, CW-1's signed statement was made after consultation with, and while in the presence of, U.S. defense counsel, with the understanding that CW-1 would be subject to prosecution if he willfully stated anything in it which he knew to be false or did not believe to be true. *See id.* Third, CW-1's sworn statements are corroborated in many ways, including the forensic analyses of CW-1's media and Pham's media, as well as physical evidence recovered from Pham. *See*, *e.g.*, PSR ¶¶ 38, 43 (describing overlap between Pham and CW-1's electronic media); ¶¶ 40-41 (describing seizure of AK-47 bullet and Pham's admission that it was a round of ammunition for an AK-47 assault rifle). Fourth, in addition to these powerful indicia of reliability, Pham's own Mirandized statements thoroughly and completely corroborate CW-1's account of his interactions with Pham during CW-1's time in Yemen. *Compare* Exhibit 11 (CW-1 sworn statement) *with* Exhibits 1-A, 1-B, 1-C, 1-D. As such, the truthfulness and accuracy of CW-1's statements have been established by overwhelming evidence, which clearly establishes the facts set forth therein by the preponderance standard employed at sentencing.

Against this legal and factual backdrop, Pham in his reply papers for the first time "urge[s] the Court not to credit [CW-1]'s information" based upon the unsubstantiated claim that CW-1's statements "may be unreliable and the product of coerced interrogation." Def. Reply at 3. Without any basis in fact, the defense contends that "[t]here is reason to believe that whatever [CW-1] is alleged to have stated during his surreptitious interrogation, he was required to adopt in order to obtain a cooperation agreement," and that "there is a real issue that the circumstance and conditions of [CW-1]'s detention . . . compromised the reliability of the information that the government has proffered to the Court." *Id.* Pham does not cite to any evidence – within the record or without – to support these spurious allegations.[1] And this is not surprising, because there is none. To the contrary, when these same baseless arguments were raised in the U.K. courts in connection with Pham's extradition proceedings, the U.S. government publicly and unambiguously stated as follows:[2]

> With regard to [CW-1]'s detention on board a United States Navy vessel prior to his landing in the Southern District of New York, the defense's claims of torture are entirely without factual basis. [CW-1] was not tortured, abused, or in any way mistreated.

Moreover, Pham concedes that there is no evidence to support these unsupported allegations. To that end, Pham argues that "[h]ad Pham elected to proceed to trial, motion practice would have challenged the reliability of [CW-1]'s testimony due to" an unspecified

---

[1] To the contrary, CW-1's signed statement clearly states that he was making the statement pursuant to an assistance agreement signed by his legal team and a U.S. law enforcement officer, and that he was making the statement after discussion with his legal team. *See* Exhibit 11.

[2] In ordering Pham's extradition, the U.K. courts found that there was no evidence to support the claim that CW-1 was tortured or otherwise mistreated, found that there is no real risk that the evidence that CW-1 would give was obtained by torture or inhuman and degrading treatment, and dismissed the defense arguments in that regard.

Hon. Alison J. Nathan, U.S.D.J.
May 11, 2016
Page 3

"unorthodox method of his capture, detention and interrogation." Def. Reply at 3. Putting aside the fact that any such motion would fail both as a matter of law, *see United States* v. *Leonardi*, 623 F.2d 746 (2d Cir. 1980), and as a matter of fact, given that there was no misconduct; by entering his guilty plea, Pham specifically waived his right to object to evidence offered by the Government at trial, *see* 01/18/2016 Plea Tr. at 6.

As such, the Court should reject the defendant's invitation to embrace baseless speculation, and should credit CW-1's corroborated information for purposes of sentencing.

The Court similarly should reject Pham's argument that he is entitled to a reduced sentence because his role "is minor, if not minimal" when compared to CW-1. Def. Reply at 1-2. This argument provides no basis for a variance for several reasons. For example, CW-1 has not yet been sentenced. In addition, CW-1, unlike Pham, pleaded guilty pursuant to a cooperation agreement, and has cooperated with the Government for more than five years. As such, any comparison of Pham to CW-1 for purposes of a variance at sentencing is inapposite. Finally, even if such a comparison were appropriate, the Second Circuit repeatedly has emphasized that a minor role reduction " 'will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' . . . as compared to the average participant in such a crime.' " *United States* v. *Carpenter*, 252 F.3d at 235 (quoting *United States* v. *Rahman*, 189 F.3d 88, 159 (2d Cir. 1999)). After all, "[i]f participation in the offense were measured solely in relation to the co-defendants, the anomaly would arise that a deeply involved participant would be rewarded with a downward adjustment, just because his co-defendants were even more culpable." *United States* v. *Neils*, 156 F.3d 382, 383 (2d Cir. 1998). Thus, the sentencing court "is required to gauge the defendant's culpability relative to the elements of the offense of conviction as well as in relation to the co-conspirators." *Id.* "A sentencing court is not bound to accept [a] defendant's self-serving characterizations of his role in an offense." *United States* v. *Shonubi*, 998 F.2d at 90. As set forth in greater detail in the Government's sentencing memorandum, Pham's role in this offense was anything but minor.

As always, the undersigned are available to answer any questions the Court may have.

                                       Respectfully yours,

                                       PREET BHARARA
                                       United States Attorney

by:  /s/
                    Sean S. Buckley
                    Anna M. Skotko
                    Shane Stansbury
                    Assistant United States Attorneys
                    (212) 637-2261 / 1591 / 2641

cc: Bobbi C. Sternheim, Esq. (Counsel for defendant)