G5gdphas                         Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              12 Cr. 0423(AJN)

5    MINH QUANG PHAM,

6                  Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              May 16, 2016
9                                             2:05 p.m.

10
     Before:
11
                         HON. ALISON J. NATHAN,
12
                                              District Judge
13

14                           APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     SEAN S. BUCKLEY
17   ANNA SKOTKO
     SHANE T. STANSBURY
18        Assistant United States Attorneys

19   LAW OFFICES OF BOBBI C. STERNHEIM
          Attorneys for Defendant
20   BOBBI C. STERNHEIM

21           – also present –

22   SA Brian Czekala
     SA Julius Nutter, Federal Bureau of Investigation
23

24

25

G5gdphas                          Sentence

1              THE CLERK:  U.S. v. Minh Quang Pham.

2              Parties, please state your name for the record,

3     starting with the government.

4              MS. SKOTKO:  Good afternoon, your Honor.  Anna Skotko,

5     Sean Buckley and Shane Stansbury for the government, and with

6     us at counsel table are FBI Special Agents Julius Nutter and

7     Brian Czekala.

8              THE COURT:  Good afternoon to all of you.

9              For the defendant.

10             MS. STERNHEIM:  Good afternoon, your Honor.  Bobbi

11    Sternheim for Minh Quang Pham, who is seated at counsel table.

12             THE COURT:  Good afternoon, Ms. Sternheim, and good

13    afternoon, Mr. Pham.

14             I'll repeat.  Good afternoon to everyone.

15             MS. STERNHEIM:  Good afternoon.

16             THE COURT:  Right.  We are here today for sentencing

17    in United States v. Pham.  In preparation for today's

18    proceeding, I have reviewed the probation report, which is

19    dated March 31, 2016.  I've also received and reviewed the

20    following additional submissions:

21             I have the defendant's submission, which is dated

22    April 22, 2016.  Attached to it are Exhibits A through L, and

23    just to state what each of those are:  Exhibit A is a personal

24    statement from Mr. Pham to the Court.  B is statement from

25    Mr. Pham explaining his post-arrest interviews and statements.

G5gdphas                          Sentence

C through K are letters from friends and family members and a

former student.  L is a forensic psychological evaluation.  In

addition to those exhibits, I have watched the video statements

of friends and relatives submitted on Mr. Pham's behalf.

        I have the government's submission, which is dated

April 29, 2016.  It has attached as exhibits the following:

        Exhibit 1A through D, are statements made by Mr. Pham.

Exhibit 2 is materials from Inspire.  Exhibit 3 is an email

from Mr. Pham to his wife.  Exhibits 4A and B are notes and

transcript from his interviews in the U.K. in July of 2011.

Exhibit 5 is photographs of cash seized from Mr. Pham upon his

return to the U.K.  Exhibit 6 is a photograph of a live

ammunition round that was found on Mr. Pham upon his return to

Heathrow Airport in 2011.  Exhibit 7 is a U.K. forensic report

related to searches of Mr. Farm's electronic media that were

seized upon his arrest in the U.K.  Exhibit 8 is printouts of

an IM chat that Mr. Pham had after his return to London.

Exhibit 9 is a summary chart of convictions and sentences cited

in the defense submission.  And Exhibit 10 is a CD that

contains underlying judgments and related documents for cases

cited in the defense submission, that is to say, the cases

summarized in the Government's Exhibit 9.  As my chambers

communicated with counsel, I was unable to access these

materials until this morning when the government provided a

password but I was able to access them after that.

G5gdphas                           Sentence

1         I have the defendant's reply submission, which is

2    dated May 2, 2016, and I have the government's surreply, dated

3    May 11, 2016, which has an Exhibit 11 attached, and that is a

4    sworn statement of a cooperating witness.

5         Counsel, is there anything else I should have in front

6    of me for purposes of sentencing?

7         MS. SKOTKO:  Nothing from the government, your Honor.

8         MS. STERNHEIM:  None from the defense.  Thank you.

9         THE COURT:  And could you confirm that you each

10   received each other's submissions and were able to access all

11   of the materials?

12        MS. STERNHEIM:  I was able to, your Honor.

13        MS. SKOTKO:  Yes, your Honor.

14        THE COURT:  All right.  Thank you.

15        All right.  Turning to the presentence report.

16        Ms. Sternheim, I know that you have, but for the

17   record, can you confirm that you have read the presentence

18   report and discussed it with your client?

19        MS. STERNHEIM:  Yes.  I confirm that.

20        THE COURT:  And, Mr. Pham, I want to make sure that

21   you had an opportunity to review the presentence report and go

22   over it with Ms. Sternheim and if there were any errors, an

23   opportunity to raise them with her.  Did you have that

24   opportunity?

25        THE DEFENDANT:  I had.

G5gdphas                              Sentence

1          THE COURT:  Thank you.

2          And, Ms. Skotko, can you please confirm that you have

3     reviewed the presentence report?

4          MS. SKOTKO:  Yes, your Honor.  The government has

5     reviewed the presentence report and we have no objections.

6          THE COURT:  All right.  Then I'll put the question as

7     well to Ms. Sternheim.  Putting aside the calculation of the

8     Sentencing Guidelines for a moment, are there any objections to

9     the report regarding factual accuracy?

10          MS. STERNHEIM:  None other than what I put in my reply

11     concerning statements made by the cooperating witness which we

12     believe have some factual basis but are exaggerated.

13          THE COURT:  All right.  Well --

14          MS. STERNHEIM:  And, Judge, I would just add, I'm not

15     contesting their relationship to the sentence to be imposed.

16     The substance of the counts to which Mr. Pham has pled guilty

17     are independent of those statements.  It is just a matter of

18     accuracy.

19          THE COURT:  OK.  Well, I actually think we should just

20     get to this point, then, because to me it is significant, which

21     is that there is a factual dispute contained in the written

22     submissions and it appears to me significant because it is from

23     the perspective of each side on this factual issue that the

24     ultimate sentencing arguments are made, with the government

25     advocating based on its factual assertions that Mr. Pham should

G5gdphas                         Sentence

be sentenced to 50 years and the defense, based on its

rejection and counter-assertions of this factual question, that

Mr. Pham should be sentenced to no more than 30 years.

          And just to state what I understand to be the factual

dispute, the government says that Mr. Pham volunteered to

return to the U.K. and to recruit individuals to AQAP and to

martyr himself by carrying out a suicide bombing at Heathrow

Airport that would target either American or Israeli civilians.

The government says that Mr. Pham took affirmative steps to

carry this out, including receiving bomb-making training and

specific instructions, and argues that it was likely Mr. Pham's

detention and then arrest in the U.K. that interrupted his

plans.

          As I read the defense submissions, a very different

factual contention is asserted.  It is claimed that he became

disillusioned with AQAP before he departed Yemen and that he

left the organization in July of 2011, that he made statements

to al-Aulaqi about carrying out violence in the U.K. only so

that he would be permitted to leave Yemen or return to his

family, and that he never had any intention of carrying out

violence.

          And my question is isn't this a factual dispute that

needs to be resolved for purposes of sentencing?

          MS. STERNHEIM:  It certainly is a factual dispute.

When I was speaking before, I was speaking with regard to the

1    confidential source, who I don't think has tremendous bearing

2    on this issue, but this issue is a major issue.  Yes, it is.

3            THE COURT:  No side has indicated, but let me confirm

4    if either side is seeking a _Fatico_ hearing for purposes of

5    resolution of that factual issue?

6            MS. STERNHEIM:  We are not.

7            MS. SKOTKO:  Your Honor, the government does not.

8            THE COURT:  All right.  I had assumed that from the

9    submissions but I do -- and have I articulated the factual

10   dispute correctly from each side's perspective?

11           MS. STERNHEIM:  Yes, your Honor.  And I would just

12   note that that is a factual dispute that really comes after the

13   conduct that formed the basis of the plea.  I know that this

14   matter was tangentially raised at the time of the plea and I

15   indicated that I would address it as I have.  But suffice it to

16   say no violent activity was engaged in by Mr. Pham, and he

17   certainly was at liberty for a six-month period, from July of

18   2011, when he returned from Yemen, until the time of his arrest

19   by British authorities in December of 2011, and after that is

20   when his extradition was sought.  But there were no steps taken

21   to support his alleged intention to commit any violence

22   whatsoever, and we maintain that position.

23           THE COURT:  All right.  I gather this will be taken up

24   again, but just as a procedural matter, I think I have clarity

25   but I also want to just state that -- and you could make the

G5gdphas                     Sentence

1    arguments that you like from the record before me, but I'll

2    tell you that my inclination based on the materials before me

3    is to accept the government's version of the facts, and so I do

4    want to confirm finally that it is not the defense's request to

5    seek any kind of evidentiary hearing in furtherance of the

6    arguments made as to the factual dispute.

7              MS. STERNHEIM:  May I confer with Mr. Pham?

8              THE COURT:  Please.

9              (Pause)

10             THE COURT:  Ms. Sternheim, I don't want you to feel

11   rushed in any way.  I would be happy to step down to give you

12   some time to confer with Mr. Pham or I'm happy to wait here,

13   too.

14             MS. STERNHEIM:  I certainly don't want to belabor

15   this, but I would like to explain the circumstances and the

16   consequences of that to Mr. Pham as it was not something we

17   were pursuing.  So if the Court could give us five minutes?

18             THE COURT:  I'm happy to do that.  I will step down,

19   and give an indication to Ms. Nunez when you are ready to

20   proceed.

21             MS. STERNHEIM:  I will.

22             THE COURT:  Thank you.

23             THE CLERK:  All rise.

24             (Recess)

25             THE COURT:  Ms. Sternheim.

1          MS. STERNHEIM:  Yes, Judge.  I'm not convinced that

2     Mr. Pham completely understands either the procedure or the

3     ramifications of going forward, and in light of that I would

4     like an opportunity for me to confer with him about that.  So,

5     I would ask that we not go forward today --

6          THE COURT:  OK.

7          MS. STERNHEIM:  -- in light of that, because he is

8     firm -- we are firm in the position that we stated.  And if the

9     Court is basing sentence in part on that, I think that is an

10    issue that needs to be resolved and I would like an opportunity

11    to explore this with him, perhaps confer with the government,

12    and then alert your Honor if in fact we are going to request a

13    hearing.

14         THE COURT:  All right.  Ms. Skotko.

15         MS. SKOTKO:  Yes, your Honor.

16         It is the government's position that we have met our

17    burden with respect to the evidence at sentencing of both the

18    CW's statements and the plot once the defendant returned to the

19    U.K. by more than a preponderance of the evidence.  At this

20    point, if the defense does choose to request a Fatico hearing,

21    it is our position that the burden would be on the defendant

22    because he has not put forward any evidence to undermine the

23    evidence submitted by the government, and so it would be his

24    burden to either take the stand and put forward a contrary

25    story or put forward other witnesses.

G5gdphas                          Sentence

1          THE COURT:  Ms. Sternheim, do you want to respond to

2     that as a preliminary matter?

3          MS. STERNHEIM:  Yes, I would.

4          With regard to the conduct, I think the fact that for

5     six months there was no action taken towards this plot that the

6     government feels it has met its burden on is powerful evidence,

7     and --

8          THE COURT:  May I ask a record question based on that

9     and then a reasonable inference question?

10          So the record question is:  Didn't Mr. Pham -- isn't

11     there evidence in the record to suggest that Mr. Pham knew he

12     was being -- he had been questioned, he thought, on the basis

13     of suspicion of terrorism when he was originally detained in

14     the U.K. upon his return from Yemen, and is it a reasonable

15     inference that he, in light of that, either assumed -- assumed,

16     rightly or wrongly, that he was under surveillance or

17     investigation for terrorism, which means that the value of that

18     six months of nonaction has diminished significance?

19          MS. STERNHEIM:  I would take issue with that, Judge.

20     The fact that the matter is -- if one were to analyze this

21     along the lines of someone who is willing to martyr himself, it

22     could be done.  I don't think that surveillance alone would

23     stop it.  We have no indication that he was on 24-hour

24     surveillance.  He led his life.  He came and went.  He did

25     nothing to indicate that he was going to do what the government

G5gdphas                        Sentence

1    believes he was going to do.

2            And certainly if he was headstrong on doing something

3    terrible, which I only bring up for purposes of argument, when

4    al-Aulaqi was killed by a drone, someone who would be so devout

5    would have acted, perhaps, as a loan wolf at that point and

6    nothing happened.  Now, certainly if the Court wishes to accept

7    the fact that he may have been under surveillance and that's

8    why he didn't do it, I don't think there is anything to support

9    that, and I can't put forth witnesses to say otherwise.  But

10   this is a man who came and went for a six-month period and

11   engaged in no violent activity.

12           And I would just also add, while we're talking about

13   his coming into the United States, he was stopped, searched --

14           THE COURT:  Into the U.K.

15           MS. STERNHEIM:  Into the U.K., excuse me.

16           -- en route from Yemen in Bahrain.  Everything was

17   taken from him.  Everything was given back to him.

18           So he entered the U.K.  Yes, the bullet became an

19   issue but he was released, and nothing came of it until that

20   time when he was arrested in December.

21           So we are aware of nothing to support anything to

22   confirm an inference that could be drawn from the Court's

23   suggestion that because he knew he had been stopped.  And when

24   he was stopped, they let him go and nothing happened.  And then

25   he was detained.

G5gdphas                          Sentence

He was later arrested in connection with these

charges.  He was put in general population in the U.K.  There

wasn't concerns about him being a terrorist later on here, and

then he was extradited to the United States.

But he has been firm from the first day that I met him

with regard to the fact that it was never his intention to

commit any violence and certainly not to commit any violence

upon return to the U.K.

THE COURT:  All right.  Anything further, Ms. Skotko,

before we adjourn on the understanding that Ms. Sternheim

requests more time to consult Mr. Pham and make sure he's aware

of his rights and the decision regarding potentially seeking a

Fatico hearing?

MS. SKOTKO:  Yes, your Honor.

First of all, the government categorically disputes

Ms. Sternheim's rendition of the facts.  For a period of time,

from July 2011 through his arrest in December of 2011, not only

the actions but also the statements of Mr. Pham show that he

knew he was under surveillance.  He told the FBI that he

understood that there were communications between the

government, where he was first stopped and searched, and the

U.K. authorities, and so he expected to be stopped when he got

on the plane.  He expected to be searched and questioned, which

he was.  So he understood that the U.K. authorities were aware

of his travels and incidents related thereto.

G5gdphas                         Sentence

1          He then also tells FBI that he contacts -- after

2     returning to the U.K. he contacts al-Aulaqi using essentially a

3     burner phone, an old cell phone in which he inserted a new SIM

4     card just for the purpose of calling the number that al-Aulaqi

5     had given him to call him after he was back in the U.K. to

6     signal to AQAP that he was safe and he was still on track with

7     his mission.

8          He also has the chats, that your Honor referenced in

9     one of our exhibits, describing his positive experience in

10    Yemen, and his statements to the CW saying that he wanted to

11    martyr himself, that jihad was more important than family, that

12    he had no desire to return home.

13         All of these things, among others, which the

14    government would show at a hearing if necessary, show that he,

15    far from withdrawing from AQAP, far from showing any remorse or

16    reform, his efforts once he got back to the U.K. were to

17    continue his mission and to continue the agenda of AQAP.

18         With that said, I would like to request that if we are

19    going to take an adjournment, perhaps we could try to set a

20    later time this afternoon to see whether the defendant has

21    reached a decision as to whether to proceed.  Any time today

22    the government is available and then, if not, we can adjourn

23    for a later date, but while we are all here today, perhaps we

24    can do it and continue moving forward.

25         THE COURT:  Ms. Sternheim.

G5gdphas                        Sentence

1              MS. STERNHEIM:  Your Honor, I would not be prepared to

2      make a decision today, and as the Court may know, I have a

3      very, very tight schedule.  So this is going to have to be put

4      off for a while.  I have one more day in New York and then I

5      will be in the Western District of New York for the summer on

6      trial.

7              THE COURT:  When would you propose an adjournment for?

8              MS. STERNHEIM:  August.  I have been required by Judge

9      Geraci, the Chief Judge, to be committed until August 12th.  I

10     am optimistic that it will be over before then, but in light of

11     his direction, I am just reporting that to the Court.  But

12     certainly I would be prepared beforehand.  And, your Honor, if

13     for some reason I can in short matter resolve this and indicate

14     that we are not going forward, I can tell you when I will be in

15     New York, if that makes a difference to the Court.

16             THE COURT:  Well, let me make one suggestion.  Since

17     you are here, Mr. Pham is here, that, assuming that you arrange

18     it with the marshals, that you just have some time now to meet

19     and discuss with him.  If you were to indicate that based on

20     that you are ready to go forward today, we could do it and, if

21     not, not.  I mean in no way to pressure that decision one way

22     or the other but just to give the opportunity to speak to him

23     now since you have time allotted now and he's here and you're

24     here.

25             MS. STERNHEIM:  Yes, I understand that, your Honor,

G5gdphas                    Sentence

1    but I do need to confer with other parts of his legal team, and

2    I'm not sure that I would be able to reach them as of now.  I

3    would endeavor to do that and perhaps be in a position to give

4    a yea or a nay but I would not be able to do that today.

5           THE COURT:  All right.  So your proposal is to adjourn

6    and you're going to tell me potential dates that you are

7    available?

8           MS. STERNHEIM:  Yes.

9           THE COURT:  Go ahead.

10          MS. STERNHEIM:  The two days that I would be available

11   would be the 27th of May and the 31st of May.  Other than that,

12   it would have to be August.

13          THE COURT:  I can do either of those.

14          Ms. Skotko.

15          MS. SKOTKO:  Your Honor, I also believe defense

16   counsel said she was available tomorrow before she goes back to

17   the Western District of New York, so perhaps a day's

18   adjournment might give her an opportunity to consult with other

19   members of the defense team.  We could schedule something for

20   tomorrow and then, as well, something --

21          MS. STERNHEIM:  I am not available tomorrow.  I leave

22   at 7:30 in the morning for the Western District of New York.  I

23   will not be back in New York until the evening of the 26th of

24   May.

25          MS. SKOTKO:  My apologies.  I misunderstood.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G5gdphas                      Sentence

1          THE COURT:  All right.  Why don't we say May 27th.  I

2     can do after 11:30 a.m.

3          MS. STERNHEIM:  Whatever time is good for the Court.

4          THE COURT:  Why don't we say noon.

5          MS. STERNHEIM:  Thank you.

6          THE COURT:  And let me just state, the reason that I

7     fronted this issue was just after spending a lot of time in the

8     submissions and making notes to myself at every point and which

9     resolution of this factual dispute seemed to emerge as an

10    issue, it seemed to go to most arguments being made by both

11    sides.  It's in the government's arguments for the nature and

12    seriousness of the offense, specific deterrence, arguments for

13    protecting the public.  It goes to arguments the defense makes

14    around minimal participation, exceptional acceptance of

15    responsibility, the appropriateness of the guidelines, criminal

16    history enhancement for terrorism cases, as well as the cases

17    both sides point to as appropriate comparators for avoiding

18    unwarranted sentence disparities.  Now, what you've done today

19    in part is to make arguments from the existing record as to

20    what I should conclude based on that, and maybe that's all

21    that's being asked.  But I did want to, by noting how I

22    understood the arguments to play into each of the contentions

23    being made and given my inclination toward a finding in favor

24    of the government on the point based on the record before me, I

25    wanted a full opportunity for Mr. Pham to consider whether a

G5gdphas                         Sentence

1      <u>Fatico</u> hearing is being sought or whether it is simply a

2      request to make the kinds of arguments that Mr. Sternheim was

3      making today from the existing record.

4              I think the only other issue which I don't have

5      resolution, but I did want to give Ms. Sternheim an opportunity

6      for you to address if you want to now, is the burden question.

7      If we were to have a hearing, Ms. Skotko has indicated the

8      government's view that in light of the showing that they've

9      made to overcome what's been put in front of me from the

10     government would require affirmative evidence from the defense.

11             Do you have a response to that, indication or is that

12     something you would like to consider?

13             MS. STERNHEIM:  I would like an opportunity to

14     consider that because, in essence, I'm being asked to prove a

15     negative, and I'm not sure how that factors in with the burden.

16     If my position is he didn't do anything and my burden is to

17     establish that he didn't do anything --

18             THE COURT:  Well, it's been established that he didn't

19     do anything; right?

20             MS. STERNHEIM:  So I have --

21             THE COURT:  That is to say, he did not engage in acts

22     of violence.

23             MS. STERNHEIM:  I then have to figure out, one, if in

24     fact it is my burden and whether I am able to overcome that.  I

25     certainly don't want to waste anybody's time if I can make an

G5gdphas                      Sentence

1    assessment that I'm not going to be able to, and certainly I

2    have to look toward what evidence I would put forward.

3              THE COURT:  Understood.

4              MS. STERNHEIM:  Thank you.

5              THE COURT:  Anything else, counsel?

6              MS. SKOTKO:  Yes, your Honor.

7              The government would just request clarification of the

8    schedule.  Would it be possible for defense counsel to notify

9    us by perhaps Thursday -- by us and the Court by Thursday this

10   week as to whether or not the defendant is in fact requesting a

11   Fatico hearing?  And, if so, would that hearing be held on the

12   27th, or would that be for a further conference to discuss?

13             THE COURT:  Excellent questions.

14             Ms. Sternheim.

15             MS. STERNHEIM:  Well, to the extent I have completed

16   what I need to do in light of the other matters that I have to

17   deal with, I certainly would want to inform the government as

18   quickly as possible and I will endeavor to do that, but I ask

19   not to be held to that because I don't know if I'll be able to

20   accomplish it, but certainly that would be my best effort.

21             THE COURT:  So you'll make your best effort to inform

22   the government and the Court by the end of this week?

23             MS. STERNHEIM:  Yes.

24             THE COURT:  If the informed decision is not to proceed

25   by evidentiary hearing, we'll proceed to sentencing I presume

G5gdphas                         Sentence

1    on May 27th?

2                 MS. STERNHEIM:  Yes.

3                 THE COURT:  If the decision is to proceed to

4    evidentiary hearing, I'll ask defense and the government to

5    confer as to whether we can proceed to that hearing on the

6    27th.  All right?

7                 MS. STERNHEIM:  Yes.  Are you asking us now?  I

8    mean --

9                 THE COURT:  No.  That's what I'll expect to hear from

10   the parties.

11                MS. STERNHEIM:  Certainly.  I mean, my position would

12   be if whatever evidence or witnesses I need are available, I

13   would request that we do it on that day.

14                THE COURT:  OK.  All right.  Anything else?

15                MS. SKOTKO:  Nothing from the government.  Thank you,

16   your Honor.

17                THE COURT:  All right.  Thank you.

18                MS. STERNHEIM:  Thank you.

19                THE COURT:  We are adjourned.

20                THE CLERK:  All rise.

21

22                              -  -  -

23

24

25