

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 14, 2020

<u>Via ECF</u>
The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

        **Re:**    ***United States v. Minh Quang Pham***
                   **12 Cr. 423 (AJN)**

Dear Judge Nathan:

        The Government respectfully submits this letter (1) moving to vacate Pham's guilty pleas and convictions, and to reinstate all of the remaining viable charges of Indictment 12 Cr. 423 (AJN) against the defendant; and (2) notifying the Court and defense counsel of the Government's intention to file additional charges, based on evidence obtained after the defendant's guilty plea, related to the defendant's plot to perpetrate a suicide bombing at London's Heathrow International Airport.

        With respect to the motion, as the Court is aware, the parties agree that the Supreme Court's decision in *United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319 (2019), applies to Pham's pending § 2255 petition, and that, under *Davis*, Pham's conviction under 18 U.S.C. § 924(c) must be dismissed.  Pham's petition, and the anticipated vacatur of the Section 924(c) count, however, fatally undermine the plea agreement in this case, and the Court should restore the parties to the positions they were in prior to executing it.  Any other result would allow Pham to selectively enforce terms from a plea agreement rendered void by *Davis*, while ignoring other terms relating to reinstatement and depriving the Government of the benefit of the bargain obtained by his plea to a violation of Section 924(c).  Accordingly, for the reasons set forth below, pursuant to the express terms of Pham's plea agreement, 18 U.S.C. § 3296, and the frustration-of-purpose doctrine, the Court should vacate Pham's guilty pleas and convictions, and reinstate Counts One, Two, Three, and Four, as well as the forfeiture allegation as to those counts, of the Indictment.

## I.     Background

        As the Court is aware, in December 2010, the defendant traveled from the United Kingdom to Yemen to join the terrorist organization al Qaeda in the Arabian Peninsula ("AQAP"), and remained there until July 2011, when he returned to the United Kingdom. After arriving in Yemen,

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 2

Pham and his friend, Sami al Fadli, were taken to an AQAP safehouse, where Pham joined and trained with AQAP, including in the use of assault rifles and explosives.

Pham returned to the United Kingdom in July 2011.  Upon his arrival at London's Heathrow International Airport, U.K. authorities detained and searched Pham.  U.K. authorities recovered, among other things, a live round of 7.62 millimeter armor-piercing ammunition, which is the type of ammunition used in a Kalashnikov assault rifle.  Pham admitted that that the round of ammunition belonged to him, that he got it in Yemen, and that it was for an AK-47 assault rifle.

On May 24, 2014, a grand jury returned Indictment 12 Cr. 423 (AJN) (the "Indictment"), charging Pham in five counts with: (1) conspiring to provide material support to AQAP, in violation of 18 U.S.C. § 2339B ("Count One"); (2) providing and attempting to provide material support to AQAP, in 18 U.S.C. § 2339B ("Count Two"); (3) conspiring to receive military-type training from AQAP, in violation of 18 U.S.C. § 371 ("Count Three"); (4) receiving military-type training from AQAP, in violation of 18 U.S.C. § 2339D ("Count Four"); and (5) possessing, carrying, and using an automatic firearm in relation to crimes of violence, in violation of 18 U.S.C. § 924(c) ("Count Five"). The Indictment also contained a forfeiture allegation as to Counts One through Four.

On or about February 26, 2015, Pham was extradited from the United Kingdom to the United States to face the charges in the Indictment.  Following Pham's extradition, agents of the Federal Bureau of Investigation ("FBI") conducted a series of Mirandized interviews of Pham. During those interviews, Pham stated, among other things, that: (a) he traveled to Yemen in 2010 to join AQAP and wage jihad; (b) while in Yemen, Pham assisted with graphic design projects for AQAP, including work that would be used as propaganda in *Inspire* magazine; (c) Pham appeared in photographs that were used in *Inspire* magazine, including photographs in which he is holding and assembling a Kalashnikov rifle; (d) Pham also personally met with Anwar al-Aulaqi, the head of external operations for AQAP (*i.e.,* attacks on Westerners in countries outside of Yemen); (e) Pham approached Aulaqi and offered to conduct a suicide attack and "sacrifice himself" on behalf of al Qaeda upon his return to the United Kingdom; (f) Pham was trained by AQAP members, including Aulaqi, on how to build an explosive device using readily available household chemicals and other materials; (g) prior to his return to London, Pham agreed to conduct a suicide bombing at Heathrow International Airport on behalf of AQAP; (h) Aulaqi instructed him to target the Arrivals Section of the airport—particularly arrivals from the United States or Israel; (i) Pham also agreed to identify others who would be interested in joining AQAP; (j) Aulaqi gave Pham money, a telephone number, and an email address that Pham was to use to contact Aulaqi upon his return to the United Kingdom; and (k) Pham planned to use the money to rent a house in the U.K. to construct the explosive device and to purchase the chemicals and other material needed for the attack.

On January 8, 2016, Pham pled guilty before this Court to Counts Two, Three, and Five of the Indictment, pursuant to a plea agreement with the Government (the "Plea Agreement," attached as Exhibit A).  Specifically, Pham pled guilty to providing and attempting to provide material support to AQAP, in violation of 18 U.S.C. § 2339B; conspiring to receive military-type training from AQAP, in violation of 18 U.S.C. § 371; and possessing, carrying, and using an automatic

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 3

firearm in relation to crimes of violence, in violation of 18 U.S.C. § 924(c). In the Plea Agreement, Pham and the Government stipulated to the application of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") to his case, and agreed that the advisory Guidelines sentence was 600 months' imprisonment, with a mandatory minimum term of 360 months' imprisonment (the "Stipulated Guidelines Sentence"). Pham also agreed to the entry of a Consent Order of Forfeiture and a stipulated judicial order of removal from the United States.

Pham and the Government also agreed that neither a downward nor an upward departure from the Stipulated Guidelines Sentence was warranted, and that the parties therefore would not "seek any departure or adjustment pursuant to the Guidelines that is not set forth" in the Plea Agreement. Pham further agreed that he would not appeal or collaterally challenge any sentence at or below the Stipulated Guidelines Sentence of 600 months' imprisonment.

Before accepting Pham's guilty plea, the Court conducted a thorough and careful hearing that complied in all material respects with Rule 11 of the Federal Rules of Criminal Procedure. In addition to ensuring Pham's competency to plead guilty and his understanding of the charges against him, the Court confirmed that Pham had reviewed the Plea Agreement and understood its provisions, including the appellate waiver, under which Pham waived his right to appeal or collaterally challenge any sentence at or below the Stipulated Guidelines Sentence.

On May 31, 2016, this Court sentenced Pham to a term of 480 months' incarceration—including the mandatory consecutive 360 months' imprisonment on Count Five—to be followed by a life term of supervised release, and imposed a $300 mandatory special assessment. Following the imposition of sentence, the Court advised Pham of his right to appeal and, on the Government's motion, dismissed the open counts of the Indictment.

Notwithstanding the terms of his Plea Agreement, Pham filed a notice of appeal on July 18, 2016. The Second Circuit dismissed Pham's challenge to his sentence and summarily affirmed his convictions and forfeiture on September 12, 2017.

On August 21, 2018, this Court entered an order notifying the parties that it had received a letter from the defendant requesting that the Court vacate his conviction on Count Five in light of the Supreme Court's decision in *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), which the Court construed as a motion to vacate the defendant's sentence under 18 U.S.C. § 2255. The Court subsequently stayed briefing of the motion pending the resolution of *Davis* by the Supreme Court. Following the decision in *Davis*, the parties notified the Court that they agreed that *Davis* compelled granting the defendant's § 2255 petition as to Count Five, but that the parties continued to negotiate about an appropriate path forward. Those negotiations proved unsuccessful, and so the Government notified the Court on July 21, 2020, of its intention to move to reinstate the counts of the Indictment that were dismissed at sentencing.

## II.     The Court Should Reinstate the Previously-Dismissed Counts of the Indictment.

As set forth in more detail below, the Government respectfully submits that the Court should reinstate the charges contained in the Indictment. The Government dismissed those charges at sentencing pursuant to the Plea Agreement, and only as consideration for the defendant's guilty

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 4

plea to the subset of offenses set forth in the Plea Agreement.  Neither the terms of the Plea Agreement nor controlling law in this Circuit prevent the Government from reinstating the previous charges against Pham under these circumstances.  To the contrary, the defendant's Plea Agreement expressly preserved the Government's right to do so should the defendant's "convictions" be "vacated for any reason."  (Ex. A. at 8).  Accordingly, the Government seeks to vacate Pham's convictions, reinstate the charges in the Indictment, and proceed to trial.

### a. Applicable Law

The Second Circuit has long recognized the Government's authority to reinstate charges that were previously dismissed in connection with a guilty plea when a defendant's successful appeal vitiates that agreement.  *United States v. Ligouri*, 430 F.2d 842, 851 (2d Cir. 1970) (Lumbard, C.J., concurring) ("[T]here appears to be every reason to permit the government either to re-indict [defendant] on the other counts, or to move in the district court to vacate the dismissal of the other counts."); *id.* at 849 n.4 (majority) ("[T]he government may seek to reindict [defendant] on the five counts of the previous indictment which were dismissed after he pleaded to the tax count."); *United States ex rel. Ennis v. Fitzpatrick*, 438 F.2d 1201, 1202 (2d Cir. 1971) (approvingly citing the concurrence in *Ligouri* for the proposition that "reindictment or vacation of dismissal in the district court of the other counts may in a proper case be possible," though it may be time-barred in a particular case); *see also United States ex rel. Williams v. McMann*, 436 F.2d 103, 106 (2d Cir. 1970) (recognizing in a *habeas* challenge to a state conviction that where a defendant successfully had his guilty plea set aside, "all that happened was that the prosecution was forced to proceed on the original charge which the grand jury had returned in the first instance").

In *United States v. Podde*, 105 F.3d 813 (2d Cir. 1997), the Second Circuit held that "double jeopardy does not apply to the original counts in an indictment when a defendant has withdrawn or successfully challenged his plea of guilty to lesser charges." *Id.* at 817.  When a defendant "repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain."  *Id.*; *see also*, *e.g.*, *United States v. Harrington*, 354 F.3d 178, 186 (2d Cir. 2004) (explaining, where the Court of Appeals vacated a conviction and sentence, that "the Government, too, is no longer bound by the terms of the plea agreement and is free to withdraw it and reinstate all counts in the superseding indictment"); *cf. Ricketts v. Adamson*, 483 U.S. 1, 12 (1987) (holding that, where a defendant agreed that murder charges could be reinstated if he breached a plea agreement, the Double Jeopardy Clause did not protect him from prosecution on those reinstated charges); *see also Abramo v. United States*, No. 12 Civ. 1803 (JSR) (HBP), 2014 WL 1171735, at *17 n.6 (S.D.N.Y. Mar. 21, 2014) (Rakoff, *J.*) (warning a *pro se* petitioner that, due to the reinstatement language in a plea agreement, "if petitioner succeeds in vacating the conviction on Count Three, he may be facing multiple murder charges," and, therefore, "the consequences of the victory may be worse than the consequences of a defeat"); *Riza v. United States*, 933 F. Supp. 331, 335 (S.D.N.Y. 1996) (Sprizzo, *J.*) (noting that

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 5

potential "detrimental consequences" of a frivolous appeal included "reinstatement of the two counts dismissed as part of the plea). [1]

Although it is axiomatic that "when a defendant breaches his plea agreement, the Government has the option to . . . treat it as unenforceable," *United States v. Cimino*, 381 F.3d 124, 128 (2d Cir. 2004), the Court need not decide whether Pham's filing of a Section 2255 motion constituted a breach of the plea agreement to grant the Government's motion. "Whether [Pham] breached his contract or acted properly in negating it is largely irrelevant to this issue. Despite the change in law, [Pham] remained free to comply with the plea bargain. By taking advantage of the opportunity to vacate his conviction under [*Davis*], [Pham] chose to void his agreement with the government. That choice relieved the government from its contractual obligations, and explains why double jeopardy does not apply." *Podde*, 105 F.3d at 821 n.6 (internal citations omitted).

The reinstatement of dismissed charges following a defendant's challenge to a guilty plea is not only permitted under Second Circuit precedent, it is expressly contemplated by statute. Enacted in 2002, Section 3296 of Title 18 specifically provides that:

> Notwithstanding any other provision of this chapter, any counts of an indictment or information that are dismissed pursuant to a plea agreement *shall be reinstated* by the District Court if—

---

[1] The weight of authority across other Circuits similarly supports the Government's ability to reinstate charges. As discussed further below, other Circuits have held that where a defendant successfully challenged his Section 924(c) conviction, the purpose of the plea agreement had been frustrated and the district court properly reinstated the previously dismissed charges. *United States v. Moulder*, 141 F.3d 568 (5th Cir. 1998); *United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998); *see also United States v. Lewis*, 138 F.3d 840 (10th Cir. 1998) (reaffirming *Bunner*); *Hunter v. United States*, 1998 WL 327183 (8th Cir. June 19, 1998) (unpublished) (where Section 924(c) conviction was vacated on Section 2255 motion in light of *Bailey*, "we do not believe the district court erred by allowing the government to reinstate the previously dismissed charges"). In *United States v. Sandoval-Lopez*, the Ninth Circuit declined to permit the Government to reinstate a Section 924(c) charge. 122 F.3d 797 (9th Cir. 1997). But there was no written plea agreement in *Sandoval-Lopez*, and the prosecutor simply summarized the parties' understandings orally during the change-of-plea proceeding. *See id.* at 800 (characterizing the district court proceedings as "this most unusual case"); *see also United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999) (en banc) (reaffirming *Sandoval-Lopez* in case with written plea agreement lacking reinstatement terms). Thus, unlike here, the parties in *Sandoval-Lopez* and *Barron*, did not agree in writing that charges could be reinstated should the defendant's "convictions" be "vacated for any reason." (Ex. A. at 8). The *Sandoval-Lopez* court also acknowledged that if the defendants had challenged the validity of the guilty pleas themselves, "the proper remedy might have been to vacate or allow withdrawal of the guilty pleas and reinstate the dismissed charges." *Sandoval-Lopez*, 122 F.3d at 802. *Sandoval-Lopez* and *Barron* were also decided before the enactment of 18 U.S.C. § 3296, discussed *infra*, making reinstatement of charges mandatory when a guilty plea is vacated on the motion of the defendant.

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 6

> (1) the counts sought to be reinstated were originally filed within the applicable limitations period;
>
> (2) the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;
>
> (3) the guilty plea was subsequently vacated on the motion of the defendant; and
>
> (4) the United States moves to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final.

(emphasis added). Here, the Court has not yet entered a final order vacating the defendant's guilty plea to Count Five, and so the Government's motion is timely and subject to the statute's mandatory language that the other counts "shall be reinstated." *Cf. Murphy v. Smith*, 138 S. Ct. 784, 787-88 (2018) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion . . . . If Congress had wished to afford the judge more discretion in this area, it could have easily substituted 'may' for 'shall.'"). While Section 3296(b) provides that the district court is not "preclude[d] . . . from considering any defense or objection, other than statute of limitations, to the prosecution of the counts reinstated under subsection (a)," that language contemplates objections after the counts are "reinstated," not objections to the reinstatement itself.

This conclusion accords with the basic principles of contract law that apply to the construction of plea agreements. "In general, plea agreements are subject to ordinary contract law principles, except that any ambiguity is resolved strictly against the Government." *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004) (internal quotation marks omitted). The ordinary principle applicable here is the "frustration of purpose" doctrine. In *United States v. Bunner*, the Tenth Circuit explained the application of the doctrine in the context of a plea agreement:

> First, the frustrated purpose must have been "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. Finally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made."

134 F.3d at 1004 (10th Cir. 1998) (quoting Restatement (Second) of Contracts § 265 cmt. a (Am. Law Inst. 1981)), *cert. denied*, 525 U.S. 830 (1998). In *Bunner*, the Tenth Circuit addressed facts closely analogous to this case, affirming the district court's decision to allow the Government to reinstate previously dismissed charges after vacating a conviction under Section 924(c) following the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). The Tenth Circuit concluded that when "an intervening change in the law destroyed the factual basis supporting Defendant's conviction[, . . .] [t]his resulted in the underlying purpose of the agreement being

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 7

frustrated and the basis of the government's bargain being destroyed. Thus, under the frustration of purpose doctrine, the government's plea agreement obligations became dischargeable." *Bunner*, 134 F.3d at 1005. Put more simply, "Defendant and the government entered the plea agreement to avoid the uncertainty of a jury verdict. Defendant hoped to subvert the risk that a jury would convict him on all four counts with which he was charged. The government, on the other hand, entered the agreement to ensure that Defendant served time for violating § 924(c). A basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c)."). *Id.* at 1004-05.

Although the Second Circuit has not directly addressed the applicability of the frustration-of-purpose doctrine to the construction of plea agreements, the analysis in *Bunner* has been widely adopted by other Circuits. *See, e.g.*, *United States v. Moulder*, 141 F.3d 568, 572 (5th Cir. 1998) (affirming reinstatement of charges following dismissal of § 924(c) conviction, citing *Bunner* approvingly); *United States v. Green*, 139 F.3d 1002, 1005 (4th Cir. 1998) (rejecting double jeopardy challenge to reindictment after successful § 2255 motion, citing *Bunner* approvingly, and noting that the Second Circuit "applied the same precept" in *Podde*); *Hunter v. United States*, 149 F.3d 1187 (8th Cir. 1998) (unpublished) (concluding that "we do not believe the district court erred by allowing the government to reinstate the previously dismissed charges," citing *Bunner*); *cf. United States v. Smith,* 103 F.3d 531, 534 (7th Cir. 1996) ("If a multicount sentence is a package—and we think it is—then severing part of the total sentence usually will unbundle it. And we do not think it matters what means are used to bring resentencing proceedings before the district court. Under the sentencing package concept, when a defendant raises a sentencing issue he attacks the bottom line.").

In this District, Judge Engelmayer recently addressed the reinstatement of charges following a remand from the Second Circuit pursuant to *Davis* in *United States v. Ciprian*, No. 11 Cr. 1032, Dkt. 2487, 3-4 (S.D.N.Y Mar. 3, 2020). Judge Engelmayer reasoned, with respect to a plea agreement that contains the same operative language as Pham's: "Under the parties' plea agreement, the government has the right, though, on the vacating of the conviction for that reason [*i.e.*, pursuant to *Davis*], to reinstate, if you will, other counts." Thus, Judge Engelmayer granted the Government's motion to reinstate previously dismissed charges in the underlying indictment following the vacatur of the defendant's Section 924(c) conviction. *Id.* at 5 ("I reinstate, therefore, all counts against Mr. Ciprian in the indictment."). After that reinstatement of "all counts," the defendant entered a new plea to one of the reinstated counts. Accordingly, Judge Engelmayer's reasoning in *Ciprian* serves as recent relevant authority for the proposition that the correct remedy under circumstances faced by Pham is total reinstatement of the underlying charges, not permitting the defendant to redefine the terms of his bargain with the Government.[2]

---

[2] The same issue is currently pending before Judge Gardephe in *United States v. Maalik Jones*, No. 16 Cr. 19 (PGG).

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 8

### b.  Discussion

#### i.  Reinstatement of Counts One, Two, Three, and Four

Here, the parties' Plea Agreement expressly contemplated the reinstatement of charges upon the vacatur of the defendant's convictions.  As described above, the Plea Agreement explicitly provides that "should the convictions following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced *or reinstated* against the defendant." (Ex. A at 8) (emphasis added).  The deal struck by the parties, that is, dismissal of Counts One and Four of the Indictment in exchange for Pham's plea of guilty to the offenses in Counts Two, Three, and Five, will be undone as a result of the impending vacatur of Pham's conviction on Count Five.  The Government extended that agreement "[i]n consideration of the defendant's pleas" to the three specified counts, that is, the terrorism offenses charged in Counts Two and Three *and* the Section 924(c) violation charged in Count Five.  (Ex A at 2).  Accordingly, the plain terms of the Plea Agreement allow the Government to reinstate Counts One, Two, Three, and Four.  Permitting Pham to successfully challenge his conviction under Count Five, while preventing the Government from reinstating all of the viable charges in the Indictment, would permit Pham to selectively enforce the dismissal terms of the Plea Agreement while avoiding the reinstatement terms, and thereby deprive the Government of the bargain it struck in the written Plea Agreement.

The Government clearly predicated and conditioned its agreement to dismiss the outstanding counts in the Indictment on Pham's conviction for *all three* offenses described in the Plea Agreement.  That dismissal substantially benefitted Pham.  The inclusion of a Section 924(c) conviction, carrying a thirty-year mandatory minimum sentence that must run consecutive to any other sentence imposed, was plainly a material feature of the Plea Agreement and a key part of the benefit that the Government expected as part of the deal.  Under the bargain Pham struck, "[t]he total maximum term of imprisonment on Counts Two, Three, and Five is life, with a mandatory minimum term of 30 years." (Ex. A at 2).  But following the vacatur of Count Five, the total maximum term of imprisonment to which Pham could be re-sentenced on counts Two and Three is twenty years, with no mandatory minimum.  As in *Bunner*, a "basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c)." 134 F.3d at 1005.  The Second Circuit has likewise explained the consequences of Pham's decision to pursue vacatur of Count Five, "[d]espite the change in law [brought about by *Davis*], [Pham] remained free to comply with the plea bargain.  By taking advantage of the opportunity to vacate his conviction under [*Davis*], [Pham] chose to void his agreement with the government.  That choice relieved the government from its contractual obligations, and explains why double jeopardy does not apply." *Podde*, 105 F.3d at 821 n.6.  Accordingly, as in *Podde*— whether Pham's motion to vacate his Count Five conviction pursuant to *Davis* is based on an alleged breach of the Plea Agreement or an unforeseen change in law that frustrated the mutually-understood purpose of the agreement—the bargain struck by the parties has been undone, and the Court should restore the *status quo ante* by reinstating all of the viable charges.

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 9

This result is similarly compelled by 18 U.S.C. § 3296. There is no question that "the counts sought to be reinstated were originally filed within the applicable limitations period" and that "the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges." While the defendant's guilty plea to Count Five has not yet been "vacated on the motion of the defendant," the Government has indicated its agreement that *Davis* compels such a result, and the Government's instant motion for reinstatement—concurrent with the vacatur of Count Five—is timely. Accordingly, Section 3296 requires that dismissed counts "shall be reinstated."

### ii. Notice of Plans to File Additional Charges

Separate from the application for reinstatement of charges, the Government respectfully informs the Court and defense counsel that the Government intends to file additional charges against Pham based on additional evidence secured following his conviction and sentencing.

The evidence at issue includes (1) video recordings showing the defendant constructing and detonating a test explosive device virtually identical to the one Pham told law enforcement was to be used in his planned suicide attack on Americans and Israelis at Heathrow International Airport; (2) video recordings of Pham associating with high-ranking members of AQAP; (3) a video recording of Pham describing his goal of waging jihad and his desire to martyr himself; and (4) a document containing instructions for executing the attack upon Pham's return to London. The Government reviewed this evidence with defense counsel during a meeting on December 5, 2019, and produced a copy of the evidence to the defense on or about March 24, 2020.

Based on this evidence, the Government expects to seek additional charges related to the defendant's attempted attack at Heathrow, including a violation of Section 924(c) predicated on the use and possession of a destructive device in furtherance of one or more additional crimes of violence committed in connection with the plot. This conduct, and the anticipated charges based upon it (which are subject both to approval by other components of the Department of Justice and presentation to the grand jury), are not covered by the provisions of the Plea Agreement defining the conduct for which "the defendant will not be further prosecuted criminally by this Office." (Ex. A at 2). Accordingly, while the Government will not proceed with a superseding Indictment until after the Court rules on the reinstatement of the original charges of the Indictment, the Government expects to seek those additional charges whether or not it is also able to proceed on the previously dismissed counts.

### III. Conclusion

For the foregoing reasons, the Court should, after granting the defendant's motion to vacate his conviction on Count Five of the Indictment, vacate the other convictions entered pursuant to the Plea Agreement and reinstate Counts One, Two, Three, and Four, as well as the

The Honorable Alison J. Nathan, U.S.D.J.
August 14, 2020
Page 10

forfeiture allegation applicable to those counts.  At that time, a schedule should be set for further
proceedings in this matter.


Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York


By: _____/S/_____
      Anna M. Skotko / David W. Denton, Jr.
      Assistant United States Attorneys
      (212) 637-1591/2744


Cc: Defense Counsel (via ECF)