UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                       :

UNITED STATES OF AMERICA,       :

                                         :

                    *– against –*            :        12 Cr. 423 (AJN)

                                         :

MINH QUANG PHAM,              :

                                           :

                       Defendant.          :

                                           :
------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PRETRIAL MOTION TO DISMISS COUNTS 5-9, AND FOR PRODUCTION AND <u>IDENTIFICATION OF EXCULPATORY MATERIAL AND INFORMATION</u>


JOSHUA L. DRATEL
DRATEL & LEWIS
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-8805
jdratel@dratellewis.com

BOBBI C. STERNHEIM
LAW OFFICES OF BOBBI C. STERNHEIM
225 Braodway, Suite 715
New York, New York 10007
(212) 243-1100
bcsternheim@mac.com

*Attorneys for Defendant Minh Quang Pham*


*– Of Counsel –*
Joshua L. Dratel
Bobbi C. Sternheim

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument

COUNTS FIVE THROUGH NINE OF THE SUPERSEDING INDICTMENT
MUST BE DISMISSED BECAUSE THEY WERE
INSTITUTED AFTER THE STATUTE OF LIMITATIONS EXPIRED . . . . . . . . . . . . . . . . . . 7

A.      The Language of the Plea Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B.      The Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C.      The Court's September 24, 2020, Order and the Parties' Intent . . . . . . . . . . . . . . . . . . 9

D.      The Law Applicable to Plea Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.      General Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.      The Provisions of 18 U.S.C. §3296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.      Additional Relevant Contract Law Doctrines . . . . . . . . . . . . . . . . . . . . . . . . 12

                a.      Ambiguities In a Contract Are Construed Against the Drafter . . . . . . . . 12

                b.      Election of Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                c.      Mutual Mistake . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                d.      Proportionality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

E.      Counts Five through Nine of the Superseding Indictment Are Barred by
        the Statute of Limitations Because the September 24, 2020, Order Nullified
        the Plea Agreement and Relieved the Parties of Their Obligations Thereunder . . . . . . . 16

        1.      The Plea Agreement Has Been Nullified and Is Therefore Void . . . . . . . . . . . . . 16

2.      The Categorical Treatment of the Plea Agreement Conforms with Case Law . . . 18

3.      Although Whether Mr. Pham's Motion to Vacate Breached the Plea Agreement Is
        Irrelevant, It Did Not Constitute a Breach But Manifested a Mutual Mistake . . . 19

4.      In Electing to Nullify the Plea Agreement, the Government Foreclosed
        Its Ability to Invoke the Agreement's Statute of Limitations Waiver . . . . . . . . . 22

5.      Any Argument That Mr. Pham Would Reap a Windfall Should Be Rejected . . . 24

F.      Counts Five through Nine Would Be Time-Barred
        Even Under the Terms of the Plea Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED BECAUSE
THEY ARE THE PRODUCT OF A VINDICTIVE PROSECUTION . . . . . . . . . . . . . . . . . . . 28

A.      The Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.      The Sequence of Events Demonstrating Vindictiveness . . . . . . . . . . . . . . . . . . . . . 30

COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED
BECAUSE THE UNITTED KINGDOM'S CONSENT TO
THE U.S. PROSECUTION OF MR. PHAM FOR THOSE
COUNTS WAS BECAUSE IT BREACHED THE RULE
OF SPECIALTY, DENIED MR. PHAM DUE PROCESS,
AND VIOLATED THE PRINCIPLE OF NATURAL JUSTICE. . . . . . . . . . . . . . . . . . . . . . . . 34

A.      The U.S.-U.K. Extradition Treaty and the Rule of Specialty . . . . . . . . . . . . . . . . . . 34

B.      The Doctrine of Natural Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

C.      The U.K. Government's Consent to the U.S.'s Prosecution of
        Mr. Pham on Counts Five through Nine of the Superseding Indictment . . . . . . . . . . . 37

D.      The U.K. Government's Consent to Mr. Pham's Extradition on Counts Five
        through Nine is Void because He Has Been Denied Due Process and Natural Justice . . 39

THE GOVERNMENT SHOULD BE ORDERED TO DISCLOSE
AND IDENTIFY ALL BRADY MATERIAL AND INFORMATION,
AND THE COURT SHOULD ISSUE AN ORDER TO THAT
EFFECT PURSUANT TO RULE 5(f), FED.R.CRIM.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# TABLE OF AUTHORITIES

## CASES

*331 East 14th St. LLC v. 331 East Corp.*, 293 A.D.2d 361
    740 N.Y.S.2d 327 (1st Dep't 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Albert v. Martin Custom Made Tires*, 116 F.2d 962 (2d Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . 13

*Apex Pool Equipment Co. v. Lee*, 419 F.2d 556 (2d Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Arbor Realty SR, Inc. v. Keener*, 988 F. Supp.2d 254
    (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bailey v. United States*, 516 U.S. 137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

*Bousley v. United States*, 523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 42, 43

*Coleman v. Calderon*, 150 F.3d 1105, 1116-17 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Fifty States Management Corporation v. Pioneer Auto Parks, Inc.*,
    46 N.Y.2d 573 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Herbil Holding Co. v. Commonwealth Land Title Ins. Co.*, 183 A.D.2d 219
    590 N.Y.S.2d 512 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hoke v. Netherland*, 92 F.3d 1350 (4th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Hurst v. Trow's Print and Bookbinding Co.*, 30 Abb. N. Cas. 1 (1893) . . . . . . . . . . . . . . . . . . . 13

*Irving Tire Co. v. Stage II Apparel*, 230 A.D.2d 772 (2d Dept. 1996) . . . . . . . . . . . . . . . . . . . . 16

*Jacobson v. Sassower*, 66 N.Y.2d 991, 489 N.E.2d 1283 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951) . . . . . . . . . . . . . . . . . 41

*Lumber Mut. Cas. Ins. Co. of New York v. Friedman*, 176 Misc.
    70328 N.Y.S.2d 506 (Sup. Ct. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*McKeever v. Warden SCI-Graterford*, 486 F.3d 81 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . 14, 21

*McNaught v. Equitable Life Assur. Society of United States*, 136 A.D. 774
(2d Dept. 1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652
203 L. Ed. 2d 876 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mora v. New York*, 524 F.3d 183 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 768 F.Supp. 115
(S.D.N.Y.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nunez v. United States*, 546 F.3d 450 (7th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Petrucelli v. Palmer*, 596 F. Supp. 2d 347 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F.Supp. 254
(S.D.N.Y.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rivers v. Roadway Express*, 511 U.S. 298 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Spence v. Johnson*, 80 F.3d 989 (5th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Toussie v. United States*, 397 U.S. 112 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Alvarez–Machain*, 504 U.S. 655 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Barefoot*, 754 F.3d 226 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Barron*, 127 F.3d 890 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Battles*, 745 F.3d 436 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Bradley*, 381 F.3d 641 (7th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Bunner*, 134 F.3d 1000 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Carter*, 130 F.3d 1432 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 33

iv

*United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Ciavarella*, 716 F.3d 705 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Cimino*, 381 F.3d 124 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Cuevas*, 496 F.3d 256 (2d Cir.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Davis*, 714 F.3d 809 . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 19, 20, 28, 30, 33

*United States v. Davis*, 139 S. Ct. 2319 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*United States v. Delgado-Salazar*, 487 F. Supp. 3d 1181
    (D.N.M. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 30, 33, 34

*United States v. Figueroa*, 2021 WL 1608907
    (D.N.J. April 26, 2021) ("*Figueroa I*"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Figueroa*, 2021 WL 1661202
    (D.N.J. April 28, 2021) ("*Figueroa II*") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Gaither*, 926 F. Supp. 50 (M.D. Pa. 1996) . . . . . . . . . . . . . 20, 21, 22, 23, 24, 25

*United States v. Gil*, 297 F.3d 93 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*United States v. Gleason*, 265 F.Supp. 880, 886
    (S.D.N.Y.1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Goodwin*, 457 U.S. 368 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 30

*United States v. Granik*, 386 F.3d 404 (2d Cir.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. James Daniel Good Real Property, et. al.*, 510 U.S. 43 (1993) . . . . . . . . . . . . 41

*United States v. Lewis*, 138 F.3d 840 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Liguori*, 430 F.2d 842 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lockwood*, 416 F.3d 604 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Marion*, 404 U.S. 307 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Miller*, 406 F.2d 1100 (4th Cir.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Munoz*, 718 F.3d 726 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Podde*, 105 F.3d 813 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 19, 23, 24, 25

*United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Reed*, 639 F.2d 896, 902 (2d Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Raymer*, 941 F.2d 1031 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 28, 29, 30, 34

*United States v. Sakellarion*, 649 F.3d 634 (7th Cir.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Sandles*, 80 F.3d 1145 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Suarez*, 791 F.3d 363 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40, 41

*United States v. Sweeney*, 483 F. Supp.3d 871 (E.D. Cal. 2020) . . . . . . . . . . . . . . . . . . 28, 30, 33

*United States v. Toney*, 2020 WL 1951651
   (N.D. Ill. April 23, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Under Seal*, 902 F.3d 412 (4th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Vaval*, 404 F.3d 144 (2d Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Williams*, 198 F.3d 988 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . 14, 28, 33

*United States v. Wilson*, 26 F.3d 142 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Woltmann*, 610 F.3d 37 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . 40, 41

*Warner v. United States*, 926 F.Supp. 1387 (E.D. Ark. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## STATUTES

18 U.S.C. §2332a(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §2332f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §2332f(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. §2332f(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. §2332f(b)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2339D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. §3282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. §3296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 23, 24

18 U.S.C. §3296(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

18 U.S.C. §3500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17, 19, 20, 22

18 U.S.C. §924(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §924(c)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19, 20, 22, 30, 31

## OTHER AUTHORITIES

§95(4)(c) of the Extradition Act (UK) of 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Corbin on Contracts* (Joseph Perillo), §28.49 (revised ed. 2002) . . . . . . . . . . . . . . . . . . . . 15

Extradition Treaty with United Kingdom, executed March 31, 2003 . . . . . . . . . . . . . 2, 34, 35, 39

E. Allan Farnsworth, Contracts §9.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kanda v Government of Malaya* [1962] AC 322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Restatement 2d Contracts, §206, Interpretation Against the Draftsman (1981) . . . . . . . . . . . . . 12

Restatement (Second) of Contracts, §151, Mistake Defined (1981) . . . . . . . . . . . . . . . . . . . . . 15

Restatement (Second) of Contracts, §152,  When Mistake of Both Parties
    Makes a Contract Voidable (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts, §155, When Mistake of Both Parties
    as to Written Expression Justifies Reformation (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) of Contracts, §261,
    Discharge by Supervening Impracticability (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Restatement (Second) of Contracts, §265,
    Discharge by Supervening Frustration (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Restatement (Second) of Torts, §264, Abatement of Nuisance (1965).  . . . . . . . . . . . . . . . . . . 21

*Ridge v Baldwin*, [1964] AC 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36, 37

*Royal Government of Greece v Governor of Brixton Prison* [1971] AC 250. . . . . . . . . . . . . . . *37*

Rule 5(f)(1), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 42, 43, 44

Rule 11, Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Russell v The Duke of Norfolk* [1949] 1 All ER 109 (Tucker LJ). . . . . . . . . . . . . . . . . . . . . . . 36

*Spackman v Plumstead Board of Works* [1885] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Vinter and Others v. the United Kingdom*, European Court of Human Rights ("ECHR")
    judgment (Grand Chamber) of 9 July 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Williston on Contracts* (Richard A. Lord), §70:125 (4th ed.1990)  . . . . . . . . . . . . . . . . . . . . . 15

*Williston on Contracts*, §70:125 (4th ed.1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Williston, *Contracts,* §684 (Rev. ed. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wood v Woad* (1874) LR 9 Ex 190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

**Introduction**

This Memorandum of Law is respectfully submitted in support of defendant Minh Quang Pham's pretrial motions for the following relief:

(1)     dismissal of Counts Five through Nine of the Superseding Indictment (S-1) because they have been instituted after expiration of the statute of limitations;

(2)     dismissal of Counts Five through Nine because they are the product of a vindictive prosecution;

(3)     dismissal of Counts Five through Nine because they violate both the Rule of Specialty applicable to extradition, and Mr. Pham's Fifth Amendment right to Due Process; and

(4)     disclosure and identification of any and all exculpatory information and material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 5(f)(1), Fed.R.Crim.P.

As detailed below, the Court's September 24, 2020, Order (ECF # 191) nullifying the Plea Agreement between Mr. Pham and the government – which Order the government expressly intended to "void" the Plea Agreement and "relieve[]" the parties "of their obligations" thereunder – negated any statute of limitations waiver in the Plea Agreement with respect to Counts Five through Nine, which were not charged in the initial accusatory instruments, and for which the government acknowledges the evidence was not in its possession until *after* Mr. Pham was sentenced.

That result is dictated not only by the plain language of the September 24, 2020, Order, but also by the contract law that applies to plea agreements, as well as the Fifth Amendment Due

1

Process protections that overlay such agreements between the government and a criminal defendant.  Even if the waiver were applicable, the specific language of the Plea Agreement establishes Counts Five through Nine are plainly not within that waiver's scope.

Also, assuming *arguendo* Counts Five through Nine are timely, they nevertheless should be dismissed as the product of a vindictive prosecution.  During the interregnum between the Supreme Court's decisions in *Sessions v. Dimaya*, 584 U.S. ___, 138 S.Ct. 1204 (2018), and *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319 (2019), which invalidated the pre-existing Count Five in the initial Indictment, Mr. Pham ultimately agreed to accept an intervening offer from the government, for which the maximum term of imprisonment would be 30 years.  However, because Mr. Pham had initially declined that disposition, the government refused to extend it again even after Mr. Pham accepted its terms.

The government's refusal to extend that offer constitutes impermissible prosecutorial vindictiveness because it seeks to punish Mr. Pham for exercising his valid legal rights, and because the government's refusal is linked directly to Mr. Pham's exercise of his Fifth and Sixth Amendment constitutional rights to trial.

In addition, Counts Five through Nine violate the Rule of Specialty because both the United States and the United Kingdom denied Mr. Pham Due Process and violated the principle of natural justice by failing to permit him access to the U.S.'s request for permission to prosecute Mr. Pham on Counts Five through Nine.  That violated the 2003 Extradition Treaty between the U.S. and the U.K., and effectively precluded Mr. Pham from challenging his prosecution on those charges.

The Court should also order the government not simply to disclose all *Brady* material, but

also to identify – within the extraordinary volume of digital discovery the government has produced – such material in order to discharge the government's *Brady* obligations adequately. In that context, the Court should issue an Order pursuant to Rule 5(f)(1), Fed.R.Crim.P., which has become effective since Mr. Pham's sentencing in 2016.

## Statement of the Facts

As a result of its presiding over this case since its inception, the Court is familiar with the facts.  Accordingly, they will be summarized below, and specific additional facts relevant to the particular points in this motion will be set forth in those points.

As the Court's September 24, 2020, Order (ECF # 191) recites, Mr. Pham was initially indicted on May 24, 2014.  That Indictment charged Mr. Pham in five counts "with: (1)  conspiring to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. §2339B ("Count One"); (2)  providing and attempting to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. §2339B ("Count Two"); (3)  conspiring to receive military-type training from a designated foreign terrorist organization, in violation of 18 U.S.C. §371 ("Count Three"); (4)  receiving military-type training from a designated foreign terrorist organization, in violation of 18 U.S.C. §2339D ("Count Four"); and (5)  possessing, carrying, and using an automatic firearm in relation to crimes of violence, in violation of 18 U.S.C. § 924(c) ("Count Five").  *Id.*, at ¶ 1.

Pursuant to a Plea Agreement, Mr. Pham pleaded guilty on January 8, 2016, to Counts Two, Three, and Five.  *Id.*, at ¶ 2.  As noted in the government's August 14, 2021, letter (ECF # 184) (hereinafter "Gov't Frustration of Purpose Letter"), "[i]n the Plea Agreement, Pham and the Government stipulated to the application of the United States Sentencing Guidelines . . . to his

3

case, and agreed that the advisory Guidelines sentence was 600 months' imprisonment, with a mandatory minimum term of 360 months' imprisonment []."  Pursuant to the Agreement, Mr. Pham "also agreed to the entry of a Consent Order of Forfeiture and a stipulated judicial order of removal from the United States."  *Id.*

Mr. Pham was sentenced on May 27, 2016, to a prison term of 480 months, "including the mandatory consecutive 360 months' imprisonment on Count Five – to be followed by a life term of supervised release, and imposed a $300 mandatory special assessment."  *Id*.  *See also* Judgment, May 31, 2016 (ECF # 121).  At the conclusion of the sentencing proceeding, the Court "granted the Government's motion to dismiss Counts One and Four of the Indictment, pursuant to the plea agreement between the parties."  September 24, 2020, Order, at ¶ 3.

Following the Supreme Court's decision in *Sessions*, Mr. Pham wrote the Court requesting that Count Five be vacated because the underlying conviction – a conspiracy – no longer qualified as a "crime of violence."  *See* September 24, 2020, Order, at ¶ 4.  The government agreed that absent that jurisdictional predicate, Count Five could not survive.  *Id*., at ¶ 5.

Accordingly, following *Davis*'s confirmation of the result in *Sessions*, "the parties notified the Court that they agreed that *Davis* compelled granting the defendant's § 2255 petition as to Count Five, but that the parties continued to negotiate about an appropriate path forward." Gov't Frustration of Purpose Letter, at 3.  However, "[t]hose negotiations proved unsuccessful, and so the Government notified the Court on July 21, 2020, of its intention to move to reinstate the counts of the Indictment that were dismissed at sentencing."  *Id*.

Subsequently, the government submitted a letter on September 24, 2020 (ECF # 189),

with a Proposed Order, in which it requested, without objection from Mr. Pham, that the Court

vacate Mr. Pham's conviction on Count Five, vacate his guilty pleas on Counts Two and Three

as well, "nullify[]" the Plea Agreement altogether, and vacate its Order dismissing the Counts

dismissed as part of the Plea Agreement (Counts One and Four).  That same day, the Court

issued an Order (ECF #191) implementing those requests.

In its prior August 14, 2020, Frustration of Purpose letter, at 9, the government had also

informed the Court that it intended to charge Mr. Pham with additional offenses *not* included in

the initial Indictment.  The government described the conduct underlying those charges as being

based on evidence that includes

> (1)  video recordings showing the defendant constructing and
> detonating a test explosive device virtually identical to the one
> Pham told law enforcement was to be used in his planned suicide
> attack on Americans and Israelis at Heathrow International Airport;
> (2)  video recordings of Pham associating with high-ranking
> members of AQAP;  (3)  a video recording of Pham describing his
> goal of waging jihad and his desire to martyr himself;  and (4)  a
> document containing instructions for executing the attack upon
> Pham's return to London.

*Id*.

In a Superseding Indictment (S-1) (ECF # 202) filed April 8, 2021, the government did

indeed add the following charges to those alleged in Counts One through Four of the initial

Indictment (which were repeated in that order in the Superseding Indictment):

- *(new replacement) Count Five*, charging a Conspiracy to Bomb a Place of Public

  Use, in violation of 18 U.S.C. §§2332f(a)(2), (b)(2)(B), and (b)(2)(D), and

  alleging conduct "[f]rom at least in or about December 2010, up to and including

  in or about December 2011, in Yemen, the United Kingdom, and elsewhere, . . .

5

[;]"

- *Count Six*, charging an Attempted Bombing of a Place of Public Use, in violation of 18 U.S.C. §2332f, and alleging conduct "[f]rom at least in or about December 2010, up to and including in or about December 2011, in Yemen, the United Kingdom, and elsewhere, . . . [;]"

- *Count Seven*, charging a Conspiracy to Use a Weapon of Mass Destruction, in violation of 18 U.S.C. §2332a(a)(1), alleging conduct "[f]rom at least in or about December 2010, up to and including in or about December 2011, in Yemen, the United Kingdom, and elsewhere, . . . [;]"

- *Count Eight*, charging the Attempted Use of a Weapon of Mass Destruction, in violation of 18 U.S.C. §2332a(a)(1), alleging conduct "[f]rom at least in or about December 2010 , up to and including in or about December 2011, in Yemen, the United Kingdom, and elsewhere, . . . [;]"  and

- *Count Nine*, charging Use of a Destructive Device During and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§924(c)(1)(A) and (c)(1)(B)(ii), alleging conduct "[i]n or about 2011, in Yemen, the United Kingdom, and elsewhere, . . ."

Count Nine carries a mandatory minimum consecutive prison term of 30 years if Mr. Pham is convicted on Counts Six or Eight.  *See* §924(c)(1)(B)(ii).  The Superseding Indictment, at ¶ 13, also includes, as did the initial Indictment, a forfeiture allegation.

6

## ARGUMENT

### POINT I

### COUNTS FIVE THROUGH NINE OF THE SUPERSEDING INDICTMENT MUST BE DISMISSED BECAUSE THEY WERE <u>INSTITUTED AFTER THE STATUTE OF LIMITATIONS EXPIRED</u>

As discussed below, the Plea Agreement has been nullified, and its terms and obligations – including any language waiving a defense based on the statute of limitations with respect to any charges other than those dismissed as part of the Plea Agreement – therefore voided.  As a result, Counts Five through Nine of the Superseding Indictment must be dismissed because they were instituted following expiration of the statute of limitations.

Moreover, even if the Plea Agreement were to apply, Counts Five through Nine are outside the scope of any such waiver, and therefore must be dismissed because they were instituted after the statute of limitations lapsed.

**A.**     *The Language of the Plea Agreement*

The statute of limitations waiver in the Plea Agreement reads as follows:

> [i]t is further agreed that should the conviction following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

Plea Agreement, at 8-9.

**B.**     *The Statute of Limitations*

The statute of limitations for federal criminal offenses is set forth in 18 U.S.C. §3282, which provides as follows:

> [e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

As the Supreme Court has explained, the purpose of the statute of limitations in the criminal context is "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970).

Elaborating, the Court in *Toussie* added that "[s]uch a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.*, at 114-15.  In addition, "[s]uch a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id.*, at 115.

The Court in *Toussie* reiterated that for those reasons stated above, "and others," it had "stated before the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." *Id.* (internal quotation and citations omitted)s.  A year later, in *United States v. Marion*, 404 U.S. 307 (1971), the Court reaffirmed that "the applicable statute of limitations is the primary guarantee against bringing overly stale criminal charges[,]" and that "[s]uch statutes represent legislative assessments of relative interests of the State and the defendant in

8

administering and receiving justice;  they are made for the repose of society and the protection of

those who may during the limitation have lost their means of defence."  *Id*., at 322 (internal

quotations, citations, brackets, ellipsis and footnote omitted).  Consequently, "[t]hese statutes

provide predictability by specifying a limit beyond which there is an irrebuttable presumption

that a defendant's right to a fair trial would be prejudiced."  *Id*.

C.      ***The Court's September 24, 2020, Order and the Parties' Intent***

        The communications between the parties, as well as the correspondence with the Court

and the proposed Order submitted thereto, all evince the intent to relieve the parties of their

obligations under the Plea Agreement.  For example, in a September 23, 2020 email (attached as

Exhibit 1 to the accompanying August 30, 2021, Declaration of Bobbi C. Sternheim, Esq.)

("Sternheim Dec.") from Assistant United States Attorney Anna M. Skotko to Bobbi C.

Sternheim, Esq. (Mr. Pham's counsel), the government provided a draft Proposed Order "which

includes language that the parties are relieved of their obligations under the plea agreement."

        Ms. Sternheim responded that same day in an email in which she requested "inclusion of

the following: 'and the plea agreement is vacated.'"  (A copy of that email is attached as Exhibit

2 to the Sternheim Dec.).[1]  AUSA Skotko replied the same day that "I think we agree with the

end result, but since the plea agreement was a contract between the Government and the

defendant – not a Court Order – we don't believe that 'vacate' is the correct procedure or term of

---

[1]  Previously, in response to the government's August 14, 2020, Frustration of Purpose
Letter, Ms. Sternheim had written the Court September 11, 2020 (ECF # 187), that in light of his
motion to vacate Count Five, Mr. Pham did not object to the government's "seek[ing] to vacate
Pham's plea agreement, guilty pleas and convictions, to reinstate the viable charges in the
Indictment, and to permit the case to proceed to trial."  *See also* September 24, 2020, Order, at ¶
6.

art." (A copy of AUSA Skotko's second September 23, 2020, email is attached at Exhibit 3 to the Sternheim Dec.).

The parties' agreement was reflected in the government's September 24, 2020, letter to the Court (ECF # 189), which included a Proposed Order and requested that

> for the reasons set forth in the Government's August 14 Letter, pursuant to the express terms of Pham's plea agreement, 18 U.S.C. §3296, and the frustration-of-purpose doctrine, the Court should enter the attached order vacating Pham's guilty pleas to Counts Two, Three, and Five; *nullifying* the plea agreement upon vacating the convictions; and vacating the Court's order dismissing Counts One and Four of the Indictment.

*Id*. (emphasis added) (footnote omitted).

The Court's September 24, 2020, Order (ECF # 191) adopted the Proposed Order, including, at ¶ 7, that "on consent of the parties" Mr. Pham's (a) "guilty pleas to Counts Two, Three, and Five of the Indictment are VACATED[;]" (b) "[t]he Court's order dismissing Counts One and Four of the Indictment is VACATED[;]; and (c) "[t]he plea agreement is NULLIFIED upon vacating the convictions."

**D.**     ***The Law Applicable to Plea Agreements***

    **1.**     ***General Principles***

In *United States v. Woltmann*, 610 F.3d 37 (2d Cir. 2010), the Second Circuit articulated the general principles applicable to examining plea agreements. As a threshold matter, "[p]lea agreements are reviewed 'in accordance with principles of contract law.'" *Id*., at 39, *quoting United States v. Vaval*, 404 F.3d 144, 152 (2d Cir.2005) (internal quotation marks omitted).

However, "because plea agreements are 'unique contracts,'" a reviewing court "'temper[s] the application of ordinary contract principles with special due process concerns for

fairness and the adequacy of procedural safeguards.'"  *Id*., at 39-40, *quoting United States v. Granik*, 386 F.3d 404, 413 (2d Cir.2004) (internal quotation marks omitted).

As a result, "[s]uch contracts are narrowly construed."  *Id*.  In addition, ordinary contract principles notwithstanding, "any ambiguity is resolved strictly against the Government."  *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004) (internal quotation marks omitted).  Thus, as the Fourth Circuit has stated, "[b]ecause plea agreements involve waivers of constitutional rights, [a court] reviews them 'with greater scrutiny than it would apply to a commercial contract and hold[s] the government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in plea agreements.'"  *United States v. Under Seal*, 902 F.3d 412, 418 (4th Cir. 2018), *quoting United States v. Davis*, 714 F.3d 809, 814-15 (4th Cir. 2013) (alteration and internal quotation marks omitted).

### 2.  *The Provisions of 18 U.S.C. §3296*

In 2002, Congress added §3296 to Title 18 of the United States Code.  That section provides at §3296(a) that "any counts of an indictment or information that are dismissed pursuant to a plea agreement shall be reinstated by the District Court if –

(1)   the counts sought to be reinstated were originally filed within the applicable limitations period;

(2)   the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;

(3)   the guilty plea was subsequently vacated on the motion of the defendant;  and

(4)   the United States moves to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final.

18 U.S.C. §3296(a).  *See also United States v. Toney*, 2020 WL 1951651 (N.D. Ill. April 23, 2021), at *2.

### 3.    *Additional Relevant Contract Law Doctrines*

#### a.    *Ambiguities In a Contract Are Construed Against the Drafter*

As set forth above, in plea agreements ambiguities are "resolved strictly against the government." *United States v. Cimino*, 381 F.3d at 127.  *See also United States v. Barefoot*, 754 F.3d 226 (4th Cir. 2014).

That expression customizes for the criminal legal process the traditional contract principle that "[i]n choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."  Restatement 2d Contracts, §206, Interpretation Against the Draftsman (1981).

The rationale for that doctrine is straightforward:

> [w]here one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party.  He is also more likely than the other party to have reason to know of uncertainties of meaning.  Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert.

*Herbil Holding Co. v. Commonwealth Land Title Ins. Co.*, 183 A.D.2d 219, 227, 590 N.Y.S.2d 512, 517 (2d Dept. 1992).  *See also Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985).

#### b.    *Election of Remedies*

Another fundamental tenet of contract law is the doctrine of "election of remedies," which prescribes that a party "may not both affirm and disaffirm a contract . . . or take a benefit

12

under an instrument and repudiate it." *Arbor Realty SR, Inc. v. Keener*, 988 F. Supp.2d 254, 259

(E.D.N.Y. 2013), *quoting Lumber Mut. Casualty Ins. Co. of N.Y. v. Friedman*, 176 Misc. 703,

705, 28 N.Y.S.2d 506 (Sup. Ct. N.Y. Co. 1941) (quotations omitted), *and also citing*

*Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 768 F. Supp. 115, 117 (S.D.N.Y.

1991) (pursuant to the election of remedies rule, plaintiff cannot recover damages for fraud and

also achieve rescission because "an award of damages for fraud affirms the contract" while

"rescission vitiates the contract and places the parties in *status quo* prior to the transaction").[2]

Thus, "[t]he election of remedies rule thus bars the pursuit of alternative relief after a

party has "chosen one of two or more co-existing inconsistent remedies, and in reliance upon that

election, that party must also have gained an advantage, or the opposing party must have suffered

some detriment." *Arbor Realty*, 988 F. Supp.2d at 259-60, *quoting* 331 East 14th St. LLC v. 331

East Corp., 293 A.D.2d 361, 740 N.Y.S.2d 327 (1st Dept. 2002) (*quoting Prudential Oil Corp. v.

Phillips Petroleum Co*., 418 F. Supp. 254, 257 (S.D.N.Y. 1975) (quotations omitted)). *See also*

*Petrucelli v. Palmer,* 596 F. Supp. 2d 347, 368 (D. Conn. 2009) ("if rescission is chosen as a

remedy, it usually operates as a waiver of the right to sue for damages[,]" and "[u]sually, a

judgment cannot stand if both damages and rescission are awarded") (citations omitted); *Albert*

*v. Martin Custom Made Tires*, 116 F.2d 962, 963-64 (2d Cir. 1941) (Hand, L., J.);  *Apex Pool*

*Equipment Co. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969) ("election in this context does not

---

[2]  The doctrine is a foundational precept of contract law dating back more than a century. *See, e.g., Hurst v. Trow's Print and Bookbinding Co.*, 30 Abb. N. Cas. 1, 2 (1893) (New York Court of Appeals holding that the "election to rescind the contract bars an action to enforce the contract") (citations omitted);  *McNaught v. Equitable Life Assur. Society of United States*, 136 A.D. 774, 777 (2d Dept. 1910) (if a party "elects to rescind himself or seek rescission in equity, the rescission must be as to the whole contract and not merely as to a part").

depend upon an intention to surrender a right;  the point is that 'The law simply does not, under the circumstances, permit a party to exercise two alternative or inconsistent rights or remedies[]'"), *quoting* 5 Williston, Contracts, §684 (Rev. ed. 1961);  *Mission Product Holdings, Inc. v. Tempnology, LLC*, 586 U.S. ___, 139 S.Ct. 1652, 1662 (2019).

    c.    *Mutual Mistake*

    The contract law doctrine of "mutual mistake" provides that "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake."  Restatement (Second) of Contracts §152.

    A party seeking to void a contract "must show that the resulting imbalance in the agreed exchange is so severe that he can not fairly be required to carry it out."  *Id*., at §152 cmt. c.  Also, "[o]rdinarily he will be able to do this by showing that the exchange is not only less desirable to him but is also more advantageous to the other party."  *Id*.

    In addition, in the context of plea agreements, "[w]here a mistake regards a basic assumption on which the bargain is based, rescission of the contract is the preferred remedy; reformation is appropriate only when the mistake 'is one as to expression.'"  *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 97-98 (3d Cir. 2007) (Roth, J., *dissenting*), *quoting United States v. Williams*, 198 F.3d 988, 994 (7th Cir.1999) (*quoting* Restatement (Second) of Contracts § 155 cmt. a (footnote omitted), *and citing United States v. Sandles*, 80 F.3d 1145, 1148 (7th Cir.1996) ("[w]here there is a mutual misunderstanding as to the material terms of a [plea agreement], the appropriate remedy is rescission, not unilateral modification.");  27 Williston on

14

Contracts § 70.35 (4th ed.) ("reformation must yield to rescission where the error is in the substance of the bargain, not in its expression").

Commentators have also pointed out that modern contract law no longer distinguishes between mistakes of law and those of fact. *See, e.g.*, Restatement (Second) of Contracts §151 (defining "mistake" as "a belief that is not in accord with the facts") and cmt. b ("[t]he rules stated in this Chapter do not draw the distinction that is sometimes made between 'fact' and 'law.' They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time"); 27 Richard A. Lord, Williston on Contracts §70:125 (4th ed.1990) (in modern contract law, "[c]ourts generally disallow any distinction between mistakes of fact and law, treating both alike for purposes of equitable relief. . . . To justify rescission, a mistake of law must have related to a question, the answer to which was assumed as part of the fundamental basis of the transaction"); 7-28 Joseph Perillo, Corbin on Contracts §28.49 (revised ed. 2002) ("[t]oday, the rule denying relief for mistake of law has little vitality. It has been eroded by so many qualifications and exceptions, varying from jurisdiction to jurisdiction. It is common to find cases where the issue is not even raised"); E. Allan Farnsworth, Contracts §9.2 ("the modern view is that the existing law is part of the state of the facts at the time of agreement. Therefore, most courts will grant relief for such a mistake, as they would for any other mistake of fact").

### d.    *Proportionality*

In addition, proportionality of the remedy in relation to any alleged breach is a vital element of contract law. In the context of Draconian liquidated damages clauses, the New York Court of Appeals explained in *Fifty States Management Corporation v. Pioneer Auto Parks, Inc.*,

15

46 N.Y.2d 573 (1979), "courts will examine the sum reserved under an instrument as liquidated damages to insure that it is not disproportionate to the damages actually arising from the breach or designed to coerce the performance of a party." *Id*., at 577 (citations omitted).  *See also Irving Tire Co. v. Stage II Apparel*, 230 A.D.2d 772 (2d Dept. 1996).

**E.**      ***Counts Five through Nine of the Superseding Indictment Are Barred by the Statute of Limitations Because the September 24, 2020, Order Nullified the Plea Agreement and Relieved the Parties of Their Obligations Thereunder***

When applied to the facts of this case, the contract and Due Process principles that control evaluation of plea agreements, coupled with relevant and analogous case law, establish that the statute of limitations waiver provision of the Plea Agreement herein is unenforceable. As a result, Counts Five through Nine are time-barred.

Indeed, in its Frustration of Purpose letter, at 9, the government tacitly acknowledges that inevitable conclusion.  In informing the Court of the government's intent to institute the additional charges (that comprise Counts Five through Nine), the letter avoids confronting the statute of limitations *at all*, and – in contrast to the several pages of legal analysis supporting the (indisputable) argument that the previously dismissed Counts could be reinstated – fails to provide any authority to suggest that either the statute of limitations waiver in the Plea Agreement survives nullification of the Plea Agreement, and/or that Counts Five through Nine could be lodged within the limitations period.

**1.**      ***The Plea Agreement Has Been Nullified and Is Therefore Void***

As set forth **ante**, at 4-5, the Plea Agreement between Mr. Pham and the government has been nullified pursuant to the Court's September 24, 2020, Order, and therefore rendered void. In its Frustration of Purpose Letter, the government asserted that Mr. Phams's letter/petition and

16

"the anticipated vacatur of the Section 924(c) count, however, fatally undermine the plea agreement in this case, and the Court should restore the parties to the positions they were in prior to executing it."

The government's rationale was that "[a]ny other result would allow Pham to selectively enforce terms from a plea agreement rendered void by *Davis*, while ignoring other terms relating to reinstatement and depriving the Government of the benefit of the bargain obtained by his plea to a violation of Section 924(c)." *Id.*

As a result, the government's September 24, 2020, letter (ECF # 189) informed the Court that the accompanying Proposed Order "includes language that the parties are relieved of their obligations under the plea agreement." In that September 24, 2020, Order, the Court declared the Plea Agreement "nullified." (ECF # 191).

The dictionary definition of "nullify" is (1) "to render or declare legally void or inoperative:  to nullify a contract[;]" and/or (2) "to deprive (something) of value or effectiveness; make futile or of no consequence." *See Dictionary.com*, available at https://www.dictionary.com/browse/nullify.[3]

In turn, "void" – which term the government used as well in its Frustration of Purpose Letter, *see* above – as an adjective is defined as "having no legal force or effect;  not legally binding or enforceable." *See* https://www.dictionary.com/browse/void.  As a verb, "void" means "to make ineffectual;  invalidate;  nullify[.]" *Id.*

Consequently, it is indisputable that the terms of the Plea Agreement are without effect and unenforceable.

---

[3] The first definition is characterized as the "law" definition.

17

2.      *The Categorical Treatment of the Plea Agreement Conforms with Case Law*

The Court's repudiation of the Plea Agreement in its entirety is fully consistent with the applicable case law.  For example, in *United States v. Munoz*, 718 F.3d 726 (7th Cir. 2013), the Seventh Circuit explained that while it "might have faced more difficult issues if the government had tried to enforce only a few select provisions of the plea agreement, the government has treated the entire plea agreement as void, including the provisions that would have benefitted it, such as [the defendant's] waiver of his appeal rights."  *Id.*, at 730-31.

As a result, the Court in *Munoz* held that with respect to the plea agreement's foreclosure of the right to appeal, "[t]hat waiver is now unenforceable along with the rest of the agreement." *Id*., at 731 (footnote omitted), *citing United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir.2011) ("an appellate waiver stands or falls with the rest of the bargain") (internal quotation omitted);  *Nunez v. United States*, 546 F.3d 450, 454 (7th Cir.2008).

Similarly, in *United States v. Lockwood*, 416 F.3d 604 (7th Cir. 2005), the Court pointed out that "Rule 11 [Fed.R.Crim.P.] does not, however, allow for piecemeal acceptance of some portions of the plea agreement, but not others."  *Id*., at 607.  In *Lockwood*, "the judge accepted the agreement but *sua sponte* rescinded one of its provisions – the one pertaining to Lockwood's appeal waiver."  *Id*.  However, the Seventh Circuit agreed with the government "that Rule 11 does not allow for such an approach, so the district court was in error when he granted Lockwood special leave to appeal."  *Id*.

Likewise, in *United States v. Sandoval-Lopez*, 122 F.3d 797, 802 (9th Cir.1997), the Ninth Circuit noted in *dictum* that a defendant's challenge to a plea agreement is "directed at the entire agreement, and, if successful, may render the entire agreement void or voidable," making

18

the "proper remedy" either "to vacate or allow withdrawal of the guilty pleas and reinstate" the

charges dismissed under the agreement.

In its Frustration of Purpose letter, the government cited *United States v. Bunner*, 134

F.3d 1000, 1005 (10th Cir. 1998), in which a §924(c) conviction had been invalidated by *Bailey

v. United States*, 516 U.S. 137 (1995), for the proposition that vacating that conviction had

undermined the underlying purpose of the plea agreement, and that the proper recourse was

returning the parties to the positions they occupied prior to the plea agreement.  *See also id*., at

1004, *citing* Restatement (Second) of Contracts §265 cmt. a (Am. Law Inst. 1981).

### 3.   *Whether Mr. Pham's Motion to Vacate Breached the Plea Agreement Is Irrelevant, and It Did Not Constitute a Breach But Rather a Mutual Mistake*

As the government correctly noted in its Frustration of Purpose Letter, at 5, "the Court

need not decide whether Pham's filing of a Section 2255 motion constituted a breach of the plea

agreement to grant the Government's motion."  Quoting the Second Circuit's opinion in *United

States v. Podde*, 105 F.3d 813, 821 n.6 (2d Cir. 1997) (internal citations omitted), the

government added that "[w]hether [Pham] breached his contract or acted properly in negating it

is largely irrelevant to this issue."

In fact, again in its Frustration of Purpose Letter, the government pointed out that its

remedy would be the same regardless of the underlying cause:

> whether Pham's motion to vacate his Count Five conviction
> pursuant to Davis is based on an alleged breach of the Plea
> Agreement or an unforeseen change in law that frustrated the
> mutually-understood purpose of the agreement – the bargain struck
> by the parties has been undone, and the Court should restore the
> status quo ante by reinstating all of the viable charges.

*Id*., at 8, *citing Podde*, 105 F.3d at 821 n.6.

Indeed, other courts have analogized this precise situation to "mutual mistake," *see* **ante**, at 14-15, rather than contractual breach.  For instance, in *United States v. Gaither*, 926 F. Supp. 50 (M.D. Pa. 1996), the decision in *Bailey* invalidated the defendant's §924(c) conviction but the District Court refused to characterize the defendant's petition pursuant to 28 U.S.C. §2255 (to vacate that conviction) as a breach of the plea agreement.

Rather, as the Court in *Gaither* explained, "[d]efendant's indictment, plea and incarceration are improper under *Bailey*."  926 F. Supp. at 51.  Thus, "[b]ecause Defendant's continued incarceration in the wake of *Bailey* would result in a 'complete miscarriage of justice,' . . . his decision to seek release is entirely proper, and is not a breach of the plea agreement."  *Id.*, at 52, *quoting Warner v. United States*, 926 F.Supp. 1387, 1391 (E.D. Ark. 1996) (internal quotations and citation omitted).  *See also United States v. Liguori*, 430 F.2d 842, 849 (2d Cir. 1970) ("[u]nder such circumstances, 'the federal government has no valid interest in . . . [Defendant's] continued punishment . . .'"), *citing United States v. Miller*, 406 F.2d 1100, 1104 (4th Cir.1969).

Thus, the Court in *Gaither* recognized that "the fact that the plea must be vacated under the present circumstances is the responsibility of neither the government *nor Defendant*, but rather has been dictated by the Supreme Court."  926 F. Supp. at 53 (emphasis in original).[4]  As a result, under those circumstances in which "the parties involved are mistaken in the shared belief that a certain conduct is reached by a statute, the guilty plea to the counts arising under the

---

[4] Here, the government effectively acknowledges that imperative, remarking in its Frustration of Purpose Letter, at 1, that "the parties agree that the Supreme Court's decision in [*Davis*] applies to Pham's pending § 2255 petition, and that, under *Davis*, Pham's conviction under 18 U.S.C. § 924(c) must be dismissed."

specific statute is constitutionally invalid because the plea could not have been knowing or intelligent[.]" *McKeever v. Warden SCI-Graterford*, 486 F.3d at 91-92 (Roth, J., *dissenting*). *See also Bousley v. United States*, 523 U.S. 614 (1998) (guilty plea not constitutionally valid if based on statute later found not to reach the defendant's conduct).[5]

Mutual mistake – such as a subsequent Supreme Court decision that vitiates a particular count of conviction as a matter of law – that unravels a plea agreement does not alter the remedy or impact:  "when the plea as to one violation is constitutionally invalid because the parties did not understand at the time that the statute did not reach the defendant's conduct, the entire plea agreement must be voided;  courts should not simply 'sever' the invalid pleas and treat the remainder of the plea agreement as valid."  486 F.3d at 92 (Roth, J., *dissenting*).[6]

---

[5]  Such statutory interpretation is not classified as a "change" in the law, but rather simply the definitive, correct construction of the statute.  *See McKeever*, 836 F.3d at 92, n.15 (Roth, J., *dissenting*), *citing Rivers v. Roadway Express*, 511 U.S. 298, 312-12 (1994) ("judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction").

[6]  In *Gaither*, the Court referenced related contract and tort principles:  "Defendant's inability to perform his obligations under the plea agreement is more closely parallel to the discharge of performance by a supervening impracticability, Second Restatement of Contracts, §261, or prevention by government regulation or order, Second Restatement of Torts, §264."  926 F. Supp. at 52.  Section 261 states that:

> [w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Section 264 states:

> [i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or

That result obtains particularly when only one count of several is vacated.  In *United States v. Barron*, 127 F.3d 890 (9th Cir. 1997), the Court reasoned that

> [g]iven the realities of plea bargaining, it makes good sense to apply the sentence package concept when a petitioner challenges one of multiple convictions obtained under a plea agreement. . . . an appropriate remedy is to put [the defendant] in the position he was in before he entered into the plea agreement or before the district court accepted the plea based on conduct which did not constitute the crime charged.

*Id*., at 895.

In *United States v. Lewis*, 138 F.3d 840, 843 (10th Cir. 1998), addressing the same situation involving mutual mistake – a multi-count plea agreement unwound by vacatur of a single count due to *Bailey* – the Court quoted the above section from *Barron* in cautioning the defendant that if he pursued his §2255 motion, he risked voiding the entire plea agreement, and prosecution on all previously dismissed counts.  *See also United States v. Bradley*, 381 F.3d 641, 647-48 (7th Cir.2004) (invalidity of the §924(c) count due to mutual mistake because defendant's guilty plea was not knowing or voluntary meant there had not been a "meeting of the minds on all [the] essential terms" of the plea agreement, and that the entire plea agreement, and not just with respect to the 924(c) count, was "tainted").

### 4.     *In Agreeing to Nullify the Plea Agreement, the Government Foreclosed Its Ability to Invoke the Agreement's Statute of Limitations Waiver*

As detailed **ante**, at 12-14, rescission precludes any claim to enforce terms of a contract.  Here, the government's agreement to nullify and void the Plea Agreement divests it of any

---

> order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made. Under this reasoning, Defendant's performance is excused and the contract is unenforceable.

capacity to invoke the statute of limitations waiver in the Agreement.  Thus, that waiver is unenforceable, and Counts Five through Nine are time-barred.

While no case appears to present precisely the same facts as those herein, in analogous circumstances courts have refused to enforce such waivers.  For example, in *Gaither*, involving a plea agreement that did not include a statute of limitations waiver, even counts that had been dismissed pursuant to the plea agreement were deemed time-barred.  926 F. Supp. at 51.[7]

In *United States v. Ciavarella*, 716 F.3d 705 (3d Cir. 2012), the Court ruled that a plea agreement's waiver of the statute of limitations was nullified because the District Court had rejected the plea, compelling the parties to withdraw from it.  *Id*., at 734 ("even if we found the agreement regarding the statute-of-limitations waiver to include this type of situation, the waiver was nullified by the Court's rejection of, and the parties' withdrawal from, the agreement").

Here, too, it was the Court's formal Order that nullified the Plea Agreement.  Thus, should the government point to the Plea Agreement as a basis for Counts Five through Nine being timely, that merely begs the obvious question:  what Plea Agreement?  The Court's September 24, 2020, Order nullified it, thereby voiding it, and expressly intended to relieve the parties of their obligations thereunder.  Nor is the language in the Plea Agreement a tolling provision;  it is expressly a waiver provision only.

Nor does the Second Circuit's decision in *Podde* hold otherwise.  In *Podde*, as in *Gaither*, the issue was "whether the government was permitted to reindict the defendant on the *original charges* after the statute of limitations had ostensibly expired."  105 F.3d at 814 (emphasis added).  Thus, the Court's suggestion in *dicta* – while holding that the charges were indeed time-

---

[7]  *Gaither* was decided prior to passage of §3296.  *See* **ante**, at 11-12.

barred, *id.*, at 818-20 – that the government could "prevent the situation from arising in the future by securing waivers of the statute of limitations in its plea agreements[,]" *id.*, at 815, *see also id.*, at 821 n.7, is inapposite herein because the government seeks to institute *new* charges *not* included in the Plea Agreement.[8]

Likewise, the decisions in *United States v. Figueroa*, 2021 WL 1608907 (D.N.J. April 26, 2021) ("*Figueroa I*") and 2021 WL 1661202 (D.N.J. April 28, 2021) ("*Figueroa II*") present materially different circumstances. In *Figueroa*, the defendant *never entered* a plea of guilty, but instead withdrew from the agreement after the Court had accepted it. *Figueroa II*, at *4. In fact, the contrast to this case is manifest from the Court's remark in *Figueroa I*, at *5, that "it is clear that this provision from the plea agreement was meant to relieve the parties of their obligations under the agreement if the Court was the one to void the agreement in some way."

### 5.    *Any Argument That Mr. Pham Would Reap a Windfall Should Be Rejected*

In *Gaither*, "the government urge[d] that as a policy matter Defendant must not be permitted to 'reap the windfall' of having his conviction under the plea agreement vacated while avoiding charges dismissed pursuant to the same agreement." 926 F. Supp. at 51. That argument should be rejected, as it was in *Gaither*, for several reasons.

As a threshold matter, the purported "windfall" would not be the same here, because in *Gaither* it was the dismissed count from the *initial* accusatory instrument, and *not* additional charges for which there was not even evidence at the time of plea or sentencing, that was time-barred. 926 F. Supp. at 54.

---

[8] Moreover, §3296, enacted after *Podde* was decided, resolved the question conclusively with respect to charges dismissed as part of a plea agreement. *See* **ante**, at 11-12.

Also, as the Court in *Gaither* explained, "the very existence of a statute of limitations entails the prospect that wrongdoers will benefit." *Id.*, at 54. Nevertheless, "Congress chose to enact a five-year statute of limitations, without a good faith exception, and this court is bound to apply it." *Id.* In addition, "the diligence and good faith by the government does not toll or otherwise negate the operation of the statute of limitations." *Id. See also Podde*, 105 F.3d at 819-820 (noting "statute of limitations exists primarily to protect the rights of the defendant, not just to prevent the government from acting in bad faith[,]" and expressly agreeing with *Gaither*).

Nor is Mr. Pham reaping any "windfall," implicating the doctrine of proportionality of remedy. Even without the new charges, and with the previously dismissed charges reinstated, Mr. Pham's total exposure if convicted on all counts would be 40 years' imprisonment – equal to the 480-month (40-year) sentence already imposed by the Court. Also germane to proportionality is the need to avoid a remedy that coerces one party, as the additional potential punishment might do.

Here, the government availed itself of the option recommended and authorized by the case law applicable to plea agreements. It cannot have that cake and eat it, too. Fundamental contract law and the Due Process considerations that reinforce the jurisprudence pertinent to plea agreements proscribe recourse to such multiple, inconsistent remedies.

Accordingly, it is respectfully submitted that Counts Five through Nine of the Superseding Indictment are time-barred, and must be dismissed.

**F.**     ***Counts Five through Nine Would Be Time-Barred***
          ***Even Under the Terms of the Plea Agreement***

Even if somehow the government could rely on the statute of limitations waiver in the

Plea Agreement, that waiver would not apply to Counts Five through Nine of the Superseding

Indictment.  Thus, they would be time-barred even under the Plea Agreement.

The operative language of the waiver provision in the Plea Agreement applies to "any

*prosecution* that is not time-barred" at the time of execution of the Agreement.  (Emphasis

added).  The word "prosecution" appears again in the second sentence of that paragraph as well.

Yet, as the government conceded in its Frustration of Purpose Letter (ECF # 184), at 9, Counts

Five through Nine are "based on additional evidence secured following [Mr. Pham's] conviction

and sentencing."  (Emphasis added).  *See also* Government's September 24, 2020, letter (ECF #

189) (new charges are "based on additional evidence secured *following* [Mr. Pham's] conviction

and sentencing").  (Emphasis added).[9]

The government drafted the Plea Agreement and used specific terminology:  not a broader

term such as "offense conduct," but rather a formal term with a narrower meaning – *prosecution*,

which is defined as "the institution and carrying on of legal proceedings against a person."  *See*

https://www.dictionary.com/browse/prosecution.

Here, there was not any "prosecution" that could have been instituted at the time the Plea

Agreement was executed because the government did not possess the evidence, or even know

that the alleged conduct had been committed.  As a result, the waiver provision, even if in effect,

---

[9]  Also, in its Frustration of Purpose Letter, at 9, the government noted that Counts Five
through Nine "are not covered by the provisions of the Plea Agreement defining the conduct for
which 'the defendant will not be further prosecuted criminally by this Office.'"

would not encompass Counts Five through Nine.

As detailed **ante**, at 10-15 & 18-23, the principles of contract law generally, and specifically as applied to plea agreements (infused with Due Process considerations), dictate that the terms are to be construed strictly against the government.  Applying those doctrines here compels the conclusion that the language of the Plea Agreement does not, in this novel situation in which the government, by its own admission, *could not have* "prosecuted" Mr. Pham for Counts Five through Nine at the time the Plea Agreement was executed, cover those counts as part of the statute of limitations waiver.

The case law supports such strict scrutiny of the language of such waivers, and against the government.  For example, in *United States v. Wilson*, 26 F.3d 142 (D.C. Cir. 1994), the Court held that the waiver did not apply based on analysis of the specific language the defendant's counsel used in letters consenting to tolling the statute of limitations.  *Id*., at 156-57.

Moreover, to the extent there is any question about the timing of the government's receipt of evidence that would have enabled a prosecution, and the timing of the alleged conduct itself, the Court should conduct an evidentiary hearing at which the government would shoulder the burden of establishing the timeliness of prosecution of Mr. Pham on the additional charges.

Accordingly, even if the statute of limitations waiver in the Plea Agreement remained in effect, it would not cover Counts Five through Nine, and they would still be time-barred as a result.

27

**POINT II**

**COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED BECAUSE THEY ARE THE PRODUCT OF A VINDICTIVE PROSECUTION**

Counts Five through Nine should be dismissed because they are also the product of vindictive prosecution.  As detailed below, here the government's refusal to permit Mr. Pham to accept its prior plea offer extended after it became apparent the initial Count Five could not survive *Dimaya* and *Davis*, but after Mr. Pham initially declined the offer, constitutes vindictiveness that denies Mr. Pham Due Process.

**A.**     ***The Applicable Law***

The doctrine of vindictive prosecution "is intended to serve as a constitutional check on prosecutorial discretion."  *United States v. Sweeney*, 483 F. Supp.3d 871, 937 (E.D. Cal. 2020), *citing Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978).  The doctrine "is premised on the idea that" while the government may penalize a defendant for committing a crime, "a person 'may not be punished for exercising a protected statutory or constitutional right.'"  *Id.*, *quoting United States v. Goodwin*, 457 U.S. 368, 372 (1982).  *See also United States v. Delgado-Salazar*, 487 F. Supp. 3d 1181 (D.N.M. 2020) ("government violates the due process clause of the United States constitution if, during a criminal proceeding, it punishes a defendant for the exercise of his constitutional or statutory rights"), *citing United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (citation omitted);  *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005).

In making a claim of prosecutorial vindictiveness, a "defendant's evidentiary burden is a heavy one, and [courts] recognize the broad discretion given to prosecutors in enforcing criminal statutes."  *United States v. Williams*, 976 F.3d 781, 784 (8th Cir. 2020).  In that context, "[a]

prosecutor is permitted to file additional charges if an initial expectation that a defendant would

plead guilty to lesser charges proves unfounded." *Delgado-Salazar*, 487 F. Supp.3d at 1190,

*citing Raymer*, 941 F.2d at 1042; *Goodwin*, 457 U.S. at 380.  Also, "[i]n the absence of

procedural unfairness to the defendant, the government may increase charges or make them more

precise based upon new information or further evaluation of the case." *Delgado-Salazar*, 487 F.

Supp.3d at 1188, *quoting Raymer*, 941 F.2d at 1042.

 In *Delgado-Salazar*, the Court set forth the contours of the doctrine.  Thus, "[w]hen a

defendant raises a claim of prosecutorial vindictiveness, the defendant has the burden of proof

and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness

which will give rise to a presumption of vindictiveness."  487 F. Supp.3d at 1186-87, *citing

Raymer*, 941 F.2d at 1040 (citations omitted).

 Regarding "actual vindictiveness," courts are instructed "to look for evidence of 'hostility

or punitive animus toward the defendant because [he] exercised [a] specific legal right.'"

*Delgado-Salazar*, 487 F. Supp.3d at 1187, *quoting United States v. Battles*, 745 F.3d 436, 459

(10th Cir. 2014) (*quoting United States v. Carter*, 130 F.3d 1432, 1443 (10th Cir. 1997).  That

animus must be "genuine." *Id*.

 Regarding "a presumption of vindictiveness," in *Goodwin*, the Supreme Court explained

that "in certain cases in which action detrimental to the defendant has been taken after the

exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive

motive."  457 U.S. at 373.  *See also Delgado-Salazar*, 487 F. Supp.3d at 1187.

 Yet due to the "the severity of such a presumption, . . . which may operate in the absence

of any proof of an improper motive and thus may block a legitimate response to criminal

conduct[,] the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." *Id*.  The Supreme Court "has rejected a presumption of vindictiveness in pretrial situations in which a prosecutor offers a defendant the choice either to plead guilty or face more serious charges, 'provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer.'" *Delgado-Salazar*, 487 F. Supp.3d at 1187, *quoting Raymer*, 941 F.2d at 1041 (*citing Bordenkircher*, 434 U.S. at 361-63).

In addition, prosecutorial vindictiveness cannot be inferred simply because a prosecutor's punitive action followed the defendant's exercise of a constitutional right;  rather, the defendant must demonstrate a link between that exercise and the penalty imposed.  *See Sweeney*, 483 F. Supp.3d at 937.

Ultimately, a court "must ask whether, "as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Delgado-Salazar*, 487 F. Supp.3d at 1187.

When a defendant meets the initial burden imposed with respect to either prong, "the burden shifts to the prosecution 'to justify its decision with legitimate, articulable, objective reasons.'"  487 F. Supp.3d at 1187, *quoting Raymer*, 941 F.2d at 1040 (citations omitted). However, "'[i]f the defendant does not meet his burden of proof . . ., the district court need not reach the government justification issue.'"  *Id*.

**B.**     ***The Sequence of Events Demonstrating Vindictiveness***

As the government noted in its Frustration of Purpose Letter, at 3, after agreeing that "*Davis* compelled granting the defendant's §2255 petition as to Count Five, . . . the parties

continued to negotiate about an appropriate path forward."  However, because "[t]hose

negotiations proved unsuccessful, . . . the Government notified the Court on July 21, 2020, of its

intention to move to reinstate the counts of the Indictment that were dismissed at sentencing."

*Id*.

The trajectory of those negotiations is reflected in emails between counsel.  The

government emailed Ms. Sternheim January 29, 2020, to inform her that if Mr. Pham "were to

plead guilty pursuant to a plea agreement (receiving the 3 acceptance points), his Guidelines

range is 292-360 months, with a statutory maximum of 30 years."  A copy of that email is

attached as Exhibit 4 to the Sternheim Dec.

The email added that if Mr. Pham "goes to trial, his Guidelines range will be 360-life

with a statutory maximum of 40 years."  *Id*.  The email further cautioned that "[a]gain, this is not

an offer and has not been approved by the Unit Chiefs or [the Department of Justice's National

Security Division]."  *Id*.

Mr. Pham initially declined to agree to a disposition as described in the government's

January 29, 2020, email.  However, subsequently, he conveyed his acceptance.  In an August 28,

2020, email to the government, Ms. Sternheim stated that she had "just spoken to Pham.  He is

prepared to be resentenced.  He agrees to waive his in-person appearance.  I am requesting that

you reoffer the 30-year cap.  I am available for a discussion at your convenience."  A copy of that

email is attached as Exhibit 5 to the Sternheim Dec.

Yet Mr. Pham's agreement notwithstanding, the government would not entertain again

the "30-year cap" disposition.  That refusal by the government constitutes prosecutorial

vindictiveness designed to punish Mr. Pham for his initial intention to exercise his Fifth and

31

Sixth Amendment constitutional rights to trial.

Moreover, the government's decision, as well as its addition of Counts Five through Nine, is directly linked to Mr. Pham's earlier declination. Nothing else had changed between the description of the resolution and the addition of Counts Five through Nine. The government possessed the information and evidence by January 2020. It cannot claim that it obtained new information or re-evaluated the case in some material manner.

Nor is this a case in which the prosecution made an offer, the defendant rejected it, and the prosecution added additional charges for purposes of trial. Here, *Mr. Pham has accepted the terms proposed*, yet the government has persisted with Counts Five through Nine as well as the initially dismissed Counts.

Thus, an envisioned guilty plea was not eventually "unfounded;" it was merely delayed without any cognizable prejudice to the government. Also, while the government may possess "probable cause" for Counts Five through Nine, it does not – and has not advanced – a viable basis for instituting those charges in light of the expired statute of limitations.

The time frame at issue also provides important context. Mr. Pham is incarcerated at FCI-Florence ADX under restrictions imposed by Special Administrative Measures. Attorney-client communication between Mr. Pham and counsel is subject to arrangement through the facility. Scheduled calls are sporadic and limited, and are not a substitute for in-person conferencing, even under the highly restrictive conditions of legal visits at ADX.

Further, shortly after the government proposed the 30-year offer, the Covid-19 pandemic commenced. Facility lockdowns exerted further adverse impact on counsel's ability to confer with Mr. Pham. During the pandemic, the Southern District U.S. Attorney's Office has extended

plea offers without deadlines in recognition of the difficulty communicating with defendants remotely.

The government suffered no prejudice by Mr. Pham's delayed acceptance of the proposed plea offer. Mr. Pham has been serving a 40-year sentence imposed by the Court without expectation that he would be released as a result any relief occasioned by *Davis*. This was not a plea offer extended near or within the ambit of trial;  nor was it extended after the government had obtained consent of U.K. authorities to add counts that were not contemplated during the extradition phase.

During an August 20, 2020 telephone call between the parties, defense counsel informed the government that Mr. Pham wished to accept the plea offer.  In response, the government stated it had "no appetite to open the previous plea."  Clearly, Mr. Pham is the party who is prejudiced by the government's refusal to re-extend the plea offer.

Thus, while "[b]ecause the very purpose of instituting criminal proceedings against an individual is to punish, the mere presence of a punitive motivation behind prosecutorial action does not render such action unconstitutional[,]" *Delgado-Salazar*, 487 F. Supp.3d at 1186, *citing Carter*, 130 F.3d at 1443 (citation omitted), here there is a direct and unmistakable link between the government's intransigence and Mr. Pham's initial choice to exercise his right to trial.[10]

---

[10]  The result in *Delgado-Salazar* is entirely distinguishable because, as the Court noted therein, the defendant "concede[d] that the government has not in fact brought any additional charges as a result of his decision to litigate a suppression motion."  487 F. Supp.3d at 1188. *Sweeney*, too, is inapposite.  Not only was it a *civil* case, but the Court therein also noted that the defendant failed even to allege a link between the prosecutor's decision and any constitutional right invoked.  483 F. Supp.3d at 937-38.  Likewise, in *Williams*, which was reviewed under only a plain error standard, the defendant objected not to additional charges, but to an increased sentencing recommendation that the Court found was justified by the defendant's contesting certain offense conduct that undermined his acceptance of responsibility.  976 F.3d at 783-85.

Consequently, Mr. Pham has demonstrated a reasonable/realistic likelihood of vindictiveness sufficient to warrant a presumption of vindictiveness.  As a result, the burden shifts to the government "'to justify its decision with legitimate, articulable, objective reasons.'" *Delgado-Salazar*, 487 F. Supp.3d at 1187, *quoting Raymer*, 941 F.2d at 1040 (citations omitted).

Accordingly, the government should be compelled to attempt to satisfy that burden.  If it cannot, it is respectfully submitted that Counts Five through Nine should be dismissed.

### POINT III

**COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED BECAUSE THE UNITED KINGDOM'S CONSENT TO THE U.S. PROSECUTION OF MR. PHAM FOR THOSE COUNTS WAS BECAUSE IT BREACHED THE RULE OF SPECIALTY, DENIED MR. PHAM  DUE PROCESS, <u>AND VIOLATED THE PRINCIPLE OF NATURAL JUSTICE</u>**

Counts Five through Nine of the Superseding Indictment should be dismissed on the additional and independent ground that the United Kingdom's consent to Mr. Pham's prosecution by the U.S. on those charges breached Article 18's Rule of Specialty because the U.K.'s administrative decision denied Mr. Pham access to the U.S.'s request, and therefore any reasonable or meaningful opportunity to contest it, thereby denying him Due Process and the natural justice essential to the extradition process.

A.     *The U.S.-U.K. Extradition Treaty and the Rule of Specialty*

Extraditions between the U.S. and the U.K. proceed pursuant to a 2003 treaty between the nations.  *See* Extradition Treaty with United Kingdom, Treaty Doc. 108-23, executed March 31, 2003, available at https://www.congress.gov/108/cdoc/tdoc23/CDOC-108tdoc23.pdf.

Article 18 of the Treaty includes the Rule of Specialty, which is designed to limit the

34

offenses that can be charged in the requesting state to those for which extradition is formally

sought.  As Article 18, §1 states, "[a] person extradited under this Treaty may not be detained,

tried, or punished in the Requesting State except for:"

> (a)     any offense for which extradition was granted, or a
>
>          differently denominated offense based on the same facts as
>
>          the offense on which extradition was granted, provided
>
>          such offense is extraditable, or is a lesser included offense;
>
> (b)     any offense committed after the extradition of the person;
>
>          or
>
> (c)     any offense for which the executive authority of the
>
>          Requested State waives the rule of specialty and thereby
>
>          consents to the person's detention, trial, or punishment.

*Id*.

Also, §95(4)(c) of the Extradition Act (UK) of 2003 authorizes prosecution by the

requesting state for "an extradition offence in respect of which the Secretary of State consents to

the person being dealt with[.]"

**B.**     ***The Doctrine of Natural Justice***

Under English law, the recognition and application of principles of natural justice are

fundamental, traditional, and longstanding.  For example, in the House of Lords in *Ridge v*

*Baldwin*, [1964] AC 40, Lord Reid explained that "[t]ime and again . . . it has been stated that a

decision given without regard to the principles of natural justice is void, and that was expressly

decided in *Wood v Woad* (1874) LR 9 Ex 190."  *Id*., at 80.

35

Intrinsic in the doctrine of natural justice is that "[t]he body with the power to decide cannot lawfully proceed to make a decision until it has afforded to the person affected a proper opportunity to state his case." *Id*. Also, in *Ridge v. Baldwin*, Judge Reid pointed out that the principle extends to administrative decisions:

> [t]his rule is not confined to the conduct of strictly legal tribunals, but is applicable to every tribunal or body of persons invested with authority to adjudicate upon matters involving civil consequences to individuals.

*Id*., at 70, *citing Wood v. Woad*, at 196.

Describing "natural justice" as "only fair play in action[,]" Lord Morris of Borth-y-Guest emphasized in *Ridge v. Baldwin* the importance of notice:  it "is well established that the essential requirements of natural justice at least include that before someone is condemned he is to have an opportunity of defending himself, and in order that he may do so he is to be made aware of the charges or allegations or suggestions which he has to meet." *Id*., at 113-14, *citing Kanda v Government of Malaya* [1962] AC 322, 337.

Thus, while the elements of natural justice are neither rigid nor technical, and "must depend on the circumstances of the case, the nature of the inquiry, the rules under which the tribunal is acting, the subject-matter that is being dealt with, and so forth, . . . whatever standard is adopted, one essential is that the person concerned should have a reasonable opportunity of presenting his case." *Russell v The Duke of Norfolk* [1949] 1 All ER 109, 118 (Tucker LJ).  *See also Ridge v. Baldwin* (Lord Morris), at 123 ("[h]e is not a judge in the proper sense of the word: but he must give the parties an opportunity of being heard before him and stating their case and of their view"), *citing Spackman v Plumstead Board of Works* [1885] LR 10 App Cas 229, 240

36

(Lord Selborne LC).

The principle of natural justice has also been recognized by U.K. courts in the extradition context.  *See Royal Government of Greece v Governor of Brixton Prison* [1971] AC 250 (Waller, J., with whom O'Connor, J., agreed).  That case noted that in *Ridge v. Baldwin*, "it was held by a majority of the House of Lords that where a decision had been made which was contrary to natural justice, the decision was a nullity."  *Id*.

While the determination by the Divisional Court in *Royal Government of Greece v Governor of Brixton Prison* (in which Judges Waller and O'Connor constituted the majority) was reversed on other grounds by the House of Lords, *see* [1971] AC 250, 277-282, in the House of Lords Lord Morris of Borth-y-Gest observed, at 281, that with respect to the functions of the Secretary of State to deciding extradition matters, exercising that discretion includes "consideration to any questions and contentions which invoke the rules of natural justice."

**C.**     ***The U.K. Government's Consent to the U.S.'s Prosecution of Mr. Pham on Counts Five through Nine of the Superseding Indictment***

As discussed **ante**, at 5, Counts Five through Nine of the Superseding Indictment are based on information and evidence obtained by the U.S. government not only after Mr. Pham's extradition from the U.K., but also after Mr. Pham had executed the Plea Agreement, pleaded guilty, and been sentenced by the Court.

In its September 24, 2020, letter to the Court (ECF #189), the government informed the Court that it was "proceeding to obtain the necessary approvals to seek a superseding indictment, adding charges against Pham based on additional evidence secured following his conviction and sentencing."

37

In an October 26, 2020, email, the government provided Ms. Sternheim with "a letter from the UK Central Authority to your client [Mr. Pham] regarding the U.S. request to file additional charges in this case, as originally described in our letter to the Court of August 14." A copy of that email is attached as Exhibit 6 to the Sternheim Dec. A copy of the letter to Mr. Pham is attached as Exhibit 7 to the Sternheim Dec.

In response, Ms. Sternheim wrote October 28, 2020, to Julian Gibbs, Head of Extradition, UK Central Authority, Home Office to alert him that "[n]either I nor Mr. Pham is privy to the actual request made by the United States." A copy of Ms. Sternheim's October 28, 2020, letter is attached as Exhibit 8 to the Sternheim Dec.

In her letter, Ms. Sternheim "respectfully request[ed] that the [U.K.] Secretary of State deny the request. Additional charges beyond the original indictment upon which Mr. Pham was extradited violates the doctrine of specialty." *Id*. Ms. Sternheim's letter added that "[t]he additional charges are beyond the statute of limitations[,]" and "represent a vindictive prosecution, penalizing Mr. Pham because he is the recipient of a change in law by the United States Supreme Court, our highest court, that nullified one of the counts to which Mr. Pham pleaded guilty."

Ms. Sternheim requested that the U.K. decline to provide the U.S. consent for Mr. Pham's prosecution on Counts Five through Nine, and "appeal[ed] to [the U.K.'s] sense of fairness and justice to uphold the extradition treaty between our respective countries and the terms of Mr. Pham's extradition." *Id*.

Subsequently, in a January 12, 2021, letter (attached as Exhibit 9 to the Sternheim Dec.) to the U.S. Embassy in London, Mr. Gibbs stated

38

> I can confirm that, after careful consideration of the request under Article 18 of the US-UK Extradition Treaty and with reference to United Kingdom's extradition law, the Secretary of State has given consent to the United States' request to prosecute Mr Pham for the further offences which are the subject of Diplomatic Note No 53.

The U.S. government then proceeded to secure the Superseding Indictment that includes Counts Five through Nine.

**D.      *The U.K. Government's Consent to Mr. Pham's Extradition on Counts Five through Nine Is Void Because He Has Been Denied Due Process and Natural Justice***

Here, the U.K.'s consent to the U.S. prosecution of Mr. Pham on Counts Five through Nine of the Superseding Indictment is void because the process by which such consent was granted denied Mr. Pham Due Process and violated the principles of natural justice.

The U.S. and U.K. denied Mr. Pham a reasonable and meaningful "opportunity to present his case" by refusing him access to the U.S.'s request for consent, and thereby denied him Due Process and the essence of natural justice. Indeed, the result was functionally no different than if Mr. Pham had been extradited in the first instance without *any* process, especially in light of the gravity of the potential penalties attendant to Counts Five through Nine, including the 30-year mandatory minimum consecutive prison term for Count Nine. Indeed, that alone would implicate the European Convention on Human Rights's Article 3 prohibition on sentences of life imprisonment without parole. *See, e.g.,Vinter and Others v. the United Kingdom*, European Court of Human Rights ("ECHR") judgment (Grand Chamber) of 9 July 2013, §§119-122. *See also* ECHR Fact Sheet, available at https://echr.coe.int/documents/fs_life_sentences_eng.pdf.

In *United States v. Suarez*, 791 F.3d 363 (2d Cir. 2015),the Second Circuit held that Mr. Suarez did not possess "constitutional" standing, but instead only "prudential" standing, through

which a litigant asserts the rights of third parties.  *Id*., at 366-67.  In resolving the issue, the Court

first pointed out that "international agreements, including treaties, 'do not create privately

enforceable rights in the absence of express language to the contrary,' *Mora v. New York*, 524

F.3d 183, 201 (2d Cir.2008), or some other indication 'that the intent of the treaty drafters was to

confer rights that could be vindicated in the manner sought by the affected individuals[.]'"  791

F.3d at 367, *quoting Mora*, 524 F.3d at 203.

Consequently, the Court explained that "[g]enerally speaking, 'absent protest or objection

by the offended sovereign, [a defendant] has no standing to raise the violation of international

law as an issue.'" 791 F.3d at 367, *quoting United States v. Reed*, 639 F.2d 896, 902 (2d

Cir.1981).  While the Court in *Suarez* did acknowledge that the rule of specialty also "'has

application in the sentencing context[,]'" 791 F.3d at 366, *quoting United States v. Cuevas*, 496

F.3d 256, 262 (2d Cir.2007), it nevertheless declared that "'[a]s a matter of international law, the

principle of specialty has been viewed as a privilege of the asylum state, designed to protect its

dignity and interests, rather than a right accruing to the accused.'" 791 F.3d 367, *quoting Shapiro*

*v. Ferrandina*, 478 F.2d 894, 906 (2d Cir.1973).

As a result, the Court in *Suarez* concluded that "'[a]ny individual right that Suarez may

have under the terms of his extradition is "only derivative through the state[ ]."'"  *Id*. (internal

quotation marks omitted).  Accordingly, the Court ruled that "Suarez would only have prudential

standing to raise the claim that his sentence violated the terms of his extradition if the

Government of Colombia first makes an official protest."  791 F.3d at 367-68, *citing United*

*States v. Alvarez–Machain*, 504 U.S. 655, 659 (1992); *United States ex rel. Lujan v. Gengler*,

510 F.2d 62, 67 n. 8 (2d Cir. 1975).  Since Colombia did not invoke its rights under the

40

agreement, Mr. Suarez lacked standing to invoke its terms.  *Id*.

However, in *United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995), the Eleventh

Circuit, noting that the issue had split the circuits, *id*., at 1572 & n.1, held that "a criminal

defendant has standing to allege a violation of the principle of specialty.  *Id*.  The Court in

*Puentes* "limit[ed], however, the defendant's challenges under the principle of specialty to only

those objections that the rendering country might have brought."  *Id*.

Here, clearly the U.K. could have brought this objection;  in fact, Mr. Pham could have

interposed it himself during the proceedings in the U.K. that resulted in his extradition in the first

place.  While Mr. Pham was technically notified of the consent process, he was denied any

process by both governments.  Also, since he was already in the U.S., he is protected by the Fifth

Amendment Due Process clause.  In that context, adversary proceedings are an essential

component of any fair and accurate legal system.

As the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-

sided determination of facts decisive of rights. . . .  No better instrument has been devised for

arriving at truth than to give a person in jeopardy of serious loss notice of the case against him

and opportunity to meet it.'"  *United States v. James Daniel Good Real Property, et. al.*, 510

U.S. 43, at 55 (1993) (*quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123,

170-72 (1951) (Frankfurter, J., *concurring*).

Yet in this case the U.K.'s consent was deliberately, and in defiance of defense counsel's

specific request(s), secured by precluding Mr. Pham from interposing any objection that could

confront the U.S.'s asserted bases for such consent.  Consequently, the U.S.'s *ex parte* request,

and the U.K.'s consent, contravened both the Fifth Amendment's Due Process protection, and

41

the doctrine of natural justice, and is void as a result.  Accordingly, Counts Five through Nine should be dismissed.

**POINT IV**

**THE GOVERNMENT SHOULD BE ORDERED TO DISCLOSE AND IDENTIFY ALL *BRADY* MATERIAL AND INFORMATION, AND THE COURT SHOULD ISSUE AN ORDER TO THAT EFFECT PURSUANT TO RULE 5(f)(1), FED.R.CRIM.P.**

The electronic discovery in this case comprises five gigabytes.  That volume cannot be reviewed by counsel comprehensively within any reasonable amount of time.  Thus, it is entirely conceivable that any exculpatory material or information – *Brady* material – could escape counsel's grasp.  As a result, it is respectfully submitted that the government does not fulfill its constitutional obligations merely by *producing* a massive volume of discovery without also *identifying* the *Brady* material within.  Otherwise, *Brady* is without meaning or effect in practical terms.

In *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), a two-page exculpatory memorandum was produced as part of the "3500 material" (18 U.S.C. §3500) for a particular witness the Friday before commencement of trial.  *Id*., at 106.  Regardless the indexing and labeling of the 3500 material, the Court in *Gil* held that the disclosure – which was "among more than 2,700 pages of material in two file boxes; [] was listed on page twelve of a 41–page index designating over 600 exhibits;  [was among] individual items of 3500 material [that] were not Bates stamped; and [were produced with] exhibits [that] were not placed in separate file folders that corresponded with the '3500 numbers' listed on the exhibit list – was not sufficient in manner or time to satisfy *Brady*.  *Id*.

42

As the Court in *Gil* recognized, "[t]he two-page memo was not easily identifiable as a document of significance, located as it was among reams of documents, and indexed as Dorfman 3500 material on page twelve of the exhibit list." *Id*. Here, the problem of recognizing exculpatory material is magnified manifold by the overwhelming volume of electronic discovery.

In addition, as the Court in *Gil* made clear, whether the particular *Brady* material is itself admissible does not absolve the government of its constitutional responsibility to disclose it to the defense in timely fashion. *Id*., at 104, *citing United States v. Gleason*, 265 F.Supp. 880, 886 (S.D.N.Y.1967) ("prosecution's duty of disclosure as affirmed in *Brady*, cannot be limited to materials or information demonstrated in advance to be 'competent evidence'") (quotation omitted); *Spence v. Johnson*, 80 F.3d 989, 1005 n. 14 (5th Cir.1996) ("inadmissible evidence may be material under *Brady*"); *Coleman v. Calderon*, 150 F.3d 1105, 1116-17 (9th Cir.) ("[t]o be material [under *Brady*], evidence must be admissible or lead to admissible evidence"), *rev'd on other grounds*, 525 U.S. 141 (1998); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir.1999) ("[i]nadmissible evidence may be material if the evidence would have led to admissible evidence"); *but see Hoke v. Netherland*, 92 F.3d 1350, 1356 n. 3 (4th Cir.1996) (ruling that inadmissible evidence, as a matter of law, is "immaterial" for *Brady* purposes).

In that context, it is also respectfully requested that the Court issue an Order pursuant to the recently enacted Rule 5(f)(1), Fed.R.Crim.P., which directs that "[i]n all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable

43

law."

## Conclusion

Accordingly, for all the reasons set forth above, and in all papers and proceedings previously filed and/or had herein, it is respectfully submitted that Mr. Pham's pretrial motions to dismiss Counts Five through Nine of the Superseding Indictment, and for disclosure and identification of *Brady* material, should be granted in their entirety.

Dated: 30 August 2021
      New York, New York

                         Respectfully submitted,

                         Joshua L. Dratel
                         29 Broadway
                         Suite 1412
                         New York, New York 10006
                         212-732-0707
                         jdratel@dratellewis.com

                         Bobbi C. Sternheim
                         225 Broadway
                         Suite 715
                         New York, New York 10007
                         212-243-1100
                         bcsternheim@mac.com

                         *Attorneys for Defendant Minh Quang Pham*