UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

       - v. -                                              :          S1 12 Cr. 423 (AJN)

MINH QUANG PHAM,                                  :
      a/k/a "Amin,"

                                  :

              Defendant.

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S OPPOSITION TO THE
DEFENDANT'S PRETRIAL MOTIONS**

AUDREY STRAUSS
United States Attorney
Southern District of New York

David W. Denton, Jr.
Jacob H. Gutwillig
Assistant United States Attorneys
   *- Of Counsel -*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ....................................................................................................................... 1

DISCUSSION .......................................................................................................................... 5

   I.     Counts Five Through Nine of the Superseding Indictment Are Not Time-Barred............. 5

      A.    Counts Five Through Eight May Be Brought at Any Time. ....................................... 6

      B.    Counts Five Through Nine Are Timely Because the Defendant Waived a Statute of
Limitations Defense. ............................................................................................ 8

   II.    The Superseding Indictment Was Not the Product of a Vindictive Prosecution. .......... 12

      A.    Background.......................................................................................................... 12

      B.    Applicable Law.................................................................................................... 13

      C.    Discussion........................................................................................................... 15

  III.    The Court Should Reject the Defendant's Challenges to the United Kingdom's
Extradition-Related Process and Decision.................................................................... 18

      A.    The Defendant Does Not Have Standing to Assert a Violation of the Rule of
Specialty.............................................................................................................. 19

      B.    The Court Should Not Second-Guess the United Kingdom's Decision or Process. .. 21

  IV.    No Further Discovery Relief Is Necessary..................................................................... 24

CONCLUSION........................................................................................................................ 26

# TABLE OF AUTHORITIES

Page

**Cases**

*Blackledge v. Perry*, 417 U.S. 21 (1974) .................................................................................. 13

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)..................................................................... 14, 17

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................... 24, 25, 26

*Fioccomi v. Att'y Gen. of U. S.*, 462 F.2d 475 (2d Cir. 1972)............................................. 19

*Frisbie v. Collins*, 342 U.S. 519 (1952)..................................................................................... 23

*Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246 (S.D.N.Y. 2008) ... 11

*Harris v. United States*, 216 F.3d 1072 (2d Cir. 2000)..................................................... 25

*Harris v. United States*, 9 F. Supp. 2d 246 (S.D.N.Y. 1998)............................................. 25

*Lane v. Lord*, 815 F.2d 876 (2d Cir. 1987)....................................................................... 14, 16

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001)............................................................... 26

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)......................................................................... 3

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir.1973)....................................................... 19

*United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir.1975)............................... 20

*United States v. Alvarez-Machain*, 504 U.S. 655 (1992)............................................... 23

*United States v. Baez*, 349 F.3d 90 (2d Cir.2003)........................................................... 19

*United States v. Barinas*, 865 F.3d 99 (2d Cir. 2017)..................................................... 19

*United States v. Brizendine*, 659 F.2d 215 (D.C. Cir. 1981) ....................................... 14

*United States v. Campbell*, 300 F.3d 202 (2d Cir. 2002)............................................... 22

*United States v. Cimmo*, 381 F.3d 124 (2d Cir. 2004)................................................... 11

*United States v. Davis*, , 139 S. Ct. 2319 (2019) ............................................................. 4

*United States v. DeMichael*, 692 F.2d 1059 (7th Cir. 1982) ....................................... 18

*United States v. Goodwin*, 457 U.S. 368 (1982)........................................................ *passim*

*United States v. Johnson*, 171 F.3d 139 (2d Cir.1999) ............................................... 13

*United States v. King*, 126 F.3d 394 (2d Cir.1997)....................................................... 13

*United States v. Koh*, 199 F.3d 632 (2d Cir. 1999)....................................................... 15

*United States v. Levine*, 658 F.2d 113 (3d Cir. 1981)................................................... 9

*United States v. Lira*, 515 F.2d 68 (2d Cir.1975) ................................................... 21, 23

*United States v. Loera*, 2017 WL 2821546 (E.D.N.Y. 2017)....................................... 22

*United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990) ............................................. 24

*United States v. Medina,* 985 F. Supp. 397 (S.D.N.Y. 1997) ........................................................ 21

*United States v. Midgley*, 142 F.3d 174 (3d Cir. 1998) ............................................................ 8

*United States v. Ng*, 699 F.2d 63 (2d Cir. 1983)........................................................................ 18

*United States v. Noorzai*, 422 F. App'x 54 (2d Cir. 2011) ...................................................... 23

*United States v. Noorzai*, 545 F. Supp. 2d 346 (S.D.N.Y. 2008) ............................................ 23

*United States v. Ohle*, 2011 WL 651849 (S.D.N.Y. 2011) ...................................................... 25

*United States v. Ohle*, 441 F. App'x 798 (2d Cir. 2011) ......................................................... 25

*United States v. Podde*, 105 F.3d 813 (2d Cir. 1997) ...................................................... 6, 8, 9

*United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995)................................................... 20, 21

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451 (S.D.N.Y. 2011) ... 25

*United States v. Salinas Doria*, 2008 WL 4684229 (S.D.N.Y. 2008) ................................... 21

*United States v. Sanders*, 211 F.3d 711 (2d Cir. 2000) .................................................... 13, 14

*United States v. Stein*, 2005 WL 3058644 (S.D.N.Y. 2005)................................................... 25

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ...................................................... 15, 18

*United States v. Suarez,* 791 F.3d 363 (2d Cir. 2015) ............................................................ 20

*United States v. Umeh*, 527 F. App'x 57 (2d Cir. 2013)........................................................ 22

*United States v. Umeh*, 762 F. Supp. 2d 658 (S.D.N.Y. 2011)........................................... 22, 23

*Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291 (S.D.N.Y. 2009) ......................... 11

*Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298 (1st Dep't 1994).......................................... 11

*Weatherford v. Bursey*, 429 U.S. 545 (1977)......................................................................... 14

**Statutes**

18 U.S.C. § 2255 .......................................................................................................................... 4

18 U.S.C. § 2332 ..................................................................................................................... 5, 7

18 U.S.C. § 2339 .......................................................................................................................... 2

18 U.S.C. § 3282 .......................................................................................................................... 7

18 U.S.C. § 3286 ..................................................................................................................... 6, 7

18 U.S.C. § 3296 .......................................................................................................................... 9

18 U.S.C. § 371 ............................................................................................................................ 2

18 U.S.C. § 924.................................................................................................................... 2, 4, 5

**Rules**

Federal Rule of Criminal Procedure 5 .................................................................................. 24, 26

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to motions filed by the defendant, Minh Quang Pham ("Pham" or "defendant") to: (1) dismiss Counts Five through Nine of the Superseding Indictment in this case as time-barred by the statute of limitations (Dkt. 218 at 7-28); (2) dismiss Counts Five through Nine of the Superseding Indictment as the products of a vindictive prosecution (*id.* at 28-34); (3) dismiss Counts Five through Nine of the Superseding Indictment for violations of the rule of specialty (*id.* at 34-29); and (4) compel the Government to specifically designate any exculpatory material that has been included in the Government's discovery productions in this matter (*id.* at 42-43).

For the reasons discussed below, each of the motions should be denied.

## BACKGROUND[1]

In or about December 2010, the defendant traveled from the United Kingdom to Yemen to join the terrorist organization al Qaeda in the Arabian Peninsula ("AQAP"), and remained there until July 2011, when he returned to the United Kingdom. After arriving in Yemen, Pham and his friend, Sami al Fadli, were taken to an AQAP safehouse, where Pham joined and trained with AQAP, including in the use of assault rifles and explosives.

Pham returned to the United Kingdom in July 2011. Upon his arrival at London's Heathrow International Airport, U.K. authorities detained and searched Pham. U.K. authorities recovered, among other things, a live round of 7.62-millimeter armor-piercing ammunition, which is a type of ammunition that can be used in a Kalashnikov assault rifle. Pham admitted

---

[1] Additional background relevant to certain of the defendant's motions is set forth below in connection with the discussion of the individual motions.

that that the round of ammunition belonged to him, that he got it in Yemen, and that it was for an AK-47 assault rifle.

On May 24, 2014, a grand jury returned Indictment 12 Cr. 423 (AJN) (the "Underlying Indictment"), charging Pham in five counts with: (1) conspiring to provide material support to AQAP, in violation of 18 U.S.C. § 2339B ("Count One"); (2) providing and attempting to provide material support to AQAP, in violation of 18 U.S.C. § 2339B ("Count Two"); (3) conspiring to receive military-type training from AQAP, in violation of 18 U.S.C. § 371 ("Count Three"); (4) receiving military-type training from AQAP, in violation of 18 U.S.C. § 2339D ("Count Four"); and (5) possessing, carrying, and using an automatic firearm in relation to Counts One through Four, in violation of 18 U.S.C. § 924(c) ("Count Five").

On or about February 26, 2015, Pham was extradited from the United Kingdom to the United States to face the charges in the Underlying Indictment.  Following Pham's extradition, agents of the Federal Bureau of Investigation ("FBI") conducted a series of Mirandized interviews of Pham.  During those interviews, Pham stated, among other things, that: (1) he traveled to Yemen in 2010 to join AQAP and wage jihad; (2) while in Yemen, Pham assisted with graphic design projects for AQAP, including work that would be used as propaganda in *Inspire* magazine; (3) Pham appeared in photographs that were used in *Inspire* magazine, including photographs in which he was depicted holding and assembling a Kalashnikov rifle; (4) Pham also personally met with Anwar al-Aulaqi, the head of external operations for AQAP (*i.e.*, attacks on Westerners in countries outside of Yemen); (5) Pham approached Aulaqi and offered to conduct a suicide attack and "sacrifice himself" on behalf of al Qaeda upon his return to the United Kingdom; (6) Pham was trained by AQAP members, including Aulaqi, on how to build an explosive device using readily available household chemicals and other materials;

(7) prior to his return to London, Pham agreed to conduct a suicide bombing at Heathrow International Airport on behalf of AQAP; (8) Aulaqi instructed him to target the Arrivals Section of the airport—particularly arrivals from the United States or Israel; (9) Pham also agreed to identify others who would be interested in joining AQAP; (10) Aulaqi gave Pham money, a telephone number, and an email address that Pham was to use to contact Aulaqi upon his return to the United Kingdom; and (11) Pham planned to use the money to rent a house in the United Kingdom to construct the explosive device and to purchase the chemicals and other material needed for the attack.

On January 8, 2016, Pham pled guilty before this Court to Counts Two, Three, and Five of the Underlying Indictment, pursuant to a plea agreement with the Government (the "Plea Agreement," filed as Exhibit A to Dkt. 184).

On May 31, 2016, this Court sentenced Pham to a term of 480 months' incarceration—including the mandatory consecutive 360 months' imprisonment on Count Five—to be followed by a life term of supervised release, and imposed a $300 mandatory special assessment. Following the imposition of sentence, the Court advised Pham of his right to appeal and, on the Government's motion, dismissed the open counts of the Underlying Indictment (Counts One and Four).

Notwithstanding the terms of his Plea Agreement, Pham filed a notice of appeal on July 18, 2016. The Second Circuit dismissed Pham's challenge to his sentence and summarily affirmed his convictions and forfeiture on September 12, 2017.

On August 21, 2018, this Court entered an order notifying the parties that it had received a letter from the defendant requesting that the Court vacate his conviction on Count Five in light of the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which the Court

construed as a motion to vacate the defendant's sentence under 18 U.S.C. § 2255.  The Court

subsequently stayed briefing of the motion pending the resolution of *United States v. Davis*, , 139

S. Ct. 2319 (2019), by the Supreme Court.  Following the decision in *Davis*, the parties notified

the Court that they agreed that *Davis* compelled granting the defendant's § 2255 petition as to

Count Five, but that the parties continued to negotiate about an appropriate path forward.

Those negotiations proved unsuccessful, and the Government moved on August 14, 2020,

to reinstate the counts of the Underlying Indictment that were dismissed at sentencing, *i.e.*,

Counts One, Two, Three, and Four, as well as the forfeiture allegation as to those counts.  (Dkt.

184).  In that letter, the Government also notified the defendant and the Court of its "intention to

file additional charges, based on evidence obtained after the defendant's guilty plea, related to

the defendant's plot to perpetrate a suicide bombing at London's Heathrow International,"

including "a violation of Section 924(c) predicated on the use and possession of a destructive

device in furtherance of one or more additional crimes of violence committed in connection with

the plot."  (*Id*. at 1, 9).  The Government noted that these new charges were based on, among

other things, (1) video recordings showing the defendant constructing and detonating a test

explosive device virtually identical to the one Pham told law enforcement was to be used in his

planned suicide attack on Americans and Israelis at Heathrow International Airport; (2) video

recordings of Pham associating with high-ranking members of AQAP; (3) a video recording of

Pham describing his goal of waging jihad and his desire to martyr himself; and (4) a document

containing instructions for executing the attack upon Pham's return to London.  (*Id.* at 9).

On September 11, 2020, defense counsel expressed no objection to the Government's

application, (Dkt. 187), and on September 24, 2020, the Court ordered, on consent of the parties,

that "[t]he defendant's guilty pleas to Counts Two, Three, and Five of the Indictment are

VACATED," that "[t]he Court's order dismissing Counts One and Four of the Indictment is

VACATED, and that "[t]he plea agreement is NULLIFIED upon vacating the convictions."

(Dkt. 191).

On October 28, 2020, the Court held a status conference in this matter, at which the

Government informed the Court that the Government had "sought from the United Kingdom a

waiver of the Rule of Specialty to enable us to file additional charges, as we informed the court,

based on evidence that was discovered after Pham's original guilty plea.  And on October 26 the

United Kingdom notified both the government and defense counsel that they had received the

government's request."  (Tr. of Oct. 28, 2020 Status Conference ("Oct. 28 Tr.") at 10).  On

January 12, 2021, the United Kingdom granted that request, (Def. Ex. 9), and on April 8, 2021,

the grand jury returned a superseding indictment in this case (the "Superseding Indictment").

In addition to the charges reflected in Counts One through Four of the Underlying

Indictment, the Superseding Indictment charges the defendant with conspiracy to bomb a place

of public use, in violation of 18 U.S.C. § 2332f ("Count Five"); attempted bombing of a place of

public use, in violation of 18 U.S.C. § 2332f ("Count Six"); conspiracy to use weapons of mass

destruction, in violation of 18 U.S.C. § 2332a ("Count Seven"); attempt to use weapons of mass

destruction, in violation of 18 U.S.C. § 2332a ("Count Eight"); and possessing, carrying, and

using a destructive device in relation to the crimes of violence charged in Counts Six through

Eight, in violation of 18 U.S.C. § 924(c) ("Count Nine").  The defendant entered a plea of not

guilty to the Superseding Indictment on April 27, 2021.

## DISCUSSION

## I.    Counts Five Through Nine of the Superseding Indictment Are Not Time-Barred.

The defendant argues that Counts Five through Nine of the Superseding Indictment

should be dismissed because they were brought more than five years after the conclusion of the

conduct charged in those Counts.  (Mot. at 7-28).  In particular, the defendant devotes the bulk of

his argument to asserting that his knowing and voluntary waiver of any statute of limitations

defense in the Plea Agreement is no longer operative, and therefore Counts Five through Nine

are time-barred.  The defendant ignores, however, that the terrorism-specific statute of

limitations applicable to the offenses charged in Counts Five through Eight of the Superseding

Indictment, 18 U.S.C. § 3286(b), allows those crimes to be charged "at any time without

limitation" because the defendant's conduct—including but not limited to a suicide bombing

plot—"created a [foreseeable] risk of . . . death or serious bodily injury to another person."

Accordingly, the Court can reject the defendant's statute of limitations arguments with respect to

those counts without regard to the terms of the plea agreement.  For all of the Counts challenged

by the defendant, the defendant's waiver in the Plea Agreement continues to bar him from

asserting a statute of limitations defense.  Although the vacatur of the defendant's guilty pleas

vitiates the parties' other obligations under the agreement, the waiver of the statute of limitations

is, by its terms, designed to continue to operate in such a circumstance, coming into effect only

when "the defendant's pleas of guilty pursuant to this Agreement [are] vacated for any reason."

(Plea Agreement at 8).  This adopts the Second Circuit's proposal in *United States v. Podde*, 105

F.3d 813, 821 (2d Cir. 1997), and any alternative reading of the plea agreement would render the

waiver meaningless, because under the defendant's suggestion, the same circumstance that

triggers the waiver of the statute of limitations—vacatur of his guilty pleas—also voids his

obligation to comply with the waiver.

### A.      Counts Five Through Eight May Be Brought at Any Time.

The defendant first argues that the Superseding Indictment should be dismissed because

"there is no overt act in furtherance of the conspiracy within the limitations period." (Mot. at 8-

9). In support of this argument, the defendant relies exclusively on the general five-year statute

of limitations for non-capital federal crimes under Title 18, United States Code, Section 3282(a).

(Mot. at 8). However, that provision only applies "[e]xcept as otherwise expressly provided by

law," 18 U.S.C. § 3282(a), and Title 18, United States Code, Section 3286 is one such law.

Section 3286(b) extends the statute of limitations for certain terrorism offenses, including the

crimes charged in Counts Five through Eight of the Superseding Indictment:

> Notwithstanding any other law, an indictment may be found or an
> information instituted at any time without limitation for any
> offense listed in section 2332b(g)(5)(B), if the commission of such
> offense resulted in, or created a for[e]seeable risk of, death or
> serious bodily injury to another person.

18 U.S.C. § 3286(b).  Section 2332b(g)(5)(B) in turn enumerates the specific statutory violations

qualifying as terrorism offenses subject to that extended statute of limitations, including

violations of Title 18, United States Code, Section 2332f, which is charged in Counts Five and

Six of the Superseding Indictment, and Section 2332a, which is charged in Counts Seven and

Eight of the Superseding Indictment.  As alleged in the Superseding Indictment, the object of the

defendant's conduct charged in violation of these statutes was to conspire to and attempt "to

conduct a suicide bombing at Heathrow International Airport, targeting, among others, nationals

of the United States."  (Ind. ¶¶ 8, 9, 10, 11).  Conspiring to and attempting to bomb a place of

public use, as charged in Counts Five and Six, and to use a weapon of mass destruction, as

charged in Counts Seven and Eight, "create[s] a for[e]seeable risk of . . . death or serious bodily

injury to another person," 18 U.S.C. § 3286(b).  Inflicting such harms was the defendant's goal.

Accordingly, the applicable statute of limitations is not the five-year term specified in 18 U.S.C.

§ 3282(a), but rather the terrorism-specific provision of 18 U.S.C. § 3286(b), which allows those

offenses to be charged "at any time without limitation."  Accordingly, Counts Five, Six, Seven,

and Eight are timely regardless of the operation of the terms of the plea agreement.

**B.      Counts Five Through Nine Are Timely Because the Defendant Waived a Statute of Limitations Defense.**

The defendant's arguments relating to the Plea Agreement also fail.  Contrary to the defendant's assertion, the statute of limitations waiver contained in the Plea Agreement remains enforceable after the nullification of that agreement because that is the bargain the defendant struck.   The waiver provision states, in relevant part, that "should the convictions following the defendant's pleas of guilty pursuant to this Agreement be vacated ***for any reason***, then ***any*** prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement . . . may be commenced or reinstated[.]"  (Plea Agreement at 8) (emphases added).  The defendant's principal argument is that, because the Plea Agreement was nullified, the statute of limitations waiver no longer applies.  However, this ignores the basic fact that the statute of limitations waiver contained in the Plea Agreement applies *only* if any of the defendant's convictions are "vacated for any reason[.]"  (*Id.*).  Put differently, this provision is meaningless unless it survives vitiation of the agreement—it is intended specifically to restore the parties to their positions *ex ante*, prior to any plea agreement.  With the effect that the waiver expressly permits the filing of Counts Five through Nine.

This reading of the statute of limitations waiver in the Plea Agreement follows the Second Circuit's express suggestion in *United States v. Podde*, 105 F.3d 813, 821 (2d Cir. 1997). In *Podde*, the Second Circuit vacated time-barred convictions on fraud charges that were reinstated and prosecuted after a defendant withdrew a guilty plea to a structuring offense that he had entered pursuant to a plea agreement that lacked a limitations waiver.  In doing so, the court noted that "the government can prevent the situation from arising in the future by securing waivers of the statute of limitations in its plea agreements."  *Id.* at 814-15; *see also United States v. Midgley*, 142 F.3d 174, 180 (3d Cir. 1998) ("[A]s the *Podde* court observed, the Government

may seek to include a clause in future plea agreements whereby the defendant waives the statute

of limitations defense as to dismissed counts if the defendant withdraws or challenges the guilty

plea after the limitations period on the original charges has expired."); *United States v. Levine*,

658 F.2d 113, 121 (3d Cir. 1981) ("It also is possible for a defendant knowingly and intelligently

to waive the statute of limitations, thus sanctioning a later indictment which, absent such a

waiver, would be untimely").  That is precisely what the Government did in this case.  Moreover,

*Podde* recognized that where the defendant had not previously pleaded guilty to the charges at

issue, an express waiver of the statute of limitations "can be read either as a concession that no

such time-dependent defenses are available, or as a conscious choice to abandon those defenses."

*Podde*, 105 F.3d at 821 n.7.  In either event, under that reasoning, the limitations waiver in the

Plea Agreement is enforceable with respect to Counts Five through Nine.[2]

Under *Podde*, the due process and contract principles cited by the defendant are

inapposite.  (*see* Def. Mot. 10-16).  *Podde* reasoned that the statute of limitations was an

"extrinsic statute bar," 105 F.3d at 820-21, that exists *outside* a plea agreement, whether voided

or not.  In *Podde*, that cut against the Government's position.  Despite equitable and contract

law-based arguments that may have favored the Government, *i.e.*, being able to proceed on the

fraud charges that it dismissed only due to the entry of a plea to the lesser included structuring

offense that was voided by a subsequent change in the law, the Government was time-barred

from doing so.  The court reasoned that, "[i]n *the absence of a waiver*, analogies to broad

principles of contract law are not enough to overcome the plain letter of the statute."  *Id.*

(emphasis added).  Here, conversely, due process and the contract remedies cited by the

---

[2] The defendant does not argue that the reinstated Counts One through Four are time-barred, conceding that question was resolved by the passage of 18 U.S.C. § 3296.  (*See* Mot. at 24, n.8).

defendant have no relevance in light of the defendant's express waiver of the statute of limitations in the Plea Agreement for "any prosecution that is not time-barred"—such as Counts Five through Nine—when the Agreement was executed.

The defendant next argues that, even if the statute of limitations waiver contained in the Plea Agreement survived the nullification of the agreement, Counts Five through Nine of the Superseding Indictment still would be time-barred.  (*See* Def. Mot. at 26-27).  Here, the defendant attempts to cabin the meaning of "prosecution" to only those charges the government was prepared to allege at the time the Plea Agreement was signed.  In effect, the defendant argues that, if the Government was not, at the very least, aware of offense conduct and/or in possession of evidence that would form the basis for a contemplated prosecution, any such prosecution is time-barred.

The defendant's interpretation, while purporting to rely on a dictionary definition of "prosecution," is overly technical and incorrect.  It also is in tension with the defendant's reading of the statute of limitations as absolute, unaffected by the defendant's knowing and voluntary waiver of that defense, memorialized in the Plea Agreement.  The waiver plainly applies to "***any*** prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement[.]"  (Plea Agreement at 8) (emphasis added) .  Policy concerns and common sense dictate this result as well.  In anticipation of a guilty plea, and certainly with the entry of such a plea, the Government may cease investigation and/or pause pursuing additional charges, in reliance on the conviction represented by a defendant's guilty plea, obviating the need to continue investigating existing or additional charges.  It is for this reason, among others, that the statute of limitations waiver in the Plea Agreement, in effect, tolls the statute of limitations at the time of the guilty plea, freezing in time that moment in the prosecution should

the plea later be vacated.  When the Government came into possession of evidence that could form the basis for new theoretical charges at the time the plea was entered is irrelevant to this analysis.  Accordingly, the defendant's argument here fails as well, and the Court should reject it without a hearing.

Because the pertinent language of the Plea Agreement is unambiguous, the Government's need not—and is not—invoking equitable concerns that would arise from any windfall that would accrue to the defendant were Counts Five through Nine time-barred.  Further, because the waiver is not ambiguous, there is no language to construe "strictly against the Government." *See, e.g.*, *United States v. Cimmo*, 381 F.3d 124, 127 (2d Cir. 2004) ("In general, plea agreements are subject to ordinary contract law principles, except that any ambiguity is resolved strictly against the Government." (internal quotation marks omitted)).

The Government's interpretation of the waiver provision is also consistent with one of the most fundamental tenets of contract law.  "It is a cardinal rule of construction that the court adopt an interpretation that renders no portion of the contract meaningless." *Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008) (quoting *Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298, 301, 205 A.D.2d 202 (1st Dep't 1994)); *see also Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) ("[T]he court may not read the agreement to make any of its terms meaningless, or construe its language to render particular provisions mere surplusage.").  Here, the operative circumstance undermining the Plea Agreement—the vacatur of the defendant's conviction on Count Five of the Underlying Indictment—is the same circumstance anticipated in the defendant's waiver of the statute of limitations, a provision that does not have effect unless and until "the defendant's pleas of guilty pursuant to this Agreement [are] vacated for any reason."  (Plea Agreement at 8).  Adopting the

defendant's interpretation would render meaningless these words from his waiver, because the same circumstance that triggers the clause's operation would, under his theory, relieve the parties of their obligations under the Plea Agreement.

## II.    The Superseding Indictment Was Not the Product of a Vindictive Prosecution.

The defendant asserts that Counts Five through Nine must be dismissed as a product of a vindictive prosecution, purportedly stemming from the Government's "refusal to permit Mr. Pham to accept its prior plea offer . . . after Mr. Pham initially declined the offer."  (Mot. at 28). The defendant utterly fails, however, to demonstrate either any actual vindictiveness or any set of facts warranting the presumption of vindictiveness, and his account of the parties' dealings is substantially incomplete.  Accordingly, the motion should be denied.

### A.    Background

Following the defendant's motion to vacate his conviction on Count Five of the Underlying Indictment, the parties engaged in an effort to reach a resolution short of trial.  One of the Assistant U.S. Attorneys handling this matter conveyed the terms of a proposed resolution to defense counsel on January 29, 2020, noting that "this is not an offer and has not been approved by the Unit Chiefs [in the Southern District of New York] or NSD [the Department of Justice's National Security Division."  (Def. Ex. 4).  As the defendant acknowledges, he rejected the proposal, (Mot. at 31), and the parties advised the Court on July 17, 2020 that "based on conversations with the defendant, further plea discussions are not likely to result in a pretrial disposition." (Dkt. 181).  On August 14, 2020, the Government notified the Court and defense counsel of its intention to seek the additional charges now reflected in Counts Five through Nine of the Superseding Indictment. (Dkt. 184 at 9).  Two weeks later, on August 28, 2020, defense counsel conveyed the defendant's desire to accept the proposed plea that he had earlier rejected. (Def. Ex. 5).  While the defendant's terms were not acceptable to the Government at that time,

the Government made a different plea offer to the defendant, which was discussed in principle by phone on September 1, 2020, and conveyed to the defendant in writing on September 9, 2020. (Oct. 28 Tr. at 9).  That plea offer expired without being accepted on September 11, 2020.  (*Id.*). Defense counsel never sought additional time for consideration of the plea or for it to be reopened later, and later confirmed that the defendant had "elected not to accept" that offer.  (*Id.* at 12).

### B.       Applicable Law

"[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate." *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir.), *cert. denied*, 531 U.S. 1015 (2000) (citations and internal quotation marks omitted). Nonetheless, "a prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." *Id.* (internal quotation marks omitted).  "Accordingly, an indictment will be dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir.1999) (*per curiam*).

To show actual vindictiveness, a defendant must prove objectively that the prosecutor's charging decision was a "direct and unjustifiable penalty," *United States v. Goodwin*, 457 U.S. 368, 384 & n.19 (1982), that resulted "solely from the defendant's exercise of a protected legal right," *id.* at 380 n. 11; *see also Johnson*, 171 F.3d at 140-41.  Similarly, to establish a presumption of prosecutorial vindictiveness, the defendant must show that "the circumstances of a case pose a 'realistic likelihood' of such vindictiveness." *United States v. King*, 126 F.3d 394, 397 (2d Cir.1997) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). The circumstances must present a realistic likelihood of vindictiveness that would be "applicable in all cases,"

*Goodwin*, 457 U.S. at 381, and any such presumption may be "overcome by objective evidence justifying the prosecutor's action," *id.* at 376 n.8.

"A presumption of vindictiveness generally does not arise in a pretrial setting." *Sanders*, 211 F.3d at 717.   In particular, "the [Supreme] Court has declined to apply the presumption with regard to the lodging of a superseding indictment following unsuccessful plea bargaining because the 'give-and-take' of plea bargaining does not in general reflect a retaliatory motive." *Lane v. Lord*, 815 F.2d 876, 878 (2d Cir. 1987) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).  Indeed, "there is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  The Supreme Court has thus recognized that the mere addition of charges following failed plea negotiations does not adequately state a claim of prosecutorial vindictiveness:

> In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin*, 457 U.S. at 378-80; *see also United States v. Brizendine*, 659 F.2d 215, 228 (D.C. Cir. 1981) ("Plea bargaining involves an arm's-length give and take between two parties with relatively equal bargaining power, and the prosecutor may, as part of the bargaining process, both make and carry out a threat to indict on a more serious offense if the agreement is rejected, providing the new charge is supported by probable cause. . . . There is no question of

14

vindictiveness even where a more serious charge is brought after the rejection of a plea agreement.").

### C.    Discussion

The defendant does not—and could not—make any allegation that Counts Five through Nine are the product of actual vindictiveness.  There is no evidence whatsoever of impermissible "animus toward the defendant" and that the defendant "would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (internal quotation marks omitted).  Thus, the defendant relies exclusively on what he asserts is "a reasonable/realistic likelihood of vindictiveness sufficient to warrant a presumption of vindictiveness" (Mot. at 34), claiming that "there is a direct and unmistakable link between the government's intransigence [in refusing to reopen the January 2020 plea proposal] and Mr. Pham's initial choice to exercise his right to trial" (*id.* at 33).  But the Supreme Court has explicitly rejected application of the presumption of vindictiveness when "the only evidence [the defendant] is able to marshal in support of his allegation of vindictiveness is that the additional charge was brought at a point in time after his exercise of a protected legal right."  *Goodwin*, 457 U.S. at 382 n.15.  Rather, the Court recognized, "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so unlikely that a presumption of vindictiveness certainly is not warranted."  *Id.* at 384.  For this reason, the Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting," *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009), and the presumption of vindictiveness has been specifically held not to apply "to the lodging of a superseding indictment following unsuccessful plea bargaining because the 'give-and-take' of plea bargaining does not in general reflect a retaliatory motive," *Lane*, 815 F.2d at 878.  That is

15

sufficient to reject the defendant's assertion that the presumption of vindictiveness warrants dismissal in this case.

The defendant attempts to evade this clear law by asserting that the plea negotiations were not unsuccessful, but merely delayed. (Mot. at 32). While this is ultimately irrelevant, given that the presumption of vindictiveness does not apply at all in this context, it also ignores the fact that the defendant did not merely delay accepting the Government's January 2020 plea proposal (a proposal that would have required approval at multiple levels of the Department of Justice and which might ultimately not have been approved or formally extended), *he affirmatively rejected it*. The Government then, in anticipation of trial, decided to seek additional charges, and gave notice to the defendant and the Court of that decision. Only following that decision did defense counsel convey the defendant's purported desire to accept the prior terms. It hardly gives rise to a presumption of vindictiveness that the Government refused to abandon a decision that it had described in public to the Court, simply because the defendant expressed newfound desire to avoid the consequences of the Government's decision by reversing his rejection of the earlier proposal. This case thus falls squarely within the ambit of charging decisions that the Supreme Court expressly approved in *Goodwin*: a "prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded" without any presumption of vindictiveness attaching. 457 U.S. at 380.

Indeed, the specific facts here show that there was no vindictive motive for the additional charges. The initial plea proposal—although not a formal offer—was rejected by the defendant, and defense counsel informed the Government that further plea negotiations were not likely to be productive. (Dkt. 181). In the absence of any plea negotiations, this case was not one in which "additional charges were brought to persuade the defendant to plead guilty," although even that

would not provide a basis to conclude "that the additional charges were brought solely to

'penalize' the defendant and could not be justified as a proper exercise of prosecutorial

discretion." *Goodwin*, 457 U.S. at 380 n.12.  Rather, only after the Government provided notice

to the Court and the defendant of its intention to seek additional charges, in August 2020,  did the

defendant purport to accept the Government's long-since rejected plea proposal.  Even then,

although the Government was not prepared to acquiesce to the defendant's demand for a plea on

terms that he had already rejected, the Government nevertheless was still willing to make a

different plea offer to the defendant, which he also rejected, with the full knowledge that the

Government intended to pursue superseding charges against him.  (Oct. 28 Tr. at 9-12).  "[I]n the

'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long

as the accused is free to accept or reject the prosecution's offer. . . . While confronting a

defendant with the risk of more severe punishment clearly may have a discouraging effect on the

defendant's assertion of his trial rights, the imposition of these difficult choices is an

inevitable—and permissible—attribute of any legitimate system which tolerates and encourages

the negotiation of pleas." *Bordenkircher*, 434 U.S. at 363 (cleaned up).  The defendant here was

in fact "free to accept or reject" the Government's proposed plea terms—he rejected two

different proposals.

      It is of no moment, as the defendant asserts, that the Government "possessed the

information and evidence [supporting the additional charges] by January 2020" when the initial

plea proposal was communicated.  (Mot. at 32).  The Second Circuit has squarely rejected that

precise argument, noting that even where the Government "possessed the same information

when preparing the original and superseding indictments, that the maximum punishment [the

defendant] faced if convicted under the superseding indictment was greater than that he faced if

convicted under the original indictment, and that the superseding indictment was the result of the district court's dismissal of . . . charges in the original indictment," there is no basis to conclude "that the government was attempting to do anything more than hold [the defendant] criminally responsible for engaging in the underlying acts that form the basis of the indictment." *Stewart*, 590 F.3d at 123.

Here, the Superseding Indictment contains serious charges for which the Government has an obvious interest in holding the defendant accountable. The Supreme Court and the Second Circuit have long been clear that the presumption of vindictiveness does not apply in the pretrial setting, and particularly to the decision to seek additional charges following a breakdown in plea negotiations. The defendant does not have a constitutional right to demand that the Government re-extend a plea agreement that the defendant himself has rejected. "There is no principle of law which requires, as defendant's argument would require, that a person who commits more than one crime may be prosecuted only for one of them." *United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983) (quoting *United States v. DeMichael*, 692 F.2d 1059, 1062 (7th Cir. 1982)). The defendant's wholly unsupported assertion of a connection between the decision to seek new charges and his initial rejection of the plea proposal simply does not give rise to a presumption of vindictiveness. Accordingly, his motion should be denied.

III.    **The Court Should Reject the Defendant's Challenges to the United Kingdom's Extradition-Related Process and Decision.**

The defendant argues that Counts Five through Nine of the Superseding Indictment should be dismissed because they violate the rule of specialty, and in particular that he was denied "Due Process and . . . natural justice" by the process through which the United Kingdom granted consent for the Government to proceed on those counts. (Mot. at 34-42). The Court should reject the defendant's argument for two reasons. First, as the defendant himself

acknowledges, well-established law in the Second Circuit makes clear that an individual defendant does not have standing to assert violations the specialty provisions of an extradition treaty in the absence of either a specific treaty provision allowing him to do so or protest from the country affected.  Second, the bulk of the defendant's motion is predicated on challenges to the process by which the United Kingdom evaluated and decided on the request for waiver of the rule of specialty, and it is equally settled that courts of the United States should not second-guess either the substance of a foreign country's extradition decisions or the process by which they are reached.

**A.** **The Defendant Does Not Have Standing to Assert a Violation of the Rule of Specialty.**

*1.  Applicable Law*

The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003) (*per curiam*).  "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused." *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).  "[W]hile [t]he 'principle of specialty' reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government,' that principle can afford 'the extraditee' himself a 'remedy only if the surrendering government would object, since the underlying substantive wrong, which grows out of international law, is only to the latter.'" *United States v. Barinas*, 865 F.3d 99, 105 (2d Cir. 2017) (quoting *Fiocconi v. Att'y Gen. of U. S.*, 462 F.2d 475, 481 (2d Cir. 1972).  The same principle precludes a defendant from asserting the rule of specialty regardless of the type of document that is the genesis of his claim:  "These concerns apply equally whether a criminal

defendant objects based on the rule of specialty or based on the interpretation of an extradition treaty or Diplomatic Note.  Because '[t]he provisions in question are designed to protect the sovereignty of states, . . . it is plainly the offended states which must in the first instance determine whether a violation of sovereignty occurred, or requires redress.'" *United States v. Suarez,* 791 F.3d 363, 367 (2d Cir. 2015) (quoting *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir.1975)).  Accordingly, the Second Circuit has been explicit that a defendant "would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the [surrendering government] first makes an official protest."  *Id.*

### 2.  Discussion

Here, the United Kingdom has made no protest to the additional charges contained in the Superseding Indictment; rather, it has expressly consented to the inclusion of those charges. Accordingly, the defendant has no standing to assert a violation of the rule of specialty under long-settled Second Circuit law.

The defendant's attempt to cast doubt on this conclusion by citing different law in other circuits is unavailing.  In *United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995), the Eleventh Circuit approved a limited basis for a criminal defendant to assert violations of the rule of specialty "which the requested nation might have asserted," *id.* at 1575, (noting that this holding was contrary to the law in this Circuit).  In so doing, however, the Eleventh Circuit made clear that "[t]he extradited individual, however, enjoys this right at the sufferance of the requested nation. As a sovereign, the requested nation may waive its right to object to a treaty violation and thereby deny the defendant standing to object to such an action."  *Id.*

Here, there was no violation of the U.S.-UK Extradition Treaty that the defendant can vicariously assert on behalf of the United Kingdom.  The Government did not simply seek a superseding indictment without regard to the provisions of the treaty or the limitations of the

original extradition decision—rather, the Government explicitly complied with the provisions of

Article 18.1(c) of the treaty, seeking and obtaining the consent of the United Kingdom for the

additional charges contained in Counts Five through Nine of the Superseding Indictment.

Pursuant to that request, "after careful consideration of the request under Article 18 of the US-

UK Extradition Treaty and with reference to United Kingdom's extradition law, the Secretary of

State [of the United Kingdom] has given consent to the United States' request to prosecute [the

defendant] for the further offenses." (Def. Ex. 9). Accordingly, even under the contrary

application of standing in the Eleventh Circuit on which the defendant relies, not only was there

no treaty violation for the defendant to assert, but also "the requested nation [has] waive[d] its

right to object to a treaty violation and thereby den[ied] the defendant standing to object to such

an action." *Puentes*, 50 F.3d at 1575.

> **B.     The Court Should Not Second-Guess the United Kingdom's Decision or Process.**
>
> *1.   Applicable Law*

"It is well-established that 'a foreign government's decision to extradite an individual in

response to a request from the United States is not subject to review by United States

courts.'" *United States v. Salinas Doria*, No. 01 Cr. 21 (GEL), 2008 WL 4684229, at *2

(S.D.N.Y. Oct. 21, 2008) (quoting *United States v. Medina,* 985 F. Supp. 397, 401 (S.D.N.Y.

1997)). As the Second Circuit has recognized, the American Government "can hardly be

expected to monitor the conduct of representatives of each foreign government to assure that a

request for extradition or expulsion is carried out in accordance with American constitutional

standards. [N]o purpose would be served by holding the Government responsible for the actions

of [foreign government officials]." *United States v. Lira*, 515 F.2d 68, 71 (2d Cir.1975); *see also*

*United States v. Umeh*, 762 F. Supp. 2d 658, 664 (S.D.N.Y. 2011), *aff'd*, 527 F. App'x 57 (2d

Cir. 2013) ("[T]he United States is not responsible for ensuring that a foreign sovereign complies with its internal laws in issuing an extradition or expulsion.").

On the contrary, "international comity precludes federal courts from sitting in review of another country's grant of extradition, or by extension, that country's grant of a Rule of Specialty waiver." *United States v. Loera*, No. 09 Cr. 466 (BMC), 2017 WL 2821546, at *6 (E.D.N.Y. June 29, 2017). Indeed, "deference to [a requested state's extradition] decision seems essential to the maintenance of cordial international relations. It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request." *United States v. Campbell*, 300 F.3d 202, 209 (2d Cir. 2002). For that reason, "our courts cannot second-guess another country's grant of extradition to the United States." *Id.*

### 2. Discussion

The defendant's argument that the process by which the United Kingdom consented to the inclusion of Counts Five through Nine of the Superseding Indictment asks this Court to engage in precisely the sort of second-guessing of a foreign sovereign that the Second Circuit has prohibited. His description of the principle of "natural justice" that he asserts was violated relies exclusively on citations to United Kingdom law (Mot. at 35-37), and thus calls for this Court to engage in the bizarre exercise of applying foreign law to determine that a foreign sovereign has not complied with what the defendant contends are that sovereign's own legal doctrines. As the defendant acknowledges, the Secretary of State of the United Kingdom has confirmed that the decision to give consent to the additional charges in the Superseding Indictment was made with due consideration of the "United Kingdom's extradition law." (Def. Ex. 9). The Court cannot police whether "a foreign sovereign complies with its internal laws in issuing an extradition" decision, *Umeh*, 762 F. Supp. 2d at 664.

22

Equally problematic is the defendant's assertion that the Court should reject the United

Kingdom's consent to the additional charges because the additional charges do not comport with

his description of American constitutional requirements.  The Second Circuit has been explicit

that there is no basis to demand "that a request for extradition or expulsion is carried out in

accordance with American constitutional standards." *Lira*, 515 F.2d at 71.  Nor do "American

constitutional standards" demand that a foreign sovereign provide any particular process for a

defendant surrendered for prosecution in the United States.  Quite the contrary, it is black-letter

law that, however a defendant has been surrendered to the United States, "due process of law is

satisfied when one present in court is convicted of crime after having been fairly apprized of the

charges against him and after a fair trial in accordance with constitutional procedural

safeguards."  *United States v. Alvarez-Machain*, 504 U.S. 655, 661-62 (1992) (quoting *Frisbie v.

Collins*, 342 U.S. 519, 522 (1952).  Thus "the constitutional due process requirement is limited to

a guarantee of a fair trial, regardless of the method by which jurisdiction was obtained over the

defendant."  *United States v. Noorzai*, 545 F. Supp. 2d 346, 351 (S.D.N.Y. 2008), *aff'd in part*,

422 F. App'x 54 (2d Cir. 2011).

Moreover, the defendant overstates the facts that underlie his purported claim of a due

process violation.  Although he asserts that "the U.K.'s consent was deliberately, and in defiance

of defense counsel's specific request(s), secured by precluding Mr. Pham from interposing any

objection," (Mot. at 41), that is incorrect.  The defendant was given notice of the pending request

(Def. Ex. 7), and did in fact assert objections to the request (Def. Ex. 8).  The defendant cites no

basis for concluding that there was any due process violation arising solely from the fact that he

was not a party to the confidential diplomatic communications between the United States and the

United Kingdom in which the United States made the request.

Accordingly, because the defendant does not have standing to assert his specialty-related challenges, because principles of comity preclude the Court from second-guessing the United Kingdom's application of its own law in granting consent for the United States to proceed on Counts Five through Nine, and because the Due Process Clause will be satisfied by the defendant's fair trial on all of the charges in the Superseding Indictment, the defendant's motion should be denied.

## IV.    No Further Discovery Relief Is Necessary.

The defendant also seeks to have the Court enter an order pursuant to Federal Rule of Criminal Procedure 5(f) not only to remind the Government of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, but also directing the Government to identify any potential *Brady* material in the discovery in this case.  The Court has already entered an order pursuant to Rule 5(f), announcing it orally at the status conference in this matter on October 28, 2020 (Oct. 28 Tr. at 6-8), and filing it on the docket on September 7, 2021 (Dkt. 219).  At the October 28, 2020 conference, the Government confirmed that it understood its *Brady* disclosure obligations and has and will continue to fulfill them, and the Government reiterates that commitment here.

No further relief is necessary.  "While the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case."  *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990).  Thus, contrary to the defendant's suggestion, "as a general rule, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Ohle*, No. S3 08 Cr. 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011); *see also United States v. Rubin/Chambers,*

24

*Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("The Government is under no general obligation to sort or organize *Brady* material disclosed to defendants."); *United States v. Stein*, No. S1 05 Cr. 888 (LAK), 2005 WL 3058644, at *2 (S.D.N.Y. Nov. 15, 2005) ("[A] court would be hard-pressed to say, in advance of trial, that the government is obliged . . . to identify specific items in its production as exculpatory, in order to comply with *Brady*."). "Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once. Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client." *Ohle*, 2011 WL 651849, at *4. "[R]equir[ing] the government to designate all of these documents as *Brady* material[,] . . . [q]uite apart from casting the government in the impossible role of soothsayer, . . . far exceeds the scope of the government's obligations under any court-articulated application of *Brady*." *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998), *aff'd*, 216 F.3d 1072 (2d Cir. 2000).

The Government has endeavored, in its original productions of discovery to the defense in 2015 and 2016, its reproduction of that material at defense counsel's request, and additional small productions in the interim, to provide the defense with cover letters describing the contents of these productions and to organize the productions themselves with descriptive file names to assist defense counsel's review. To the extent that defense counsel has further questions about the contents of these discovery productions, the Government will gladly confer with defense counsel and make reasonable efforts to facilitate their preparation for trial. There is no basis to go further and require the Government to affirmatively designate material as exculpatory, particularly at this early stage in the pretrial proceedings, a step that courts in this district and

circuit have rejected with near uniformity.  The Government nevertheless acknowledges that "a disclosure made on the eve of trial (or after trial has begun) may be insufficient unless it is fuller and more thorough than may have been required if the disclosure had been made at an earlier stage." *Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001).  To the extent that the Government identifies additional discoverable material as the case progresses, the Government recognizes that its obligations to provide additional detail or designations to the defense may change accordingly, and will ensure at every stage that the Government continues to comply with its obligations under *Brady* and the Court's Rule 5(f) Order.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's pretrial motions should be denied.

Dated:  October 8, 2021
        New York, New York

                                    AUDREY STRAUSS
                                    United States Attorney

                            By:     _____/s/_____
                                    David W. Denton, Jr. / Jacob H. Gutwillig
                                    Assistant United States Attorneys
                                    (212) 637-2744 / -2215

To:     Counsel of Record (by ECF)