UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                     :

UNITED STATES OF AMERICA,          :

                                                  :

                                                  :

               – against –          :       12 Cr. 423 (AJN)

                                                    :

MINH QUANG PHAM,              :

                                                    :

                     Defendant.        :

                                                    :
-------------------------------------------------------x


### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PRETRIAL MOTION TO DISMISS COUNTS 5-9, AND FOR PRODUCTION AND <u>IDENTIFICATION OF EXCULPATORY MATERIAL AND INFORMATION</u>

JOSHUA L. DRATEL
DRATEL & LEWIS
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-8805
jdratel@dratellewis.com

BOBBI C. STERNHEIM
LAW OFFICES OF BOBBI C. STERNHEIM
225 Braodway, Suite 715
New York, New York 10007
(212) 243-1100
bcsternheim@mac.com

*Attorneys for Defendant Minh Quang Pham*


– *Of Counsel* –
Joshua L. Dratel
Bobbi C. Sternheim

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument

POINT I

COUNTS FIVE THROUGH NINE OF THE SUPERSEDING
INDICTMENT MUST BE DISMISSED BECAUSE THEY WERE
INSTITUTED AFTER THE STATUTE OF LIMITATIONS EXPIRED . . . . . . . . . . . . . . . . . . 3

A.      §3286(b) Does Not Apply to Counts Five through Nine,
        Which Are Therefore Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . 4

        1.      Examination of the Doctrine of "Foreseeability" Precludes
                Application of §3286(b) to Counts Five through Nine In This Case . . . . . . . . . . . 6

                a.      "Foreseeability" In the Context of Proximate Cause . . . . . . . . . . . . . . . . . 7

                b.      "Foreseeability" In the Context of the Pinkerton Doctrine . . . . . . . . . . . . 8

                c.      "Foreseeability" In the Context of the U.S. Sentencing Guidelines . . . . . . 9

        2.      Counts Five and Seven, Which Charge Conspiracies, Do Not Involve
                Foreseeable Harm That Could Qualify for Coverage Under §3286(b). . . . . . . . . 11

        3.      Counts Six and Eight, Which Charge Attempts, Do Not Involve
                Foreseeable Harm That Could Qualify for Coverage Under §3286(b). . . . . . . . . 13

        4.      The Rule of Lenity Requires a Narrow Reading of §3286(b). . . . . . . . . . . . . . . . 17

        5.      The Government's Interpretation of §3286(b) Would Render the
                Statute Unconstitutionally Vague as Applied to Mr. Pham In This Case . . . . . . . 18

B.      The Government Cannot Rely on the Statute of Limitations Waiver in the
        Plea Agreement Because the Agreement Was Nullified by the Court's Order. . . . . . . . . 21

POINT II

COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED BECAUSE
THEY ARE THE PRODUCT OF A VINDICTIVE PROSECUTION . . . . . . . . . . . . . . . . . . . . 24

POINT III

COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED
BECAUSE THE UNITED KINGDOM'S CONSENT TO
THE U.S. PROSECUTION OF MR. PHAM FOR THOSE
COUNTS WAS BECAUSE IT BREACHED THE RULE
OF SPECIALTY, DENIED MR. PHAM  DUE PROCESS,
AND VIOLATED THE PRINCIPLE OF NATURAL JUSTICE. . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TABLE OF AUTHORITIES

CASES

*Accord Triestman v. United States*, 124 F.3d 361(2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bahlul v. United States*, 840 F.3d 757 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Basic v. Steck*, 12 Civ. 274 (KKC), 2015 WL 4164901
      (E.D. Ky. July 9, 2015), *aff'd*, 819 F.3d 897 (6th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . 4

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 27

*Chapman v. United States*, 326 F. Supp. 3d 228 (E.D. Va. 2018) . . . . . . . . . . . . . . . . . . . . . . . 12

*Chapman v. United States,* 500 U.S. 453 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Collier v. United States*, 989 F.3d 212 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Collins v. Kentucky*, 234 U.S. 634 (1914). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Connally v. General Constr. Co.*, 269 U.S. 385 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*,
      566 F. Supp. 2d 246 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hyde v. United States*, 225 U.S. 347 (1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Johnson v. United States*, 559 U.S. 133 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 20

*Jones v. United States*, 526 U.S. 227 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jordan v. DeGeorge*, 341 U.S. 223 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kolender v. Lawson*, 461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-20

*McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McNally v. United States*, 483 U.S. 350 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mendez v. Barr*, 960 F.3d 80 (2d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nezirovic v. Holt*, 779 F.3d 233 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Palsgraf v. Long Island R. Co.*, 248 N.Y. 339 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pinkerton v. United States*, 328 U.S. 640 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sessions v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204 (2018) . . . . . . . . . . . . . . . . . . . . 12, 13, 19, 20

*Stanford v. Kuwait Airways Corp.*, 89 F.3d 117 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Al-Arian*, 329 F. Supp.2d 1294 (M.D. Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . 18

*United Sates v. Arthur Andersen*, 544 U.S. 696 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United Sates v. Barrett*, 937 F.3d 126 (2d Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Bass*, 404 U.S. 336 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Brown*, 459 F.3d 509 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319 (2019). . . . . . . . . . . . . . . 11, 12, 18-20, 25

*United States v. Demott*, 906 F.3d 231 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Eason*, 953 F.3d 1184 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 20

*United States v. Ford*, 435 F.3d 204 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ghayth*, 98 Cr. 1023 (LAK), 2013 WL 12226036
    (S.D.N.Y. Nov. 26, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Goodrich*, 12 F.4th 219 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iv

*United States v. Ivic*, 700 F.2d 51 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 20

*United States v. Jimenez Recio*, 537 U.S. 270 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Khan*, 309 F. Supp.2d 789 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Levine*, 658 F.3d 113 (3d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Lira*, 515 F.2d 68 (2d Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Mallory*, 709 F. Supp. 2d 455
    (E.D. Va. 2010), aff'd, 461 F. App'x 352 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Manley*, 632 F.2d 978 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Midgley*, 142 F.3d 174 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Mohamed*, 148 F. Supp. 3d 232 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Podde*, 105 F.3d 813, 821 n.6 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Simpson*, 319 F.3d 81 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Turk*, 626 F.3d 743 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Umeh*, 762 F. Supp. 2d 658
    (S.D.N.Y. 2011), aff'd, 527 F. App'x 57 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Valle*, 807 F.3d 508 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Wallace*, 85 F.3d 1063 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Watkins*, 477 F.3d 1277 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17, 20

*United States ex rel. Attorney General, v. Delaware & Hudson Co.*,
    213 U.S. 366 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

v

*Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291
   (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298,
   205 A.D.2d 202 (1st Dep't 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Williams v. United States* 458 U.S. 279 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Yates v. United States*,  574 U.S. 528 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

### STATUTES

18 U.S.C. §1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2332a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §2332(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 2332(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. §2332b(g)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

18 U.S.C. §2332f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

18 U.S.C. §2339A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. §2339B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. §3282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §3286(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-6, 9, 13, 14, 16-18, 20

18 U.S.C. §666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C §924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S.S.G. §1B1.3. Relevant Conduct (Factors that Determine the Guideline Range). . . . . . . . . . 9

U.S.S.G. §2B1.1. Larceny, Embezzlement, and Other Forms of Theft . . . . . . . . . . . . . . . . . 9, 10

U.S.S.G. §2X1.1(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S.S.G. §8C4.2, Risk of Death or Bodily Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

OTHER AUTHORITIES

J. Richard Broughton, *Of Puppets and Terrorism*
    62 S.D. L. Rev. 682 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Mark A. Geistfeld, *Proximate Cause Untangled*
    80 Md. L. Rev. 420 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mitchell McBride, *Federal Criminal Conspiracy*
    57 Am. Crim. L. Rev. 759 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Restatement (Second) of Torts § 442A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Initial Appearance, Rule 5(f)(1), *Fed.R.Crim.P.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Introduction

This Reply Memorandum of Law is submitted on behalf of defendant Minh Quang Pham in support of his pretrial motions (ECF # 218) ("Mr. Pham's Initial Memo of Law") in response to the government's opposition to those motions (ECF # 228) ("Gov't Opp."). Much of the government's opposition does not require rejoinder, as it was anticipated and addressed in Mr. Pham's Initial Memo of Law. As a result, this Reply will focus on specific arguments raised by the government – all of which are, for the reasons detailed below, without merit.

For example, regarding Mr. Pham's motion to dismiss Counts Five through Nine because the statute of limitations has expired (POINT I), the government's opposition is unavailing because its reliance upon 18 U.S.C. §3286(b) – absent citation to a *single* case or other authority – is entirely misplaced because the section, which focuses on harm foreseeable upon "commission" of the offense, does not apply. "Foreseeability" is a longstanding legal doctrine with established definitions that do not, in any of their incarnations, impose liability for offenses and/or conduct so attenuated as alleged herein.

Neither the conspiracy nor attempt allegations – which comprise Counts Five through Nine – provide a basis for the dramatic and intolerable extension of "foreseeability" the government's assertion would require. Even if §3286(b) arguably applied, the rule of lenity would preclude its use in this case. Alternatively, it would be unconstitutionally vague as applied herein because of its indefinite nature and failure to provide adequate notice.

Also, the government's claim that the statute of limitations waiver in the Plea Agreement controls ignores the dispositive fact that *the plea agreement was explicitly nullified, and the parties restored to their status prior the agreement*. Thus, the statute of limitations waiver is

1

void.  The government further ignores the abundant case law and, again, longstanding contract doctrine detailed in Mr. Pham's Initial Memo of Law.

The government's opposition to Mr. Pham's motion to dismiss Counts Five through Nine because they are the product of a vindictive prosecution (POINT II) fails as well because the government abandoned negotiations as a result of Mr. Pham's initial declination of the government's offer, and before it sought the United Kingdom's consent to add Counts Five through Nine.  In addition, the matter raises disputed issues of fact, unaccompanied by any sworn submissions from the government, that requires an evidentiary hearing.

Regarding Mr. Pham's motion to dismiss Counts Five through Nine because they violate the rule of specialty, and because the process through which the United Kingdom consented to institution of the charges denied Mr. Pham Due Process and his rights pursuant to natural justice (POINT III), the government creates a straw man:  Mr. Pham is not challenging the discretion or decision-making authority of a foreign sovereign (the United Kingdom).  Rather, his motion is based on the *U.S. government's* denial of his Due Process and natural law rights by depriving him of a meaningful ability to contest the U.S.'s request that the U.K. consent to the addition of Counts Five through Nine.

Accordingly, it is respectfully submitted that Mr. Pham's pretrial motions should be granted in their entirety, and Counts Five through Nine dismissed, and/or order the government not simply to disclose all exculpatory material, but also to identify – within the extraordinary volume of digital discovery the government has produced – such material in order to discharge adequately the government's obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, as well as Rule 5(f)(1), Fed.R.Crim.P.

**POINT I**

**COUNTS FIVE THROUGH NINE OF THE SUPERSEDING
INDICTMENT MUST BE DISMISSED BECAUSE THEY WERE
<u>INSTITUTED AFTER THE STATUTE OF LIMITATIONS EXPIRED</u>**

The government contends that Counts Five through Nine are not barred by the statute of limitations because (1)  the limitations period in 18 U.S.C. §3286(b) (and not the general five-year limitations period in 18 U.S.C. §3282) applies to those Counts and (2)  the statute of limitations waiver provision in the Plea Agreement between Mr. Pham and the government prevents him from challenging those counts on statute of limitations grounds.  *See* Gov't Opp., at 7-12.

However, as detailed below, both arguments are fatally flawed.  The government's reliance on §3286(b) is unaccompanied by even a *single* citation to a case or other authority, or even a rationale as to how the legal doctrine of foreseeability – defined in a number of legal contexts – covers either the statutory allegations or the underlying conduct alleged.  Thus, as a matter of law and/or fact, §3286(b) is inapposite.

As set forth below, the various settled definitions and applications of "foreseeability" in the law foreclose §3286(b) as an option for Counts Five through Nine.  Also, because §3286(b) specifically encompasses harm foreseeable as a result of the *commission of the offense*, it cannot cover Counts Five through Nine, charging conspiracies (Counts Five and Seven) and attempts (Counts Six and Eight) (and a firearms charge, Count Nine, predicated on Counts Six through Eight), which by their very nature were completed prior to any harm being "foreseeable."

Regarding the language of the Plea Agreement, the government steadfastly avoids confronting the fundamental dispositive fact:  that the Plea Agreement itself is a nullity.  As a

result, the government's analysis is entirely immaterial, and the Plea Agreement cannot salvage

Counts Five through Nine.

**A.     *§3286(b) Does Not Apply to Counts Five through Nine,
Which Are Therefore Barred by the Statute of Limitations***

That the government cannot cite a single case or other authority in support of its position

that §3286(b) authorizes Mr. Pham's prosecution under Counts Five through Nine[1] is not

surprising.  Not only does §3286(b) decidedly *not* permit those charges, but the lack of any

pertinent case law demonstrates that the government has not previously even attempted to stretch

§3286(b) to cover such allegations.[2]

In its entirety, §3286(b) reads as follows:

> Notwithstanding any other law, an indictment may be found or an
> information instituted at any time without limitation for any
> offense listed in section 2332b(g)(5)(B), if the commission of such
> offense resulted in, or created a foreseeable risk of, death or serious

---

[1]  The government repeatedly refers to Counts Five through Eight in its opposition.
Nevertheless, Count Nine, the firearms counts that is wholly dependent on Counts Six through
Eight, *see* Gov't Opp., at 5, would necessarily be eliminated once those Counts are dismissed.

[2]  Research did not yield cases involving §3286(b) that address the issue of
"foreseeability" presented herein.  Most opinions citing the statute have ruled that specific crimes
fell under the statute based on the impact of the defendant's conduct.  *See, e.g. Nezirovic v. Holt*,
779 F.3d 233, 238 (4th Cir. 2015) (Torture Act qualified for the extended statute of limitations,
as defendants' alleged conduct did, in fact, result in serious bodily injury);  *United States v.
Mohamed*, 148 F. Supp. 3d 232, 236 (E.D.N.Y. 2015) ("aiding and abetting attempted murder"
under 18 U.S.C. §1116 was a qualifying offense under §3286(b), as the particular conduct at
issue "involved shooting [the victim] with an AK-47 assault rifle . . . and further resulted in
serious bodily injury");  *Basic v. Steck*, 12 Civ. 274 (KKC), 2015 WL 4164901, at *9 (E.D. Ky.
July 9, 2015), *aff'd*, 819 F.3d 897 (6th Cir. 2016) (same as in *Nezirovic*);  *United States v.
Ghayth*, 98 Cr. 1023 (LAK), 2013 WL 12226036, at *1 (S.D.N.Y. Nov. 26, 2013) ("[a]ttempt or
conspiracy with respect to homicide" in which one or more of such persons perform any overt act
to effect the object of the conspiracy" charged under 18 U.S.C.A. §2332(b), leading to the events
of September 11, 2001, qualified under §3286(b)).

bodily injury to another person.[3]

As detailed below, a number of principles establish that §3286(b) cannot be utilized to draw Counts Five through Nine within the statute of limitations.  For instance, "foreseeability" is a well-established legal doctrine in several contexts, none of which would extend "foreseeability" to the dramatic extent the government attempts herein.

Also, the particular language of §3286(b) – concentrating on whether "*the commission* of such offense resulted in, or created a forseeable [sic] risk of, death or serious bodily injury to another person" (emphasis added) – effectively rules out conspiracy and, in this case, attempts as vehicles for application of §3286(b).  Here, even Mr. Pham's *commission* of Counts Five through Nine as alleged by the government would not satisfy §3286(b)'s "foreseeability" requirement.

In addition, the nature of conspiracy, an inchoate crime complete upon the illegal agreement, renders it incapable of qualifying under §3286(b).  Indeed, the recent jurisprudence regarding conspiracy has confirmed that categorically is not even a "crime of violence." Pursuant to that same analysis, as a matter of law its "commission" cannot involve foreseeable harm.

Moreover, even if §3286(b) could apply to Counts Five through Nine in the abstract, the ambiguities created by the government's interpretation – offered conclusorily without any analysis – activate rule of lenity that would likewise result in dismissal of those Counts. Alternatively, §3286(b) would be unconstitutionally vague as applied to Mr. Pham in this case.

---

[3] In on line versions of the section, a footnote appearing after "forseeable" states, "So in original.  Probably should be 'foreseeable.'" *See* bit.ly/3ECZf7Z.

5

1.      ***Examination of the Doctrine of "Foreseeability" Precludes
        Application of §3286(b) to Counts Five through Nine In This Case***

While the five Counts at issue, including alleged violations of Title 18 U.S.C. §2332f and §2332a, are enumerated offenses under 18 U.S.C. §2332b(g)(5)(B) and may be subject to §3286(b)'s extended (essentially non-existent) statute of limitations, those Counts cannot clear a requisite additional hurdle for it to apply.

The terrorism offenses enumerated in §3286(b) (and corresponding cross-referenced provisions) qualify only "if *the commission of such offense resulted in, or created* a forseeable [sic] risk of, death or serious bodily injury to another person."  (Emphasis added).  Thus, to be subject to the extended statute of limitations, sufficient nexus must exist between the *commission* of such an offense and the "for[e]seeable risk of death or seriously bodily injury to another person."

In its opposition, the government asserts merely that "[c]onspiring to and attempting to bomb a place of public use, . .  and to use a weapon of mass destruction, . .  'create[s] a for[e]seeable risk of . . . death or serious bodily injury to another person,' 18 U.S.C. § 3286(b)[,]" and that "[i]nflicting such harms was the defendant's goal[.]"  Gov't. Opp., at 7.

Yet that conclusory claim, lacking any further analysis of §3286(b) or the elements of Counts Five through Nine, simply alleges Mr. Pham's intent, and fails to resolve in any way the issue of "foreseeability" of the "risk of death or serious bodily injury to another person" created by *commission* of the offenses charged.

6

a.    *"Foreseeability" In the Context of Proximate Cause*

In the context of tort law, "foreseeability asks whether a person could or should reasonably have foreseen the harms that resulted from their actions."  "Foreseeability," *Legal Information Institute*, Cornell Law School, available at bit.ly/3vUB6Xk (emphasis added).  The issue of "foreseeability" arises in tort cases only when an injury or harm occurs, and is evaluated retrospectively to determine whether that harm was "reasonably anticipatable" for purposes of assigning liability.  *See* "Foreseeability," *Black's Law Dictionary*, at 342;  *see also* Mark A. Geistfeld, *Proximate Cause Untangled*, 80 Md. L. Rev. 420, 423 (2021) ("Restatement (Third) [of Torts] instead limits liability 'to those harms that result from the risks that made the actor's conduct tortious'").    In the foundational case defining proximate cause, *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 345 (1928), Chief Judge Cardozo explained that "[o]ne who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person."  Rather, "[n]egligence, like risk, is thus a term of relation," requiring that the act(s) of the alleged perpetrator proximately caused the harm at issue.  *Id.*, at 345.

Thus, "[t]he proximate causation element . . . is concerned with whether and to what extent the defendant's conduct *foreseeably* and substantially caused the specific injury that actually occurred."  *Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 125 (2d Cir. 1996) (emphasis added), *citing McCain v. Florida Power Corp.*, 593 So.2d 500, 502-04 (Fla.1992); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) ("[h]ere we use 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts");  *United States v. Goodrich*, 12 F.4th 219, 229 (2d Cir. 2021) ("[r]egarding cause in fact, the defendant's conduct must have been a necessary factor in

7

bringing about the victim's harm").

        **b.**       ***"Foreseeability" In the Context of the* Pinkerton *Doctrine***

    In the context of a conspiracy, the doctrine promulgated in *Pinkerton v. United States*, 328 U.S. 640 (1946) examines "foreseeability" only upon the commission of a substantive offense by a conspirator in furtherance of the conspiracy.[4]  *See id*., at 647-48 ("we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the *substantive offense* . . . [that is] *reasonably foreseen as a necessary or natural consequence of the unlawful agreement*") (emphasis added).

    Thus, conspiracy law does *not* punish a defendant for the foreseeable impact of the unlawful agreement *unless and until that impact is consummated in the form of a completed substantive offense.  See Bahlul v. United States*, 840 F.3d 757, 792 (D.C. Cir. 2016) ("[t]he *Pinkerton* doctrine of conspiracy holds an individual vicariously liable for reasonably foreseeable substantive crimes committed by his co-conspirators in furtherance of the conspiracy");  Mitchell McBride, *Federal Criminal Conspiracy*, 57 Am. Crim. L. Rev. 759, 781 (2020) ("a defendant may be liable for any foreseeable overt acts committed by a co-conspirator in furtherance of the conspiracy, both prior to, and during, the defendant's involvement in the conspiracy");  J. Richard Broughton, *Of Puppets and Terrorism*, 62 S.D. L. Rev. 682, 692 (2017) ("federal courts apply the complicity doctrine . . . that a co-conspirator is criminally liable for the substantive crimes committed by any other co-conspirator, so long as those substantive crimes are reasonably

---

    [4]  In *Pinkerton* Court reaffirmed that "[i]t has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." 328 U.S. at 643.

foreseeable, and within the scope and in furtherance of the conspiratorial agreement").[5]

      c.      *"Foreseeability" In the Context of the U.S. Sentencing Guidelines*

In addition, §8C4.2, entitled "Risk of Death or Bodily Injury," of the U.S. Sentencing Guidelines refers to "foreseeability" when harm occurred or a risk of harm existed during the substantive commission of a criminal offense. Pursuant to §8C4.2's Policy Statement, an upward departure may be appropriate "if the offense resulted in death or bodily injury, or involved a foreseeable risk of death or bodily injury . . ."

That construction, like that of §3286(b), inextricably links the commission of an offense with the resulting harm or risk of harm – what colloquially may be called a "near miss." *See also* §1B1.3. Relevant Conduct (Factors that Determine the Guideline Range) (liability for "acts and omissions of others" in "jointly undertaken criminal activity"); §2B1.1. Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States ("reasonably foreseeable pecuniary harm" means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a *potential result of the offense*") (emphasis added).

In *United States v. Watkins*, 477 F.3d 1277 (11th Cir. 2007), the application of §8C4.2

---

[5] Felony murder statutes operate in much the same fashion, as "[i]n deciphering causation, courts have concluded that 'there must be a causal – actual and proximate – relationship between the felony and homicide[,]'" Note, *Paradox in Practice: a Reckoning of the Common Law's Antiquated, Prejudiced Felony Murder Rule*, Julia Tedesco, Fordham International Law Journal [Vol. 45:1 2021] 211, 214 n.22, available at bit.ly/31cX4JT, *quoting* Joshua Dressler, *Understanding Criminal Law* (8th ed. 2018), at 497, and "[s]ome courts utilize a 'proximate cause' test in order to determine whether "the act imposes a foreseeable danger of death." *Id.*, *quoting* Guyora Binder, *Felony Murder* (Stanford Law Books, 8th ed. 2012), at 13.

demonstrates the stark contrast between the circumstances therein and those alleged here by the government with respect to "foreseeability."  *Watkins* involved an attempted arson, and at sentencing the District Court *rejected* the government's claim that an upward departure pursuant to §8C4.2 was warranted because the offense allegedly involved the foreseeable risk of death or bodily injury, *id*., at 1279 n.2,[6] while concurrently denying the defendant's request for a three-point decrease in his Guidelines level pursuant to §2X1.1(b)(3)(A) because the offense of conviction was a solicitation and,, since the only the accomplice was an undercover law enforcement agent, the crime was incapable of completion.  *Id*., at 1279.

The District Court, while noting that application of §2X1.1(b)(3)(A) was not "particularly clear," disagreed because "everything was done to successfully complete [the bombing of the building]."  *Id*. (footnote omitted).  The Eleventh Circuit affirmed that determination.  *Id*. (footnote omitted).

The twin rulings in *Watkins* illustrate how "foreseeability" is distinct from a defendant's intent or the purpose of an attempted offense, and how "foreseeability" under §8C4.2 was interpreted narrowly.  Moreover, here, as detailed **post**, at 13-15, it is indisputable that *not* "everything was done to successfully complete" any bombing plot charged in Counts Five through Nine.

Cases applying §2B1.1 confirm that "foreseeability" is a legal doctrine that encompasses only tangible and direct harm, and is derived from traditional articulations of "foreseeability."  *See, e.g., United States v. Turk*, 626 F.3d 743, 750 (2d Cir. 2010) ("a potential *direct result* of

---

[6]  The Eleventh Circuit noted the District Court's decision, but did not comment because it was not at issue in the appeal.  *Id*., at 1279 n.2.

[the defendant]'s *specific fraudulent act* was the total loss of the moneys the individual investors

had given her . . . [and thus] is enough to constitute 'reasonably foreseeable pecuniary harm'")

(emphasis added);  *United States v. Mallory*, 709 F. Supp. 2d 455, 458, n.3 (E.D. Va. 2010),

aff'd, 461 F. App'x 352 (4th Cir. 2012) (finding that fraudulent misrepresentations of loan

borrowers' qualifications cause banks to assume risk of default and loss of unpaid principal was

"consistent with the tort law proximate causation analysis," and thus a foreseeable result of the

fraud, and reasonable application of §2B1.1.), *citing* Restatement (Second) of Torts § 442A.

2.    ***Counts Five and Seven, Which Charge Conspiracies, Do Not Involve Foreseeable Harm That Could Qualify for Coverage Under §3286(b)***

Count Five of the Superseding Indictment charges a conspiracy to Bomb a Place of Public

Use and Conspiracy to Use a Weapon of Mass Destruction, in violation of 18 U.S.C. §2332f, *see*

Superseding Indictment (ECF # 202), at ¶ 8, and Count Seven charges a conspiracy to Use a

Weapon of Mass Destruction, in violation of 18 U.S.C. §2332(a)(1).  *See Id*., at ¶ 10.  Neither

Count qualifies for the statute of limitations exception set forth in §3286(b).

It is axiomatic that a conspiracy is complete upon two persons reaching an agreement to

violate the law.  *See, e.g., United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (citation

omitted);  *United States v. Wallace*, 85 F.3d 1063, 1068 (2d Cir. 1996) (citation omitted).  A

mere agreement does not make harm "foreseeable."   Thus, given the language of §3286(b), the

*commission* of the offense of conspiracy could not involve foreseeable harm that could meet the

legal standard for "foreseeability" under any of its incarnations.  Indeed, as discussed **ante**, at 8-

9, *Pinkerton* liability obtains only for *completed, substantive* offenses.  *See also* **ante**, at n. 5.

Similarly, the recent unbroken string of Supreme Court cases since *Johnson v. United*

*States*,  559 U.S. 133 (2010) through *United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319

(2019), has established that a conspiracy does *not* qualify as a "crime of violence" under a

residual or "use of force" clause.

As a result, conspiracies are doctrinally distinct as a matter of law from substantive

offenses and/or attempts.  Thus, a Hobbs Act robbery conspiracy in violation of 18 U.S.C. §1951

is *not* crime of violence, *see United Sates v. Barrett*, 937 F.3d 126 (2d Cir. 2019),[7] while a

completed Hobbs Act robbery *is* a crime of violence, *see United States v. Hill*, 890 F.3d 51 (2d

Cir. 2018).  There is a split among the Circuits with respect to whether an attempted Hobbs Act

robbery qualifies as a crime of violence, although a Second Circuit panel has ruled that it does.

*Compare United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021) *with United States v. Taylor*, 979

F.3d 203 (4th Cir. 2020).  *See also Collier v. United States*, 989 F.3d 212, 221 & n. 10 (2d Cir.

2021) (collecting cases and pointed out the division of opinion);  *United States v. Eason*, 953

F.3d 1184 (11th Cir. 2020) (even consummated Hobbs Act robbery not a "crime of violence").

Nor do terrorism offenses constitute an exception. For example, in *Chapman v. United*

*States*, 326 F. Supp. 3d 228 (E.D. Va. 2018), in evaluating charges of conspiracy to provide

material support to a designated Foreign Terrorist Organization ("FTO"), and relying on *Sessions*

*v. Dimaya*, 584 U.S. ___, 138 S. Ct. 1204 (2018), the Court observed that "[n]either predicate

offense requires, as an element, that a violator of the statute use force, attempt to use force, or

threaten to use force . . . and therefore neither predicate offense qualifie[s] as a crime of violence.

---

[7] *Davis* dictated that result even though, as the Court pointed out in *Barrett* after remand
from the Supreme Court, "there can be no question but that the particular Hobbs Act robbery
conspiracy committed by Barrett and his co-conspirators was violent, even murderous."  927
F.3d at 128, *citing United States v. Barrett*, 903 F.3d 166, 170-71, 184 (2d Cir. 2018).

. .ʺ  *Id*., at 243.

In addition, as detailed **post**, at 14-15, even if it were appropriate to examine the underlying facts of the charged conspiracies, the agreement – the completed offense – and any overt acts were far too distant in location and time to establish the required "foreseeability." Indeed, the government's sworn attestations in the context of Mr. Pham's extradition from the United Kingdom, in the form of an August 7, 2021, Affidavit in Support of Request for Extradition of Minh Quang Pham by Assistant United States Attorney Benjamin Naftalis ("Naftalis Aff.") (a copy of which is attached as Exhibit 1 to the accompanying October 27, 2021, Reply Declaration of Bobbi C. Sternheim, Esq.) do not include a single allegation that Mr. Pham performed *any* acts in furtherance of either conspiracy after his July 2011 arrival in the U.K. – a full year before his arrest there in this case.  *See* Naftalis Aff., at ¶ 10.

**3.**      ***Counts Six and Eight, Which Charge Attempts, Do Not Involve Foreseeable Harm That Could Qualify for Coverage Under §3286(b)***

The law of "attempts," in conjunction with discussion of the doctrine of "foreseeability" set forth **ante**, at 6-11, establishes quite clearly that §3286(b) does *not* apply to Count Six or Count Eight, the two (new) attempt offenses charged in the Superseding Indictment.

As the Second Circuit explained in *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011), "[a] conviction for attempt requires proof that a defendant (a)  had the intent to commit the object crime and (b)  engaged in conduct amounting to a substantial step towards its commission."  *Id*., at 145, *citing United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003).

As the Circuit had previously advised, "[a] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the

substantive crime . . . [assessing] the proximity of [a defendant]'s conduct to the accomplishment of the crime." *United States v. Manley*, 632 F.2d 978, 987-88 (2d Cir. 1980).

However, "[a] defendant may be convicted of attempt even where significant steps necessary to carry out the substantive crime are not completed, so that 'dangerous persons [may be apprehended] at an earlier stage' . . . without immunizing them from attempt liability." *Yousef*, 327 F.3d at 134. In the context of terrorism offenses, at least, in *Farhane* the Court found a "substantial step" further in advance that in other situations. *See* 634 F.3d at 176-80 (Dearie, J., *dissenting*).

As a result, an attempt offense is often complete well before any harm is "foreseeable" in the manner contemplated by the doctrine in its varied forms, and therefore in §3286(b) as well. Here, assuming *arguendo* there is sufficient evidence of an attempt to sustain a conviction on Counts Six and/or Eight, the conduct was so remote in time and distance and capacity from completion that §3286(b) cannot apply.

For instance, the government's submission in the extradition proceedings in the United Kingdom lacks any evidence or even allegation that *any* of Mr. Pham's conduct in furtherance of the attempts (and of the conspiracies charged in Counts Five and Seven) occurred *after* he returned to the U.K. in July 2011. In fact, the Naftalis Aff. stated that Mr. Pham upon his return to the U.K. July 27, 2011, at "London's Heathrow International Airport, United Kingdom authorities detained and searched PHAM[,]" and recovered a single round of 7.62 caliber armor-piercing ammunition (which typically is used in a military-style assault rifle such as an AK-47)." Naftalis Aff., at ¶ 10 (Exhibit 1).

Neither the Naftalis Aff., or any other document or information, including the

government's description of the subsequently discovered video evidence (all recorded in Yemen) that underlies Counts Five through Nine, *see* Frustration of Purpose Letter (ECF #184), at 9, alleges that Mr. Pham searched for or scouted targets in the U.K., or attempted to procure any materials in furtherance of any of the charged attempts or conspiracies.

Indeed, Mr. Pham's interception and detention by U.K. authorities at the airport upon his arrival in the U.K. in July 2011, effectively dissuaded him from any further activity in furtherance of any plots.  Not quite six months later, December 11, 2011, immigration charges were instituted against him by the U.K., and six months after that the U.S. lodged its extradition request June 29, 2012.  *See Outline of Facts*, Westminster Magistrates' Court, *United States v. Pham* (a copy of which is attached as Exhibit 2 to the Sternheim Reply Dec.), at 6.

Two attempted bombing cases decided by the Second Circuit demonstrate the dispositive contrast to this case, and why §3286(b) does not apply to Counts Six or Eight.  As described in the opinion in *Farhane*, in *United States v. Ivic*, 700 F.2d 51 (2d Cir. 1983),

> the court upheld convictions for attempting to bomb two locations, observing that defendants' inspection of one bombing site, construction of a fully operational bomb, and transportation of the bomb to the vicinity of the target site satisfied even the common law standard of attempt, while defendants' discussion and authorization of the second bombing, examination of the target site, and possession of explosives satisfied the Model Code standard, albeit barely.

634 F.3d at 147, *citing Ivic*, 700 F.2d at 67, *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994).

The Court in *Ivic* concluded that based on the above, "[h]ere there was more even that a 'substantial step,' there was 'dangerous proximity to success.'"  700 F.2d at 67, *citing Hyde v.*

*United States*, 225 U.S. 347, 388 (1912) (Holmes, J., *dissenting*).  Similarly, in *Yousef*, the Court

relied on the fact that Mr. Yousef and co-conspirators

> (i)  rented an apartment in a suburb of Manila for the purposes of
> manufacturing bombs therein;  (ii)  purchased chemicals suitable
> for the manufacture of bombs;  (iii)  manufactured bombs, timers,
> and related devices;  (iv)  detonated a bomb in a movie theater in
> Manila;  and (v)  detonated a bomb on a Philippine airliner, killing
> one passenger.  The Government also established that Yousef's
> laptop contained information connecting his activities in the
> Philippines to the plot to bomb United States airliners servicing
> routes in Asia.

327 F.3d at134.

As a result, the Court in *Yousef* found "[o]verwhelming evidence established that

[Yousef] had the requisite intent to carry out the substantive offenses and that he took substantial

steps toward effectuating the attack."  *Id*., at 134-35.[8]

In contrast to the facts in *Ivic* and *Yousef*, Mr. Pham's alleged attempts were never in

"dangerous proximity to success," like they were in *Ivic*, 700 F.2d at 67, to the extent they

"created a forseeable risk of, death or serious bodily injury to another person" and could trigger

application of §3286(b).  The government's contrary interpretation of §3286(b) defies the

doctrine of "foreseeability" across all spectrums of its application, as well as the discrete facts –

set forth by *the government* – present herein.

As noted **ante**,  Mr. Pham's alleged testing of explosives occurred solely in Yemen, and,

unlike the circumstances in *Yousef* and *Ivic*, never in proximity to any authentic targets.  *See*

*Yousef*, 327 F.3d at134;  *Ivic*, 700 F.2d at 67.  Given that Mr. Pham did not take any steps in the

---

[8] As noted **ante**, at 10, intent is distinct from "foreseeability" both conceptually and
doctrinally.

U.K. in furtherance of alleged plans developed only in Yemen, his alleged attempts, assuming their legal sufficiency, at no point "resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person" as required under §3286(b).  Therefore, the exception to the statute of limitations in §3286(b) does not apply to Counts Six and/or Eight.

### 4.    *The Rule of Lenity Requires a Narrow Reading of §3286(b)*

When interpreting a criminal statute that does not explicitly reach the conduct in question, courts should be reluctant to base an expansive reading of the statute.  *See Williams v. United States* 458 U.S. 279, 286 (1982) (applying rule of lenity to a false statements statute).  As the Supreme Court has instructed, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1941).

In *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006), in the context of 18 U.S.C. §666, the Fifth Circuit declared, in language applicable to §3286(b) in this instance, "[w]e resist the incremental expansion of a statute that is vague and amorphous on its face and depends for its constitutionality on the clarity divined from a jumble of disparate cases.  Instead, we apply the rule of lenity and opt for the narrower, reasonable interpretation that here excludes the Defendants' conduct." *Id.*, at 523, *citing McNally v. United States*, 483 U.S. 350, 360 (1987). *See also United States. v. Valle*, 807 F.3d 508, 523 (2d Cir. 2015) ("rule of lenity ensures that criminal statutes will provide fair warning of what constitutes criminal conduct, minimizes the risk of selective or arbitrary enforcement, and strikes the appropriate balance between the legislature and the court in defining criminal liability"), *citing Yates v. United States*,  574 U.S.

17

528 (2015);  *United States v. Simpson*, 319 F.3d 81, 86 (2d Cir. 2002);  *Mendez v. Barr*, 960 F.3d 80, 87 (2d Cir. 2020);  *United States v. Ford*, 435 F.3d 204, 211 (2d Cir. 2006) ("[a]s the Supreme Court noted in its recent decision in [*Arthur Andersen v. United States*, 544 U.S. 696, 703-704 (2005)], restraint must be exercised in defining the breadth of the conduct prohibited by a federal criminal statute out of concerns regarding both the prerogatives of Congress and the need to give fair warning to those whose conduct is affected").

Thus, to the extent there is any ambiguity with respect to the ambit of §3286(b) in the context of this case – and, if adopted, the government's extraordinarily strained version of "foreseeability" creates (at best) a "grievous ambiguity or uncertainty" – it would render invocation of the rule of lenity necessary herein.  *See Chapman v. United States,* 500 U.S. 453, 463 (1991).[9]

### 5.   *The Government's Interpretation of §3286(b) Would Render the Statute Unconstitutionally Vague as Applied to Mr. Pham In This Case*

As the Supreme Court has established repeatedly, "the void-for-vagueness doctrine

---

[9]  In addition, application of §3286(b) in the manner proposed by the government would render the statute unconstitutionally vague and deny Mr. Pham Due Process, thereby contravening the doctrine of constitutional avoidance, which applies when "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter." *United States ex rel. Attorney General, v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909). *See also United States v. Davis*, 139 S. Ct. at 2333 ("[a]pplying constitutional avoidance to narrow a criminal statute, as this Court has historically done, accords with the rule of lenity.  By contrast, using the avoidance canon instead to adopt a more expansive reading of a criminal statute would place these traditionally sympathetic doctrines at war with one another"); *Jones v. United States*, 526 U.S. 227, 239-40 (1999).  *Accord Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997);  *United States v. Al-Arian*, 329 F. Supp.2d 1294, 1298 & n. 11 (M.D. Fla. 2004) (applying the principle to 18 U.S.C. §2339B, material support to an FTO);  *United States v. Khan*, 309 F. Supp.2d 789, 822 (E.D.Va. 2004) (same in the context of §2339A, material support to terrorists).

requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). *See also Davis,* 139 S. Ct. at 2325 ("[v]ague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them"), *citing Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) and *Collins v. Kentucky*, 234 U.S. 634, 638 (1914); *United States v. Demott*, 906 F.3d 231, 237 (2d Cir. 2018).

Also, "the doctrine is a corollary of the separation of powers – requiring that Congress, rather than the executive or judicial branch, define what conduct" is punishable "and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (plurality op.); *accord id.*, at 1224, 1227-28 (Gorsuch, J., *concurring in part and concurring in judgment*). *See also Davis*, 139 S. Ct. at 2325 ("[o]ur doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers").

In an "as applied" challenge, regarding the "notice" requirement "courts ask whether the challenged 'statute, as written, provides notice sufficient to alert "ordinary people [as to] what conduct is prohibited."'" *Farhane*, 634 F.3d at 139, *quoting Arriaga v. Mukasey*, 521 F.3d 219, 224 (2d Cir. 2008) (*quoting Kolender v. Lawson*, 461 U.S. at 357).

In *Farhane*, the Court elaborated that "[t]his test does not demand "meticulous specificity" in the identification of proscribed conduct." *Id.* (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (internal quotation marks omitted). Instead, "it requires only that the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Id.* (internal quotation marks

omitted) (*quoting Jordan v. DeGeorge*, 341 U.S. 223, 231-32 (1951)).

Likewise, as the Court in *Farhane* continued, "with respect to the due process concern of arbitrary enforcement, a statute certainly will not be deemed unconstitutionally vague if 'as a general matter,' it 'provides sufficiently clear standards to eliminate' such a risk." *Id*. (internal quotation marks omitted) (*quoting Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006)).

In addition, "even 'in the absence of such standards,' a statute will survive an as-applied vagueness challenge if 'the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute.'" *Id*., at 139-40 (internal quotation marks omitted) (*quoting Farrell v. Burke*, 449 F.3d at 494). *See also Demott*, 906 F.3d at 237 (holding Analogue Act is not unconstitutionally vague as applied to the facts of the case).

Here, the government's interpretation of §3286(b) lacks "sufficient definiteness" to satisfy due process. *See Kolender*, 461 U.S. at 357. Essentially, the government's position "impermissibly delegates" this "basic policy" question to prosecutors, judges, and juries "for resolution on an *ad hoc* and subjective basis" – the precise danger the void-for-vagueness doctrine aims to avoid. *Grayned v. City of Rockford*, 408 U.S. at 108-09. Also, plainly Mr. Pham's alleged conduct is not within the "core of [§3286(b)'s] prohibition," unlike in *Farhane*, *Yousef*, and *Ivic* would have been.

In that context, the analysis performed in *Davis* is instructive. As the Court – which decided *Johnson*, *Sessions v. Dimaya*, and *Davis* vagueness grounds – explained, "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk

posed by a crime's imagined 'ordinary case.'"  139 S. Ct. at 2326 (2019).

**B.**     ***The Government Cannot Rely on the Statute of Limitations Waiver in the Plea Agreement Because the Agreement Was Nullified by the Court's Order***

In its opposition, *see* Gov't Opp., at 8-12, the government studiously avoids confronting the comprehensive factual and legal analysis detailed in Mr. Pham's Initial Memo of Law, at 10-25.  Indeed, the government's argument not only conveniently, but necessarily and deliberately (in order to make its contentions) ignores entirely the fundamental, dispositive fact and its legal implications:  the Court's September 24, 2020, Order (ECF # 191) *nullified the Plea Agreement*, which had the effect, as *the government* requested in its August 14, 2020, Government Letter ("Frustration of Purpose Letter") (ECF # 184), would "restore the parties to the positions they were in prior to executing it" because vacatur of Count Five would "fatally undermine the plea agreement in this case, . . ."  *See also* Mr. Pham's Initial Memo of Law, at 16-17, 19.

Thus, with the Court's September 24, 2020, Order having voided the Plea Agreement and "restore[d] the "status quo ante," *see* Frustration of Purpose Letter (ECF #184), at 8;  Mr. Pham's Initial Memo of Law, at 19, the government cannot now invoke the Plea Agreement's provisions to its advantage.  As set forth in Mr. Pham's Initial Memo of Law, at 12-14, the bedrock contract of principle of election of remedies precludes that "heads I win, tails you lose" option the government seeks to choose.  The government cannot have its Plea Agreement, and eat it, too.

Consequently, since *there is no agreement*, there is no statute of limitations waiver.  Nor was there any "time out."  Rather, in restoring the parties to their status prior to the Plea Agreement, any waiver by Mr. Pham is completely without effect – as if it never existed.  *See also* Mr. Pham's Initial Memo of Law, at 18-19.

The government fails to address any of the many pertinent cases cited in Mr. Pham's Initial Memo of Law, at 10-25, but instead, at 8-9, relies on *United States v. Podde*, 105 F.3d 813, 821 n.6 (2d Cir. 1997), which is distinguished in Mr. Pham's Initial Memo of Law, at 23-24. Since *United States v. Midgley*, 142 F.3d 174, 180 (3d Cir. 1998), relies on *Podde*, it too is inapposite.  Likewise, *United States v. Levine*, 658 F.3d 113, 121 (3d Cir. 1981), relates to the general principle of waiver, which is not the issue herein.

Conversely, the government has not provided a single case or instance in which a statute of limitations waiver has been enforced *after* the Plea Agreement has been nullified and the parties restored to their pre-Agreement status.  As a result, the government's reliance on the Plea Agreement is unavailing.

The same is true for the government's protest, at 10, that the definition of "prosecution" set forth in Mr. Pham's Initial Memo of Law, at 26-27, is "overly technical . . ."  Again, the government fails to cite authority for that claim.  Nor could it;  words have their ordinary meanings, and to the extent the "technical" definition of words creates an ambiguity, black-letter contract law requires that it be construed against the drafter of the Agreement:  the government. *See* Mr. Pham's Initial Memo of Law, at 11-12, 27.

The government further maintains that its

> interpretation of the waiver provision is also consistent with one of the most fundamental tenets of contract law. "It is a cardinal rule of construction that the court adopt an interpretation that renders no portion of the contract meaningless."

Gov't Opp., at 11, *quoting Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008) (*quoting Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298, 301, 205

22

A.D.2d 202 (1st Dep't 1994)), *and citing Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009) ("the court may not read the agreement to make any of its terms meaningless, or construe its language to render particular provisions mere surplusage").

That argument fails because, pursuant to the Court's September 24, 2020, Order (ECF #191), *the agreement does not apply at all*.  It is the Court's Order that renders the entire Agreement "meaningless," since it is void, and its terms unenforceable for the government just as they are for Mr. Pham (in terms of limiting his exposure to the pre-existing Counts Two, Three, and Five).

The same is true with respect to the government's complaint, at 12, that Mr. Pham's "interpretation would render meaningless these words from his waiver, because the same circumstance that triggers the clause's operation would, under his theory, relieve the parties of their obligations under the Plea Agreement."

Once again, the government ignores the controlling fact that *the Court's September 24 2020, Order* expressly relieved the parties of their obligations under the Plea Agreement.  The government's quarrel is with that Order – which the government requested, which the government expressly intended to "void" the Plea Agreement, and which, by the government's description, ""includes language that the parties are relieved of their obligations under the plea agreement[,]" *see* September 24, 2020, Government Letter (ECF # 189) – rather than the posture that the case is in presently with respect to the lack of any Plea Agreement or its strictures imposed on either party.  *See also* Mr. Pham's Initial Memo of Law, at 17.

**POINT II**

**COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED BECAUSE THEY ARE THE PRODUCT OF A VINDICTIVE PROSECUTION**

In opposing Mr. Pham's motion to dismiss Counts Five through Nine because they are the product of a vindictive, the government presents – unsworn – a version of the facts that omits important detail and chronology.  As set forth in the accompanying October 27, 2021, Reply Declaration of Bobbi C. Sternheim, Esq. ("Sternheim Reply Dec."), the sequence of events establishes the vindictive nature of the prosecution.

As the Sternheim Reply Dec. states, Ms. Sternheim informed the government August 28, 2020, that Mr. Pham was ready to be re-sentenced and requested that the government re-offer a plea to a 30-year cap.[10]  The government refused.  *See* Sternheim Reply Dec., at ¶ 3.  The government reduces that process to a conclusion that "negotiations proved unsuccessful."  Gov't Opp., at 4.

However, negotiations were "unsuccessful" only because the government, as it told Ms. Sternheim,  lost its "appetite" for negotiating.  That was also well before the U.K. consented to the U.S.'s request to add Counts Five through Nine, which request was transmitted by the U.S. Embassy October 23, 2020, almost two months after Mr. Pham indicated his readiness to plead guilty.  Sternheim Reply Dec., at ¶ 4.

Previously, January 29, 2020, the government had proposed a plea to a statutory

---

[10]  Mr. Pham was and remains willing to waive his in-person appearance and agree to enter his guilty plea and be sentenced via teleconference.  That would have obviated the need to transfer him to 10-South at the Metropolitan Correctional Center ("MCC"), where he was detained from his arrival in this county until transfer to ADX Florence.  Under that arrangement, Mr. Pham would have remained at ADX throughout.  Now, with MCC closed, it is uncertain where Mr. Pham would be housed if returned to New York.

maximum of 360 months, with a Guidelines range of 292-360 months.  Shortly thereafter, the

nation (and the world) was abruptly paralyzed by the advent of the Covid-19 pandemic.  The

pandemic's impact only amplified the considerable logistical difficulties inherent in

communicating with Mr. Pham, who is incarcerated at ADX Florence under the restrictions

attendant to the Special Administrative Measures ("S.A.M.'s") imposed upon him.  *Id*., at ¶ 5.

     Arranging legal calls with clients at ADX Florence has always been challenging and

became increasingly more difficult during the pandemic.  After learning that the government did

not oppose relief based on *Davis* and that the §924(c) conviction and corresponding 25-year

sentence would be vacated, Mr. Pham was encouraged by the prospect that he might be eligible

for a significant sentence reduction.  In that context, a disposition with a potential 30-year

sentence – as opposed to a reduction of his initial 40-year sentence to 15 years in light of the

elimination of the pre-existing Count Five – was daunting and disappointing.  *Id*., at ¶ 6.

     The obstacles to communicating with Mr. Pham, aggravated by the pandemic, delayed his

ability to process and accept the government's proposed offer.  When he finally did, the

government informed Ms. Sternheim it "no longer had an appetite" for the extending the offer

previously made.  *Id*., at ¶ 7.

     Thus, there are disputed facts, and an absence of sworn representations by the

government, that require a hearing to resolve.  Accordingly, it is respectfully requested that the

Court order that an evidentiary hearing be conducted on the issue.

**POINT III**

**COUNTS FIVE THROUGH NINE SHOULD BE DISMISSED
BECAUSE THE UNITED KINGDOM'S CONSENT TO
THE U.S. PROSECUTION OF MR. PHAM FOR THOSE
COUNTS WAS BECAUSE IT BREACHED THE RULE
OF SPECIALTY, DENIED MR. PHAM  DUE PROCESS,
<u>AND VIOLATED THE PRINCIPLE OF NATURAL JUSTICE</u>**

The government's opposition to Mr. Pham's motion to dismiss Counts Five through

Nine, incorrectly claims that Mr. Pham is asking the Court to "'monitor the conduct of

representatives of each foreign government to assure that a request for extradition or expulsion is

carried out in accordance with American constitutional standards.'"  Gov't Opp., at 21, *quoting*

*United States v. Lira*, 515 F.2d 68, 71 (2d Cir.1975), *and citing United States v. Umeh*, 762 F.

Supp. 2d 658, 664 (S.D.N.Y. 2011), *aff'd*, 527 F. App'x 57 (2d Cir. 2013).

Yet that argument is simply a straw man, because it is not the conduct of the U.K. that is

at issue, but rather the U.S. officials' improper manipulation of the process by which the U.K.

considered the U.S. request with respect to Counts Five through Nine, which denied Mr. Pham

the opportunity to confront the evidence presented to the U.K., and therefore deprived Mr. Pham

of Due Process, violated the rule of specialty, and violated the principle of natural justice.  *See*

Mr. Pham's Initial Memo of Law, at 34-42.

Thus, because the U.K.'s decision was based entirely on representations from the U.S.

government that the U.S. withheld from Mr. Pham, the U.K's consent cannot be separated from

the U.S.'s conduct that deprived Mr. Pham of his constitutional and other rights.

As a result, contrary to the government's contention, Mr. Pham does *not* request that the

Court "engage in the bizarre exercise of applying foreign law to determine that a foreign

sovereign has not complied with what the defendant contends are that sovereign's own legal doctrines."  Gov't Opp., at 22.  Rather, Mr. Pham seeks to vindicate the rule of specialty as well as both his Due Process rights guaranteed by the Fifth Amendment to the U.S. Constitution, and his universally recognized rights to natural justice, all of which were denied by the machinations of the *U.S. government*.

**Conclusion**

Accordingly, for all the reasons set forth above, and in all papers and proceedings previously filed and/or had herein, it is respectfully submitted that Mr. Pham's pretrial motions to dismiss Counts Five through Nine of the Superseding Indictment, and for disclosure and identification of *Brady* material, should be granted in their entirety.

Dated: 27 October 2021
        New York, New York

                              Respectfully submitted,


                              Joshua L. Dratel
                              29 Broadway
                              Suite 1412
                              New York, New York 10006
                              212-732-0707
                              jdratel@dratellewis.com


                              Bobbi C. Sternheim
                              225 Broadway
                              Suite 715
                              New York, New York 10007
                              212-243-1100
                              bcsternheim@mac.com

                              *Attorneys for Defendant Minh Quang Pham*

27