```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/1/22___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

    –v–

Minh Quang Pham,

                Defendant.

---

12-cr-423 (AJN)

OPINION & ORDER

ALISON J. NATHAN, Circuit Judge, sitting by designation:

The Defendant Minh Quang Pham on January 8, 2016, pled guilty to two terrorism offenses and to using a firearm in relation to a crime of violence.  This Court subsequently sentenced Pham to 480 months' imprisonment, which included a mandatory 360 months for the firearm offense.  Following the terms of the Government's plea agreement, the Court then dismissed the two remaining terrorism charges against Pham.  In 2020, Pham and the Government agreed that the Supreme Court's intervening decision in *United States v. Davis* required the Court to vacate Pham's firearms charge.  With the consent of both parties, the Court on September 24, 2020, vacated Pham's all three guilty pleas, vacated the dismissal of the two other terrorism charges, and nullified the plea agreement.

The Government filed a superseding indictment against Pham on April 8, 2021, which contains the four original terrorism charges, Counts 1 through 4, and five new charges, Counts 5 through 9, arising from a suicide bombing that Pham allegedly attempted in 2011.  Pham does not currently contest Counts 1 through 4, but moves to dismiss Counts 5 through 9, arguing that they are barred by the statute of limitations, are the product of an impermissible vindictive prosecution, and violate the rule of specialty that governs extradition from the United Kingdom.  For the reasons that follow, the Court DENIES Pham's motion as to all terrorism charges,

Counts 5 through 8, but GRANTS Pham's motion to dismiss as to Count 9 because it was filed well past the applicable 5-year statute of limitations and because the plea agreement that waived the statute-of-limitations defense was nullified with the Government's consent. The Court further DENIES Pham's request that the Government go beyond its obligations under Rule 5(f) and *Brady* and affirmatively identify exculpatory information in the discovery it has produced.

## I.   Background

### A.  Factual background

In evaluating a motion to dismiss, the Court "accept[s] as true all of the allegations of the indictment." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). The following facts are drawn from the superseding indictment filed April 8, 2021. S1 Indictment, Dkt. No. 202.

In or about December 2010, Defendant Minh Quang Pham travelled from the United Kingdom to Yemen and, while in Yemen, associated with al Qa'ida in the Arabian Peninsula ("AQAP"), which the United States designates as a foreign terrorist organization. Pham agreed with others to provide, and actually did provide, material support and his personal services to AQAP. This support included the production of online propaganda. Further, while in Yemen, Pham agreed to receive, and actually did receive, military-type training from and on behalf of AQAP.

Additionally, in 2011, Pham received instructions to conduct a suicide bombing at Heathrow International Airport, in the United Kingdom, with the intent of targeting U.S. nationals. Pham constructed and detonated an explosive device as a test of the design he would use to carry out this planned attack. In July 2011, Pham travelled to the United Kingdom to carry out the attack, but he did not complete it.

### B.  Procedural history

A grand jury originally returned an indictment charging Pham with five counts: (1) conspiracy to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; (2) providing and attempting to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B; (3) conspiracy to receive military-type training from a foreign terrorist organization, in violation of 18 U.S.C. § 2339D; (4) receipt of military-type training from a foreign terrorist organization, in violation of 18 U.S.C. § 2339D; and (5) possessing, carrying, and using a firearm during and in relation to Count 4, in violation of 18 U.S.C. § 924(c). Dkt. No. 3.

On February 26, 2015, Pham was extradited from the United Kingdom to the United States to face the above charges. On January 8, 2016, Pham pled guilty before this Court to Counts 2, 3, and 5, pursuant to a plea agreement. *See* Dkt. No. 184-1 ("Plea Agreement"); Plea Hearing Tr., Dkt. No. 88. Relevant here, the agreement included a statute-of-limitations waiver that states:

> It is further agreed that should the conviction following the defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

Plea Agreement at 8–9.

This Court on May 27, 2016, sentenced Pham to 480 months' imprisonment, which included the 360 months' imprisonment for Count 5 that was required to run consecutively with the other charges. Sentencing Tr., Dkt. No. 130; Judgment, Dkt. No. 121. Pursuant to the plea agreement, the Court dismissed Counts 1 and 4. Sentencing Tr. at 56. Though the plea

agreement included a waiver of Pham's right to appeal, he noticed an appeal of his conviction

and sentence.  Dkt. No. 132.  The Second Circuit granted Pham's appellate counsel's motion to

withdraw under *Anders v. California*, 386 U.S. 738 (1967), and summarily affirmed Pham's

conviction and sentence.  Dkt. No. 134.

On August 21, 2018, the Court notified the parties that it had received a letter from Pham

that questioned his conviction under § 924(c) in light of the Supreme Court's decision in

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  Dkt. Nos. 135, 137.  The Court construed the letter

as a motion to vacate his sentence under 28 U.S.C. § 2255.  Dkt. No. 137.  Following the

Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), the parties engaged

in plea discussions.  On July 17, 2020, the parties informed the Court that "further plea

discussions are not likely to result in a pretrial disposition" of the case and the Government

noticed its intent to "reinstate charges that were dismissed at sentencing."  Dkt. No. 181.  In a

letter dated August 14, 2020, the Government proposed that the Court grant Pham's § 2255

motion, vacate all three of his convictions, and reinstate Counts 1 through 4.  Dkt. No. 184.  The

Government further informed the Court and Pham that it "intend[ed] to file additional charges

against Pham based on additional evidence secured following his conviction and sentencing."

*Id.* at 9.  Specifically, the Government explained that it had video and other evidence linking

Pham to "high-ranking members of AQAP" that substantiated his intention to attack Heathrow

International Airport in a suicide bombing.  *Id.*  Pham stated that he "d[id] not object" to the

Government's application, which he understood would "vacate Pham's plea agreement."  Dkt.

No. 187.

The parties on September 24, 2020, jointly proposed an order, Dkt. No. 189-1, which the

Court entered that same day, Dkt. No. 191.  That order vacated Pham's guilty pleas to Counts 2,

3, and 5; vacated the Court's order dismissing Counts 1 and 4; and ordered that the "plea agreement is NULLIFED upon vacating the convictions." Dkt. No. 191.

The Government sought from the United Kingdom an exception to the rule of specialty to permit the United States to charge Pham with additional counts not charged in his original indictment. The United Kingdom confirmed receipt of that request on October 26, 2020. Oct. 28 Tr. at 10–11, Dkt. No. 222. The United Kingdom granted the request on January 12, 2021. Dkt. No. 201; Sternheim Decl., Ex. 9, Dkt. No. 217.

The Government filed a superseding indictment on April 8, 2021. The first four counts of the superseding indictment are identical to those charged in the original indictment. Counts 5 through 9 are as follows: (5) conspiracy to bomb a place of public use, in violation of 18 U.S.C. § 2332f; (6) attempted bombing of a place of public use, 18 U.S.C. § 2332f; (7) conspiracy to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a; (8) attempted use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a; and (9) possessing, carrying, and using a destructive device in relation to the crimes of violence charged in Counts 6 through 8, in violation of 18 U.S.C. § 924(c). S1 Indictment at 7–11

Pham filed the present motion to dismiss Counts 5 through 9, and for the disclosure of *Brady* materials, on August 30, 2021. Dkt. No. 216; Pham Br., Dkt. No. 218. The motion is fully briefed. Gov't Br., Dkt. No. 228; Pham Reply, Dkt. No. 234; Sternheim Reply Decl., Dkt. No. 233. The Court on February 25, 2022, held an oral argument on the statute-of-limitations issue raised in Pham's motion. Dkt. No. 235.

## II.    Legal standard

Because "federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."

*United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (cleaned up).  However, "[a] defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged."  *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) (cleaned up) (quoting Fed. R. Crim. P. 7(c)(1)); *see also United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (explaining that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" (cleaned up)).  "A court should not look beyond the face of the indictment and draw inferences as to proof to be adduced at trial, for 'the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.'"  *United States v. Scully*, 108 F. Supp. 3d 59, 116–17 (E.D.N.Y. 2015) (quoting *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998)).

## III.   Discussion

Pham raises three arguments for dismissing Counts 5 through 9 of the superseding indictment.  First, he argues, the charges are time-barred by the statute of limitations.  Second, that they are the product of an unlawfully vindictive prosecution.  And third, that the United States obtained the United Kingdom's permission to charge the new counts in violation of the rule of specialty, due process, and natural justice.  Separately, Pham moves to enter an order under Federal Rule of Criminal Procedure 5(f) and *Brady v. Maryland*, 373 U.S. 83 (1963).

### A.  Statute-of-limitations claim

Under 18 U.S.C. § 3282, "[e]xcept as otherwise expressly provided by law," the statute of limitations for non-capital federal offenses is 5 years.  18 U.S.C. § 3282(a).  But a more specific statute of limitations applies to Pham's terrorism-related charges, Counts 5 through 8.

Under 18 U.S.C. § 3286(a), offenses listed in 18 U.S.C. § 2332b(g)(5)(B) have an 8-year statute

of limitations, which includes Pham's Counts 5 through 8.  *See* 18 U.S.C. § 2332b(g)(5)(B)(i).

Further, under § 3286(b), Counts 5 through 8 can be charged "at any time without limitation . . .

if the commission of such offense resulted in, or created a for[e]seeable risk of, death or serious

bodily injury to another person."  18 U.S.C. § 3286(b).

Pham argues that because the last date mentioned in the superseding indictment for

Counts 5 through 9 is December 2011, and the superseding indictment was filed April 8, 2021,

Counts 5 through 9 are time-barred.  The Government argues that the charges are timely because

Pham expressly waived a statute-of-limitations defense against subsequent prosecutions in his

plea agreement.  Additionally, it argues that, regardless of the waiver, Counts 5 through 8 are

timely under § 3286(b) because Pham's offenses "created a for[e]seeable risk of[] death or

serious bodily injury to another person."

### 1.  The plea agreement's statute-of-limitations waiver is nullified

Pham argues that the statute-of-limitations waiver is no longer enforceable because the

Court nullified the plea agreement.  The Court agrees.  The parties "jointly propose[d]" the order

that the Court entered on September 24, 2020.  Dkt. No. 189 at 1.  In unambiguous terms, it

ordered that Pham's plea agreement was "NULLIFIED upon vacating the convictions."  Dkt. No.

191.  The order contains no exception to preserve the statute-of-limitations waiver or any other

provision of the plea agreement.

That language of the Court's order is sufficient to resolve this argument.  A nullified

contract is "void" and "render[ed] invalid."  *Nullify*, Black's Law Dictionary (11th ed. 2019);

*Nullify*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/nullify ("to

make legally null and void"); *see also* 29 Williston on Contracts § 73:15 (4th ed. 2021) ("When

used in reference to a contract, the terms 'abrogate,' 'annul,' and 'cancel' mean to rescind the

contract and *thereby nullify its existence*." (emphasis added)).  Pham simply cannot be held to a

provision in a void and invalid agreement.  Other courts have similarly held that if a plea

agreement is nullified without exception, every provision, including waivers made by the

defendant, are invalid.  *E.g.*, *United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013)

(holding that "the statute-of-limitations waiver" in a plea agreement "was nullified by the

Court's rejection of, and the parties' withdrawal from, the agreement"); *United States v. Munoz*,

718 F.3d 726, 730–31 (7th Cir. 2013) (explaining that after the government "exercised its option

to rescind the [plea] deal," it properly "treated the entire plea agreement as void, including the

provisions that would have benefitted it, such as [the defendant's] waiver of his appeal rights").

Though the language of the Court's September 24 order ends the matter, the Court further

notes that the available record confirms that when the September 24 order was submitted to the

Court as a proposed order, both parties intended it to invalidate the plea agreement in full.  For

example, in its August 14, 2020 letter, the Government sought "to vacate Pham's convictions,

reinstate the charges in the Indictment, and proceed to trial."  Dkt. No. 184 at 4.  In support, it

explained that Pham's motion to vacate his § 924(c) conviction under *Davis*

> fatally undermine[s] the plea agreement in this case, and the Court should restore
> the parties to the positions they were in prior to executing it.  Any other result
> would allow Pham to *selectively enforce terms from a plea agreement rendered
> void by Davis*, while ignoring other terms relating to reinstatement and depriving
> the Government of the benefit of the bargain obtained by his plea to a violation of
> Section 924(c).

*Id.* at 1 (emphasis added).  In accepting the Government's proposal on September 11, 2020,

Pham understood the Government to be seeking "to vacate Pham's plea agreement, guilty pleas

and convictions, to reinstate the viable charges in the Indictment, and to permit the case to

proceed to trial."  Dkt. No. 187.

The order's effect on the plea agreement was discussed by the parties. Pham requested "inclusion of the following: 'and the plea agreement is vacated.'" Sternheim Decl., Ex. 2. The Government responded that "we agree with the end result, but since the plea agreement was a contract between the Government and the defendant—not a Court Order—we don't believe that 'vacate' is the right procedure or term of art." *Id.*, Ex. 3. The parties on September 24, 2020, then proposed the order that the Court ultimately entered, which the Government described as "nullifying the plea agreement upon vacating the convictions." Dkt. No. 189 at 1. From these materials, it is clear that the language adopted by the Court in its order was fully consistent with the parties' intention. Namely, to invalidate all provisions of the plea agreement.

The Government raises two responses, neither of which persuade. First, the Government refers to the basic principle of contract interpretation that courts should "adopt an interpretation that renders no portion of the contract meaningless." *Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008) (quoting *Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298, 301 (1st Dep't 1994)). Because Pham's interpretation of the waiver provision would give it no meaning, the Government says, the Court should enforce the provision. Gov't Br. at 8. But the Government's resort to the language of the plea agreement "merely begs the obvious question: *what* Plea Agreement?" Pham Br. at 23 (emphasis added). The operative language is not contained in the agreement itself but rather in the Court's order issued four years later, which "nullified" the agreement. It is unremarkable that nullifying a plea agreement—or any contract—would render provisions of that agreement meaningless. Moreover, concluding that the Court's September 24 order nullified the waiver provision does not mean that the provision would lack meaning in other circumstances. The provision, after all, speaks only to waiver in the event that Pham's "pleas of guilty . . . be vacated for any reason," not in the event

that, as here, the agreement itself is nullified.  Plea Agreement at 8.  The provision could have effect if the convictions were vacated but the plea agreement were not nullified in full. Regardless, to the extent the agreement was unartfully drafted, the Court construes it "strictly against the Government."  *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004).

Second, the Government cites to language in *United States v. Podde*, 105 F.3d 813 (1997), as endorsing its position.  There, the defendant was charged with conspiracy and wire fraud, but pled guilty to the lesser charge of illegally structuring financial transactions.  *Id.* at 814–15.  Following an intervening Supreme Court case that invalidated his conviction, the defendant withdrew his plea, the government reinstated the original charges, and the defendant was convicted on them.  *Id.*  On appeal, the Second Circuit vacated the defendant's conviction because the reinstated charges were brought outside the 5-year statute of limitations.  *Id.* at 821. The court noted that "the government can prevent the situation from arising in the future by securing waivers of the statute of limitations in its plea agreements."  *Id.* at 814–15.  It further explained that "an express waiver of the statute of limitations can be read either as a concession that no such time-dependent defenses are available, or as a conscious choice to abandon those defenses."  *Id.* at 821 n.7.

But these statements in *Podde* do not change the result here.  First, *Podde* contemplated the reinstatement of charges in the original indictment while here the Government seeks to bring new charges, ones it admits it lacked evidence of at the time of the plea agreement.  The circumstance in *Podde* was later addressed by Congress in 2002 with the passage of 18 U.S.C. § 3296, which permits the government to reinstate counts of an indictment that were dismissed as

part of a plea agreement following the vacatur of a guilty plea.  18 U.S.C. § 3296(a).[1]  Second, and more importantly, the *Podde* court simply did not consider the effect of a court order, agreed to by both parties, that expressly nullified the plea agreement without any exception for the statute-of-limitations waiver.

The Court therefore concludes that the plea agreement's statute-of-limitations waiver does not make Counts 5 through 9 timely because the waiver has been nullified.[2]  The Government's only alternative basis for timeliness, premised on 18 U.S.C. § 3286(b) and discussed in the next section below, does not apply to Count 9.  The Court therefore dismisses Count 9 as barred by the applicable 5-year statute of limitations.

**2.  Counts 5 through 8 are not time-barred under 18 U.S.C. § 3286(b)**

The Government alternatively argues that even without the statute-of-limitations waiver, Counts 5 through 8 are timely under 18 U.S.C. § 3286(b).  Offenses that that satisfy the

---

[1] This statutory provision explains why Pham cannot contend that Counts 1 through 4 of the superseding indictment are untimely.  Section 3296(a) states:

(a) In general.--Notwithstanding any other provision of this chapter, any counts of an indictment or information that are dismissed pursuant to a plea agreement shall be reinstated by the District Court if--

(1) the counts sought to be reinstated were originally filed within the applicable limitations period;

(2) the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;

(3) the guilty plea was subsequently vacated on the motion of the defendant; and

(4) the United States moves to reinstate the dismissed counts within 60 days of the date on which the order vacating the plea becomes final.

[2] Pham alternatively argues that even if the waiver is valid, Counts 5 through 9 do not fall within its scope because at the time the agreement was signed, the Government indisputably lacked the evidence necessary to bring a prosecution on those charges.  Pham Br. at 26–27.  Though the Court doubts this argument, it need not resolve Pham's interpretation of the waiver because the waiver, no matter its scope, now lacks legal force.

requirements of § 3286(b) can be "instituted at any time without limitation."  The parties agree that Counts 5 through 8 satisfy the first requirement of this provision, that the offenses be enumerated in 18 U.S.C. § 2332b(g)(5)(B), Pham Reply at 6, but disagree whether the "commission of such offense[s] resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person," 18 U.S.C. § 3286(b).  Pham argues for the first time in his reply that while substantive violations of § 2332f, bombing a public place, and § 2332a, use of a weapon of mass destruction, may create such a foreseeable risk, a mere conspiracy or attempt to commit either offense does not.

Few courts have had occasion to interpret § 3286(b), but it speaks in familiar terms. Serious bodily injury is defined in other statutory provisions as "bodily injury which involves (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty."  18 U.S.C. § 1365(h)(3) (cross-referenced by 18 U.S.C. § 2332b(g)(3)).  And in other contexts, the Second Circuit has defined foreseeable harm as a "harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."  *United States v. Turk*, 626 F.3d 743, 750 (2d Cir. 2010) (quoting U.S.S.G. § 2B1.1, App. Note 3(A)(iv)); *cf. Foreseeability*, Black's Law Dictionary (11th ed. 2019) ("The quality of being reasonably anticipatable.").  Nothing in the language or structure of 18 U.S.C. § 3286(b) indicates any reason that its use of these terms should be interpreted differently here.

An "issue of reasonable foreseeability is often a fact-specific question for a jury to decide."  *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 481 (E.D.N.Y. 2009), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *see also United States v. Molina*, 106 F.3d 1118, 1121 (2d Cir. 1997) (citing *United States v. Ekwunoh*, 12 F.3d 368, 370 (2d Cir. 1993)); *AUSA Life*

*Ins. Co. v. Ernst & Young*, 206 F.3d 202, 217 (2d Cir. 2000) ("A foreseeability determination in and of itself is also a question of fact for resolution by the finder of fact."). Moreover, § 3286(b) asks whether "the *commission of such offense* resulted in, or created a for[e]seeable risk of, death or serious bodily injury." 18 U.S.C. § 3286(b) (emphasis added). Where that language appears in other statutes, the Supreme Court has concluded that Congress intended courts to conduct a case-specific analysis. *See Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) (explaining that "the phrase 'an offense . . . committed' charged sentencers with considering non-elemental facts" (quoting *United States v. Hayes*, 555 U.S. 415, 421 (2009)); *Nijhawan v. Holder*, 557 U.S. 29, 38 (2009) (concluding that the phrase "an offense . . . *if committed for commercial advantage*" necessarily "calls for circumstance-specific application" (quoting 8 U.S.C. § 1101(a)(43)(K)(ii))). Based on this text, the Court concludes that a count is timely under § 3286(b) if the defendant's specific commission of the offense, as a question of fact, created a foreseeable risk of serious bodily injury.

Pham instead urges a categorical approach. He argues that the Court should interpret § 3286(b) to apply only when the *elements* of a defendant's offense—rather than the facts of the defendant's conduct—categorically involve the creation of a foreseeable risk of serious bodily injury. Pham Reply at 11–13. He cites in support of his interpretation cases in which the Supreme Court and the Second Circuit have concluded that certain offenses do not qualify as a "crime of violence" under statutes like 18 U.S.C. § 924. *See, e.g.*, *Johnson v. United States*, 559 U.S. 133 (2010); *Davis*, 139 S. Ct. 2319. Those cases apply the "categorical approach," under which "courts must determine whether a given offense is a crime of violence by focusing categorically on the offense's statutory definition, *i.e.*, the intrinsic elements of the offense, rather than on the defendant's particular underlying conduct." *United States v. McCoy*, 995 F.3d

32, 54 (2d Cir. 2021) (citing *Taylor v. United States*, 495 U.S. 575, 600–01 (1990)).  Under that

approach, for example, substantive Hobbs Act Robbery is a crime of violence because it "has as

an element the use, attempted use, or threatened use of physical force against the person or

property of another."  *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)).  Similarly, *attempted* Hobbs Act

Robbery is a crime of violence.  *Id.* at 55–57.  But *conspiracy* to commit Hobbs Act Robbery is

not because it can be completed by an agreement without an element of use or attempted use of

physical force.  *Id.* at 53; *see also United States v. Barrett*, 937 F.3d 126, 129–30 (2d Cir. 2019).

Pham argues that here, too, his conspiracy counts would not qualify as crimes of violence and so,

by implication, the commission of those offenses categorically do not create a foreseeable risk of

serious bodily injury.

       This case law applying the categorical approach is irrelevant to the application of

§ 3286(b).  *First*, the text of § 3286(b) differs from those statutes that prescribe a categorical

approach.  The *Davis* Court explained that it is 18 U.S.C. § 924's text that dictates a categorical

approach.  It does so because it defines a crime of violence by reference to the offense's

"elements" and whether, "by its nature," it "involves a substantial risk [of] physical force."  139

S. Ct. at 2327–32.  But here, as explained, § 3286(b)'s use of the terms "foreseeable" and

"commission of such offense," instead dictate a case-specific approach.  And the inclusion both

of offenses that "created a for[e]seeable risk" of death or injury in addition to those offenses that

actually "resulted in" death or injury is an express acknowledgement that § 3286(b) would cover

both substantive offenses as well as inchoate offenses like attempt or conspiracy.

       *Second*, like the text, the statute's structure dictates a case-specific approach, not a

categorical one.  Section 3286(a) lists the offenses with an 8-year statute of limitations.  Section

3286(b) then identifies a subset of those offenses (the ones listed in 18 U.S.C. § 2332b(g)(5)(B))

and provides that if a further condition is satisfied (the creation of a foreseeable risk of death or serious bodily injury) then no statute of limitations applies. This structure makes little sense in a categorical framework, under which only the elements of each offense, and not the particular facts, matter. If the inquiry were simply one of elements, there would be no reason to list the same § 2332b(g)(5)(B) offenses, with the same elements, under both subparts (a) and (b).

*Third*, a case-specific application of § 3286(b) comports with available case law. The limited case law that interprets § 3286(b) itself does not follow a categorical approach but instead focuses on defendants' particular conduct. *See, e.g.*, *Nezirovic v. Holt*, 779 F.3d 233, 238 (4th Cir. 2015); *United States v. Mohamed*, 148 F. Supp. 3d 232, 236 (E.D.N.Y. 2015) (explaining that the defendant's crime "involved shooting [a U.S. soldier] with an AK-47 assault rifle[,] which created a foreseeable risk of such injury"); *United States v. Ghayth*, No. 98-CR-1023 (LAK), 2013 WL 12226036, at *1 (S.D.N.Y. Nov. 26, 2013); *Basic v. Steck*, No. 5:12-CV-274-KKC, 2015 WL 4164901, at *9 (E.D. Ky. July 9, 2015), *aff'd*, 819 F.3d 897 (6th Cir. 2016) (noting that the defendant "is alleged to have committed numerous acts of torture that created a foreseeable risk of serious injury"). The same is true of cases in which other courts interpreted similarly worded statutes. For example, under the Sentencing Guidelines, a defendant's term of supervised release is enhanced for an offense "listed in 18 U.S.C. § 2332b(g)(5)(B), the commission of which resulted in, or created a foreseeable risk of, death or serious bodily injury to another person." U.S.S.G. § 5D1.2(b)(1). In *United States v. Tounisi*, the defendant pled guilty to attempting to provide material support to a foreign terrorist organization after his plans to travel to Syria to join a terrorist group associated with al Qa'ida were thwarted when he was arrested at a U.S. airport while he waited for his flight. 900 F.3d 982, 984–85 (7th Cir. 2018). The district court found that the enhancement applied to the attempt count because his "terrorism

crime . . . posed a foreseeable risk of injury to another person." *Id.* at 985 (affirming the sentence without deciding this issue); *see also United States v. Tounisi*, No. 13-cr-328 (N.D. Ill. Oct. 19, 2017), Dkt. No. 102 (accepting the applicability of the enhancement).

Similar language also appears in a sentencing enhancement for the offense of smuggling an unlawful alien, the sentence for which is enhanced if "the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(6).  Courts apply that enhancement even if the defendant was convicted only of conspiracy, not a substantive offense, and even if no injury actually resulted.  *See, e.g.*, *United States v. Maldonado-Ochoa*, 844 F.3d 534, 537 (5th Cir. 2016) (applying the enhancement where the defendant "started to drive with unrestrained persons lying in the bed of his truck," even though he was "promptly stopped by Border Patrol agents" before anyone was injured); *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1221 (11th Cir. 2010) (applying the enhancement to a conspiracy conviction because injury on an overcrowded boat "was certainly reasonably foreseeable" to the defendant); *see also United States v. Sanchez*, 303 F. App'x 851, 854–55 (11th Cir. 2008) (per curiam) (applying the enhancement where injury was "reasonably foreseeable" because an overcrowded boat could tip over, even though defendant's involvement in the conspiracy was not "extensive"); *United States v. Rodriguez*, 553 F.3d 380, 395 (5th Cir. 2008) (applying the enhancement because "transporting human beings in a trailer bore many foreseeable risks," including to those persons not actually harmed).

Next, Pham argues that § 3286(b) must be interpreted narrowly to exclude his offenses under the rule of lenity or, alternatively, that interpreting the provision expansively to encompass his offenses renders the statute unconstitutionally void for vagueness.  Under the rule of lenity, "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."

*United States v. Simpson*, 319 F.3d 81, 86 (2d Cir. 2002) (quoting *United States v. Bass*, 404

U.S. 336, 348 (1971)); *Chapman v. United States*, 500 U.S. 453, 463 (1991) (requiring "grievous

ambiguity").  Under the void-for-vagueness doctrine, a criminal law is vague if "it fails to give

ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites

arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v.

Lawson*, 461 U.S. 352, 357–58 (1983)).  Pham's invocation of each doctrine rests on the

contention that "foreseeable risk" is excessively ambiguous, offering insufficient notice to

ordinary people.  Pham Reply at 17–20.

The Court disagrees with this predicate contention and so rejects both the rule-of-lenity

and void-for-vagueness conclusions that Pham draws.  As the *Johnson* Court explained, "dozens

of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable

risk,'" all of which "require gauging the riskiness of conduct in which an individual defendant

engages *on a particular occasion*."  576 U.S. at 603 (emphasis in original).  The Supreme Court,

however, did not "doubt the constitutionality of laws that call for the application of a qualitative

standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a

man's fate depends on his estimating rightly . . . some matter of degree.'"  *Id.* at 604 (quoting

*Nash v. United States*, 229 U.S. 373, 377 (1913)).  In *Davis*, the Supreme Court echoed that

conclusion, explaining that "a case-specific approach would avoid the vagueness problems that

doomed the statutes in *Johnson* and *Dimaya*," because there is "no vagueness problem with

asking a jury to decide whether a defendant's 'real-world conduct' created a substantial risk of

physical violence."  *Davis*, 139 S. Ct. at 2327 (quoting *Dimaya*, 138 S. Ct. at 1215–16).  Here,

because the application of § 3286(b) involves a case-specific determination of risk, not the

generalized inquiry of the categorical approach, it avoids such vagueness concerns.  And that

case-specific determination is guided by the centuries-old concept of foreseeability, which is not

a grievously ambiguous term that would implicate lenity.  *See AUSA Life Ins. Co.*, 206 F.3d at

217–20 (citing, e.g., *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928), and *Restatement

(Second) of Torts* § 548A (Am. L. Inst. 1977)).

 Having concluded that § 3286(b) requires a case-specific analysis and that so interpreting

it does not raise any lenity or vagueness concerns, the Court applies the statute to Pham's case.

The Court will not dismiss the conspiracy counts, Counts 5 and 7, as untimely.  "In the specific

context of a motion based on statute of limitations grounds, a pre-trial motion to dismiss is

premature if the indictment is facially sufficient and the defendant's argument in favor of

dismissal requires a determination of factual issues."  *United States v. Kogan*, 283 F. Supp. 3d

127, 134 (S.D.N.Y. 2017) (citing *United States v. FNU LNU*, No. 06 CR. 846 (DAB), 2007 WL

1149261, at *2 (S.D.N.Y. Apr. 12, 2007)).  The superseding indictment includes ample

allegations that, if proven at trial, would permit a reasonable jury to find that the conspiracy

counts satisfy § 3286(b).  According to the superseding indictment, Pham travelled to Yemen,

there engaged in military-style training under a designated terrorist organization, and agreed to

carry out a suicide bombing in the United Kingdom on behalf of AQAP.  S1 Indictment at 7–10.

Pham's conduct did not stop at a mere agreement.  He was instructed specifically to target

incoming flights at Heathrow International Airport, he "constructed and detonated an explosive

device as a test of the design of the explosive device to be used during [his] planned suicide

attack," and he "traveled to the United Kingdom in order to carry out the attack."  *Id.* at 5.  And

he allegedly took these steps "with the intent to cause death and serious bodily injury,"

particularly to U.S. nationals.  *Id.* at 7.  Pham did not complete that objective and was instead

apprehended by U.K. authorities.  Nevertheless, a jury could find that an intended and foreseeable result of his conspiracy was a risk of serious bodily injury to another person.[3]

Nor will the Court dismiss Pham's attempt counts, Counts 6 and 8, as untimely.  For the Government to charge Pham with attempted bombing, Pham necessarily had "(a) an intent to complete the substantive crime . . . and (b) [took] a substantial step towards completing the crime[, ]which logically means a substantial step towards completion of all of that crime's elements."  *McCoy*, 995 F.3d at 55.  Again, the superseding indictment alleges that Pham received military-style training, was instructed by AQAP to conduct a suicide bombing at Heathrow International Airport, constructed and detonated an explosive device to use in the attack, and traveled to the United Kingdom to carry out the attack.  Serious bodily injury to another person could have been a foreseeable risk of Pham's commission of the offense, even if that risk rested on a chain of events and ultimately did not materialize because law enforcement intervened.  *See United States v. Allen*, 51 F.3d 273, at *3–4 (6th Cir. 1995) (unpublished table decision) (affirming that discarding a "sawed-off shotgun in a residential neighborhood" created a "substantial risk of death or bodily harm to another person," because a "child or teenager easily could have recovered the gun and used it," even though "the police retrieved the gun before this happened"); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 212 (5th Cir. 2018) ("[T]he [smuggling sentence] enhancement applies for creating a risk of harm; no harm at all need actually occur to warrant its application.").  Especially when the offenses at issue are serious allegations of terrorism, "dangerous persons may be apprehended at an earlier stage without

_____

[3] Pham refers to foreseeability as applied under the doctrine in *Pinkerton v. United States*, 328 U.S. 640 (1946).  Pham Reply at 8.  That doctrine concerns when a defendant properly may be held liable for the foreseeable actions of coconspirators.  *Pinkerton*, 328 U.S. at 647–48.  It is therefore inapposite.  At issue here is Pham's own conduct:  As alleged, he intended to execute the bombing himself and he trained, tested explosives, and travelled to the United Kingdom to further that intention.

immunizing them from attempt liability." *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003) (cleaned up) (quoting *United States v. Jackson*, 560 F.2d 112, 120 (2d Cir. 1977)).

Pham responds that even if his conduct was sufficient to support the two attempt counts, his conduct ended well before any harm to another person was foreseeable. Pham Reply at 13– 14. He supports this conclusion by reasoning backwards from two cases of attempted bombings where, in contrast to his case, the defendants' conduct brought them much closer to completing the bombing than did Pham's conduct. *See United States v. Ivic*, 700 F.2d 51, 67 (2d Cir. 1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) (observing that the defendants "had done every act that would have been involved in the complete crime save for setting the time bomb in place"); *Yousef*, 327 F.3d at 134 (affirming that the defendant "took substantial steps toward damaging or destroying United States commercial aircraft and toward placing a bomb on such aircraft"). But these cases involved the distinct question of whether a jury's verdict was supported by sufficient evidence, a question that both cases answered in the affirmative. Moreover, the fact that some defendants were convicted of the crime with which Pham is now charged is irrelevant to whether Pham's commission of those offenses created a foreseeable risk of serious bodily injury.

The Court concludes that Counts 5 through 8 are not time-barred because they may be permitted under 18 U.S.C. § 3286(b). Ultimately, whether the counts are timely is a question for the jury. *See United States v. Sampson*, 898 F.3d 270, 276, 285 (2d Cir. 2018) ("If a defendant raises a statute-of-limitations defense . . . , the government bears the burden of proving compliance with the statute to a jury beyond a reasonable doubt."). And if at trial the Government fails to proffer sufficient evidence to show the indictment was timely, Pham may

renew his claim in a Rule 29 motion.  *See FNU LNU*, 2007 WL 1149261, at *2; *see also United States v. Carnesi*, 461 F. Supp. 2d 97, 98 (E.D.N.Y. 2006).

### B.  Vindictive-prosecution claim

Pham also argues that Counts 5 through 9 must be dismissed because they are the product of an unconstitutionally vindictive prosecution.  The Court first reviews the relevant law and then the relevant facts.  The Court rejects Pham's vindictive-prosecution claim.

### 1.  Relevant law

"Although the decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, the decision to prosecute violates due process when the prosecution is brought in retaliation for the defendant's exercise of his legal rights."  *United States v. White*, 972 F.2d 16, 18–19 (2d Cir. 1992) (citation omitted).  "Accordingly, an indictment will be dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action."  *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000) (quoting *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam)).  "To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's charging decision was a 'direct and unjustifiable penalty,' that resulted 'solely from the defendant's exercise of a protected legal right."  *Id.* at 716–17 (quoting *United States v. Goodwin*, 457 U.S. 368, 384 & n.19, 380 n.11 (1982)).  "To establish a presumption of prosecutorial vindictiveness, the defendant must show that 'the circumstances of a case pose a "realistic likelihood" of such vindictiveness.'"  *Id.* at 717 (quoting *United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997)).  "The circumstances must present a realistic likelihood of vindictiveness that would be 'applicable in all cases,' and any

such presumption may be 'overcome by objective evidence justifying the prosecutor's action.'"
*Id.* (quoting *Goodwin*, 457 U.S. at 381, 376 n.8).

Generally, a presumption of vindictiveness does not arise in a pretrial setting.  *Id.* (citing
*United States v. Koh*, 199 F.3d 632, 639–40 (2d Cir. 1999)).  That is because "there is no
constitutional right to plea bargain."  *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  And
because "[a]n initial indictment—from which the prosecutor embarks on a course of plea
negotiation—does not necessarily define the extent of the legitimate interest in prosecution.  For
just as a prosecutor may forgo legitimate charges already brought in an effort to save the time
and expense of trial, a prosecutor may file additional charges if an initial expectation that a
defendant would plead guilty to lesser charges proves unfounded."  *Goodwin*, 457 U.S. at 380.
Therefore, the Supreme Court "has declined to apply the presumption with regard to the lodging
of a superseding indictment following unsuccessful plea bargaining because the 'give-and-take'
of plea bargaining does not in general reflect a retaliatory motive."  *Lane v. Lord*, 815 F.2d 876,
878 (2d Cir. 1987) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).  Ultimately,
plea bargaining lacks the necessary "element of punishment or retaliation so long as the accused
is free to accept or reject the prosecution's offer."  *Bordenkircher*, 434 U.S. at 363.

### 2.  Relevant facts

After Pham filed his motion to vacate his § 924(c) conviction, and the Government
agreed that *Davis* compelled vacating that conviction, the parties negotiated "an appropriate path
forward."  Dkt. No. 184 at 3.  On January 29, 2020, the Government sent an email to Pham,
stating that "[i]f Pham were to plead guilty pursuant to a plea agreement (receiving the 3
acceptance points), his Guidelines range is 292–360 months, with a statutory maximum of 30
years.  If he goes to trial, his Guidelines range will be 360-life with a statutory maximum of 40

years." Sternheim Decl., Ex. 4.  The Government clarified that "this is not an offer and has not been approved by the Unit Chiefs [in the Southern District of New York] or [the Department of Justice's National Security Division]." *Id.*  Pham "formally rejected" that proposal.  Oct. 28 Tr. at 12–13; Pham Br. at 31.  The Government on July 17, 2020, advised the Court that "defense counsel informed the Government that, based on conversations with the defendant, further plea discussions are not likely to result in a pretrial disposition."  Dkt. No. 181.

On August 14, 2020, the Government informed Pham and the Court that, upon receiving the United Kingdom's approval, the Government would "file additional charges against Pham based on additional evidence secured following his conviction and sentencing."  Dkt. No. 184 at 9.  On August 28, 2020, Pham's counsel informed the Government that she had "just spoken with Pham.  He is prepared to be resentenced.  He agrees to waive his in-person appearance.  I am requesting that you reoffer the 30-year cap."  Sternheim Decl., Ex. 5.  The parties spoke by phone on September 1, 2020, during which the Government stated that it would not reoffer the prior terms, but did extend Pham a second offer with different terms.  Oct. 28 Tr. at 9; *see also* Sternheim Reply Decl. ¶ 4 (recounting that on the call, the Government stated it "no longer had an appetite" for the prior offer).  The Government presented a written formal plea agreement on September 9, 2020.  Oct. 28 Tr. at 9.  The offer expired without being accepted on September 11, 2020.  *Id.* at 9.  Pham's counsel told the Court that Pham "elected not to accept" this second, written offer.  *Id.* at 11–13.

On October 26, 2020, the United Kingdom confirmed its receipt of the United States' request for a waiver of the rule of specialty so that the Government could file additional charges against Pham.  *Id.* at 10.  After it received the United Kingdom's grant on January 12, 2021, the

Government filed the superseding indictment on April 8, 2021, which contained the added Counts 5 through 9.

### 3.   Counts 5 through 9 are not the product of a vindictive prosecution

Pham argues that the Government's refusal to reoffer the first deal with a 30-year cap "constitutes prosecutorial vindictiveness designed to punish Mr. Pham for his initial intention to exercise his Fifth and Sixth Amendment constitutional rights to trial."  Pham Br. at 31–32.  This claim misconstrues both the record and binding precedent.  As an initial matter, as the Government made clear at the time, the January 29, 2020 proposal was "not an offer" because it had "not been approved by" the necessary authorities.  Sternheim Decl., Ex. 4.  But more importantly, as cited above, the Government's decision to file a superseding indictment with additional charges after its unsuccessful plea bargaining with Pham does not give rise to the presumption of vindictiveness.  *Lane*, 815 F.2d at 878.  Nor, as a more general matter, can Pham presume vindictiveness when "the only evidence [he] is able to marshal in support of his allegation of vindictiveness is that the additional charge was brought at a point in time after his exercise of a protected legal right."  *Goodwin*, 457 U.S. at 382 n.15.

Pham's response to this case law appears to be that it is inapplicable because plea negotiations here were not *unsuccessful* but "merely delayed."  Pham Br. at 32.  In his brief, for example, he refers to the August 28, 2020 email, which requested that the Government "reoffer the [prior] 30-year cap," Sternheim Decl., Ex. 5, as a "delayed acceptance" of the Government's offer, Pham Br. at 33.  Yet both parties previously represented to the Court that Pham "formally rejected" the original offer.  Oct. 28 Tr. at 11–13.  That express rejection, under familiar principles of contract law, extinguished the Government's offer and made any later attempt to "accept" the offer inoperative.  *See, e.g.*, Williston, *supra*, § 5:3 ("When an offer has been

rejected, it ceases to exist, and a subsequent attempted acceptance is inoperative, even though the acceptance is made within a time which would have been sufficiently early had there been no rejection.").  And because "it is undisputed that the proposed plea agreement was rejected, . . . the government had no obligation to re-offer [the defendant] the same deal."  *United States v. Malachowski*, 623 F. App'x 562, 564 (2d Cir. 2015) (summary order).  Nevertheless, the Government did offer a subsequent deal with different terms, which Pham also rejected.

For similar reasons, Pham's arguments that the security protocols at USP Florence ADMAX, where Pham is held, and that the COVID-19 pandemic delayed his acceptance of the Government's offers are irrelevant.  Pham Br. at 32–33; *see also* Sternheim Reply Decl. ¶¶ 5–7. A different result may well be justified if it was the case that either offer expired before Pham had adequate time to discuss it with counsel.  But that is not what happened.  Instead, as explained, both parties represented to this Court that Pham *rejected* both offers after they had been made.  Oct. 28 Tr. at 10–12.  Therefore, there is no basis for finding that the logistical difficulties imposed by ADX procedures or the COVID-19 pandemic support a finding of vindictiveness.  That Pham did not receive the benefit of either plea agreement offered is not because of delay, but because he chose to reject each offer while it was available.

The Court therefore denies Pham's vindictive-prosecution claim.

### C.  Rule-of-specialty claim

Last, Pham moves to dismiss Counts 5 through 9 because they were charged in the superseding indictment in a manner that violated the rule of specialty—codified in Article 18 of the Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland," signed on March 31, 2003—principles of due process, and the United

Kingdom's doctrine of natural justice.  Pham Br. at 34.  For two independent reasons, the Court rejects this basis for dismissal.

*First*, Pham lacks standing to raise his extradition-based arguments.  The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country."  *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003). "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused."  *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).  Consequently, the rule of specialty "can afford 'the extraditee' himself a 'remedy only if the surrendering government would object, since the underlying substantive wrong, which grows out of international law, is only to the latter.'"  *United States v. Barinas*, 865 F.3d 99, 105 (2d Cir. 2017) (quoting *Fiocconi v. Att'y Gen. of U.S.*, 462 F.2d 475, 479 n.8 (2d Cir. 1972)).

Here, the Government sought, and received, a waiver of the rule of specialty from the United Kingdom, Oct. 28 Tr. at 10; Sternheim Decl., Ex. 8, as expressly permitted in Article 18 of the United States' extradition treaty with the United Kingdom, *see* Pham Br. at 35.  Pham argues that the United Kingdom's waiver is "void" because it was obtained in violation of U.K. and European law, including because of the potential sentence Pham faces as well as because of violations of the United Kingdom's doctrine of natural justice.  *See id.* at 39–41.  But because the United Kingdom itself did not make any such objections, Pham lacks standing to raise them. *United States v. Suarez*, 791 F.3d 363, 367 (2d Cir. 2015) (explaining that the defendant "would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the [requested sovereign] first makes an official protest").  Indeed, Pham appears to

admit as much in his brief.  Pham Br. at 39–41.  To the extent Pham raised this argument to preserve it on appeal, it is preserved.[4]

*Second*, even if Pham had standing, his claims are also not cognizable because they impermissibly ask this Court to second-guess the United Kingdom's extradition procedure. Pham argues that all U.K. tribunals, including those that make extradition decisions, are bound by the doctrine of natural justice, which requires that an affected individual be provided an opportunity to present his case.  Pham Br. at 35–37.  Because he was provided notice of the extradition request but was not permitted to "confront the evidence presented to the [United Kingdom]," Pham Reply at 26, or otherwise argue that his extradition was inconsistent with U.K. law, Pham Br. at 39, Pham argues that natural justice was denied.[5]  Yet it is "well-established that 'a foreign government's decision to extradite an individual in response to a request from the United States is not subject to review by United States courts.'"  *United States v. Salinas Doria*, No. 01-CR-21 (GEL), 2008 WL 4684229, at *2 (S.D.N.Y. Oct. 21, 2008) (quoting *United States v. Medina*, 985 F. Supp. 397, 401 (S.D.N.Y. 1997)).  On a practical level, courts "can hardly be expected to monitor the conduct of representatives of each foreign government to assure that a request for extradition or expulsion is carried out in accordance with American constitutional

---

[4] Pham suggests that his claim would fare better in the Eleventh Circuit, which is on the opposite side of a circuit split over when a defendant has standing to raise a rule-of-specialty claim.  *See United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 1995).  Though the Second Circuit's binding precedent settles this issue, the Court notes that even in the Eleventh Circuit, Pham's claim would likely fail.  In *Puentes*, the Eleventh Circuit held that an extradited defendant "has standing under the doctrine of specialty to raise any objections which the requested nation *might* have asserted."  50 F.3d at 1575 (emphasis added).  That is, the defendant has standing when the requested sovereign remains silent.  But even in the Eleventh Circuit, "the requested nation may waive its right to object to a treaty violation and thereby deny the defendant standing to object to such an action."  *Id.*  That is what happened here, where the United Kingdom expressly waived any rule-of-specialty objection.

[5] The Court notes, but does not rely upon, the fact that Pham's counsel submitted a letter to the United Kingdom that raised the objections raised in the present motion, that his "additional charges are beyond the statute of limitations" and "represent a vindictive prosecution." Sternheim Decl., Ex. 8.

standards." *United States v. Lira*, 515 F.2d 68, 71 (2d Cir. 1975). Moreover, "deference to [the requested sovereign's] decision seems essential to the maintenance of cordial international relations. It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request." *United States v. Campbell*, 300 F.3d 202, 209 (2d Cir. 2002). As a consequence, the Second Circuit has instructed that "courts cannot second-guess another country's grant of extradition to the United States." *Id.* (collecting cases); *see also United States v. Umeh*, 762 F. Supp. 2d 658, 664 (S.D.N.Y. 2011), *aff'd*, 527 F. App'x 57 (2d Cir. 2013) ("Moreover, the United States is not responsible for ensuring that a foreign sovereign complies with its internal laws in issuing an extradition or expulsion.").

On reply, Pham claims that he is not challenging the United Kingdom's procedures but instead the actions the United States took to obtain the United Kingdom's consent. Pham Reply at 26–27 (arguing that the Government's "machinations" violated the Due Process Clause and "his universally recognized rights to natural justice"). Yet, again, Pham does not address contrary precedent. As the Supreme Court explained in rejecting a due-process challenge raised by an extradited defendant, "due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." *United States v. Alvarez-Machain*, 504 U.S. 655, 662 (1992) (quoting *Frisbie v. Collins*, 342 U.S. 519, 522 (1952)); *see also Lira*, 515 F.2d at 71 (finding no requirement "that a request for extradition or expulsion is carried out in accordance with American constitutional standards").[6] Ultimately, the Court is

---

[6] The Second Circuit has recognized a narrow but important exception to this general rule, namely that the United States may not secure a "defendant's presence in the jurisdiction through use of cruel and inhuman conduct." *Lira*, 515 F.3d at 70 (citing *United States v. Toscanino*, 500 F.2d 267, 278 (2d Cir. 1974) (where defendant was "brought into the district court's jurisdiction

aware of no authority—and Pham does not purport to offer one—that required the United States to disclose the contents of its extradition request to Pham or required that he be permitted a hearing before the United Kingdom made its decision.

The Court therefore rejects this basis for dismissing Counts 5 through 9.

### D.  Pham's disclosure request

Independent of his motion to dismiss charges against him, Pham requests that the Court (1) enter an order under Federal Rule of Criminal Procedure 5(f)(1), requiring that the Government disclose *Brady* material and (2) further order the Government to identify all *Brady* material and information.  Pham Br. at 42–43.  The Court has already satisfied the first request. On October 28, 2020, the Court issued an oral Rule 5(f) order.  Oct. 28 Tr. at 6–7.  And on September 7, 2021, the Court issued a written order.  Dkt. No. 219.

The Court understands Pham's second request to go further than the requirements of Rule 5(f) and *Brady*, both of which require only that exculpatory material be disclosed to the defendant.  Pham argues that given the quantity of electronic discovery at issue here— approximately five gigabytes—the Government must also identify the exculpatory materials within that discovery.  Pham Br. at 42.

The Court finds no authority for this request and therefore denies it.  Generally, "the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."  *United States v. Ohle*, No. 08-CR-1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011) (citing *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997)); *see also United States v. Alvarado*, No. 01-CR-

_____

by forcible abduction in violation of a treaty" and was subject to weeks of physical torture)).  But Pham does not invoke this exception, nor would the record before the Court support it.  *See also United States v. Umeh*, 527 F. App'x 57, 64 (2d Cir. 2013) (suggesting the *Toscanino* exception "has been undermined").

156 (RPP), 2001 WL 1631396, at *4 (S.D.N.Y. Dec. 19, 2001) ("The Defendants have pointed to no authority for the proposition that where there is a large mass of material that has been made available to the Defendants, it is the Government's duty to root out *Brady* material for the Defendants.  Indeed the only authority is to the contrary."); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("The Government is under no general obligation to sort or organize *Brady* material disclosed to defendants.").

Pham relies on *United States v. Gil*, 297 F.3d 93 (2d Cir. 2002), but that case stands for a distinct principle.  There, the Second Circuit held that an exculpatory two-page memo was "suppressed" in violation of *Brady* when it was disclosed "among more than 2,700 pages of material in two file boxes."  *Id.* at 105–07.  Yet the government's error in *Gil* was not the *volume* of information disclosed but rather the *timing*:  The memo had been in the government's possession for more than 10 months but it was not disclosed until "the eve of trial."  *Id.* at 106 (quoting *Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001).  As the Court has already instructed the Government, *Brady* material "must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial."  Dkt. No. 219.  The Government has affirmed that it will fulfill this obligation.  Gov't Br. at 26 (citing *Leka*, 257 F.3d at 101).

The Court therefore denies Pham's request that the Government be ordered to go beyond its obligations under Rule 5(f) and *Brady* and affirmatively identify exculpatory information in the discovery produced.

## IV.    Conclusion

Pham's motion to dismiss Counts 5 through 8 of the superseding indictment is DENIED.  Count 9 of the superseding indictment is DISMISSED.  The Court rejects Pham's remaining claims.

The parties are ordered to meet and confer and by April 15, 2022, file a joint letter that proposes a schedule for this case going forward.

The Court finds that the ends of justice served by excluding from speed trial computations the period from the date of this Opinion & Order through April 15, 2022, outweigh the interests of the public and the defendant in a speedy trial as the time is necessary for the parties in the interim to confer and propose a scheduling order going forward.

This resolves docket number 216.

SO ORDERED.

Dated:  April 1, 2022
        New York, New York

_____
        ALISON J. NATHAN
     United States Circuit Judge
        Sitting by designation