LAW OFFICES OF
**DRATEL & LEWIS**
29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: jdratel@dratellewis.com

JOSHUA L. DRATEL
LINDSAY A. LEWIS
—
AMY E. GREER

ACHARA AMY SCHRODER
*Paralegal*

January 29, 2025

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Pham*,
12 Cr. 423 (RMB)

Dear Judge Berman:

This letter is respectfully submitted on behalf of defendant Minh Quang Pham, whom Bobbi C. Sternheim, Esq., and I represent in the above-entitled matter, and provides supplemental authorities relevant to issues raised in Mr. Pham's May 1, 2024, sentencing submission (ECF # 282).

**A. *The Recent Decision in* United States v. Diaz**

In the May 1, 2024, sentencing submission, at 36-38, Mr. Pham pointed out that even after his criminal case sentence is concluded, he will be confined in an Immigration and Customs Enforcement ("ICE") facility for an indeterminate period until a proper destination for removal can be determined. While Mr. Pham is a native of Vietnam, having fled from there as an infant with his parents on a refugee boat, he does not have any status in that nation. Nor does he retain any status in the United Kingdom, as his citizenship there was revoked in conjunction with the extradition proceedings (from the U.K. to the U.S.) in this case.

Mr. Pham has asked that in fashioning its sentence, the Court account for the additional time Mr. Pham will spend – perhaps months or even longer – in ICE custody before removal. Also relevant to that consideration, as discussed **post**, at 2-3, are the substandard conditions at ICE facilities.

In December, in *United States v. Diaz*, 07 Cr. 387 (CM), 2024 WL 4891908 (S.D.N.Y. November 26, 2024), Judge McMahon concluded, in granting a motion to modify sentence, pursuant to 18 U.S.C. §3582(C)(1)(a), that it was "satisfied that allowing Diaz to be deported (never to set foot on U.S. soil a free man) five months earlier than scheduled, will not undermine the goals of sentencing set forth at 18 U.S.C. §3553(a)." *Id*., at *5.

The Court in *Diaz* pointed out that the defendant, who had "essentially served the entirety of his sentence[,]" faced the prospect of additional detention after his sentence's expiration solely due to the process attendant to deportation. *Id*., at *5. As the Court in *Diaz* noted, "[h]ad Diaz been a U.S. citizen, he would have already been released to a BOP community supervision program (halfway house)." *Id*.

Thus, the Court in *Diaz* agreed with defendant's request to "hasten the [removal] process by five months." *Id*., at *4. *See also id*., at *5 ("[i]t is time to get Mr. Diaz off the Government dime").

**B. *The September 2024 Department of Homeland Security Office of Inspector General Report on ICE Facilities***

Also, a September 2024 report by the Department of Homeland Security's Office of the Inspector General ("DHS OIG") has also established that ICE facilities remain rather perilous for detainees. *See FINAL REPORT, Summary of Unannounced Inspections of ICE Facilities Conducted in Fiscal Years 2020-2023*, DHS OIG, OIG-24-59, September 24, 2024, available at https://www.oig.dhs.gov/sites/default/files/assets/2024-09/OIG-24-59-Sep24.pdf ("*2024 DHS OIG Report*".

The *2024 DHS OIG Report* catalogued and chronicled the results of 17 unannounced inspections of ICE facilities during Fiscal Years 2020-2023, finding in the preface entitled "Highlights sections" that ICE

> did not fully comply with all [Performance Based Detention Standards ("PBNDS")] standards related to environmental and health safety, special management units, staff-detainee communication, dental and chronic medical care, medical staffing, and the grievance system.

The *2024 DHS OIG Report* added that DHS OIG's "analysis indicates that regardless of time, location, detainee population, and facility type, ICE and facility staff have struggled to comply with aspects of detention standards. In turn, this hindered their ability to maintain a safe

and secure environment for staff and detainees." *Id*.[1]

More specifically, among other operational deficiencies at ICE facilities, "[s]ix of 17 (35 percent) facilities' living conditions violated PBNDS 2011 standards related to environmental health and safety, like sanitation of bathrooms and housing facilities." *Id*., at 4. In fact, during the on-site inspections, DHS OIG personnel "observed mold, rust, and peeling paint in showers . . . and . . . found bathrooms with clogged or inoperable toilets . . . broken sinks, and water leaking from toilets and sinks. We observed water leaks in housing units . . ." *Id*., at 5 (footnotes omitted).[2]

**C. *BoP's New, More Restrictive Phone Policies Effective January 1, 2025***

During the Covid-19 pandemic, BoP "implemented a policy to allow phone calls to be free to adults in custody (AIC). Each month AICs could make up to 500 minutes of calls at no cost." Walter Pavlo, "Bureau Of Prisons Starts New Year With Changes To Phone System," *Forbes*, December 31, 2024, available at https://bit.ly/42JvHov.

However, with the government's declaration in 2023 that the pandemic has concluded, and "BOP under budgetary constraints, that program" has been discontinued as of January 1, 2025. *Id*. As a result, currently inmates are charged six cents per minute for calls within the U.S., and 40 cents per minute for calls overseas. *Id*.

That change in rates has particularly adverse consequences for Mr. Pham, whose only

---

[1] Conversely, the *2024 DHS OIG Report* concluded that "ICE generally complied with [PBDS] for the custody classification system, medical care, voluntary work program, and legal services."

[2] *See also* José Olivares, "Revealed: Biden lays groundwork to expand immigration jails as Trump readies for office," *The Guardian*, December 5, 2024, available at https://www.theguardian.com/us-news/2024/dec/05/biden-immigration-jails-trump-mass-deportation-plan ("[i]n mid-November, nearly 200 organizations wrote a letter to Biden and to the homeland security secretary, Alejandro Mayorkas," in which that noted that ICE "[f]acilities across the system have documented instances of physical abuse, inadequate food and water, negligent or abusive medical care, unsanitary conditions, failed plumbing and more. Avoidable deaths in ICE detention centers are at record numbers"); Daniella Silva, "The number of deaths in ICE custody is already more than double all of last year," *NBCNews*, June 1, 2024, available at https://nbcnews.to/40QftbB.

real-time contact with his family, which resides abroad, is by phone.[3]

**Conclusion**

Accordingly, for all the reasons set forth above, and those set forth previously in Mr. Pham's May 1, 2024, Sentencing Submission, and November 22, 2024, Reply Submission, it is respectfully submitted that a sentence for Mr. Pham far below the 40-year prison previously imposed would be reasonable and appropriate, and satisfy §3553(a)(2)'s mandate that a sentence be "sufficient, but not greater than necessary" to achieve the objectives of sentencing enumerated in §3553(a)(2)(A)-(D).

Respectfully submitted,

Joshua L. Dratel

*Bobbi C. Sternheim*
Bobbi C. Sternheim

JLD/

---

[3] The government's December 15, 2024, surreply (ECF # 289) does not require rejoinder because it simply repeats the government's unyielding and one-dimensional refrain: man is irredeemable, and criminal conduct is an indelible stain that cannot be mitigated by subsequent rehabilitation, and/or that any enduring demonstrations of rehabilitation – even those lasting more than a decade – are inauthentic, and a mere deceptive contrivance designed to fool a sentencing judge. *But see United States v. Piggott*, 94 Cr. 417 (SHS), 2022 WL 118632 (S.D.N.Y. Janary 12, 2022) (noting that while a defendant's "crimes are certainly part of the 'history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1), it is also true that that history and those characteristics 'did not freeze on the day of [Piggott's] arrest and incapacitation.'" *Id.*, at *3, *quoting United States v. Underwood*, No. 88 Cr 822 (SHS), 2021 WL 3204834, at *6 (S.D.N.Y. Jan. 15, 2021).